Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**XimpleWare Corp.**, a California Corporation,

Plaintiff;

v.

**Versata Software, Inc., f/k/a Trilogy Software, Inc.**, a Delaware corporation; **Trilogy Development Group, Inc.**, a California corporation; **Ameriprise Financial, Inc.**, a Delaware corporation; **Ameriprise Financial Services, Inc.**, a Delaware corporation, and **Aurea Software, Inc. a/k/a Aurea, Inc.**, a Delaware corporation,

Defendants.

Case No. 13-5160

**COMPLAINT FOR:**

**(1) DIRECT COPYRIGHT INFRINGEMENT**
**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(3) VIOLATION OF LANHAM ACT § 43(A)**
**(4) BREACH OF CONTRACT**
**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(6) UNJUST ENRICHMENT**
**(7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(8) UNFAIR COMPETITION**
**(9) DECLARATORY RELIEF**

**Jury Trial Demanded**

Computerlaw Group LLP
www.computerlaw.com[sm]

Plaintiff XimpleWare Corp. alleges the following against Defendants Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Aurea Software, Inc. a/k/a Aurea, Inc. (collectively "Versata" or the "Versata Defendants"); and against Ameriprise Financial, Inc., and Ameriprise Financial Services, Inc., ((collectively "Ameriprise" or the "Ameriprise Defendants") and Versata and Ameriprise are collectively the "Defendants"):

## NATURE OF ACTION

1. This action involves claims of copyright infringement under 17 U.S.C. § 501 *et seq*., breach of contract, violation of Lanham Act Section 43(a), breach of the implied covenant of good faith and fair dealing, unjust enrichment, intentional interference with prospective economic advantage, unfair competition under California Business and Professions Code § 17200 *et seq.*, *alter ego* liability, and declaratory relief.

## PARTIES

2. Plaintiff XimpleWare Corp. ("XimpleWare") is a corporation organized under the laws of, and registered to do business in, California, with its principal place of business in Milpitas, California.

3. Plaintiff XimpleWare is the designer, developer, and distributor of advanced computer software and, as an enterprise that practices its own patents, it has delivered to the marketplace advanced computer software that provides enterprises, Fortune 5000 corporations, firms, and other businesses with an advanced data processing solution for challenging data processing problems. Plaintiff XimpleWare has a number of licensed customers including Matrikon, Inc., Smith & Tinker, Inc., United Stationers Technology Services LLC, and Zoosk, Inc.

4. Defendant Versata Software, Inc., f/k/a Trilogy Software, Inc. ("Versata") is a private corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business in Austin, Texas.

5. Defendant Trilogy Development Group, Inc. ("Trilogy") is a corporation organized under the laws of California, with its principal place of business in Austin, Texas. On

Computerlaw Group LLP
www.computerlaw.com[sm]

information and belief, Trilogy acquired Defendant Versata in or about February 2006, and Trilogy is now the parent company of Versata and its subsidiaries.

6. Defendant Aurea Software, Inc., a/k/a Aurea, Inc. ("Aurea") is a corporation registered to do business in California, organized under the laws of Delaware with its principal place of business in Austin, Texas. On information and belief, Aurea merged with Trilogy and Versata in October, 2013.[1]

7. Defendant Ameriprise Financial, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Ameriprise is a leading diversified financial services provider, providing a range of financial planning products and is a customer of Versata and Trilogy.

8. Defendant Ameriprise Financial Services, Inc. is a corporation registered to do business in California, organized under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. On information and belief, Defendant Ameriprise Financial Services, Inc. is a subsidiary of Defendant Ameriprise Financial, Inc. (together, Ameriprise Financial, Inc. and Ameriprise Financial Services Inc. shall be referred to as "Ameriprise").

9. Plaintiff is informed and believes and on that basis alleges (collectively hereinafter "on information and belief"), that at all relevant times Trilogy was and is the operating entity of, and has effective, if not actual, control over the business decisions made by its subsidiaries, Versata and Aurea.

10. On information and belief, at all relevant times, Versata and Aurea were the mere solely controlled instrumentalities of Trilogy and functioned as Trilogy's *alter egos*, and all undertakings by Versata and Aurea were known by, sanctioned, or done at the direction and sole control of Trilogy, or by others serving under Trilogy's direction and/or sole control.

11. On information and belief, at all relevant times, Trilogy, Versata, Aurea, and a number of other entities have acted and continue to act in conspiracy to obscure Versata's liability for copyright infringement, Lanham Act violations, breaches of contract, and wrongful

[1] http://www.aurea.com/pressrelease/20131013

Computerlaw Group LLP
www.computerlaw.com℠

conduct. On information and belief, those acts consist of, but are not limited to, the comingling of corporate funds and assets; failure to segregate funds and assets of the separate entities; concealment and misrepresentation of the identity and ownership of the corporations; disregard for formalities and failure to maintain arms' length relationships among the various entities; the use of the corporate entity to procure labor, services, or merchandise for another entity; the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; contracting with one another with intent to avoid performance by use of a corporate entity as a shield against liability of another entity; and the use of a corporation to transfer to it the existing liability of another entity.

