Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **XimpleWare Corp.**, a California Corporation,<br><br>Plaintiff;<br><br>v.<br><br>**Versata Software, Inc., f/k/a Trilogy Software, Inc.,** a Delaware corporation; **Trilogy Development Group, Inc.,** a California corporation; **Ameriprise Financial, Inc.,** a Delaware corporation; and **Ameriprise Financial Services, Inc.,** a Delaware corporation,<br><br>Defendants. | Case No. 3:13-cv-5160-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF XIMPLEWARE'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, FOR ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, AND FOR EXPEDITED DISCOVERY** |

TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Statement of Facts ............................................................................................................. 1

Argument ........................................................................................................................... 2

I. The Court Should Issue a Temporary Restraining Order Enjoining Versata's Infringement and Misappropriation. ....................................................................... 2

   A. The Copyright Act Expressly Allows Temporary Injunctive Relief. ................... 2

   B. Legal Standard for Issuing a Temporary Restraining Order ............................... 2

   C. XimpleWare Has Raised Serious Questions, and Is Very Likely To Prevail On The Merits ............................................................. 3

      1. Undisputed Facts Demonstrate Versata's Unlicensed Commercial Sales of XimpleWare's GPL-Licensed VTD-XML Source Code. ............................ 3

      2. XimpleWare Owns a Registered Copyright in Its VTD-XML Software. ................. 4

      3. Versata Copied and Sold VTD-XML as Part of Its DCM Product. ........................... 5

      4. Versata Cannot Claim Protection From Any GPL License. ...................................... 6

      5. Versata Never Had Any Rights to Distribute VTD-XML. ......................................... 7

      6. Because the GPL Does Not Protect Them, Versata and Ameriprise Are Liable for Copyright Infringement Jointly and Severally. .......................................... 7

   D. The Balance Of Hardships Tips Sharply In XimpleWare's Favor. ....................... 8

   E. An Early TRO in This Case Serves The Public Interest. ...................................... 9

II. The Court Should Grant XimpleWare Limited Expedited Discovery To Support its Time-Sensitive Preliminary Injunction Motion. ................................................ 9

   A. There is Ample Good Cause for Allowing Limited Early Discovery. ............... 10

   B. The Discovery XimpleWare Seeks is Narrowly Tailored and Mutual. .............. 11

Conclusion ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011), ................................... 3

*Amoco Production Co. v. Gambell,* 480 U.S. 531 (1987) ............................................................ 3

*Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943 (N.D. Cal. 2009) ............................................. 9

*Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688 (N.D. Ill. Jun. 28, 2004) .. 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................. 8

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................................... 6

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) ................................................................................ 3

*Notaro v. Koch*, 95 F.R.D. 403, 1982 U.S. Dist. LEXIS 14842 (S.D.N.Y. 1982) ...................... 10

*Semitool, Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 2002 U.S. Dist. LEXIS 8961
    (N.D. Cal. 2002) ..................................................................................................................... 10

*Sencion v. Saxon Mortg. Servs., LLC*, 2011 U.S. Dist. LEXIS 41022, 2011 WL 1364007
    (N.D. Cal. Apr. 11, 2011) ......................................................................................................... 3

*State of Alaska v. Native Village of Venetie,* 856 F.2d 1384 (9th Cir. 1988) ................................ 2

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982) .................................................................. 3

*Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) ............................................... 2

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 2001 U.S. Dist. LEXIS 17349
    (D. Ariz. 2001) ....................................................................................................................... 10

**STATUTES**

17 U.S.C. § 102 .............................................................................................................................. 5

17 U.S.C. § 106 ..................................................................................................................... 7, 8, 12

17 U.S.C. § 201 .............................................................................................................................. 5

17 U.S.C. § 410 .............................................................................................................................. 5

17 U.S.C. § 501 .............................................................................................................................. 8

17 U.S.C. § 502 .......................................................................................................................... 2, 8

17 U.S.C. § 506 .............................................................................................................................. 9

**OTHER AUTHORITIES**

U.S. Copyright Office, Circular 61, "Copyright Registration for Computer Programs,"
  Aug. 2012 .................................................................................................................... 5

**RULES**

Fed. R. Civ. P. Rule 30 ............................................................................................. 12

FED. R. CIV. P. Rule 65 ......................................................................................... 3, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art I, § 8, cl. 8 ......................................................................................... 9

Computerlaw Group LLP
www.computerlaw.com℠

# INTRODUCTION

Plaintiff XimpleWare, Inc. has sued Versata Software, Inc. and its affiliated companies, as well as an also infringing customer, Ameriprise Financial, for copyright infringement and related claims. This case arises from Versata's wholesale appropriation of XimpleWare's copyrighted VTD-XML software into Versata's own DCM product—without authorization from XimpleWare and in clear violation of the limited GPL license under which XimpleWare makes its software available—and Versata's multi-million dollar sales (and Amerirprise's multi-million dollar use) of its DCM product, which includes XimpleWare's unlicensed VTD-XML software.

