Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **XimpleWare Corp.**, a California Corporation,<br><br>                    Plaintiff;<br><br>         v.<br><br>**Versata Software, Inc., f/k/a Trilogy Software, Inc.,** a Delaware corporation; **Trilogy Development Group, Inc.**, a California corporation; **Ameriprise Financial, Inc.,** a Delaware corporation; and **Ameriprise Financial Services, Inc.**, a Delaware corporation,<br><br>                    Defendants. | Case No. 3:13-cv-5160-NC<br><br>**XIMPLEWARE'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, FOR ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, AND FOR EXPEDITED DISCOVERY** |

# INTRODUCTION

Does a copyright owner who makes his copyrighted computer software product available under commercial licensing terms lose all control over licensing and distribution by defendants who simply take the software without permission, without commercial license, and without compensation? Of course not. A book author who chooses to allow downloading of his or her copyrighted book on a trial basis does not thereby lose control to third parties who infringe—indeed wilfully infringe—the copyright by further distribution without permission or other license. No presumption is necessary to see or determine the obvious irreparable injury in the loss of control over licensing and distribution of the copyrighted work—something the U.S. Copyright Act was written to prevent, and the Federal Courts exist to enforce. Defendants in these proceedings seek a new principle that would undermine the Copyright Act and undermine Rule 65 of the Federal Rules of Civil Procedure: namely, that those who license under the GNU General Public License ("GPL") or open-source licensing generally cannot ever obtain injunctive relief even against intentional infringers who expressly are violating, and who continue to wilfully violate, the Copyright Act after multiple written notices. No U.S. Supreme Court case has ever so held; nor has any Ninth Circuit case. Nor should this Court so hold.

Plaintiff XimpleWare Corp. ("XimpleWare") submits this consolidated Reply to the Oppositions of Defendants Versata Software, Inc. and related entities (Dkt. 37) and Ameriprise Financial, Inc. and its related entities (Dkt. 36), which those Defendants filed in response to XimpleWare's *Ex Parte* Application For Temporary Restraining Order, For Order To Show Cause Re: Preliminary Injunction, And For Expedited Discovery (Dkt. 12–15).

# ARGUMENT

I. THE GPL OPEN SOURCE LICENSE PROHIBITS THE COMMERCIAL USE THAT VERSATA ADMITS.

XimpleWare's VTD-XML software is open source. This means that XimpleWare licenses it under an open source license, specifically the GNU General Public License. **But licensing software under the GPL does not mean it is free for the taking**, which is how Defendants present open source to the Court. Dkt. 36 at p. 6:2–5; Dkt. 37 at p. 4:23–25. The reality is quite the opposite: the GPL is a highly restrictive license which imposes many limitations on

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

Defendants' use of the VTD-XML software, and any breach of that GPL license constitutes copyright infringement. *Jacobsen v. Katzer*, 535 F.3d 1373, 1378–83 (Fed. Cir. 2008) (discussion of open source software and licensing; holding open source license valid and binding on defendant; vacating District Court's denial of injunction and remanding for further proceedings).

## II. XIMPLEWARE CLEARLY OWNS ITS SOFTWARE, AND VERSATA'S OPPOSITION RAISES ONLY A RED HERRING TO REBUT THAT OWNERSHIP.

XimpleWare clearly owns all the rights to its VTD-XML software. In addition to its presumptively-valid copyright registration (Dkt. 1-2), XimpleWare has documented and explained its ownership meticulously in its Complaint (Dkt. 1 at ¶¶ 21, 29, 34–43, 56–57, and 68–69), its TRO motion (Dkt 13 at pp. 4:14–5:6), and in Mr. Zhang's declaration (Dkt. 15 at ¶¶ 16–20 and 22).

At best, Versata raises the ownership issue in the abstract as a possible defense. However, it fails utterly to **prove** that defense, or even raise it as a serious question, given the overwhelming evidence supporting XimpleWare's ownership.

## III. FACTUAL INCONSISTENCIES MAKE VERSATA'S OPPOSITION NONSENSICAL.

Versata's Opposition contains these two artfully-worded but ultimately confounding sentences:

> Versata can be said to distribute VTD-XML.jar on the same storage media as its DCM product. However, the software modules are not integrated with one another.

Dkt. 37 at p. 10.

First, this begs the obvious question: why, if VTD-XML is "not integrated" with DCM, would Versata "distribute" it? There is no answer because the contention does not make sense.

Second, it is an admission that Versata does "distribute" VTD-XML, which, if the Court finds Versata in breach of the GPL (as it must), leads to the conclusion that Versata has infringed XimpleWare's copyright in VTD-XML.

Third, and most importantly, this contention—which is unsupported by any factual record—is **directly inconsistent with Versata's CEO's declaration**. Mr. Scott Brighton declares:

> I have instructed my development team to remove references to XimpleWare from all versions of DCM. My Team patched DCM version 3.9 on November 22, 2013. My development team informs me that if a DCM version 3.9 customer installs this patch pursuant to the instructions contained within the patch, references to XimpleWare are entirely eliminated.

Brighton Decl, Dkt. 37-4 at ¶ 5. The only reason DCM would need to be "patched" is if it **did integrate** with XimpleWare—exactly the opposite of what Versata argues in its Opposition.