12. By reason of the foregoing, this Court should pierce the corporate veils of Versata and Aurea and hold Trilogy or any other parent company or controlling persons or entities liable for Versata's monetary and other obligations as determined at trial.

## JURISDICTION AND VENUE

13. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Federal courts have exclusive jurisdiction in copyright cases, and because those claims are Federal questions.

14. This Court has personal jurisdiction over all defendants because all Defendants do substantial business in this District.

15. Venue is proper, under 28 U.S.C. §§ 1331, 1391(c), 1391(d), and 1400(b). This action raises federal questions (copyright infringement); substantial part of the events giving rise to this action occurred in this District; the creation, infringement, and sale of software at issue involved corporations registered to do business in California with California subsidiaries, branches, and partners found in and doing business in this district; and at least one act of infringement took place in this District.

//

//

//

//

## Background Facts

### XML Parsing

16. A parser is a piece of software that reads certain electronic files and makes the information from those files available to applications and programming languages, acting as a go-between as underlying code which can be written in any number of programming languages and what a user sees when the program runs.

17. Extensible Markup Language (known as XML) is a set of rules for encoding documents electronically. Known as a metalanguage, XML allows one to design a markup language which is in turn used for the easy interchange of documents on the World Wide Web. XML is itself a subset of a standard called SGML, and can be used to design a tagging scheme that allows elements of a document to be marked according to their content rather than their format.

18. Information stored in XML documents can be used more effectively when parsed—read line by line or node by node to fetch pieces of information for the program to read and translate. In essence, parsing is the act of analyzing a set of characters or data and then determining, recognizing, deciphering, or acquiring the significant data and commands from a sequence of programming code, and translating the code which allows the program to do the job for which it was designed.

### Formation of XimpleWare

19. In October 2002, Zhengyu "Jimmy" Zhang founded XimpleWare (the "Company") with a since-departed co-founder Hui Tian. Mr. Ying Shum (who has since passed away) was an advisor to the company during its early stages. Using experience gained from fifteen years in the software engineering field, Mr. Zhang started XimpleWare with the goal of achieving maximum efficiency for XML processing by using dedicated integrated circuits as a system on a chip (SOC). Mr. Tian left the venture in 2003, and since then Mr. Zhang has handled all creative and managerial responsibilities at XimpleWare.

20. Mr. Zhang chose the name "XimpleWare" for his new venture to evoke the efficiency, speed, and simplicity with which his innovative source code parses XML. The name

Computerlaw Group LLP
www.computerlaw.com^sm

also included the letters X-M-L, further identifying XimpleWare's goal and product in the marketplace.

21. Mr. Zhang began writing the XimpleWare Source code (the "Source Code") in 2004, and has since put in over 10,000 work hours of computer programming into developing and improving the XimpleWare product.

22. In its nascent stages, XimpleWare was funded entirely by seed money from friends and family of the original founders, mostly from Mr. Zhang and his parents. Mr. Tian still holds a minority stake in the company, but apart from Mr. Zhang, Mr. Tian, and Ying Shum, there are no other owners, venture capital groups, angel investors, or parties with an interest in XimpleWare.

**Open Source Software**

23. Open source software is computer software whose source code is available free of charge for the public to use, copy, modify, sublicense, or distribute. While some developers choose to provide their product entirely free of charge, many developers and companies—including large public companies like Oracle and IBM—make use of open source licensing and its collaborative nature to create or incorporate code into products that can be licensed for profit outside the open source community.

24. By licensing one's source code as part of the open source community, or making modifications to someone else's source code under an open source license, the creator is granted certain protections, depending on the permissiveness of the particular license, from improper use of his or her intellectual property. To that end, most, if not all, open source licenses apply certain requirements and restrictions for the method and manner in which code extracted from an open source repository can be used, and attaches conditions any such use.

25. There are many commonly used open source licenses, including the GNU General Public License, the BSD License, and the Apache License.

26. XimpleWare made the business decision to license its Source Code under the GNU General Public License version 2 ("GPL"). A copy of the GPL is attached to this Complaint as **Exhibit 1**. Due to the fundamental properties of XML technology, XML parsing

Computerlaw Group LLP
www.computerlaw.com℠

innovations are very hard to sell. A parser is not an end-user product, *i.e.*, it must be integrated into another existing product.

27. The GPL requires, among other things, (1) that any changes made to the code carry notices stating that the files were changed, and the date of all changes; (2) any code created or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) that when distributed, the program must be accompanied by the complete machine-readable source code.

28. XimpleWare chose the GPL approach because it is one of the most restrictive open source licenses available, requiring that any derivative code incorporating GPL-protected code must be returned to the open source community in its entirety. This concept is often referred to as "copyleft."

**The XimpleWare Product**

29. The complete XimpleWare software product, known as "VTD-XML" or "VTD-XML Extended" (collectively, the "Product"), is made up of a number constituent parts, each with individual functions, and is written in several different programming languages. Most of the code, however, is written in Java, which is one of the most popular programming languages in use today.