A temporary restraining order and preliminary injunction are warranted because, to date, Versata has denied and concealed its infringement from both XimpleWare and Ameriprise, its major distributor to tens if not hundreds of thousands of independent contractors, all continuing even after repeated notices to each Defendant. The VTD-XML software that Versata has misappropriated is XimpleWare's principal asset. Absent injunctive relief, XimpleWare will continue to be irreparably harmed by loss of control over its sole asset.

# STATEMENT OF FACTS

XimpleWare is a California corporation that develops and licenses software for extremely efficient data processing. XimpleWare holds all the rights—including copyrights and patents—in its software and its source code, including for its main product, which it calls VTD-XML.

Versata is an enterprise software company that sells several products, one of which is a complex system for insurance companies called Distribution Channel Management, or DCM, which it licenses for millions of dollars per customer. Ameriprise, a national financial services company, has been a DCM customer for many years.

Recently, XimpleWare learned through Ameriprise that Versata had incorporated XimpleWare's VTD-XML source code into DCM—but without obtaining a commercial license from XimpleWare. Based on XimpleWare's discussions with Ameriprise, and according to filings in Texas state court litigation between Versata and Ameriprise (but not XimpleWare), during

discovery in litigation with Versata, Ameriprise discovered that Versata had incorporated XimpleWare's DCM source code into its DCM product.

## ARGUMENT

**I. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ENJOINING VERSATA'S INFRINGEMENT AND MISAPPROPRIATION.**

### A. The Copyright Act Expressly Allows Temporary Injunctive Relief.

The Copyright Act expressly allows this Court to grant injunctive relief—including a "temporary…injunction[]" (*i.e.*, a TRO):

> Any court having jurisdiction of a civil action arising under [the Copyright Act] may…**grant temporary** and final injunctions on such terms as it may deem reasonable to prevent or **restrain infringement** of a copyright.

17 U.S.C. § 502(a) (2013) (emphasis added). That is **precisely** what XimpleWare requests here: a TRO to temporarily restrain Versata's copyright infringement. In addition, the terms of the TRO XimpleWare seeks are "reasonable": a TRO lasting only until the full preliminary injunction hearing, at which point Versata will have had a full opportunity to brief the Court and to argue the merits.

### B. Legal Standard for Issuing a Temporary Restraining Order

The Ninth Circuit's standards for granting a temporary restraining order are identical to those for granting a preliminary injunction. *State of Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1389 (9th Cir. 1988). The Supreme Court has held that, to obtain a preliminary injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375–76, citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (*per curiam*). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief.'" *Id.* at 376 (citing *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376–77, citing *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982).

In *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011), the Ninth Circuit held that the "serious questions" sliding-scale approach survived *Winter,* whereby preliminary injunctive relief should also be granted when a plaintiff demonstrates "that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing District Courts to preserve the *status quo* where difficult legal questions require more deliberate investigation. *Alliance*, 632 F.3d at 1135; *see also Sencion v. Saxon Mortg. Servs., LLC*, 2011 U.S. Dist. LEXIS 41022 at *5, 2011 WL 1364007 at *2 (N.D. Cal. Apr. 11, 2011). The plaintiff must also satisfy the irreparable harm and public interest requirements under *Winter*, 632 F.3d at 1132, 1135. However, the sliding-scale approach allows the Court to protect XimpleWare pending resolution of its preliminary injunction motion and the remainder of this case. After issuing a TRO, the Court should set an expedited briefing schedule on the Order to Show Cause based on the requirements of Rule 65(b)(2) of the Federal Rules of Civil Procedure, which provides that a TRO shall expire within fourteen days of the date of entry "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." FED. R. CIV. P. Rule 65.

### C. XimpleWare Has Raised Serious Questions, and Is Very Likely To Prevail On The Merits.

Even at this early stage of the litigation, there are enough undisputed facts to show that XimpleWare is highly likely to prevail on the merits of its breach of contract and copyright claims.