Fourth, what Mr. Brighton's declaration omits is that even if Versata does create patches to DCM that would "remove" XimpleWare, there is no guarantee that its customers would install those patches. As Mr. Brighton himself declares, DCM is a complex piece of software requiring "6–12 months" for customers to install. It is highly likely that Versata's customers would **not** want to install these patches, which are more likely to disrupt their businesses than to benefit them.

## IV. AMERIPRISE'S USE IS NOT INTERNAL

Ameriprise seeks to characterize its use of XimpleWare's softare as "internal." It is not. It is common knowledge that many of the Ameriprise workers using DCM are not Ameriprise employees. Rather, these workers—frequently called "producers" are often self-employed contractors. Use by these non-parties is not "internal" use, is in further breach of the GPL, and is copyright infringement.

## V. XIMPLEWARE BROUGHT ITS TRO APPLICATION IN REASONABLE TIME.

Versata itself notes that Rule 11 of the Federal Rules of Civil Procedure require plaintiffs to perform a diligent investigation of the law and facts before filing suit. Dkt. 37 at p. 4. All the parties would agree that this case is complex: it arises from separate litigation in Texas between Ameriprise and Versata; Versata has alternatively denied and admitted using XimpleWare's VTD-XML software; the parties have had multiple rounds of informal discussions; there is also a co-pending patent infringement case; and the parties have been entangled in discovery disputes both in Texas and in California.

It is eminently reasonable for XimpleWare to have waited to attempt to resolve some of these issues before filing its TRO application. XimpleWare first learned of Versata's infringement in July, but did not learn the extent of that infringement until much later. Surely,

had XimpleWare filed earlier, Defendants would have complained that it had filed too soon. When to file is a balancing act, and XimpleWare struck that balance in favor of reason and collecting more information.

The law recognizes that this approach is reasonable, rejects bright-line rules, and directs courts to examine each case and its circumstances independently. "Equitable inquiry is not amenable to categorical rules [in the context of granting injunctive relief]…A court must structure injunctive relief based on each case's granular facts…centuries of equity practice shepherd a court's exercise of power to enjoin [intellectual property] infringement." *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F.Supp.2d 951, 996. In *Hynix*, where the patent holder Rambus did demonstrate irreparable harm, the Court denied injunctive relief based on Rambus's history and proclivity toward licensing its product to other industry leaders **competing in the same market and producing directly competing products**. This is not the case here. While XimpleWare has sold commercial licenses, they were not to direct competitors in the market for XML parsing software. XimpleWare did not, therefore, "enable[] the competition it [seeks] to limit in [this] lawsuit." *Hynix* 609 F.Supp. 2d at 986.

Further, Ameriprise's reliance on *Rovio Entm't v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, is misguided. Given the complexity of this litigation, and indeed before the case was filed, XimpleWare's good-faith attempts to collect information and seek resolution prior to filing suit are not only understandable, but required by Rule 11. There is no indication that any such communication or request for mutual discovery occurred in *Rovio* between the time the plaintiff discovered the infringement and the time it filed suit. In fact, Rovio was seeking an *ex parte* TRO without even notifying the defendant for fear the defendant would destroy evidence. That is not the case here. Any delay was the result of Plaintiff's efforts to adhere to its legal obligations under the Federal Rules of Civil Procedure, and the Court should not punish this reasonable behavior by denying a justified TRO.

//

//

//

## VI. AMERIPRISE'S CONTENTION THAT IT IS AN INNOCENT INFRINGER IS NO DEFENSE.

Ameriprise argues that it should not be held to account because its infringement was innocent.

First, as a factual matter, Ameriprise's claimed innocence ceased when it learned that Versata had incorporated XimpleWare's VTD-XML code into DCM. Amerirpise knew of this use long ago—even before contacting XimpleWare—and **Ameriprise has taken a strong but inconsistent stand against that infringement in its case against Versata in Texas**. *See* Dkt. 14-7 (Ameriprise motion for summary judgment against Versata in Texas case).

Second, innocence is not a defense to copyright infringement. *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1930) (innocent intent not a defense to copyright infringement); 17 U.S.C. § 504(c)(2) (court may reduce statutory damages if infringement is innocent—but no complete defense is provided).

## VII. THE COURT SHOULD GRANT EXPEDITED DISCOVERY IN COORDINATION WITH THE ACTION IN THE SUPERIOR COURT.

The attached Declaration of Jack Russo details certain proceedings in California Superior Court, in which Ameriprise has sought to compel XimpleWare's deposition for purposes of its case in Texas against Versata. XimpleWare's position in that California state court proceeding was that the sought deposition should be coordinated with the expedited discovery XimpleWare seeks in this case and on this motion. *See* accompanying Declaratino of Jack Russo.

### CONCLUSION

Versata admits—in a sworn declaration from its CEO—that it is working to remove XimpleWare's VTD-XML from DCM. As XimpleWare has explained clearly in both its Complaint and its TRO motion, this is an unlicensed commercial use of VTD-XML that falls outside the bounds of the GPL, and that unlicensed use constitutes copyright infringement. Versata's CEO admits that its infringement continues.

//

//

//

XimpleWare is a small company whose sole business is licensing its software. Defendants' continuing and willful copyright infringement threatens to destroy XimpleWare's entire business—imminent irreparable harm for which the Court may grant a TRO and order Defendants to show cause why a preliminary injunction should not issue.

COMPUTERLAW GROUP LLP

Dated: December 3, 2013     By:    /s/ Jack Russo
Jack Russo
Christopher Sargent
Ansel Halliburton

Attorneys for Plaintiff
XIMPLEWARE CORP.