30. XML is ubiquitous in today's business world. For example, since 2007, the file formats for Microsoft Office are based on XML,[2] and many modern web pages are coded in XML.[3]

31. The XimpleWare Source Code and Product reads and parses XML at a rate estimated to be five to ten times faster than other current XML parsing programs, effecting greater efficiency and speed. It also provides indexing and incremental capabilities that are

[2] Tom Ngo, "Office Open XML Overview", Ecma International, http://www.ecma-international.org/news/TC45_current_work/OpenXML%20White%20Paper.pdf (last accessed Sep. 10, 2013) (archived at http://perma.cc/0fyzpuJ6Vzg).

[3] Murray Altheim and Shane McCarron, eds., XHTML™ 1.1 - Module-based XHTML - Second Edition, W3C Recommendation, World Wide Web Consortium, Nov. 23, 2010, http://www.w3.org/TR/xhtml11/ (last accessed Sep. 10, 2013) (archived at http://perma.cc/05zB2mzwJW8).

Computerlaw Group LLP
www.computerlaw.com℠

crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.

32. The Product is an enabler for any program that uses XML in its applications, but to see the upside in the parsing speed, customers have to try it.

33. XimpleWare has had interest and licensing discussions with several industry leaders, and has established its vtd-xml software as a leading technology in XML parsing.

34. XimpleWare has always incorporated all copyright and other notices required by the GPL into every iteration of its Source Code.

**The XimpleWare Source Code**

35. Over the course of over ten years, Mr. Zhang updated and improved the Source Code and Product (and still does), checking out sections of code to work on and then checking it back in to an open source database called SourceForge. SourceForge is a community-based website where software developers can publish source code to a global audience, and can join and collaborate on open source projects.[4]

36. One of the principal tools SourceForge provides is version control systems. A version control system is a computer program that manages a set of source code. Programmers use version control systems by "checking out" a copy of the source code to their own computer, making changes, and then submitting those changes back into the version control system in a process called "checking in." Each check-in is documented in the version control system with time, date, and contributor information, as well as comments from the programmer describing his or her changes. With a version control system, it is possible to review all changes to a set of source code and to know who made those changes.

[4] SourceForge "About" page, http://sourceforge.net/about (last accessed Sep. 10, 2013) (noting SourceForge has "3.4 million developers [who] create powerful software in over 324,000 projects") (archived at http://perma.cc/0fwQ1xw51i1).

37. SourceForge also provides a system where programmers not affiliated with a project may submit suggested changes to members of the project. The members may then choose to check those changes in to the version control system, or to reject them. As with any other check-in, time, date, contributor, and other information are logged in the version control system.

38. One version control system offered by SourceForge is the Concurrent Versions System, commonly known as "CVS". Like other version control systems, CVS tracks who made which changes to the managed source code, and CVS keeps a log of those revisions.

39. XimpleWare placed its Source Code on SourceForge, and managed that Source Code in SourceForge's CVS system.

**The XimpleWare Registered Copyrights**

40. XimpleWare is the owner of all right, title, and interest in all copyrights, including but not limited to all U.S. Copyrights on the Source Code. All versions of the Source Code have appropriate copyright notices printed or affixed conspicuously on the first page of each work, as required by the GPL.

41. XimpleWare also registered its copyright in the Source Code with the U.S. Copyright Office. Attached as **Exhibit 2** is a true and correct copy of the copyright registration certificate for Registration No. TX 7-727-556, dated September 4, 2013.

42. There has been no challenge to any of the XimpleWare copyrights, or any other XimpleWare intellectual property rights.

43. XimpleWare uses the GPL-required copyright notices on its Product and its documentation to give actual and constructive notice of the existence of the XimpleWare copyrights.

**Defendants Misappropriate XimpleWare's Source Code**

44. In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute.

45. According to documents filed in that case, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for breach of contract, among other claims.

Computerlaw Group LLP
www.computerlaw.com[sm]

46. During the prosecution of that lawsuit, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's GPL-licensed Source Code in the source code of Versata's DCM product.

47. On information and belief, the DCM product contains none of the copyright and use notices required by the GPL, which Versata apparently removed in violation of 17 U.S.C. § 506(d), which is a criminal statute.

48. On information and belief, Versata then either replaced the copyright notices with false, altered notices, or removed the notices entirely to aid its improper use of the Source Code.

49. XimpleWare has never granted any of the Versata Defendants any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

50. XimpleWare has never granted Ameriprise or any other defendant in this case any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

51. On information and belief, Versata has distributed thousands of unauthorized copies of the Product or the Source Code to a number of customers, and Versata has illegally collected revenues on the sale and distribution of the derivative DCM product incorporating XimpleWare's Source Code, in violation of XimpleWare's copyrights. XimpleWare estimates Versata's total sales of the infringing DCM product to exceed $300,000,000.

52. Defendants have infringed, and are still infringing on the XimpleWare's intellectual property rights by making, selling, and using the DCM product incorporates XimpleWare's copyrighted Source Code, and the Defendants will continue to do so unless this Court enjoins them.