#### 1. Undisputed Facts Demonstrate Versata's Unlicensed Commercial Sales of XimpleWare's GPL-Licensed VTD-XML Source Code.

Based on information in Ameriprise's filings in its case against Versata in Texas state court, and on discussions with counsel for Ameriprise, XimpleWare understands that, during

**Computerlaw Group LLP**
www.computerlaw.com℠

separate litigation between Ameriprise and Versata, Ameriprise discovered XimpleWare's source code within the source code for Versata's DCM product.[1] The following facts are not reasonably disputed:

1. Versata included the source code for VTD-XML in the source code for its DCM product.[2]
2. Versata licensed, for millions of dollars, its DCM product (which included unlicensed copies of VTD-XML), to Ameriprise and other customers.[3]
3. Versata never obtained a commercial license for VTD-XML from XimpleWare.[4]
4. Versata never released the source code for its DCM product as open source under the GPL.[5]

As a matter of law, these facts constitute breach of the GPL—and therefore copyright infringement.

### 2. XimpleWare Owns a Registered Copyright in Its VTD-XML Software.

XimpleWare owns all the rights to its VTD-XML software and its source code, which is copyrightable expression.[6] XimpleWare has registered its copyright in version 2.3 of the VTD-XML source code with the U.S. Copyright Office, and obtained registration no. TX 7-727-556, with an effective date of September 4, 2013.[7] All authors who contributed to VTD-XML have assigned their rights to XimpleWare.[8] XimpleWare's registration creates an evidentiary

---

[1] Declaration of Jack Russo ("Russo Decl.") ¶¶ 2–5 and Ex. 7.
[2] Russo Decl. ¶¶ 2–5 and Ex. 7; Zhang Decl. ¶¶ 28–31.
[3] Zhang Decl. ¶ 34.
[4] Zhang Decl. ¶ 31.
[5] Zhang Decl. ¶ 31; Russo Decl. Ex. 7 (see last page: Versata's answer to Interrogatory No. 5 in Texas litigation, admitting that it keeps its DCM source code confidential).
[6] "Copyright protection extends to all the copyrightable expression embodied in the computer program." U.S. Copyright Office, Circular 61, "Copyright Registration for Computer Programs," Aug. 2012, available at http://www.copyright.gov/circs/circ61.pdf (software and source code protected under copyright law as literary works); 17 U.S.C. § 102.
[7] Russo Decl. ¶ 12 and Ex. 8 (copyright registration certificate).
[8] Zhang Decl. ¶¶ 5–23. *See also* 17 U.S.C. § 201 (ownership of copyrights).

Computerlaw Group LLP
www.computerlaw.com℠

Really, here:

presumption that its copyright in the VTD-XML source code is valid, and that XimpleWare owns that copyright.[9] Although XimpleWare registered its copyright more than five years after it first published version 2.3 of its VTD-XML source code, the presumption still stands because there is no evidence to actually rebut it, and because definitive records about what happened to the VTD-XML source code are publicly available on XimpleWare's open source project website[10] and in its SourceForge-hosted source code repository.[11]

        **3.    Versata Copied and Sold VTD-XML as Part of Its DCM Product.**

Through Ameriprise, XimpleWare has learned that Versata had incorporated XimpleWare's GPL-licensed VTD-XML source code into Versata's own DCM product.[12] Ameriprise itself learned this only through discovery in litigation that is currently pending by Versata against Ameriprise in Texas state court.[13]

In that case, Versata alleged that Ameriprise improperly reverse engineered the DCM product to more easily replace it with a home-grown replacement. Versata produced the source code for DCM in discovery, at which point Ameriprise learned that Versata had included VTD-XML in DCM, apparently without a proper commercial license.

---

[9] 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

[10] VTD-XML SourceForge page, http://sourceforge.net/projects/vtd-xml/ (last accessed Nov. 8, 2013; archived at http://perma.cc/0u2bTwvSjkU).

[11] *See, e.g.,* "Revision Log," http://vtd-xml.cvs.sourceforge.net/viewvc/vtd-xml/ximple-dev/com/ximpleware/VTDNav.java?view=log (last accessed Nov. 8, 2013; archived at http://perma.cc/0K5ZTKMRMUF) (log of 132 changes to VTDNav.java source code file in XimpleWare's CVS repository from 2004 to 2013); Zhang Decl. ¶ 11 (identifying "jzhang2004" as Jimmy Zhang, XimpleWare's CEO).