53. XimpleWare has complied with the statutory requirement of placing a notice of the copyrights on all the software it makes and sells or otherwise publishes.

//

//

//

Computerlaw Group LLP
www.computerlaw.com[sm]

Computerlaw Group LLP
www.computerlaw.com[sm]

## FIRST CLAIM FOR RELIEF

### DIRECT COPYRIGHT INFRINGEMENT

### (AGAINST ALL DEFENDANTS)

54. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

55. XimpleWare is the owner of the XimpleWare Source Code, Product, and related documentation.

56. The XimpleWare Source Code is an original work of authorship, and constitutes copyrightable expression and subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, as amended. XimpleWare has complied in all respects with the Copyright Act in securing for itself the exclusive rights in its copyrights to the XimpleWare Source Code. XimpleWare has applied for, and obtained, a certificate of copyright registration from the Register of Copyrights. See Exhibit 2.

57. XimpleWare's copyright in the Source Code is valid and fully enforceable in accordance with the United States Copyright Act (17 U.S.C. § 101 *et seq.*).

58. The Versata Defendants, and each of them, accessed the Source Code which XimpleWare had licensed under the GPL and via SourceForge, and have copied, distributed, and prepared copies and/or derivative works in violation of XimpleWare's rights under 17 U.S.C. § 106.

59. The Versata Defendants incorporated the Source Code into their own DCM product and, on information and belief, sold that and other Versata Products to Ameriprise as well as a number of other customers.

60. On information and belief, without any license or other authorization of Plaintiff, Ameriprise purchased the Versata Products containing XimpleWare's copyrighted Source Code and Product and reproduced and distributed that material internally in violation of XimpleWare's copyrights. The Versata Defendants incorporated XimpleWare's Source Code and Product into various products for Ameriprise and other customers, based on individual customers' project

parameters and needs. On information and belief, Ameriprise then copied, reproduced, distributed, and re-implemented the Versata Products in their own systems as they saw fit.

61. Defendants' acts constitute direct copyright infringement and have already damaged XimpleWare, and continue to damage XimpleWare. Defendants' ongoing infringement will continue to damage XimpleWare and cause irreparable harm for which there is no adequate remedy at law. Without preliminary and permanent injunctive relief, XimpleWare has no means by which to control Defendants' continued unauthorized distribution and sale of infringing derivatives of XimpleWare's original and copyrighted work, and XimpleWare will continue to be irreparably harmed. XimpleWare is therefore entitled to preliminary and permanent injunctive relief prohibiting Defendants from distributing, displaying, selling, or otherwise requiring the impoundment and/or destruction of all copies of the XimpleWare Source Code—or any derivative works—in Defendants' possession, custody, or control.

62. XimpleWare is further entitled to recover from Defendants the actual damages it has sustained, and will sustain, as a result of Defendants' infringement, or, alternatively and at its election, statutory damages under the Copyright Act.

63. At all times, Defendants' copyright infringement was and is knowing and willful. The GPL, a copy of which must be included with to all GPL-licensed source code, was always included with every version of the XimpleWare Source Code available on SourceForge. Further, as required by the GPL, notices of copyright were printed or otherwise affixed to all versions of the Source Code. Therefore, Defendants knew or reasonably should have known that the Source Code was the copyrighted work of XimpleWare, for which Defendants did not have a commercial license, and Defendants did in fact copy, adapt, and distribute works derived from the Source Code in either source or compiled form. There is no basis on which Defendants could believe that their commercial use of the XimpleWare Source Code was a fair use. No Defendants have ever obtained a commercial license from XimpleWare.

64. Defendants' infringements of XimpleWare's copyrights are the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial.

Computerlaw Group LLP
www.computerlaw.com℠

65. XimpleWare is further entitled to recover from Defendants all of the gains, profits, and advantages they have obtained as a result of the infringement, and for disgorgement of any additional gains, profits, and advantages Defendants obtained that are attributable to their infringements of the Source Code, in an amount to be proven at trial, together with attorneys' fees and costs pursuant to 17 U.S.C §§ 504 and 505.

## SECOND CLAIM FOR RELIEF

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

## (AGAINST VERSATA DEFENDANTS)

66. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

67. XimpleWare is the owner of the XimpleWare Source Code Product and related documentation.

68. The XimpleWare Source Code is an original work of authorship, and constitutes copyrightable expression and subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, as amended. XimpleWare has complied in all respects with the Copyright Act in securing for itself the exclusive rights in his copyrights to the XimpleWare Source Code. XimpleWare has applied for, and obtained, a certificate of copyright registration from the Register of Copyrights. See Exhibit 2.

69. XimpleWare's copyright in the Source Code is valid and fully enforceable in accordance with the United States Copyright Act (17 U.S.C. § 101 *et seq.*).