[12] Russo Decl. ¶¶ 2–5 and Ex. 7; Zhang Decl. ¶¶ 28–31.

[13] Russo Ex. 7 (Ameriprise's Motion for Partial Summary Judgment, filed July 24, 2013 against Versata in Texas state court case).

Computerlaw Group LLP
www.computerlaw.com℠

### 4.      Versata Cannot Claim Protection From Any GPL License.

XimpleWare licenses VTD-XML under the GNU General Public License, or GPL.[14] The GPL, like any other software license, is a contract, and it is enforceable.[15] The GPL is one of many "open source" licenses that software developers can use when publishing their source code. The GPL is widely known among software developers, and is widely understood to be a very restrictive license in many respects—including its "viral" or "copyleft" provisions. Many important software products are licensed under the GPL, including, most famously, the free Linux operating system that powers much of the Internet and underlies the Android smartphone operating system that powers one billion mobile devices.[16]

Any person using GPL-licensed software must release any works derived from or incorporating GPL-licensed code to itself be licensed under the GPL. Section 2(a) of the GPL states this condition in plain language: "You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License."[17]

Importantly, because judicial admissions are clearly binding on parties who make them in other litigation, in the Texas litigation, Ameriprise now contends correctly that, under the terms of the GPL under which XimpleWare licensed VTD-XML, Versata must release the entire source code for DCM under the GPL.[18] This is the so-called "viral" effect of the GPL. To avoid this outcome, Versata should have obtained a commercial non-GPL license from XimpleWare. **Because it did not obtain a commercial license from XimpleWare, Ameriprise contends that Versata must license <u>DCM itself</u> under the GPL.** Its failure to do so is a breach of Section 2(a) the GPL—the terms of which Versata accepted myriad times when it downloaded, copied, used,

---

[14] Zhang Decl. ¶¶ 8–12 and Ex. 1.
[15] *Jacobsen v. Katzer*, 535 F.3d 1373, 1378–83 (Fed. Cir. 2008) (discussion of open source software and licensing; holding open source license valid and binding on defendant; vacating District Court's denial of injunction and remanding for further proceedings).
[16] Sundar Pichai, Senior Vice President of Google, Google+ post, Sep. 3, 2013, https://plus.google.com/+android/posts/CxiQidWrPR6 ("we've now passed 1 Billion Android device activations") (last accessed Nov. 8, 2013, archived at http://perma.cc/0BX3Z3euKN9).
[17] Zhang Ex. 1 (GNU General Public License).
[18] Russo Ex. 7 (Ameriprise's Motion for Partial Summary Judgment in the Texas litigation).

Ex Parte Application re: TRO, OSC, and Expedited Discovery        6        Case No. 3:13-cv-5160-NC

and integrated VTD-XML into DCM. **Versata's wholesale copying of VTD-XML into DCM violates Section 2(a) of the GPL and makes Versata's uses of XimpleWare's copyrighted computer software unauthorized and, therefore, a direct infringement of XimpleWare's exclusive rights under Section 106 of the Copyright Act** (17 U.S.C. §§ 101 *et. seq.*). A clearer case of copyright infringement by two major corporations against a small privately-held company is hard to imagine.

### 5. Versata Never Had Any Rights to Distribute VTD-XML.

Under the GPL, any party that redistributes or purports to redistribute VTD-XML in a manner that does not fully comply with the GPL's strict terms, conditions, and provisions never gains any rights to copy or modify VTD-XML. Specifically, section 4 of the GPL states:

> You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License.[19]

Versata's distribution of VTD-XML commercially within DCM, without releasing DCM's source code under the GPL, did not comply with the GPL. Therefore, at that time, Versata never gained (and, put another way, it immediately lost) any right to copy, modify, or distribute VTD-XML. Any copying, modification, or distribution of VTD-XML after Versata's initial violation was, and is, without XimpleWare's permission. Thus, the GPL provides no protection for Versata and thus, none for Ameriprise either.

### 6. Because the GPL Does Not Protect Them, Versata and Ameriprise Are Liable for Copyright Infringement Jointly and Severally.

Absent a commercial license to use VTD-XML without releasing DCM under the GPL, Versata's Ameriprise's use of VTD-XML constitutes copyright infringement.