70. The Versata Defendants accessed and downloaded the XimpleWare Source Code via SourceForge, incorporated the Source Code into their own DCM product and, on information and belief, sold that and other Versata Products to Ameriprise and a number of other customers, knowing they would make further unauthorized copies. The Versata Defendants induced and contributed to the infringement of XimpleWare's copyrights by others—namely, their customers—by marketing and selling software derived from the XimpleWare Source Code.

//

//

71. At all relevant times, the Versata Defendants had the right and ability to control to conduct of infringer Customer Defendants and others; Versata owned contracts with its customers and was in control of the products it sold and otherwise supplied in fulfillment of those contracts—Versata Products which induced the Customer Defendants to directly infringe XimpleWare's copyrights.

72. The Versata Defendants received direct financial benefit from the infringement of the Customer Defendants by way of the contracts it owned, and the software Versata supplied in fulfillment of those contracts.

73. The Versata Defendants had a supervisory relationship to the directly infringing Customer Defendants, and the Versata Defendants are therefore vicariously, jointly, and severally liable for inducing that infringement.

74. Defendants' acts constitute contributory and vicarious copyright infringement and have already damaged XimpleWare, and continue to damage XimpleWare. The Versata Defendants' ongoing infringement will continue to damage XimpleWare and cause irreparable harm for which there is no adequate remedy at law. Without preliminary and permanent injunctive relief, XimpleWare has no means by which to control Versata's continued unauthorized distribution and sale of infringing derivatives of XimpleWare's original and copyrighted work, and XimpleWare will continue to be irreparably harmed. XimpleWare is therefore entitled to preliminary and permanent injunctive relief prohibiting Defendants from distributing, displaying, or selling, the XimpleWare product or Source Code, and requiring the impoundment and/or destruction of all copies of the XimpleWare Source Code—or any derivative works—in Defendants' possession, custody, or control.

75. XimpleWare is further entitled to recover from Defendants the actual damages it has sustained, and will sustain, as a result of the Versata Defendants' infringement, or, alternatively and at its election, statutory damages under the Copyright Act.

76. At all times, the Versata Defendants' contributory and vicarious copyright infringement was and continues to be knowing and willful. The GPL, a copy of which is attached to all GPL-licensed source code, was necessarily attached to any version of the XimpleWare

Computerlaw Group LLP
www.computerlaw.com[sm]

Computerlaw Group LLP
www.computerlaw.com[sm]

Source Code taken from SourceForge. Further, as required by the GPL, notices of copyright were printed or otherwise affixed to all versions of the Source Code. Therefore, the Versata Defendants knew or reasonably should have known that the Source Code was the copyrighted work of XimpleWare, for which Versata did not have a commercial license, and Versata did in fact copy, adapt, and distribute works derived from the Source Code in either source or compiled form to Ameriprise and others, inducing those customers to infringe XimpleWare's copyrights.

77. XimpleWare is further entitled to recover from Defendants all of the gains, profits, and advantages they have obtained as a result of the infringement, and for disgorgement of any additional gains, profits, and advantages the Versata Defendants obtained that are attributable to their infringements of the Source Code, in an amount to be proven at trial, together with attorneys' fees and costs pursuant to 17 U.S.C §§ 504 and 505.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF LANHAM ACT § 43(A)

### (AGAINST VERSATA DEFENDANTS)

78. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

79. On information and belief, at all relevant times, the Versata Defendants downloaded XimpleWare's Source Code, incorporated that Source Code wholesale into its own Versata Products, and marketed and sold those Versata Products as their own, failing to attribute authorship of the Source Code to XimpleWare. This wholesale copying and bodily misappropriation represents the misattribution and misrepresentation of XimpleWare's work as Versata's authorship for Versata's gain, confusing consumers as to the true origin and auther of the Source Code.

80. Such "reverse passing off" of XimpleWare's Source Code is unlawful under Section 43(a) of the Lanham Act. Under Section 43(a) of the Lanham Act, it is unlawful when a person

//

//

> [I]n connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, <u>or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,</u> connection, or association of such person with another person, <u>or as to the origin</u>, sponsorship, or approval of his or her goods, services, or commercial activities by another person…

15 U.S.C. § 1125(a) (emphasis added).

81. "Section 43(a) of the Lanham Act prohibits the use of false designations of origin and false representation in the… sale of goods and services." *Smith v. Montoro*, 648 F.2d 602, 603 (1981). "'Reverse passing off' or 'reverse palming off' occurs when a product is mislabeled to mask the creator's contribution." *Cleary v. News Corp.*, 30 F.3d 1255, 1260 (1994).

82. Versata falsely designated origin and inaccurately attributed the creation of the Source Code to itself, and failed and continues to fail to properly attribute that Source Code to XimpleWare.

83. On information and belief, Versata willfully copied the XimpleWare Source Code **in its entirety**, removed all Copyright notices in violation of 17 U.S.C. § 506(d), as well as any notice of origin from that Source Code, and falsely and wrongfully incorporated it into Versata Products without attributing the Source Code to its true author and owner, XimpleWare. Versata then sold those products under the Versata name to a number of customers, causing deception and false representations as to the true creator of the Source Code.