Copyright law grants XimpleWare **exclusive** rights, including the rights to "reproduce…prepare derivative works…[and] distribute copies" of the VTD-XML software and its source code.[20] Copyright infringement occurs when a party violates any of those exclusive

---

[19] Zhang Ex. 1 (GPL).
[20] 17 U.S.C. § 106.

rights: "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122…**is an infringer** of the copyright…"[21]. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[22]

Here, XimpleWare has shown that it owns all the rights in VTD-XML, including all exclusive rights under copyright law. XimpleWare has also shown that Versata and Ameriprise have violated those exclusive rights. This is copyright infringement, and it is continuing, willfully. **The Copyright Act expressly provides for both temporary injunctive relief for copyright infringement.**[23]

     D.    The Balance Of Hardships Tips Sharply In XimpleWare's Favor.

If the Court grants a TRO, Versata will be temporarily enjoined from further sales of its infringing DCM product, and Ameriprise will be temporarily enjoined from deploying DCM to new users. Ceasing one's violation of the law is not a hardship; it is fair. Further, the scope of this temporary injunctive relief is narrow; XimpleWare is not requesting any relief that would impact existing Ameriprise DCM users or other existing Versata customers.

In contrast, if the Court denies XimpleWare's request for a TRO, XimpleWare will **undoubtedly** be harmed by Versata's continuing infringement. More importantly, XimpleWare will have lost control of its key asset: its exclusive rights to license VTD-XML.[24]

Versata's infringement is far from innocent; it is, in fact, **criminal**. XimpleWare is informed that the VTD-XML source code that Ameriprise found in DCM had been modified to remove the GPL license information that XimpleWare has always included at the top of **every file** of its VTD-XML source code.[25] Under Section 506(d) of the Copyright Act—which enumerates criminal offenses related to copyright infringement—**Versata's removal of**

---

[21] 17 U.S.C. § 501.
[22] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).
[23] 17 U.S.C. § 502(a).
[24] Zhang Decl. ¶¶ 25, 32–33.
[25] Exhibit 10 to the Zhang Declaration is a representative example of the beginning of one such file with a copyright notice and GPL licensing information.

Computerlaw Group LLP
www.computerlaw.com℠

**XimpleWare's copyright notice is a crime**. 17 U.S.C. § 506(d) ("Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500"). XimpleWare seeks to confirm these facts in discovery, but the information it has to date raises serious questions meriting—at minimum—a temporary restraining order.

### E. An Early TRO in This Case Serves The Public Interest.

Halting Versata's criminal and civil violations of the Copyright Act serves the public interest in upholding copyright law.[26] Copyright law itself is contemplated by the Constutition, which enumerates, among Congress's other powers, that it shall enact laws to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."[27]

XimpleWare has also sued Versata for reverse passing off in violation of the Lanham Act.[28] By incorporating XimpleWare's VTD-XML software without attribution, Versata misleads the public as to the source of a part of its product. Notably, Versata touts **speed**—XimpleWare's key benefit—as one of DCM's main selling points.[29] A TRO thus serves the public interest by stemming the likely confusion resulting from Versata's unattributed and unlicensed use of XimpleWare's software.

## II. THE COURT SHOULD GRANT XIMPLEWARE LIMITED EXPEDITED DISCOVERY TO SUPPORT ITS TIME-SENSITIVE PRELIMINARY INJUNCTION MOTION.

XimpleWare also seeks expedited discovery to further support its preliminary injunction motion. The Court may grant expedited discovery on a showing of **good cause**. *Semitool, Inc. v.*

---

[26] *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) (holding "the public receives a benefit when the legitimate rights of copyright holders are vindicated" and granting permanent injunction in software copyright case with both criminal and civil copyright elements).

[27] U.S. Const. art I, § 8, cl. 8. *See also Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 701 (N.D. Ill. Jun. 28, 2004) ("The granting of an injunction is in the public interest. The public is generally interested in upholding intellectual property rights, encouraging creativity and innovation, and rewarding the investment of resources in these pursuits.")

[28] Complaint (Dkt. 1) at ¶¶ 78–87.

[29] Russo Ex. 9 (pages from websites of Versata and its subsidiary companies Trilogy and Aurea).

Computerlaw Group LLP
www.computerlaw.com℠

*Tokyo Electron Am.*, 208 F.R.D. 273, 2002 U.S. Dist. LEXIS 8961 (N.D. Cal. 2002) (granting expedited discovery for good cause and declining to apply more rigid standard of *Notaro v. Koch*, 95 F.R.D. 403, 1982 U.S. Dist. LEXIS 14842 (S.D.N.Y. 1982)); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 2001 U.S. Dist. LEXIS 17349 (D. Ariz. 2001) (adopting good cause standard over *Notaro* approach).