84. This wholesale and willful copying meets all Ninth Circuit standards for establishing Versata's "reverse passing off," misattribution, and false designation or origin of the XimpleWare Source Code in violation of Section 43(a) of the Lanham Act.

85. At all times, the Versata Defendants' repeated violations of Section 43(a) were knowing and willful.

86. The Versata Defendants' willful violations of Lanham Act Section 43(a) are the direct and proximate cause of harm to XimpleWare, and XimpleWare is entitled to disgorgement of all profits as well as compensatory damages in an amount to be determined at trial.

87. XimpleWare is further entitled to an award of exemplary damages including attorneys' fees, costs of suit, and enhanced damages for Versata's willful violations.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

## FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

### (AGAINST VERSATA DEFENDANTS)

88. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

89. XimpleWare made available and licensed the Source Code under the General Public License.

90. The GNU GPL, in plain English, lays out the rights and responsibilities of, and establishes a contract between, contributors and licensees of source code licensed under the GPL.

> This [GPL] applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of the General Public License. The "Program" below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/ or translated into another language.[5]

91. The GPL makes clear in its Terms And Conditions For Copying, Distribution And Modification that any licensee may copy and distribute a program's source code protected by the GPL or a work based on that program provided that the licensee does the following:

(1) conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty;

(2) keep intact all the notices that refer to the GPL;

(3) give any other recipients of the program a copy of the GPL **along with the program itself**; and

(4) accompany the program with (a) the complete machine-readable source code on a medium customarily used for software interchange, or (b) with a written offer to supply the source code to any third party for no more than the cost of physically performing the distribution. [6]

[5] Ex. 1 at ¶ 0. (Emphasis added.)
[6] Id. at ¶¶ 1, 3. (Emphasis added.)

92. The GPL also allows for modification of a program provided that:

(1) all modified files carry prominent notices stating that the licensee changed the files and the date of any change;

(2) the licensee cause any work that it distributes or publishes, that in whole or in part contains or is derived from protected source code or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of the GPL;

(3) the modified program print or display an announcement including an appropriate copyright notice;

(4) the modified program print or display an announcement including a notice that users may redistribute the program under the conditions of the GPL; and

(5) the modified program print or display an announcement telling the user how to view a copy of the GPL.[7]

93. On information and belief, the Versata Defendants downloaded and used GPL-protected source code belonging to XimpleWare, thereby explicitly agreeing to be bound by its terms and conditions, which include, among other terms:

> You [the licensee] may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. . . You are not required to accept this License, since you have not signed it. However, noting else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.[8]

94. XimpleWare performed all of its legally required responsibilities under the GPL by attaching all the required notices to every version of the Source Code uploaded using the SourceForge CVS system.

[7] Id. at ¶ 2.
[8] Id. at ¶¶ 4–5.

95. By downloading the XimpleWare Source Code, by incorporating it into its DCM product (thereby modifying the Source Code), by removing license information, and by failing to perform any of its responsibilities under the GPL, the Versata Defendants have breached their contract with XimpleWare. On information and belief, the Versata Defendants have further violated their contract by distributing its DCM and a number of other products to third party customers without attaching any of the notices required by the GPL, effectively passing the Source Code off as their own product, to XimpleWare's detriment.

96. The Versata Defendants' breach of their contract under the GPL has violated XimpleWare's rights under the GPL, and has thereby adversely affected XimpleWare's ability to effectively license its Source Code outside the open source community, causing XimpleWare substantial and irreparable harm.

97. The Versata Defendants' material breaches of contract are the direct and proximate cause of damages to XimpleWare.

98. XimpleWare is entitled to compensatory damages in an amount to be determined at trial, but which is believed to be in excess of $150,000,000, together with attorneys' fees and costs, and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

## FIFTH CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (AGAINST VERSATA DEFENDANTS)

99. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

100. The Parties entered into a contract under the GPL. XimpleWare agreed by uploading its Source Code to the SourceForge repository and attaching a copy of the GPL, as well as the copyright, waiver, and license notices the GPL requires. The Versata Defendants agreed to be bound by the GPL by downloading, modifying, and distributing XimpleWare's Source Code, all copies of which bore notices that the Source Code was licensed under the GPL.

Computerlaw Group LLP
www.computerlaw.com[sm]

101. XimpleWare performed all or substantially all of the significant things that the GPL required of it.

102. Given the contractual relationship between XimpleWare and the Versata Defendants created by the GPL, the Versata Defendants had an implied obligation and duty, under California law, to act in good faith and deal fairly with the XimpleWare.

103. All conditions required for the Versata Defendants' performance of the contract occurred, and all of those conditions were clearly stated in the copy of the GPL Versata received when it downloaded the Source Code.

104. In committing the actions above, including but not limited to its failure to notify XimpleWare (and any third party customers) that its DCM product contained XimpleWare's GPL-protected source code, the Versata Defendants acted in bad faith in a manner designed to cause XimpleWare harm. The Versata Defendants' actions breached the covenant of good faith and fair dealing.