### A. There is Ample Good Cause for Allowing Limited Early Discovery.

Good cause exists here because, both in an out of separate litigation, Versata has actively denied its infringement despite being caught red-handed by Ameriprise. All XimpleWare seeks is to confirm that information with admissible evidence, all of which should be readily available by virtue of its production in other litigation in Texas state court.

XimpleWare is clearly **without fault**.[30] XimpleWare published its VTD-XML source code under the GPL license—a reasonable business practice pursued by many successful software companies—expecting that parties who wished to incorporate it into proprietary software would act in good faith and engage in negotiations for a commercial license.[31] Versata, however, never did that. Instead, it simply copied XimpleWare's VTD-XML software into its proprietary commercial software, without a word or a penny to XimpleWare.[32] XimpleWare only learned of this copying through Ameriprise, and only then because Ameriprise discovered it in discovery in unrelated litigation. XimpleWare retained counsel and attempted to learn more from Ameriprise and Versata, but those informal discussions have yielded little fruit.[33] XimpleWare therefore filed this case, and seeks the Court's assistance in obtaining the discovery it needs to further support its motion for a preliminary injunction.

---

[30] *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613, 2001 U.S. Dist. LEXIS 17349 (D. Ariz. 2001) (requiring "moving party [be] without fault in creating the crisis that requires *ex parte* relief").
[31] Zhang Decl. ¶¶ 8–27.
[32] Zhang Decl. ¶¶ 28–34.
[33] Russo Decl. ¶¶ 2–5.

Computerlaw Group LLP
www.computerlaw.com℠

**B. The Discovery XimpleWare Seeks is Narrowly Tailored and Mutual.**

The discovery XimpleWare seeks is narrowly tailored to supporting XimpleWare's preliminary injunction motion, and is mutual in that XimpleWare will also produce documents and have its deposition taken on relevant topics. XimpleWare requests the following expedited discovery:

1. Limited document production by Versata and Ameriprise around Versata's inclusion of XimpleWare source code in its DCM product.

2. Limited document production by XimpleWare responsive to Ameriprise's and Versata's state court subpoenas and any further reasonable requests as included in their Rule 30(b)(6) deposition notices in this case.

3. Deposition of Versata's Rule 30(b)(6) witness on Versata's inclusion of XimpleWare's VTD-XML in the its products, Versata's distribution of products including VTD-XML, and Versata's compliance or non-compliance with the GPL.

4. Deposition of Ameriprise's Rule 30(b)(6) witness on Ameriprise's knowledge of the inclusion of XimpleWare's VTD-XML in the DCM product it licensed from Versata.

5. Deposition of XimpleWare's Rule 30(b)(6) witness on XimpleWare's software licensing practices.

Each of these categories of discovery is narrowly tailored to supporting XimpleWare's preliminary injunction motion. To decide that motion, the Court will need a more developed factual record around Versata's use of VTD-XML and XimpleWare's licensing practices. The above discovery goes to those topics, and nothing more. This round of depositions can be completed next month, within adequate time for the Court to have the benefit of that testimony for the adjudication of the preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## CONCLUSION

The Copyright Act fully extends its protection to owners of computer software. XimpleWare is the owner of Copyright Registration Certificate No. TX 7-727-556 which

protects the computer software that is has designed, developed and protected under the Copyright Act. XimpleWare is being irreparably harmed by Versata's continuing willful infringement of each of the exclusive rights granted by XimpleWare's copyright rights. 17 U.S.C. § 106. These exclusive rights mean nothing if injunctive relief is unavailable to protect them; and the Copyright Act makes clear that this Court is authorized to grant precisely the injunctive relief requested in this case and by this motion. Knowing it has no defense to its multiple acts of infringement, Versata has instead sought to obfuscate and avoid responsibility, including by removing XimpleWare's copyright notices—a federal crime. The Court should correct these injustices by granting XimpleWare's *ex parte* application and issuing a temporary restraining order preventing Versata from selling any more copies of its infringing DCM software, and preventing Ameriprise from deploying that infringing DCM software to new users. The Court should order Versata and Ameriprise to show cause why a preliminary injunction should not issue, and should additionally grant the limited expedited discovery that XimpleWare seeks.

COMPUTERLAW GROUP LLP

Dated: November 22, 2013        By:     /s/ Jack Russo
                                        Jack Russo
                                        Christopher Sargent
                                        Ansel Halliburton

                                        Attorneys for Plaintiff
                                        XIMPLEWARE CORP.