105. XimpleWare was and continues to be harmed as a direct and proximate result of Versata's misconduct and XimpleWare has been damaged in an amount to be determined at trial, but which is believed to be in excess of $150,000,000, together with attorneys' fees and costs, as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

106. The Versata Defendants' misconduct was malicious, oppressive, and in reckless disregard of XimpleWare's rights under California law. Actual harm has been inflicted on XimpleWare as a result of that misconduct, and XimpleWare is therefore entitled to an award of punitive damages in an amount sufficient to punish the Versata Defendants for their actions.

//

//

//

//

//

//

Computerlaw Group LLP
www.computerlaw.com[sm]

Computerlaw Group LLP
www.computerlaw.com[sm]

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### (AGAINST ALL DEFENDANTS)

107. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

108. Defendants' wrongful acts unjustly enriched Defendants by allowing them to avoid the time and cost of developing software or source code capable of XML parsing at the level that XimpleWare's Source Code achieves. Versata touts on its website the speed and efficiency of its DCM product—advantages that it obtained by using XimpleWare's Source Code.

109. Defendants' wrongful acts unjustly enriched Defendants by allowing them to benefit from the advantages XimpleWare's Source Code added to the various products Defendants offer, including, but not limited to Versata's and Aurea's DCM product which, on information and belief, Trilogy endorses and from which it derives revenue as Versata's and Aurea's parent company.

110. XimpleWare invested substantial time, effort, and money in developing the Product and Source Code, and took care to license the Source Code under the GPL, and XimpleWare has been injured as a result of Defendants' wrongful misappropriations of XimpleWare's Source Code and breach of the GPL.

111. Defendants' misconduct is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial, as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

//

//

//

//

//

## SEVENTH CLAIM FOR RELIEF

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (AGAINST VERSATA DEFENDANTS)

112. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

113. XimpleWare created and owns the Source Code Mr. Zhang created, which drastically increases XML parsing speed and efficiency over today's industry standards.

114. XimpleWare had a reasonable expectation that it would maintain an uninhibited right and ability to effectively market and license the XimpleWare Product containing its Source Code, rights protected by the GPL as well as federal and California law.

115. On information and belief, the Versata Defendants downloaded, modified, and distributed the Source Code in the various Versata Products without printing the required copyright, waiver, and licensing notices or returning the derived products to the open source community. In doing so, the Versata Defendants and each of them have interfered with XimpleWare's business relationships with its current and prospective client by improper means, including but not limited to copyright infringement, unfair competition, breach of contract, and misleading representations about the ownership and origin of the Source Code, all alleged above.

116. The Versata Defendants' tortious interference with XimpleWare's business relationships has adversely affected XimpleWare's ability to effectively license its Product.

117. The Versata Defendants' misconduct is the direct and proximate cause of damages to XimpleWare.

118. XimpleWare is entitled to compensatory damages in an amount to be determined at trial as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code, believed to be in excess of $150,000,000.

119. The Versata Defendants' misconduct was malicious, oppressive, and in reckless disregard of XimpleWare's rights under California law. Actual harm has been inflicted on

Computerlaw Group LLP
www.computerlaw.com[sm]

XimpleWare as a result of that misconduct, and XimpleWare is therefore entitled to an award of punitive damages in an amount sufficient to punish the Versata Defendants for their actions.

## EIGHTH CLAIM FOR RELIEF

### UNFAIR COMPETITION

### (AGAINST ALL DEFENDANTS)

120. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

121. Mr. Zhang developed the Source Code on XimpleWare's behalf with the use of his own resources. XimpleWare made the Source Code available to the open source community, including Defendants, by uploading the Source Code to the SourceForge repository and allowing use of that Source Code according to the provisions on the GPL.

122. Mr. Zhang spent over ten years developing the Source Code, and has created a product with enormous growth potential through his own knowledge, skills, and experience. The fruit of that labor is a XimpleWare Product capable of parsing XML with unprecedented efficiency. Mr. Zhang invested his time and effort in a product that he believed he would be able to effectively license for profit outside of the open source community, as many companies would prefer to purchase a commercial license directly from the software creator than be bound by the GPL to return any derivative works to the open source pool. Many software companies, such as MySQL (acquired by Sun Microsystems for approximately $1 billion,[9] in turn acquired by Oracle) have successfully pursued such a dual-licensing strategy.

123. On information and belief, Versata downloaded the XimpleWare Source Code, modified and incorporated it into the Versata DCM product, and distributed that derivative work to a number of customers, including the other Defendants in this case.

124. On information and belief, Trilogy, as Versata's and Aurea's parent company, knew of and endorsed Versata's and Aurea's misuse of XimpleWare's Source Code.

---

[9] Sun Microsystems Announces Completion of MySQL Acquisition; Paves Way for Secure, Open Source Platform to Power the Network Economy", Feb. 26, 2008, http://www.mysql.com/news-and-events/sun/ (last accessed Nov. 5, 2013) (archived at http://perma.cc/05MvHjLSayY).

Computerlaw Group LLP
www.computerlaw.com℠

125. On information and belief, Versata incorporated its DCM product into products it supplied to Ameriprise and other customers. Ameriprise, after discovering that certain sections of the DCM code were protected by the GPL and belonged to XimpleWare, continued to use the product as part of their internal systems and benefit from the advantages the XimpleWare Source Code and Product delivered.

126. Section 17200 of the California Business and Professions Code prohibits any unlawful, unfair, or fraudulent business acts or practices. "Unlawful" practice is any act forbidden by federal, state, municipal or regulatory law." *People v. McKale* 25 Cal.3d 626, 632 (1972) (internal quotations omitted). "Unfair" simply means any practice whose harm to the victim outweighs its benefits. *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App.3d 735, 740 (1980) (internal quotations omitted).

127. By engaging in copyright infringement of the Source Code and breaching the terms and conditions of the GPL and violating numerous other laws, including at least one criminal copyright statute, Defendants committed an unlawful practice or act under Section 17200. In addition, Defendants committed unfair practices or acts under the California Business and Professions Code by (a) by deriving benefits from XimpleWare's efforts and work without providing compensation or honoring its obligations under the GPL; (b) continuing the unlawful use of XimpleWare's Source Code; (c) misrepresenting the DCM product as wholly of Versata's own creation; and (d) restraining competition by depriving XimpleWare of a chance to pursue competitive business opportunities through fraudulent representation regarding the creation and ownership of the Source Code.

128. Defendants engaged in unfair competition which caused harm to XimpleWare. Those actions should be enjoined to prevent further harm to XimpleWare, the proper owner of the Source Code. XimpleWare is entitled to injunctive relief forbidding Defendants to use, copy, or distribute the Source Code as well as restitution of any money or property which Defendants and each of them have acquired by means of unfair competition and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

## NINTH CLAIM FOR DECLARATORY RELIEF

## (AGAINST ALL DEFENDANTS)

129. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

130. XimpleWare owns a copyright registered with the United States Copyright Office.

131. XimpleWare has the superior, and indeed only, right to continue to use, make, sell, or offer for sale its Source Code, subject to the GPL, as the lawful owner of the Copyright.

132. Versata improperly downloaded and exploited XimpleWare's Source Code without adhering to the obligations set forth in the GPL, all to XimpleWare's detriment. On information and belief, Versata has sold the Source Code, incorporated into its DCM product, among others, to Ameriprise and a number of other companies.

133. As such, XimpleWare requests that this Court declare that the Federal Copyright Registration No. TX 7-727-556 titled "vtd-xml version 2.3", issued on September 4, 2013 is valid and enforceable.

134. The requested declaration is necessary and appropriate at this time to affirm XimpleWare's rights to exclusive use and sale of its protected property.

135. Plaintiff has no adequate remedy at law and Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

XimpleWare prays for judgment against all Defendants, and each of them, and those persons in control of or acting in concert with them as follows:

A. On the First and Second Claims for Relief, for preliminary and permanent injunctive relief enjoining Defendants—and their officers, agents, servants, employees, and all other persons in active concert with them—from directly or indirectly infringing XimpleWare's copyrights, and from continuing to copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived from XimpleWare's proprietary works, or participating or assisting in any such activity; for actual damages according

Computerlaw Group LLP
www.computerlaw.com[sm]

to proof, and for disgorgement of any additional gains, profits, and advantages Defendants obtained that are attributable to their infringements of the Source Code; and for applicable statutory damages for Defendants' copyright infringement.

B. On the Third Claim for Relief, for damages including disgorgement of all profits, as well as other damages sustained by Plaintiff as a result of Versata's violations of 15 U.S.C. § 1125(a), and an award of enhanced damages adequate to compensate for Versata's willful violations, up to and including trebling of XimpleWare's damages.

C. On the Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief, for damages in an amount to be determined at trial, but which is believed to be in excess of $150,000,000.

D. On the Fifth and Seventh Claims for Relief, for punitive damages in an amount sufficient to punish Defendants for their willful and wrongful acts.

E. On the Ninth Claim for Relief, for a declaration that:

1. XimpleWare is the sole owner of all Copyrights including all rights and Copyright Registration No. TX 7-727-556;

2. the XimpleWare copyrights are valid and enforceable;

3. XimpleWare has the exclusive right to make sell, offer for sale and copy the XimpleWare Product and Source Code; and

4. temporary, preliminary, and permanent injunction under Federal Rule of Civil Procedure Rule 65.

F. On all Claims for Relief, for a constructive trust of all benefits Defendants gained, and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

G. For costs of suit including any applicable interest and reasonable attorneys' fees as allowed by law.

H. For such other, further, and different relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on each and every cause of action which is triable by or which may otherwise be tried by jury in this action.

COMPUTERLAW GROUP LLP

Dated: November 5, 2013

By: /s/ Jack Russo
Jack Russo
Christopher Sargent
Ansel Halliburton

Attorneys for Plaintiff
XIMPLEWARE CORP.

Computerlaw Group LLP
www.computerlaw.com℠