1  GREGORY S. TAMKIN  (SBN 175009)
   CASE COLLARD  (SBN 245834)
2  DORSEY & WHITNEY LLP
   1400 Wewatta Street, Suite 400
3  Denver, CO 80202-5549
   Telephone:  (303) 629-3400
4  Facsimile:  (303) 629-3450
   E-Mail:  tamkin.greg@dorsey.com
5          collard.case@dorsey.com

6  MARTHA LUEMERS  (SBN 104658)
   DORSEY & WHITNEY LLP
7  305 Lytton Avenue
   Palo Alto, CA 94301
8  Telephone:  (650) 857-1717
   Facsimile:  (650) 857-1288
9  E-Mail:  luemers.martha@dorsey.com

10 Attorneys for Petitioners
   Ameriprise Financial, Inc.,
11 Ameriprise Financial Services, Inc., and
   American Enterprise Investment Services, Inc.

12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14            IN AND FOR THE COUNTY OF SANTA CLARA

15                         UNLIMITED

16 AMERIPRISE FINANCIAL, INC., a          CASE NO. _____ 1 1 3 C V 2 5 6 4 5 4
   Delaware Corporation;
17 AMERIPRISE FINANCIAL SERVICES,
   INC., a Delaware Corporation; and        **DECLARATION OF CASE COLLARD IN**
18 AMERICAN ENTERPRISE INVESTMENT           **SUPPORT OF PETITION TO ENFORCE**
   SERVICES, INC., a Delaware Corporation,  **DEPOSITION SUBPOENA IN ACTION**
19                                          **PENDING OUTSIDE CALIFONRIA**
                Petitioners,
20
   v.
21                                          **[C.C.P. §§ 2029.600 & 2025.450]**
   XIMPLEWARE CORP., a California
22 Corporation,

23              Respondent.

24

25     I, Case Collard, declare as follows:

26     1.     I am an attorney duly licensed to practice law before all the Courts of the State of

27 California. I am an associate at the law firm of Dorsey & Whitney LLP ("Dorsey & Whitney"),

28 counsel of record for Petitioners Ameriprise Financial, Inc., Ameriprise Financial Services, Inc.,

1   and American Enterprise Investment Services, Inc. (collectively, "Ameriprise") in the above-

2   captioned matter.  I make this declaration in support of Plaintiff's Petition to Enforce Deposition

3   in Action Pending Outside California.  I have personal knowledge of the facts stated herein, and if

4   called as a witness in this case, I could and would competently testify to these facts under oath.

5        2.        Ameriprise is currently engaged in litigation with Versata Software, Inc. and

6   Versata Development Group, Inc. in the District Court of Travis County, Texas (Case No. D-1-

7   GN-12-003588) (the "Versata Litigation").  Dorsey & Whitney represents Ameriprise in the

8   Versata Litigation, and I am familiar with the procedural posture of that case.  The Versata

9   Litigation is currently scheduled for trial on February 24, 2014.  The final day to complete

10  depositions in the Versata Litigation is December 20, 2013 and the final day to file summary

11  judgment motions is January 16, 2014.

12       3.        The Versata Litigation is a breach of contract action alleging that Ameriprise has

13  violated an agreement by which it received a license to a significant software product from

14  Versata, a product currently referred to as DCM 3.9.  Based on discovery in the Versata

15  Litigation, Ameriprise contends that Versata breached the very agreement that is the subject of

16  the Versata Litigation by failing to comply with a license pursuant to which it obtained a portion

17  of the DCM 3.9 code.  Ameriprise contends that a significant portion of DCM 3.9 incorporates

18  and relies upon XimpleWare software which is distributed pursuant to the GNU General Public

19  License.  Versata has denied that it is in breach of the agreement or that it otherwise is liable to

20  Ameriprise as a result of its practices surrounding XimpleWare or the XimpleWare product.

21  Ameriprise therefore seeks discovery from XimpleWare into its licensing practices, the means by

22  which XimpleWare makes its source code available, and its relationship with Versata (if any).

23       4.        Attached hereto as Exhibit 1 is a true and correct copy of a valid Texas Discovery

24  Subpoena seeking this discovery from Ximpleware which was issued on October 1, 2013.

25       5.        Attached hereto as Exhibit 2 is a true and correct copy of a Deposition Subpoena

26  for Personal Appearance and Production of Documents, Electronically Stored Information, and

27  Things in Action Pending Outside California (hereinafter "Subpoena") which was issued on

28  October 2, 2013 and incorporates the terms of the Texas subpoena.

-2-

**DECLARATION OF CASE COLLARD ISO PETITION TO ENFORCE DEPOSITION SUBPOENA**

6.      Attached hereto as Exhibit 3 is a true and correct copy of the proof of personal service of the Subpoena on Jimmy Zhang, Ximpleware's registered agent for Service of Process, on October 6, 2013.

7.      Attached hereto as Exhibit 4 is a true and correct copy of a cross-notice of deposition on Ximpleware, purportedly served by Versata on October 22, 2013.

8.      On October 23, 2013, Jack Russo, counsel for Ximpleware, responded to the subpoena with a letter and written objections but largely agreed to comply.  Attached hereto as Exhibit 5 is a true and correct copy of a letter sent by Jack Russo, counsel for Ximpleware, on October 23, 2013.

9.      Attached hereto as Exhibit 6 is a true and correct copy of Ximpleware's objections to Amerprise's subpoena.

10.      Attached hereto as Exhibit 7 is a true and correct copy of Ximpleware's objections to Versata's cross-notice of deposition.

11.      On October 29, 2013, I spoke with Jack Russo, counsel for Ximpleware, by telephone regarding the Ameriprise Subpoena.  I asked Mr. Russo if he and his client were available for a deposition the week of November 18, 2013, but if not, that Ameriprise would agree to a deposition the first week of December.

12.      I followed up by phone on November 1, 2013 and November 5, 2013 to firm up the deposition date but did not speak with Mr. Russo.

13.      Attached hereto as Exhibit 8 is a true and correct copy of an email I sent on November 6, 2013 to Jack Russo.

14.      Attached hereto as Exhibit 9 is a true and correct copy of the complaint filed in U.S. District Court for the Northern District of California, Case No. 13-5160.

15.      Attached hereto as Exhibit 10 is a true and correct copy of the complaint filed in U.S. District Court for the Northern District of California, Case No. 13-5161.

16.      Attached hereto as Exhibit 11 is a true and correct copy of letter sent by Jack Russo on November 5, 2013

17.      Attached hereto as Exhibit 12 is a true and correct copy of a letter sent by

-3-

1  Ameriprise counsel Greg Tamkin on November 7, 2013, in which he asked for Ximpleware's

2  final position on cooperating with the deposition by the end of the day on Friday, November 8,

3  2013.  Ximpleware did not respond by that time. .

4        18.    On Monday, November 11, 2013, I contacted Ximpleware to confirm its final

5  position and set a call for Tuesday.  On Tuesday, November 12, 2013, I spoke with Ansel

6  Halliburton, attorney for Ximpleware, regarding the deposition scheduling.  Mr. Halliburton

7  indicated that he would check to confirm that December 2, 2013 would work for Mr. Russo and

8  Ximpleware for the deposition.  I would check on December 3-5 as possible back-up dates.

9        19.    Attached hereto as Exhibit 13 is a true and correct copy of emails exchanged by

10  Jack Russo and me on November 12, 2013.

11        20.    Attached hereto as Exhibit 14 is a true and correct copy of a letter sent by Ben

12  Foster on November 12, 2013.

13        21.    Attached hereto as Exhibit 15 is a true and correct copy of a countersigned letter

14  from Versata's counsel, Amir Alavi, which represents Ameriprise, and Versata's October 3, 2013

15  agreement regarding case scheduling, including deposition deadlines, summary judgment dates,

16  and trial date.

17        22.    Ameriprise currently intends to file summary judgment motions well before the

18  January 16, 2014 deadline to allow adequate time for the Texas court to decide the issues well in

19  advance at trial.

20        23.    I and other counsel for Ameriprise have spent more than ten hours preparing the

21  petition and supporting papers, and I anticipate that I and other counsel for Ameriprise will need

22  to spend more than five additional hours preparing for, traveling to and from and appearing at the

23  hearing on this petition.

24

25        I declare under penalty of perjury under the laws of the State of California that the

26  foregoing is true and correct.  Executed this 20th day of November, 2013, at Denver, Colorado.

27

28                          CASE COLLARD

-4-

# EXHIBIT 1

## NO. D-1-GN-12-003588

| | | |
|---|---|---|
| VERSATA SOFTWARE, INC., f/k/a TRILOGY SOFTWARE, INC., and VERSATA DEVELOPMENT GROUP, INC., f/k/a TRILOGY DEVELOPMENT GROUP, INC., | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| v | § | TRAVIS COUNTY, TEXAS |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., AMERICAN ENTERPRISE INVESTMENT SERVICES, INC., | § | |
| Defendants. | § | 53rd JUDICIAL DISTRICT |

### DISCOVERY SUBPOENA
### THE STATE OF TEXAS

TO ANY SHERIFF, CONSTABLE OR ANY OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS OF THE STATE OF TEXAS

GREETINGS

You are commanded to summon:

**Ximpleware Corp.**
**291 Oakhurst Way**
**Milipitas, CA 95035**

**Served upon Jimmy Zhang, Registered Agent**

to attend and give testimony at an oral deposition regarding the topics set forth on the attached **Exhibit "A"** and to produce for inspection and copying the documents listed on the attached **Exhibit "B"** for the use in Cause No. D-1-GN-12-003588; *Versata Software, Inc. f/k/a Trilogy Software, Inc., et al. v. Ameriprise Financial Inc., et al.,* in the 53rd Judicial Court of Travis County, Texas. The deposition shall commence at the following place, date, and time and the requested documents shall be produced not later than at the commencement of the deposition at the following place, date, and time:

1030571

**DORSEY & WHITNEY, LLP**
**305 Lytton Ave**
**Palo Alto CA 94301**

**DATE:  November 5, 2013**
**TIME: 9:00 a.m.**

This subpoena was issued at the request of Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and Ameriprise Enterprise Investment Services, Inc.  Defendants in the above-styled lawsuit, and whose attorneys of record are Steve McConnico and Christopher D. Sileo with the law firm Scott, Douglass & McConnico, L.L.P.

**Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.**

**Dated October 1, 2013.**

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

By: _____
Steve McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
Christopher D. Sileo
State Bar No. 24027977
csileo@scottdoug.com

2

1030571

**Of Counsel:**

DORSEY & WHITNEY LLP
Peter M. Lancaster (MN ID # 0159840)
Heather D. Redmond (MN ID # 0313233)
Suite 1500, 50 South Sixth Street
Minneapolis, Minnesota 55402-1498
T: (612) 340-2600
E-Mail: lancaster.peter@dorsey.com
E-Mail: redmond.heather@dorsey.com

**ATTORNEYS FOR DEFENDANTS
AMERIPRISE FINANCIAL, INC., AMERIPRISE
FINANCIAL SERVICES, INC., AND
AMERIPRISE ENTERPRISE INVESTMENT
SERVICES, INC.**

3

## **RETURN OF SERVICE**

Came to hand the _____ day of _____, 2013, at _____ o'clock

_____.m., and executed the _____ day of _____, 2013, at

_____ o'clock ____.m., by delivering to the within named

_____ at _____ in

_____ County, _____ in person, a true copy of this Subpoena.


_____
Process Server

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

1.      "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.      "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the .jar file vtd-xml.jar.

3.      "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

### Corporate Deposition

Please designate a representative to testify on the following topics:

1.      Any license, agreement, or other permission granted to Versata to use, modify or distribute the Ximpleware XML parser.

2.      The forms of licenses under which You have offered Ximpleware to third parties.

3.      The means by which Ximpleware has been made available to third parties from January 1, 2006 to the present, including without limitation the identity of any third-party distributor and source and binary distributions of the Java version and .zip and .jar forms.

4.      Any basis for concluding that Versata could have obtained Ximpleware pursuant to terms and conditions other than those contained in GNU GPL Version 2, attached as Exhibit C hereto, including but not limited to any commercial license.

5

1030571

5.     The benefits vtd-xml is designed to provide to a Java-based program that must have the capability to parse xml files.

6.     Your source code distribution expectations for licensees who obtain Ximpleware via the Sourceforge.net site and incorporate the software into a proprietary product.

7.     The authenticity of and foundation for any documents produced in response to the attached set of document requests.

6

1030571

## EXHIBIT B

### DEFINITIONS AND INSTRUCTIONS

1.     "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.     "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the jar file vtd-xml.jar.

3.     "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

4.     If any information, communication or documents responsive to any of the Document Requests are withheld for any reason, describe generally the substance or subject matter of the information, identify the document withheld, and state the privilege or other basis upon which any response was withheld.

### DOCUMENT REQUESTS

Please produce copies of the following documents:

1.     All licenses or contracts between You and Versata.

2.     Records sufficient to show all contact with the website SourceForge.net (or from any other source by which Ximpleware may be obtained, if any) by Versata relating to Ximpleware, including records sufficient to identify the IP addresses making such contact.

3.     Records sufficient to show all downloads of Ximpleware by Versata, along with any associated license that accompanied such download.

7

4.      Records sufficient to demonstrate the forms of licenses under which you have offered Ximpleware to third parties (with redactions of financial terms of the license if desired) and the time periods during which such licenses were offered.

5.      Records sufficient to demonstrate all forms in which Ximpleware was distributed from January 1, 2006 to the present, including but not limited to source and binary distributions of the Java version and .zip and .jar forms, along with exemplars of all such distributions.

8

Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page14 of 138

Giants like Microsoft and Apple are trying harder than ever to control the software you use. The FSF brings software freedom supporters together to amplify your voices and make an impact.

In 2013, we want to grow the free software movement.
Start your membership today with a $10 donation and help us crank up the volume.

# GNU General Public License, version 2

- The latest version of the GPL, version 3

Help crank it up. What to do if you see a possible GPL violation

**Donate now** Translations of GPLv2
- GPLv2 Frequently Asked Questions
- The GNU General Public License version 2 (GPLv2) in other formats: plain text, Texinfo, LaTeX, standalone HTML, Docbook

## Table of Contents

- GNU GENERAL PUBLIC LICENSE
  - Preamble
  - TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION
  - How to Apply These Terms to Your New Programs

## GNU GENERAL PUBLIC LICENSE

Version 2, June 1991

```
Copyright (C) 1989, 1991 Free Software Foundation, Inc.
51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.
```

## Preamble

The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software--to make sure the software is free for all its users. This General Public License applies to most of the Free Software Foundation's software and to any other program whose authors commit to using it. (Some other Free Software Foundation software is covered by the GNU Lesser General Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software (and charge for this service if you wish), that you receive source code or can get it if you want it, that you can

**EXHIBIT C**

change the software or use pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have. You must make sure that they, too, receive or can get the source code. And you must show them these terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software.

Also, for each author's protection and ours, we want to make certain that everyone understands that there is no warranty for this free software. If the software is modified by someone else and passed on, we want its recipients to know that what they have is not the original, so that any problems introduced by others will not reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to avoid the danger that redistributors of a free program will individually obtain patent licenses, in effect making the program proprietary. To prevent this, we have made it clear that any patent must be licensed for everyone's free use or not licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

## TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

**0.** This License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License. The "Program", below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language. (Hereinafter, translation is included without limitation in the term "modification".) Each licensee is addressed as "you".

Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

**1.** You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

**2.** You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page16 of 138

**a)** You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.
**b)** You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.
**c)** If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections of that work are not derived from the Program, and can be reasonably considered independent and separate works in themselves, then this License, and its terms, do not apply to those sections when you distribute them as separate works. But when you distribute the same sections as part of a whole which is a work based on the Program, the distribution of the whole must be on the terms of this License, whose permissions for other licensees extend to the entire whole, and thus to each and every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to work written entirely by you; rather, the intent is to exercise the right to control the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License.

3. You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:

**a)** Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
**b)** Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
**c)** Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of

the source code, even though third parties are not compelled to copy the source along with the object code.

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

5. You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

6. Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

9. The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

10. If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

### NO WARRANTY

11. BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

12. IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## END OF TERMS AND CONDITIONS

## How to Apply These Terms to Your New Programs

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

To do so, attach the following notices to the program. It is safest to attach them to the start of each source file to most effectively convey the exclusion of warranty; and each file should have at least the "copyright" line and a pointer to where the full notice is found.

```
one line to give the program's name and an idea of what it does.
Copyright (C) yyyy  name of author

This program is free software; you can redistribute it and/or
modify it under the terms of the GNU General Public License
as published by the Free Software Foundation; either version 2
of the License, or (at your option) any later version.

This program is distributed in the hope that it will be useful,
but WITHOUT ANY WARRANTY; without even the implied warranty of
MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
```

```
GNU General Public License for more details.

You should have received a copy of the GNU General Public License
along with this program; if not, write to the Free Software
Foundation, Inc., 51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA.
```

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it starts in an interactive mode:

```
Gnomovision version 69, Copyright (C) year name of author
Gnomovision comes with ABSOLUTELY NO WARRANTY; for details
type `show w'.  This is free software, and you are welcome
to redistribute it under certain conditions; type `show c'
for details.
```

The hypothetical commands `show w' and `show c' should show the appropriate parts of the General Public License. Of course, the commands you use may be called something other than `show w' and `show c'; they could even be mouse-clicks or menu items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if any, to sign a "copyright disclaimer" for the program, if necessary. Here is a sample; alter the names:

```
Yoyodyne, Inc., hereby disclaims all copyright
interest in the program `Gnomovision'
(which makes passes at compilers) written
by James Hacker.

signature of Ty Coon, 1 April 1989
Ty Coon, President of Vice
```

This General Public License does not permit incorporating your program into proprietary programs. If your program is a subroutine library, you may consider it more useful to permit linking proprietary applications with the library. If this is what you want to do, use the GNU Lesser General Public License instead of this License.

# EXHIBIT 2

SUBP-045

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| Martha C. Luemers (SBN 104658)<br>Dorsey & Whitney, LLP<br>305 Lytton Avenue, Palo Alto, CA  94301<br>TELEPHONE NO: (650) 857-1717      FAX NO: (650) 857-1288<br>E-MAIL ADDRESS: luemers.martha@dorsey.com<br>ATTORNEY FOR *(Name)*: Defendants Ameriprise Financial, Inc., et al. | |

Court for county in which discovery is to be conducted:
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA  95113
BRANCH NAME:

Court in which action is pending: Travis County Texas District Court,
**Name of Court:** 53rd Judicial District
STREET ADDRESS: 1000 Guadalupe, Austin TX, 78701
MAILING ADDRESS: P.O. Box 1748, Austin TX, 78767
CITY, STATE, AND ZIP CODE: Austin, TX 78701
COUNTRY: USA

PLAINTIFF/PETITIONER: Versata Software, et al

DEFENDANT/RESPONDENT: Ameriprise Financial, Inc., et al.

CALIFORNIA CASE NUMBER (if any assigned by court):

| **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA** | CASE NUMBER (of action pending outside California):<br>No. D-1-GN-12-003588 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*
Ximpleware Corp., 291 Oakhurst Way, Milpitas, CA 95035

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS** in this action at the following date, time, and place:

| Date: Nov. 5, 2013 | Time: 9:00 a.m. | Address: 305 Lytton Ave., Palo Alto, CA  94301 |
|---|---|---|

  a. ☑ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)

  b. ☑ You are ordered to produce the documents, electronically stored information, and things described in item 3.

  c. This deposition will be recorded stenographically ☑ through the instant visual display of testimony
     and by ☐ audiotape ☐ videotape.

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents, electronically stored information, and things to be produced and any testing or sampling being sought are described as follows *((if electronically stored information is required, the form or forms in which each type of information is to be produced may be specified)* : See Exhibit B

     ☐ Continued on Attachment 3 *(use form MC-025).*

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

     See Exhibits A & C

     ☐ Continued on Attachment 4 *(use form MC-025).*

5. Attorneys for the parties to this action or parties without attorneys are *(name, address, telephone number, and name of party represented):*

     ☑ Continued on Attachment 5 *(use form MC-025).*                                     Page 1 of 2

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**
Code of Civil Procedure, §§ 2029.100-900, 2020.510, 2025.220, 2025.230, 2025.250, 2025.620; Government Code, § 68097.1
www.courts.ca.gov

**SUBP-045**

| PLAINTIFF/PETITIONER: Versata Software, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ameriprise Financial, Inc., et al. | |

6. ☐ Other terms or provisions from out-of-state subpoena, if any *(specify):*

☐ Continued on Attachment 6 *(use form MC-025).*

7. **If you have been served with this subpoena as a custodian of consumer or employee records under Code of Civil Procedures section 1985.3 or 1985.6 *and* a motion to quash or an objection has been served on you, a court order or agreement of the parties, witnesses, *and* consumer or employee affected must be obtained before you are required to produce consumer or employee records.**

8. *At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.*

> **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: October 2, 2013

▶ _Martha C. Luemers_____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Martha C. Luemers                          Attorney for Defendants
_____                    _____
(TYPE OR PRINT NAME)                        (TITLE)

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS**

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents, Electronically Stored Information, and Things in Action Pending Outside California* by personally delivering a copy to the person served as follows:

   a. Person served *(name):*

   b. Address where served:

   c. Date of delivery:                     d. Time of delivery:

   e. Witness fees and mileage both ways *(check one):*
      (1) ☐ were paid. Amount: . . . . . . . . . . $ _____
      (2) ☐ were not paid.
      (3) ☐ were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was *(specify):* $ _____

   f. Fee for service: . . . . . . . . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date):*

3. ☐ I also served a completed *Proof of Service of Notice to Consumer or Employee and Objection* (form SUBP-025) by personally delivering a copy to the person served as described in 1 above.

4. Person serving:
   a. ☐ Not a registered California process server
   b. ☐ California sheriff or marshal
   c. ☐ Registered California process server
   d. ☐ Employee or independent contractor of a registered California process server
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b)
   f. Name, address, telephone number, and, if applicable, county of registration and number:

| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.<br>Date: | **(For California sheriff or marshal use only)**<br>**I certify** that the foregoing is true and correct.<br>Date: |
|---|---|
| ▶ _____<br>(SIGNATURE) | ▶ _____<br>(SIGNATURE) |

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Versata Software v. Ameriprise Financial, Inc. | No. D-1-GN-12-003588 |

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI
Amir Alavi
Steven J. Mitby
Benjamin F. Foster
1221 McKinney Street, Suite 3460
Houston, TX 77010
Phone: (713) 655-1101

MCGINNIS, LOCHRIDGE & KILGORE, LLP
Travis Barton (SBN 00790276)
600 Congress Avenue, Suite 2100
Austin, TX 78701
Phone: (512) 495-6000

Attorneys for Plaintiff Versata Software, Inc., F/K/A Trilogy Software, Inc., and Versata Development Group, Inc., F/K/A Trilogy Development Group, Inc.

SCOTT, DOUGLASS & McCONNICO, L.L.P.
Steve McConnico
Christopher D. Sileo
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
Phone: (512) 495-6300

DORSEY & WHITNEY LLP
Martha C. Luemers
305 Lytton Ave.
Palo Alto, CA 94301
Phone: (650) 857-1717

Peter Lancaster
Heather Redmond
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Phone: (612) 340-2600

Attorneys for Defendants Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., American Enterprise Investment Services, Inc.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

# EXHIBIT "A"

## EXHIBIT A

### DEFINITIONS AND INSTRUCTIONS

1.      "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.      "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the .jar file vtd-xml.jar.

3.      "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

### Corporate Deposition

Please designate a representative to testify on the following topics:

1.      Any license, agreement, or other permission granted to Versata to use, modify or distribute the Ximpleware XML parser.

2.      The forms of licenses under which You have offered Ximpleware to third parties.

3.      The means by which Ximpleware has been made available to third parties from January 1, 2006 to the present, including without limitation the identity of any third-party distributor and source and binary distributions of the Java version and .zip and .jar forms.

4.      Any basis for concluding that Versata could have obtained Ximpleware pursuant to terms and conditions other than those contained in GNU GPL Version 2, attached as Exhibit C hereto, including but not limited to any commercial license.

5

1030571

5.      The benefits vtd-xml is designed to provide to a Java-based program that must have the capability to parse xml files.

6.      Your source code distribution expectations for licensees who obtain Ximpleware via the Sourceforge.net  site and incorporate the software into a proprietary product.

7.      The authenticity of and foundation for any documents produced in response to the attached set of document requests.

6

# EXHIBIT "B"

## EXHIBIT B

### DEFINITIONS AND INSTRUCTIONS

1.      "Versata" means Versata Software, Inc. and Versata Development Group, Inc. and their current and former parents, subsidiaries or affiliates, including, without limitation, Versata International, Inc.; Trilogy Software, Inc.; Trilogy Development Group, Inc.; and G-Dev Fz-LLC.

2.      "Ximpleware" means all versions of Ximpleware's vtd-xml parser made available through the Sourceforge.net site or elsewhere by Ximpleware Corp., including without limitation the jar file vtd-xml.jar.

3.      "You" or "Your" means Ximpleware Corp. and all agents, employees, representatives, attorneys, and other persons or entities acting on its behalf.

4.      If any information, communication or documents responsive to any of the Document Requests are withheld for any reason, describe generally the substance or subject matter of the information, identify the document withheld, and state the privilege or other basis upon which any response was withheld.

### DOCUMENT REQUESTS

Please produce copies of the following documents:

1.      All licenses or contracts between You and Versata.

2.      Records sufficient to show all contact with the website SourceForge.net (or from any other source by which Ximpleware may be obtained, if any) by Versata relating to Ximpleware, including records sufficient to identify the IP addresses making such contact.

3.      Records sufficient to show all downloads of Ximpleware by Versata, along with any associated license that accompanied such download.

7

1030571

4. Records sufficient to demonstrate the forms of licenses under which you have offered Ximpleware to third parties (with redactions of financial terms of the license if desired) and the time periods during which such licenses were offered.

5. Records sufficient to demonstrate all forms in which Ximpleware was distributed from January 1, 2006 to the present, including but not limited to source and binary distributions of the Java version and .zip and .jar forms, along with exemplars of all such distributions.

8

1030571

# EXHIBIT "C"

Case3:13-cv-05160-SI   Document39-3   Filed12/03/13   Page31 of 138

Giants like Microsoft and Apple are trying harder than ever to control the software you use. The FSF brings software freedom supporters together to amplify your voices and make an impact.

In 2013, we want to grow the free software movement.
Start your membership today with a $10 donation and help us crank up the volume.



# GNU General Public License, version 2

- The latest version of the GPL, version 3

Help crank it up. What to do if you see a possible GPL violation
**Donate now!** Translations of GPLv2
- GPLv2 Frequently Asked Questions
- The GNU General Public License version 2 (GPLv2) in other formats: plain text, Texinfo, LaTeX, standalone HTML, Docbook

## Table of Contents

- GNU GENERAL PUBLIC LICENSE
  - Preamble
  - TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION
  - How to Apply These Terms to Your New Programs

## GNU GENERAL PUBLIC LICENSE

Version 2, June 1991

```
Copyright (C) 1989, 1991 Free Software Foundation, Inc.
51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA

Everyone is permitted to copy and distribute verbatim copies
of this license document, but changing it is not allowed.
```

## Preamble

The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software--to make sure the software is free for all its users. This General Public License applies to most of the Free Software Foundation's software and to any other program whose authors commit to using it. (Some other Free Software Foundation software is covered by the GNU Lesser General Public License instead.) You can apply it to your programs, too.

When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software (and charge for this service if you wish), that you receive source code or can get it if you want it, that you can

**EXHIBIT C**

change the software or use pieces of it in new free programs; and that you know you can do these things.

To protect your rights, we need to make restrictions that forbid anyone to deny you these rights or to ask you to surrender the rights. These restrictions translate to certain responsibilities for you if you distribute copies of the software, or if you modify it.

For example, if you distribute copies of such a program, whether gratis or for a fee, you must give the recipients all the rights that you have. You must make sure that they, too, receive or can get the source code. And you must show them these terms so they know their rights.

We protect your rights with two steps: (1) copyright the software, and (2) offer you this license which gives you legal permission to copy, distribute and/or modify the software.

Also, for each author's protection and ours, we want to make certain that everyone understands that there is no warranty for this free software. If the software is modified by someone else and passed on, we want its recipients to know that what they have is not the original, so that any problems introduced by others will not reflect on the original authors' reputations.

Finally, any free program is threatened constantly by software patents. We wish to avoid the danger that redistributors of a free program will individually obtain patent licenses, in effect making the program proprietary. To prevent this, we have made it clear that any patent must be licensed for everyone's free use or not licensed at all.

The precise terms and conditions for copying, distribution and modification follow.

## TERMS AND CONDITIONS FOR COPYING, DISTRIBUTION AND MODIFICATION

o. This License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License. The "Program", below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work containing the Program or a portion of it, either verbatim or with modifications and/or translated into another language. (Hereinafter, translation is included without limitation in the term "modification".) Each licensee is addressed as "you".

Activities other than copying, distribution and modification are not covered by this License; they are outside its scope. The act of running the Program is not restricted, and the output from the Program is covered only if its contents constitute a work based on the Program (independent of having been made by running the Program). Whether that is true depends on what the Program does.

1. You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

You may charge a fee for the physical act of transferring a copy, and you may at your option offer warranty protection in exchange for a fee.

2. You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work under the terms of Section 1 above, provided that you also meet all of these conditions:

Case3:13-cv-05160-SI   Document39-3   Filed12/03/13   Page33 of 138

a) You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.
b) You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.
c) If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement, your work based on the Program is not required to print an announcement.)

These requirements apply to the modified work as a whole. If identifiable sections of that work are not derived from the Program, and can be reasonably considered independent and separate works in themselves, then this License, and its terms, do not apply to those sections when you distribute them as separate works. But when you distribute the same sections as part of a whole which is a work based on the Program, the distribution of the whole must be on the terms of this License, whose permissions for other licensees extend to the entire whole, and thus to each and every part regardless of who wrote it.

Thus, it is not the intent of this section to claim rights or contest your rights to work written entirely by you; rather, the intent is to exercise the right to control the distribution of derivative or collective works based on the Program.

In addition, mere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License.

3. You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:

a) Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
b) Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or,
c) Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)

The source code for a work means the preferred form of the work for making modifications to it. For an executable work, complete source code means all the source code for all modules it contains, plus any associated interface definition files, plus the scripts used to control compilation and installation of the executable. However, as a special exception, the source code distributed need not include anything that is normally distributed (in either source or binary form) with the major components (compiler, kernel, and so on) of the operating system on which the executable runs, unless that component itself accompanies the executable.

If distribution of executable or object code is made by offering access to copy from a designated place, then offering equivalent access to copy the source code from the same place counts as distribution of

the source code, even though third parties are not compelled to copy the source along with the object code.

4. You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

5. You are not required to accept this License, since you have not signed it. However, nothing else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.

6. Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

7. If, as a consequence of a court judgment or allegation of patent infringement or for any other reason (not limited to patent issues), conditions are imposed on you (whether by court order, agreement or otherwise) that contradict the conditions of this License, they do not excuse you from the conditions of this License. If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the Program at all. For example, if a patent license would not permit royalty-free redistribution of the Program by all those who receive copies directly or indirectly through you, then the only way you could satisfy both it and this License would be to refrain entirely from distribution of the Program.

If any portion of this section is held invalid or unenforceable under any particular circumstance, the balance of the section is intended to apply and the section as a whole is intended to apply in other circumstances.

It is not the purpose of this section to induce you to infringe any patents or other property right claims or to contest validity of any such claims; this section has the sole purpose of protecting the integrity of the free software distribution system, which is implemented by public license practices. Many people have made generous contributions to the wide range of software distributed through that system in reliance on consistent application of that system; it is up to the author/donor to decide if he or she is willing to distribute software through any other system and a licensee cannot impose that choice.

This section is intended to make thoroughly clear what is believed to be a consequence of the rest of this License.

8. If the distribution and/or use of the Program is restricted in certain countries either by patents or by copyrighted interfaces, the original copyright holder who places the Program under this License may add an explicit geographical distribution limitation excluding those countries, so that distribution is permitted only in or among countries not thus excluded. In such case, this License incorporates the limitation as if written in the body of this License.

9. The Free Software Foundation may publish revised and/or new versions of the General Public License from time to time. Such new versions will be similar in spirit to the present version, but may differ in detail to address new problems or concerns.

Each version is given a distinguishing version number. If the Program specifies a version number of this License which applies to it and "any later version", you have the option of following the terms and conditions either of that version or of any later version published by the Free Software Foundation. If the Program does not specify a version number of this License, you may choose any version ever published by the Free Software Foundation.

10. If you wish to incorporate parts of the Program into other free programs whose distribution conditions are different, write to the author to ask for permission. For software which is copyrighted by the Free Software Foundation, write to the Free Software Foundation; we sometimes make exceptions for this. Our decision will be guided by the two goals of preserving the free status of all derivatives of our free software and of promoting the sharing and reuse of software generally.

**NO WARRANTY**

11. BECAUSE THE PROGRAM IS LICENSED FREE OF CHARGE, THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY APPLICABLE LAW. EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

12. IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MAY MODIFY AND/OR REDISTRIBUTE THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS), EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## END OF TERMS AND CONDITIONS

### How to Apply These Terms to Your New Programs

If you develop a new program, and you want it to be of the greatest possible use to the public, the best way to achieve this is to make it free software which everyone can redistribute and change under these terms.

To do so, attach the following notices to the program. It is safest to attach them to the start of each source file to most effectively convey the exclusion of warranty; and each file should have at least the "copyright" line and a pointer to where the full notice is found.

```
one line to give the program's name and an idea of what it does.
Copyright (C) yyyy  name of author

This program is free software; you can redistribute it and/or
modify it under the terms of the GNU General Public License
as published by the Free Software Foundation; either version 2
of the License, or (at your option) any later version.

This program is distributed in the hope that it will be useful,
but WITHOUT ANY WARRANTY; without even the implied warranty of
MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
```

```
GNU General Public License for more details.

You should have received a copy of the GNU General Public License
along with this program; if not, write to the Free Software
Foundation, Inc., 51 Franklin Street, Fifth Floor, Boston, MA  02110-1301, USA.
```

Also add information on how to contact you by electronic and paper mail.

If the program is interactive, make it output a short notice like this when it starts in an interactive mode:

```
Gnomovision version 69, Copyright (C) year name of author
Gnomovision comes with ABSOLUTELY NO WARRANTY; for details
type `show w'.  This is free software, and you are welcome
to redistribute it under certain conditions; type `show c'
for details.
```

The hypothetical commands `show w' and `show c' should show the appropriate parts of the General Public License. Of course, the commands you use may be called something other than `show w' and `show c'; they could even be mouse-clicks or menu items--whatever suits your program.

You should also get your employer (if you work as a programmer) or your school, if any, to sign a "copyright disclaimer" for the program, if necessary. Here is a sample; alter the names:

```
Yoyodyne, Inc., hereby disclaims all copyright
interest in the program `Gnomovision'
(which makes passes at compilers) written
by James Hacker.

signature of Ty Coon, 1 April 1989
Ty Coon, President of Vice
```

This General Public License does not permit incorporating your program into proprietary programs. If your program is a subroutine library, you may consider it more useful to permit linking proprietary applications with the library. If this is what you want to do, use the GNU Lesser General Public License instead of this License.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara. I am over the age of eighteen years and not a party to the within entitled action; my business address is 305 Lytton Avenue, Palo Alto, California 94301.

On November 20, 2013, I served a copy of the following document described as **DECLARATION OF CASE COLLARD IN SUPPORT OF PETITION TO ENFORCE DEPOSITION SUBPOENA IN ACTION PENDING OUTSIDE CALIFONRIA** on the interested party(ies) in this action as follows:

Jack Russo
ComputerLaw Group LLP
401 Florence Street
Palo Alto, CA 94301

☐ **By Mail**. By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am "readily familiar" with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Palo Alto, California, in a sealed envelope with postage fully prepaid.

☒ **By Overnight Delivery**. I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed as above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **By Messenger Service**. I served the documents by placing them in an envelope or package addressed to the person(s) at the address(es) above and providing them to a professional messenger service for service. A declaration by the messenger is attached.

☐ **By Facsimile**. Based on an agreement of the parties to accept service by fax transmission, I faxed the document(s) to the person(s) at the fax number(s) listed above. The telephone number of the sending facsimile machine was (650) 857-1288. The sending facsimile machine issued a transmission report confirming that the transmission was complete and without error. A copy of that report is attached.

☐ **By Electronic Transmission**. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from lee.janet@dorsey.com to the person(s) at the e-mail address(es) listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 20, 2013, at Palo Alto, California.

_____
Janet Lee
(Type or print name)

_____
(Signature)

# EXHIBIT 3

| DORSEY & WHITNEY, LLP<br>Martha C. Luemers, Esq. (SBN 104658)<br>305 Lytton Avenue<br>Palo Alto, California 94301<br>ATTORNEY FOR (Name): **Defendants, AMERIPRISE FINANCIAL, INC.; et al.** | | | (650) 857-1717 | |
|---|---|---|---|---|
| *Court for county in which discovery is to be conducted:*<br>**SUPERIOR COURT OF THE STATE OF CALIFORNIA**<br>**COUNTY OF SANTA CLARA** | | | | |
| *Court in which action is pending:*<br>**TRAVIS COUNTY TEXAS DISTRICT COURT**<br>**53RD JUDICIAL DISTRICT** | | | | |
| PLAINTIFF/PETITIONER: **VERSATA SOFTWARE; et al.**<br>DEFENDANT/RESPONDENT: **AMERIPRISE FINANCIAL, INC.; et al.** | | | | CALIFORNIA CASE NUMBER: |
| **PROOF OF SERVICE** | HEARING DATE:<br>**November 5, 2013** | TIME:<br>**09:00 a.m.** | DEPT/DIV.: | CASE NUMBER (of action pending outside California)<br>**No. D-1-GN-12-003588** |

1. At the time of service I was at least 18 years of age and not a party to this action, and **I served copies** of the (*specify document(s)*):
   **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

2. a. Party served: **Ximpleware Corp.**

   b. Person served: **Jimmy Zhang, Agent for Service of Process**

   c. Address: **291 Oakhurst Way**
   **Milpitas, California 95035**

3. I served the party in item 2
   a. **by personally delivering** the copies    (1) on (*date*): **10/06/2013**
                                                    (2) at (*time*): **08:10 a.m.**

4. **Witness fees were paid. Amount.....$43.00**

5. Person serving (*name, address, and telephone No.*):

   **Antonio Callahan**
   **Ace Attorney Service, Inc.**
   545 Middlefield Road, Suite 205
   Menlo Park, California 94025
   (650) 462-1335

   f. **Fee** for service: $

   a. Not a Registered California process server.
   (1) Employee or independent contractor.
   (2) Registration No.: **N/A**
   (3) County: **N/A**

6. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **October 7, 2013**

*(signature)*

*#1039708GP*

SUBP-045 [ Rev. January 1, 2012]

**PROOF OF SERVICE**

# EXHIBIT 4

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com → Fax Central ☑001/007
AZA Law Fax:7136550062 Oct 22 2013 05:06pm P001/007
Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page41 of 138



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

1221 McKINNEY, SUITE 3460
HOUSTON, TEXAS 77010
MAIN 713.655.1101
FAX 713.655.0062
AZALAW.COM

# **FAX COVER**

Date: October 22, 2013                   File No: TLG018

To:   Peter M. Lancaster          Fax No: 612.340.2868
      Heather D. Redmond

To:   Steve McConnico             Fax No: 512.474.0731
      Christopher D. Silco

To:   Travis Barton              Fax No: 512.495.6093

To:   Christopher Sargent        Fax No: 650-1863

From: Ben Foster

Total pages including cover: 7

## **MESSAGE**

**Please see attached Plaintiffs' Cross-Notice of Intention to Take Oral and
Videotaped Deposition of Ximpleware Corp.**

*Notice of Confidentiality:*
The information contained in and transmitted with this facsimile is
1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;
2. ATTORNEY WORK PRODUCT; or
3. CONFIDENTIAL

It is intended only for the individual or entity designated above. You are hereby notified that any
dissemination, distribution, copying, or use of or reliance upon the information contained in and
transmitted with this facsimile by or to anyone other than the recipient designated above by the
sender is *unauthorized* and *strictly prohibited.* If you have received this facsimile in error, please
notify Ahmad, Zavitsanos, Anaipakos, Alavi, Mensing, P.C., by telephone at (713) 655-1101
immediately. Any facsimile erroneously transmitted to you should be immediately returned to the
sender by U.S. Mail or, if authorization is granted by the sender, destroyed.

**IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL ANDREA AT 713.600.4929 FOR ASSISTANCE.**

Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page42 of 138

## NO. D-1-GN-003588

| | | |
|---|---|---|
| **VERSATA SOFTWARE, INC., F/K/A** | § | **IN THE DISTRICT COURT OF** |
| **TRILOGY SOFTWARE, INC.; and** | § | |
| **VERSATA DEVELOPMENT GROUP,** | § | |
| **INC., F/K/A TRILOGY DEVELOPMENT** | § | |
| **GROUP, INC.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **53rd JUDICIAL DISTRICT** |
| **AMERIPRISE FINANCIAL, INC.,** | § | |
| **AMERIPRISE FINANCIAL SERVICES,** | § | |
| **INC., AMERICAN ENTERPRISE** | § | |
| **INVESTMENT SERVICES, INC.** | § | |

## PLAINTIFFS' CROSS-NOTICE OF INTENTION TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF XIMPLEWARE CORP.

TO:     Defendants, by and through their attorneys of record, Peter M. Lancaster and Heather D. Redmond, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-1498; and Steve McConnico and Christopher D. Silco, Scott, Douglass & McConnico, LLP, 600 Congress Avenue, Suite 1500, Austin, Texas 78701; and

Ximpleware Corparation, by and through their attorneys, Christopher Sargent, Computerlaw Group LLP, 401 Florence Street, Palo Alto, CA 94301.

Please take notice that, under Texas Rule of Civil Procedure 199, Plaintiffs Versata

Software, Inc., f/k/a Trilogy Software, Inc., and Versata Development Group, Inc., f/k/a Trilogy

Development, Inc. (collectively, "Versata") will take the oral and videotaped deposition of the

corporate representative(s) of Ximpleware Corp. ("Ximpleware") beginning at 9:00 a.m. on

Tuesday, November 5, 2013, at the offices of Dorsey & Whitney, LLP, 305 Lytton Ave., Palo

Alto, CA 94301, as to the topics described in Exhibit "A" hereto and incorporated herein.

Henjum Goucher will stenographically record the deposition, which will also be

videotaped. The deposition will continue from day to day until completed.

1

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com AZA Law → Fax Central ☒0003/007
Fax:7136550062 Oct 22 2013 05:07pm P003/007
Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page43 of 138

Additionally, please take notice that Versata requests that Ximpleware produce not later

than at the commencement of the deposition the documents requested in Exhibit "B."

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING,
P.C.

Demetrios Anaipakos
State Bar No. 00793258
Amir Alavi
State Bar No. 00793239
Steven J. Mitby
State Bar No. 27037123
Benjamin F. Foster
State Bar No. 24080898
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Travis Barton
State Bar No. 00790276
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093

ATTORNEYS FOR PLAINTIFFS, VERSATA
SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.,
AND VERSATA DEVELOPMENT GROUP, INC., F/K/A
TRILOGY DEVELOPMENT, INC.

2

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com     AZA Law     Fax:7136550062     → Fax Central     Oct 22 2013 05:07pm     ☑004/007     P004/007

Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page44 of 138

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the following counsel of record via hand-delivery and/or via facsimile and/or via regular U.S. Mail and/or via electronic mail on October 22, 2013:

Peter M. Lancaster
Heather D. Redmond
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2868 (Facsimile)
lancaster.peter@dorsey.com
redmond.heather@dorsey.com

Steve McConnico
Christopher D. Silco
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701
(512) 474-0731 (Facsimile)
smcconnico@scottdoug.com
csileo@scottdoug.com

Travis Barton
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000 (Telephone)
(512) 495-6093 (Facsimile)
tcbarton@mcginnislaw.com

Christopher Sargent,
Computerlaw Group LLP
401 Florence Street
Palo Alto, CA 94301

Benjamin F. Foster

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com → Fax Central [2]005/007
AZA Law Fax:7136550062 Oct 22 2013 05:07pm P005/007
Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page45 of 138

## EXHIBIT A

## CORPORATE DEPOSITION

Please designate a representative to testify on the following topics:

1.  The authors of Ximpleware's XML parser

2.  The content of the copyright application for Ximpleware's XML parser

3.  The forms of licenses under which you have offered Ximpleware to third parties.

4.  Communications between Ameriprise or Infosys and Ximpleware

5.  Deals or understandings between Ximpleware and Ameriprise or Infosys

6.  The use of Ximpleware within a java application, including how reference is made to Ximpleware by third party software.

7.  The extent to which Ximpleware is integrated or embedded into third party applications.

## EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

1.  All entities referred to herein shall be deemed to include their parent companies, subsidiaries, affiliates, directors, officers, employees, agents and representatives thereof, including attorneys.

2.  "Communications" is used herein in its broadest sense to encompass any transmission or exchange of information, ideas, facts, data, proposals, or any other matter, whether between individuals of between or among members of a group, whether face-to-face, by telephone, or by means of written, electronic, or other medium.

3.  Documents or communications "concerning" a given subject means all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, analyze, or are in any way pertinent to that subject, including, without limitation, documents concerning the presentation of other documents.

4.  Documents or communications that "relate to" a given subject means all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, analyze, or are in any way pertinent to that subject, including, without limitation, documents concerning the presentation of other documents.

4

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com → Fax Central ☑006/007
AZA Law Fax:7136550062 Oct 22 2013 05:07pm P006/007
Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page46 of 138

5. "Identify" when used in reference to a document means to state: (a) the name of the person who prepared it; (b) the name of the person who signed it or under whose name it was issued; (c) the name of each person to whom it was addressed and/or distributed; (d) the nature of the substance of the document with sufficient particularity to enable it to be identified; (e) its date, or, if it bears no date, the date when it was prepared; and (f) the physical location of the document and the name of its custodian or custodians.

6. "Identify" when used in reference to a natural person, shall mean to specifically state that person's name, title, position or office, current business address, current residence address or most recent known address and such person's telephone number.

7. "Identify" when used in reference to a person other than a natural person, shall mean to specifically state the full name of such entity, its form of organization, its present address(es), its principal address, and the telephone number of its principal address.

8. "Versata" means Versata Software, Inc., Trilogy Software, Inc., Versata Development Group, Inc., Trilogy Development Group, Inc., and any affiliate or subsidiary of these companies; as well as any director, officer, employee, contractor, or agent of these companies.

9. "Software" means any enterprise software designed, developed, made, sold, licensed, offered for sale, or offered to license by Ameriprise since December 21, 2004. The "Software" shall include complete programs as well as functionality, features, and modules.

10. "Infosys" refers to and means Infosys Technologies, Ltd.; any parents, subsidiaries, or affiliates of Infosys Technologies, Ltd.; and any employees, agents, contractors, or lawyers of the foregoing entities.

11. "DCM" refers to and means distribution channel management an application developed and sold by Versata.

12. "DMU" refers to and means distribution management utility an application developed and used by Ameriprise.

13. "Concerning," "concern," or "concerns" should be understood in the broadest possible sense and encompasses anything that refers, relates to, or concerns a subject matter in any way.

5

10/22/2013 17:11 IFAX faxcenter.mp1@dorsey.com → Fax Central ☑007/007
AZA Law Fax;7136550062 Oct 22 2013 05:07pm P007/007
Case3:13-cv-05160-SI Document39-3 Filed12/03/13 Page47 of 138

## DOCUMENTS REQUESTED

Please produce copies of the following documents:

1. All communications with Ameriprise or Infosys including all communications with anyone acting on behalf of Ameriprise or Infosys that: relates to DCM; to any potential causes of action against Versata by Ameriprise or Ximpleware; or any alleged breaches of any license agreement by Versata.

2. All Communications with Ameriprise or Infosys which relate to Ximpleware's licensing practices.

3. All agreements, proposals, or other documents received from Ameriprise which relate to DCM; to any potential or current causes of action against Versata by Ameriprise or Ximpleware; or any alleged breaches of any license agreement by Versata.

4. Any records of any payments made to Ximpleware by Ameriprise or Infosys, or any promises to pay Ximpleware, any amount of money by Ameriprise or Infosys.

5. A copy of Ximpleware's copyright application.

# EXHIBIT 5

# COMPUTERLAW GROUP LLP

ATTORNEYS AT LAW
401 FLORENCE STREET
PALO ALTO, CALIFORNIA 94301
COMPUTERLAW.COM

TELEPHONE
(650) 327-9800

FAX
(650) 618-1863

October 23, 2013

**Via Email and U.S. Mail**

Peter Lancaster, Esq.
Dorsey & Whitney LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55042
Lancaster.peter@dorsey.com

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
1221 Mckinney Street, Ste. 3460
Houston, TX 77010
aalavi@azalaw.com

*Re:*   *Deposition of XimpleWare Corp.*
         *Case No.: D-1-GN-003588*

Dear Counsel:

I have been out of my office and have just returned to learn about a proposed deposition of my client for a date that was not cleared with me or my office. Under the Local Rules in Santa Clara County, the deposition date should have first been cleared with all counsel. This date will not work. Accordingly, submitted herewith is a Notice of Objections to the Deposition Subpoena and to the Production of Documents; these objections apply to both the original subpoena as well as the cross-notice we recently received from Versata's counsel.

At the same time, we are willing to work with you and your offices to set a date for a single deposition of our client on an agreed date that works with everyone's schedule. Right now, I believe that our client would need at least until the end of November to identify, locate, and compile the requested documents and any deposition should then be scheduled for the first or second week of December. I have asked my client to provide some dates in December and we will clear them with our calendar and let you know what might be able to work in this regard.

Please let me know if there are preferred dates that each of you would want to target for the first or second week of December and we can take those back to our client as well. With further cooperation, we should be able to resolve an agreed date and presumably that can and will occur in the context of our also resolving a proposed mutually acceptable form of Stipulated Protective Order for the protection of our client's trade secrets and confidential information.

Very truly yours,

Jack Russo

*Enclosures*
*cc: file*

# EXHIBIT 6

1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   Ansel Halliburton (Cal. Bar No. 282906)
    COMPUTERLAW GROUP LLP
3   401 Florence Street
    Palo Alto, CA 94301
4   (650) 327-9800
    (650) 618-1863 fax
5   jrusso@computerlaw.com
    csargent@computerlaw.com
6   ahalliburton@computerlaw.com

7   Attorneys for Plaintiff
    XIMPLEWARE CORP.

8

9                       IN THE SUPERIOR COURT OF CALIFORNIA

10                     IN AND FOR THE COUNTY OF SANTA CLARA

11

12  **Versata Software, Inc.,** f/k/a **Trilogy**          Case No. D-1-GN-12-003588
    **Software, Inc.,** and **Versata Development**
13  **Group, Inc.,** f/k/a **Trilogy Development**
    **Group, Inc.,**                                        XIMPLEWARE CORP.'S RESPONSES
14                        Plaintiffs;                        AND OBJECTIONS TO DEFENDANT
                                                             AMERIPRISE'S DEPOSITION SUBPOENA
15              v.                                           FOR PERSONAL APPEARANCE AND
                                                             PRODUCTION OF DOCUMENTS,
16  **Ameriprise Financial, Inc., Ameriprise**              ELECTRONICALLY STORED
    **Financial Services, Inc.,** and **American**          INFORMATION, AND THINGS IN
17  **Enterprise Investment Services, Inc.,**               ACTION PENDING OUTSIDE OF
                                                             CALIFORNIA
18                        Defendants.

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com™

1       Pursuant to California Code of Civil Procedure Section 2025.010, *et seq.*, XimpleWare

2 Corp. ("XimpleWare") hereby responds to Defendant Ameriprise Financial, Inc.'s ("Ameriprise"

3 or "Defendant") Deposition Subpoena for Personal Appearance and Production of documents,

4 Electronically Stored Information, and Things In Action Pending Outside California (the

5 "Subpoena") as follows:

<div align="center">

**GENERAL OBJECTIONS**

</div>

7     1.     Ximpleware objects to the noticed date of the deposition as "November 5, 2013"

8 as it was set without consulting with counsel regarding availability of witnesses and counsel.

9 Ximpleware is prepared to make a witness or witnesses available to testify on Ximpleware's

10 behalf concerning the deposition topics for which Ximpleware has no objections, as indicated

11 below.

12     2.     XimpleWare has made a reasonable inquiry concerning the matter in each

13 particular deposition topic and document request. The following responses and objections are

14 based on XimpleWare's present state of recollection, knowledge, and belief. XimpleWare

15 reserves the right to supplement the responses set forth below at XimpleWare's option, or to

16 introduce at trial, or other proceedings related to this action, information not set forth herein if

17 such materials become known or available to XimpleWare subsequent to the date of this

18 response. Consequently, these responses are at all times subject to additional or different

19 information that discovery may disclose, and, while based on the present state of recollection, are

20 subject to such refreshing of recollection, and such knowledge or facts may result from further

21 investigation by XimpleWare and its attorneys.

22     3.     XimpleWare's responses and objections are made without in any way waiving or

23 intending to waive, but on the contrary intending to preserve:

24     a.     All questions as to competency, relevancy, materiality, privilege, and admissibility

25 as evidence for any purpose of the responses, documents, or subject matter thereof, in any

26 subsequent proceeding or the trial of this or any other action;

27 //

28 //

<div align="left">Computerlaw Group LLP<br>www.computerlaw.com℠</div>

1      b.   The right to object on any ground to the use of any of said responses or

2  documents, or their subject matter, in all subsequent proceedings, including the trial of this or

3  any other action;

4      c.   The right to object on any ground to any request for further responses to these or

5  any other discovery requests involving or relating to the subject matter of the document requests

6  and topics for examination;

7      d.   The right to supplement, modify, or amend the responses; and

8      e.   Except for explicit facts admitted or denied herein, no incidental or prior

9  admissions or denials are intended.

10      4.   XimpleWare objects to each definition and deposition topic to the extent it

11  purports to impose a greater burden on XimpleWare than the California Code of Civil Procedure,

12  the California Rules of Court, Local Rules, or any other applicable rules or statutes would

13  require.

14      5.   XimpleWare objects to each definition to the extent that it seeks to broaden the

15  scope of allowable discovery and compel XimpleWare to produce information or documentation

16  not in the possession, custody, or control of XimpleWare.

17      6.   XimpleWare will respond to the subpoena to the extent that it and its individual

18  document requests and topics for testimony, are not objectionable for the reasons below.

19  XimpleWare reserves the right to further object to the subpoena in any response.

20      7.   Ximpleware objects to each and every request to the extent it seeks information

21  already in a party's possession or available to a party from some other source (including public

22  sources) that is more convenient, less burdensome, or less expensive. This means that if you are

23  seeking information from XimpleWare that is equally available from a party in the above-

24  referenced litigation, XimpleWare objects to that request on that basis.

25      8.   XimpleWare further objects to each and every request to the extent it seeks

26  information containing confidential, financial, proprietary, or trade secret information, or any

27  information subject to a confidentiality agreement or Protective Order. While XimpleWare does

28  not require a Protective Order for production of its non-confidential information, XimpleWare

Computerlaw Group LLP
www.computerlaw.com℠

1   will only produce information it deems confidential pursuant to a confidentiality agreement or
2   Protective Order that it deems suitably protective. Should a Protective Order become necessary,
3   we would request that you provide a draft for XimpleWare's review and revisions.

4         9.     XimpleWare further objects to each and every request to the extent it seeks
5   information protected by any privilege, including, though not limited to, the attorney-client
6   privilege, work product immunity doctrine, joint defense privilege, common interest privilege, or
7   any other applicable privilege, immunity, or restriction on discovery.

8        10.    XimpleWare further objects to each and every request to the extent it is overly
9   broad, unduly burdensome, oppressive, to the extent it is seeking information that is neither
10  relevant to the disputed issues in the action nor likely to lead to the discovery of admissible
11  evidence.

12       11.    XimpleWare further objects to each and every request to the extent it is vague,
13  ambiguous, unintelligible, not limited in time or scope, fails to identify the information sought
14  with reasonable particularity, or imposes an undue burden on XimpleWare, including seeking
15  electronically stored information that is not reasonably accessible to XimpleWare, or information
16  that is not and has never been in XimpleWare's custody or control.

17       12.    XimpleWare further objects to the subpoenaing party's definition of
18  "Ximpleware" as misleading and inaccurate; XimpleWare is a company with a product called
19  "vtd-xml" and the subpoenaing party's definition leads to ambiguity and confusion in the
20  requests and topics for examination that follow.

21       13.    Pursuant to Cal. Code. Civ. Proc. § 2031.210, XimpleWare objects to each and
22  every request on the grounds that it includes or relies upon a preface or instruction that has not
23  been approved under Cal. Code. Civ. Proc. §2031.210 *et seq.*

24       14.    These General Objections shall be deemed to be incorporated in full into the
25  response to each deposition topic and request set forth below and any responses are subject to the
26  limitation and objections set forth herein, and are without prejudice to XimpleWare's rights with
27  respect thereto.

28   //

Computerlaw Group LLP
www.computerlaw.com℠

1                  <u>**OBJECTIONS AND RESPONSES TO TOPICS FOR EXAMINATION**</u>

2   <u>**Topic No. 1:**</u>

3         Any license, agreement, or other permission granted to Versata to use, modify or

4   distribute the Ximpleware XML parser.

5   <u>**Response to Topic No. 1:**</u>

6         XimpleWare incorporates by reference each and every one of the General Objections as if

7   set forth here in full. XimpleWare objects to this topic as vague and ambiguous regarding its use

8   of the phrase "Ximpleware XML parser."

9         Subject to and without waiving the foregoing objections, XimpleWare will produce a

10   witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

11   the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

12   confidential information.

13   <u>**Topic No. 2:**</u>

14         The forms of licenses under which You have offered Ximpleware to third parties.

15   <u>**Response to Topic No. 2:**</u>

16         XimpleWare incorporates by reference each and every one of the General Objections as if

17   set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

18   information subject to a Protective Order, privacy interest, contractual obligation, or other

19   confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

20   extent that it calls for provision of confidential or proprietary information of XimpleWare.

21   XimpleWare will only testify to information it deems confidential pursuant to a Protective Order.

22   XimpleWare further objects to this topic as overly broad and unduly burdensome to the extent it

23   seeks information that is neither relevant to the disputed issues in this action nor likely to lead to

24   the discovery of admissible evidence. XimpleWare further objects to this topic to the extent that

25   it is impermissibly vague, ambiguous or fails to describe the deposition topic with reasonable

26   particularity. XimpleWare further objects to this topic as vague and ambiguous regarding its use

27   //

28   //

Computerlaw Group LLP
www.computerlaw.com℠

1   of the phrase "Ximpleware." XimpleWare further objects to this topic as overly broad and unduly

2   burdensome to the extent that it is not limited to a relevant time period.

3          Subject to and without waiving the foregoing objections, XimpleWare will produce a

4   witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

5   the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

6   confidential information.

7   **Topic No. 3:**

8          The means by which Ximpleware has been made available to third parties from January

9   1, 2006 to the present, including without limitation the identity of any third-party distributor and

10   source and binary distributions of the Java version and .zip and .jar forms.

11   **Response to Topic No. 3:**

12          XimpleWare incorporates by reference each and every one of the General Objections as if

13   set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

14   information subject to a Protective Order, privacy interest, contractual obligation, or other

15   confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

16   extent that it calls for provision of confidential or proprietary information of XimpleWare.

17   XimpleWare will only testify to information it deems confidential pursuant to a Protective Order.

18   XimpleWare further objects to this topic to the extent that it is impermissibly vague, ambiguous

19   or fails to describe the deposition topic with reasonable particularity. XimpleWare further objects

20   to this topic as vague and ambiguous regarding its use of the phrases "means," "Ximpleware,"

21   and "source and binary distributions of the Java version and .zip and .jar forms."

22          Subject to and without waiving the foregoing objections, XimpleWare will produce a

23   witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

24   the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

25   confidential information.

26   //

27   //

28   //

Computerlaw Group LLP
www.computerlaw.com℠

1 **Topic No. 4:**

2    Any basis for concluding that Versata could have obtained Ximpleware pursuant to terms
3 and conditions other than those contained in GNU GPL Version 2, attached as Exhibit C hereto,
4 including but not limited to any commercial license.

5 **Response to Topic No. 4:**

6    XimpleWare incorporates by reference each and every one of the General Objections as if
7 set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of
8 information subject to a Protective Order, privacy interest, contractual obligation, or other
9 confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the
10 extent that it calls for provision of confidential or proprietary information of XimpleWare.
11 XimpleWare will only testify to information it deems confidential pursuant to a Protective Order.
12 XimpleWare further objects to this topic to the extent that it is impermissibly vague, ambiguous
13 or fails to describe the deposition topic with reasonable particularity. XimpleWare further objects
14 to this topic as vague and ambiguous regarding its use of the phrase "Ximpleware." XimpleWare
15 further objects to this topic as overly broad and unduly burdensome to the extent that it is not
16 limited to a relevant time period.

17    Subject to and without waiving the foregoing objections, XimpleWare will produce a
18 witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to
19 the terms of a mutually acceptable Protective Order for the protection of XimpleWare's
20 confidential information.

21 **Topic No. 5:**

22    The benefits vtd-xml is designed to provide to a Java-based program that must have the
23 capability to parse xml files.

24 **Response to Topic No. 5:**

25    XimpleWare incorporates by reference each and every one of the General Objections as if
26 set forth here in full. XimpleWare objects to this topic to the extent that it calls for provision of
27 confidential or proprietary information of XimpleWare. XimpleWare further objects to this topic
28 as seeking information that is not relevant nor reasonably calculated to lead to the discovery of

Computerlaw Group LLP
www.computerlaw.com℠

1  admissible evidence because it seeks an opinion, legal or otherwise. XimpleWare will only

2  testify to confidential information pursuant to a Protective Order.

3      Subject to and without waiving the foregoing objections, XimpleWare will produce a

4  witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

5  the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

6  confidential information.

7  **Topic No. 6:**

8      Your source code distribution expectations for licensees who obtain Ximpleware via the

9  Sourceforge.net

10  **Response to Topic No. 6:**

11      XimpleWare incorporates by reference each and every one of the General Objections as if

12  set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

13  information subject to a Protective Order, privacy interest, contractual obligation, or other

14  confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

15  extent that it calls for provision of confidential or proprietary information of XimpleWare.

16  XimpleWare will only testify to information it deems confidential pursuant to a Protective Order.

17  XimpleWare further objects to this topic to the extent that it is impermissibly vague, ambiguous

18  or fails to describe the deposition topic with reasonable particularity. XimpleWare further objects

19  to this topic as vague and ambiguous regarding its use of the phrases "Ximpleware" and

20  "expectations." XimpleWare further objects to this topic as overly broad and unduly burdensome

21  to the extent that it is not limited to a relevant time period.

22      Subject to and without waiving the foregoing objections, XimpleWare will produce a

23  witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

24  the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

25  confidential information.

26  **Topic No. 7:**

27      The authenticity of and foundation for any documents produced in response to the

28  attached set of document requests.

Computerlaw Group LLP
www.computerlaw.com℠

1 | **Response to Topic No. 7:**

2 |     Subject to and without waiving the foregoing objections, and subject to the specific

3 | objections to each request for production of documents below, XimpleWare will produce a

4 | witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

5 | the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

6 | confidential information.

7 | <div align="center">**DOCUMENT REQUESTS**</div>

8 | **Request No. 1:**

9 |     All licenses or contracts between You and Versata.

10 | **Response to Request No. 1:**

11 |     XimpleWare is unable to comply with this request. XimpleWare has made a diligent

12 | search for the documents or things requested and a reasonable inquiry in an effort to comply with

13 | this request. XimpleWare is unable to produce the items requested because, to the best of

14 | XimpleWare's knowledge and belief, the item or category has never existed.

15 | **Request No. 2:**

16 |     Records sufficient to show all contact with the website SourceForge.net (or from any

17 | other source by which Ximpleware may be obtained, if any) by Versata relating to Ximpleware,

18 | including records sufficient to identify the IP addresses making such contact.

19 | **Response to Request No. 2:**

20 |     XimpleWare incorporates by reference each and every one of the General Objections as if

21 | set forth here in full. XimpleWare further objects to this request as vague and ambiguous in its

22 | use of the phrase "Ximpleware." XimpleWare further objects to this request to the extent it

23 | purports to require XimpleWare to produce documents containing the trade secret, proprietary, or

24 | confidential information of XimpleWare or third parties; XimpleWare may allow for the

25 | production of such documents under an appropriate Protective Order, but pending such action,

26 | XimpleWare will not produce such documents. XimpleWare further objects to this request to the

27 | extent the information requested is publicly available, and therefore as unduly burdensome.

28 | //

Computerlaw Group LLP
www.computerlaw.com℠

1    Subject to and without waiving the foregoing objections, and based upon XimpleWare's

2  understanding of a reasonable meaning of the phrase "Ximpleware" XimpleWare will produce

3  any responsive documents that are actually in XimpleWare's possession, custody, or control,

4  pursuant to the terms of a mutually acceptable Protective Order for the protection of

5  XimpleWare's confidential information, except for privileged documents, which XimpleWare

6  will not produce.

7  **Request No. 3:**

8    Records sufficient to show all downloads of Ximpleware by Versata, along with any

9  associated license that accompanied such download.

10  **Response to Request No. 3:**

11    XimpleWare incorporates by reference each and every one of the General Objections as if

12  set forth here in full. XimpleWare further objects to this request as vague and ambiguous in its

13  use of the phrases "Ximpleware" and "associated license."

14    Subject to and without waiving the foregoing objections, and based upon XimpleWare's

15  understanding of a reasonable meaning of the phrases "Ximpleware" and "associated license."

16  XimpleWare will produce any responsive documents that are actually in XimpleWare's

17  possession, custody, or control, pursuant to the terms of a mutually acceptable Protective Order

18  for the protection of XimpleWare's confidential information, except for privileged documents,

19  except for privileged documents, which XimpleWare will not produce.

20  **Request No. 4:**

21    Records sufficient to demonstrate the forms of licenses under which you have offered

22  Ximpleware to third parties (with redactions of financial terms of the license if desired) and the

23  time periods during which such licenses were offered.

24  **Response to Request No. 4:**

25    XimpleWare incorporates by reference each and every one of the General Objections as if

26  set forth here in full. XimpleWare further objects to this request as vague and ambiguous in its

27  use of the phrase "Ximpleware." XimpleWare further objects to this request as overly broad and

28  unduly burdensome to the extent that it is not limited to a relevant time period. XimpleWare

Computerlaw Group LLP
www.computerlaw.com℠

1   further objects to this request to the extent it purports to require XimpleWare to produce

2   documents containing the trade secret, proprietary, or confidential information of XimpleWare or

3   third parties; XimpleWare may allow for the production of such documents under an appropriate

4   Protective Order, but pending such action, XimpleWare will not produce such documents.

5   **Request No. 5:**

6        Records sufficient to demonstrate all forms in which Ximpleware was distributed from

7   January 1, 2006 to the present, including but not limited to source and binary distributions of the

8   Java version and .zip and .jar forms, along with exemplars of all such distributions.

9   **Response to Request No. 5:**

10       XimpleWare incorporates by reference each and every one of the General Objections as if

11   set forth here in full. XimpleWare further objects to this request as vague and ambiguous in its

12   use of the phrases "Ximpleware" and "source and binary distributions of the Java version and

13   .zip and .jar forms." XimpleWare further objects to this request to the extent it purports to require

14   XimpleWare to produce documents containing the trade secret, proprietary, or confidential

15   information of XimpleWare or third parties; XimpleWare may allow for the production of such

16   documents under an appropriate Protective Order, but pending such action, XimpleWare will not

17   produce such documents.

18

19                        COMPUTERLAW GROUP LLP

20   Dated: October 23, 2013        By: _____

                                   Jack Russo

21                               Christopher Sargent

                              Ansel Halliburton

22

23                               Attorneys for Plaintiff

                              XIMPLEWARE CORP.

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

# EXHIBIT 7

1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   Ansel Halliburton (Cal. Bar No. 282906)
    COMPUTERLAW GROUP LLP
3   401 Florence Street
    Palo Alto, CA 94301
4   (650) 327-9800
    (650) 618-1863 fax
5   jrusso@computerlaw.com
    csargent@computerlaw.com
6   ahalliburton@computerlaw.com

7   Attorneys for Plaintiff
    XIMPLEWARE CORP.

8

9           IN THE SUPERIOR COURT OF CALIFORNIA

10         IN AND FOR THE COUNTY OF SANTA CLARA

11

| | |
|---|---|
| 12  **Versata Software, Inc.,** f/k/a **Trilogy** **Software, Inc.,** and **Versata Development** | Case No. D-1-GN-12-003588 |
| 13  **Group, Inc.,** f/k/a **Trilogy Development** **Group, Inc.,** | **XIMPLEWARE CORP.'S RESPONSES** |
| 14              Plaintiffs; | **AND OBJECTIONS TO PLAINTIFF** **VERSATA'S CROSS-NOTICE OF** |
| 15       v. | **INTENTION TO TAKE ORAL AND** **VIDEOTAPED DEPOSITION OF** |
| 16  **Ameriprise Financial, Inc., Ameriprise** **Financial Services, Inc.,** and **American** | **XIMPLEWARE CORP.** |
| 17  **Enterprise Investment Services, Inc.** | |
| 18           Defendants. | |

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1    Pursuant to California Code of Civil Procedure Section 2025.010, *et seq.*, XimpleWare
2  Corp. ("XimpleWare") hereby responds to Plaintiff Versata Software, Inc.'s ("Versata" or
3  "Plaintiff") Cross-Notice of Intention to Take Oral and Videotaped Deposition of Ximpleware
4  Corp. ("Subpoena") as follows:

5                                **GENERAL OBJECTIONS**

6    1.    Ximpleware objects to the noticed date of the deposition as "November 5, 2013"
7  as it was set without consulting with counsel regarding availability of witnesses and counsel.
8  Ximpleware is prepared to make a witness or witnesses available to testify on Ximpleware's
9  behalf concerning the deposition topics for which Ximpleware has no objections, as indicated
10  below.

11    2.    XimpleWare has made a reasonable inquiry concerning the matter in each
12  particular deposition topic and document request. The following responses and objections are
13  based on XimpleWare's present state of recollection, knowledge, and belief. XimpleWare
14  reserves the right to supplement the responses set forth below at XimpleWare's option, or to
15  introduce at trial, or other proceedings related to this action, information not set forth herein if
16  such materials become known or available to XimpleWare subsequent to the date of this
17  response. Consequently, these responses are at all times subject to additional or different
18  information that discovery may disclose, and, while based on the present state of recollection, are
19  subject to such refreshing of recollection, and such knowledge or facts may result from further
20  investigation by XimpleWare and its attorneys.

21    3.    XimpleWare's responses and objections are made without in any way waiving or
22  intending to waive, but on the contrary intending to preserve:

23        a.    All questions as to competency, relevancy, materiality, privilege, and admissibility
24  as evidence for any purpose of the responses, documents, or subject matter thereof, in any
25  subsequent proceeding or the trial of this or any other action;

26        b.    The right to object on any ground to the use of any of said responses or
27  documents, or their subject matter, in all subsequent proceedings, including the trial of this or
28  any other action;

1         c.  The right to object on any ground to any request for further responses to these or

2 any other discovery requests involving or relating to the subject matter of the document requests

3 and topics for examination;

4         d.  The right to supplement, modify, or amend the responses; and

5         e.  Except for explicit facts admitted or denied herein, no incidental or prior

6 admissions or denials are intended.

7     4.     XimpleWare objects to each definition and deposition topic to the extent it

8 purports to impose a greater burden on XimpleWare than the California Code of Civil Procedure,

9 the California Rules of Court, Local Rules, or any other applicable rules or statutes would

10 require.

11     5.     XimpleWare objects to each definition to the extent that it seeks to broaden the

12 scope of allowable discovery and compel XimpleWare to produce information or documentation

13 not in the possession, custody, or control of XimpleWare.

14     6.     XimpleWare will respond to the subpoena to the extent it, and its individual

15 document requests and topics for testimony, are not objectionable for the reasons below.

16 XimpleWare reserves the right to further object to the subpoena in any response.

17     7.     Ximpleware objects to each and every request to the extent it seeks information

18 already in a party's possession or available to a party from some other source (including public

19 sources) that is more convenient, less burdensome, or less expensive. This means that if you war

20 seeking information from XimpleWare that is equally available from a party in the above-

21 referenced litigation, XimpleWare objects to that request on that basis.

22     8.     XimpleWare further objects to each and every request to the extent it seeks

23 information containing confidential, financial, proprietary, or trade secret information, or any

24 information subject to a confidentiality agreement or Protective Order. While XimpleWare does

25 not require a Protective Order for production of its non-confidential information, XimpleWare

26 will only produce information it deems confidential pursuant to a confidentiality agreement or

27 Protective Order that it deems suitably protective. Should a Protective Order become necessary,

28 we would request that you provide a draft for our review and revisions.

Computerlaw Group LLP
www.computerlaw.com℠

1    9.    XimpleWare further objects to each and every request to the extent it seeks
2   information protected by any privilege, including, though not limited to, the attorney-client
3   privilege, work product immunity doctrine, joint defense privilege, common interest privilege, or
4   any other applicable privilege, immunity, or restriction on discovery.

5    10.    XimpleWare further objects to each and every request to the extent it is overly
6   broad, unduly burdensome, oppressive, or seeking information that is neither relevant to the
7   disputed issues in the action nor likely to lead to the discovery of admissible evidence.

8    11.    XimpleWare further objects to each and every request to the extent it is vague,
9   ambiguous, unintelligible, not limited in time or scope, fail to identify the information sought
10   with reasonable particularity, or impose an undue burden on XimpleWare, including seeking
11   electronically stored information that is not reasonably accessible to XimpleWare, or information
12   that is not and has never been in XimpleWare's custody or control.

13    12.    Pursuant to Cal. Code. Civ. Proc. § 2031.210, XimpleWare objects to each and
14   every request on the grounds that it includes or relies upon a preface or instruction that has not
15   been approved under Cal. Code. Civ. Proc. §2031.210 *et seq.*

16    13.    These General Objections shall be deemed to be incorporated in full into the
17   response to each deposition topic and request set forth below and any responses are subject to the
18   limitation and objections set forth herein, and are without prejudice to XimpleWare's rights with
19   respect thereto.

20             **OBJECTIONS AND RESPONSES TO TOPICS FOR EXAMINATION**

21   **Topic No. 1:**

22        The authors of Ximpleware's XML parser.

23   **Response to Topic No. 1:**

24        XimpleWare incorporates by reference each and every one of the General Objections as if
25   set forth here in full. XimpleWare objects to this topic as vague and ambiguous regarding its use
26   of the phrase "Ximpleware XML parser."

27        Subject to and without waiving the foregoing objections, XimpleWare will produce a
28   witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

Computerlaw Group LLP
www.computerlaw.com℠

1   the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

2   confidential information.

3   **Topic No. 2:**

4   The content of the copyright application for Ximpleware's XML parser.

5   **Response to Topic No. 2:**

6   XimpleWare incorporates by reference each and every one of the General Objections as if

7   set forth here in full. XimpleWare objects to this topic as vague and ambiguous regarding its use

8   of the phrase "Ximpleware XML parser."

9   Subject to and without waiving the foregoing objections, XimpleWare will produce a

10  witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

11  the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

12  confidential information.

13  **Topic No. 3:**

14  The forms of licenses under which you have offered Ximpleware to third parties.

15  **Response to Topic No. 3:**

16  XimpleWare incorporates by reference each and every one of the General Objections as if

17  set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

18  information subject to a Protective Order, privacy interest, contractual obligation, or other

19  confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

20  extent that it calls for provision of confidential or proprietary information of XimpleWare.

21  XimpleWare will only testify to confidential information pursuant to a Protective Order.

22  XimpleWare further objects to this topic as vague and ambiguous regarding its use of the phrase

23  "forms of licenses." XimpleWare further objects to this topic as overly broad and unduly

24  burdensome to the extent that it is not limited to a relevant time period.

25  Subject to and without waiving the foregoing objections, XimpleWare will produce a

26  witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

27  the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

28  confidential information.

Computerlaw Group LLP
www.computerlaw.com℠

Ximpleware's Responses &amp;                           4                    Case No. D-1-GN-003588
Objections to Cross-Notice

1  **Topic No. 4:**

2      Communications between Ameriprise or Infosys and Ximpleware.

3  **Response to Topic No. 4:**

4      XimpleWare incorporates by reference each and every one of the General Objections as if

5  set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

6  information subject to a Protective Order, privacy interest, contractual obligation, or other

7  confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

8  extent that it calls for provision of confidential or proprietary information of XimpleWare.

9  XimpleWare will only testify to confidential information pursuant to a Protective Order.

10  XimpleWare further objects to this topic as overly broad and unduly burdensome to the extent

11  that it is not limited to a relevant time period.

12  **Topic No. 5:**

13      Deals or understandings between Ximpleware and Ameriprise or Infosys.

14  **Response to Topic No. 5:**

15      XimpleWare incorporates by reference each and every one of the General Objections as if

16  set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

17  information subject to a Protective Order, privacy interest, contractual obligation, or other

18  confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

19  extent that it calls for provision of confidential or proprietary information of XimpleWare.

20  XimpleWare will only testify to confidential information pursuant to a Protective Order.

21  XimpleWare further objects to this topic as overly broad and unduly burdensome to the extent it

22  seeks information that is neither relevant to the disputed issues in this action nor likely to lead to

23  the discovery of admissible evidence. XimpleWare further objects to this topic as vague and

24  ambiguous regarding its use of the phrase "deals or understandings." XimpleWare further objects

25  to this topic as overly broad and unduly burdensome to the extent that it is not limited to a

26  relevant time period.

27  //

28  //

Computerlaw Group LLP
www.computerlaw.com℠

Ximpleware's Responses &amp;             5             Case No. D-1-GN-003588
Objections to Cross-Notice

1 **Topic No. 6:**

2     The use of Ximpleware within a java application, including how reference is made to

3 Ximpleware by third party software.

4 **Response to Topic No. 6:**

5     XimpleWare incorporates by reference each and every one of the General Objections as if

6 set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

7 information subject to a Protective Order, privacy interest, contractual obligation, or other

8 confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

9 extent that it calls for provision of confidential or proprietary information of XimpleWare.

10 XimpleWare will only testify to confidential information pursuant to a Protective Order.

11 XimpleWare further objects to this topic as vague and ambiguous regarding its use of the phrases

12 "how reference is made" and "java application." XimpleWare further objects to this topic as

13 overly broad and unduly burdensome to the extent that it is not limited to a relevant time period.

14     Subject to and without waiving the foregoing objections, XimpleWare will produce a

15 witness or witnesses at a mutually convenient date and time to testify to this topic, pursuant to

16 the terms of a mutually acceptable Protective Order for the protection of XimpleWare's

17 confidential information.

18 **Topic No. 7:**

19     The extent to which Ximpleware is integrated or embedded into third party applications.

20 **Response to Topic No. 7:**

21     XimpleWare incorporates by reference each and every one of the General Objections as if

22 set forth here in full. XimpleWare objects to this topic to the extent it seeks disclosure of

23 information subject to a Protective Order, privacy interest, contractual obligation, or other

24 confidentiality obligation owed to a third party. XimpleWare further objects to this topic to the

25 extent that it calls for provision of confidential or proprietary information of XimpleWare.

26 XimpleWare will only testify to confidential information pursuant to a Protective Order.

27 XimpleWare further objects to this topic as overly broad and unduly burdensome to the extent

28 that it is not limited to a relevant time period.

Computerlaw Group LLP
www.computerlaw.com™

Ximpleware's Responses &amp;
Objections to Cross-Notice
    6    Case No. D-1-GN-003588

1                        **DOCUMENT REQUESTS**

2 **Request No. 1:**

3       All communications with Ameriprise or Infosys including all communications with

4 anyone acting on behalf of Ameriprise or Infosys that: relates to DCM; to any potential causes of

5 action against Versata by Ameriprise or Ximpleware; or any alleged breaches of any license

6 agreement by Versata.

7 **Response to Request No. 1:**

8       XimpleWare incorporates by reference each and every one of the General Objections as if

9 set forth here in full. XimpleWare objects to this request to the extent it purports to require the

10 production of documents protected by the attorney-client privilege or the work product doctrine,

11 and XimpleWare shall not produce such privileged documents. XimpleWare further objects to

12 this request to the extent it purports to require XimpleWare to produce documents containing the

13 trade secret, proprietary, or confidential information of XimpleWare or third parties; XimpleWare

14 may allow for the production of such documents under an appropriate Protective Order, but

15 pending such action, XimpleWare will not produce such documents. XimpleWare further objects

16 to this request as seeking documents that, to the extent they exist, can be more easily obtained

17 from a party in the above-captioned action, and, because such documents may be obtained more

18 readily and less expensively from a party in the action, as being unwarranted, oppressive, and

19 unduly burdensome. XimpleWare further objects to this request as overly broad, unduly

20 burdensome, and oppressive to the extent that it is not limited to a relevant time period.

21 **Request No. 2:**

22       All Communications with Ameriprise or Infosys which relate to Ximpleware's licensing

23 practices.

24 **Response to Request No. 2:**

25       XimpleWare incorporates by reference each and every one of the General Objections as if

26 set forth here in full. XimpleWare further objects to this request to the extent it purports to

27 require the production of documents protected by the attorney-client privilege or the work

28 product doctrine, and XimpleWare shall not produce such privileged documents. XimpleWare

Computerlaw Group LLP
www.computerlaw.com℠

1 further objects to this request to the extent it purports to require XimpleWare to produce

2 documents containing the trade secret, proprietary, or confidential information of XimpleWare or

3 third parties; XimpleWare may allow for the production of such documents under an appropriate

4 Protective Order, but pending such action, XimpleWare will not produce such documents.

5 XimpleWare further objects to this request as vague and ambiguous in its use of the phrase

6 "licensing practices." XimpleWare further objects to this request as seeking documents that, to

7 the extent they exist, can be more easily obtained from a party in the above-captioned action,

8 and, because such documents may be obtained more readily and less expensively from a party in

9 the action, as being unwarranted, oppressive, and unduly burdensome. XimpleWare further

10 objects to this request as overly broad, unduly burdensome, and oppressive to the extent that it is

11 not limited to a relevant time period.

12 **Request No. 3:**

13     All agreements, proposals, or other documents received from Ameriprise which relate to

14 DCM; to any potential or current causes of action against Versata by Ameriprise or Ximpleware;

15 or any alleged breaches of any license agreement by Versata.

16 **Response to Request No. 3:**

17     XimpleWare incorporates by reference each and every one of the General Objections as if

18 set forth here in full. XimpleWare further objects to this request to the extent it purports to

19 require the production of documents protected by the attorney-client privilege or the work

20 product doctrine, and XimpleWare shall not produce such privileged documents. XimpleWare

21 further objects to this request to the extent it purports to require XimpleWare to produce

22 documents containing the trade secret, proprietary, or confidential information of XimpleWare or

23 third parties; XimpleWare may allow for the production of such documents under an appropriate

24 Protective Order, but pending such action, XimpleWare will not produce such documents.

25 //

26 //

27 //

28 //

Computerlaw Group LLP
www.computerlaw.com℠

1   XimpleWare further objects to this request as seeking documents that, to the extent they exist,
2   can be more easily obtained from a party in the above-captioned action, and, because such
3   documents may be obtained more readily and less expensively from a party in the action, as
4   being unwarranted, oppressive, and unduly burdensome. XimpleWare further objects to this
5   request as overly broad, unduly burdensome, and oppressive to the extent that it is not limited to
6   a relevant time period.

7   **Request No. 4:**

8       Any records of any payments made to Ximpleware by Ameriprise or Infosys, or any
9   promises to pay Ximpleware, any amount of money by Ameriprise or Infosys.

10  **Response to Request No. 4:**

11      XimpleWare incorporates by reference each and every one of the General Objections as if
12  set forth here in full. XimpleWare further objects to this request to the extent it purports to
13  require the production of documents protected by the attorney-client privilege or the work
14  product doctrine, and XimpleWare shall not produce such privileged documents. XimpleWare
15  further objects to this request to the extent it purports to require XimpleWare to produce
16  documents containing the trade secret, proprietary, or confidential information of XimpleWare or
17  third parties; XimpleWare may allow for the production of such documents under an appropriate
18  Protective Order, but pending such action, XimpleWare will not produce such documents.
19  XimpleWare further objects to this request as seeking documents that, to the extent they exist,
20  can be more easily obtained from a party in the above-captioned action, and, because such
21  documents may be obtained more readily and less expensively from a party in the action, as
22  being unwarranted, oppressive, and unduly burdensome.

23  //
24  //
25  //
26  //
27  //
28  //

Computerlaw Group LLP
www.computerlaw.com℠

1 **Request No. 5:**

2   A copy of Ximpleware's copyright registration.

3 **Response to Request No. 5:**

4   Subject to and without waiving the foregoing objections, XimpleWare will produce a

5 copy of XimpleWare's copyright registration, pursuant to the terms of a mutually acceptable

6 Protective Order for the protection of XimpleWare's confidential information.

7

8                  COMPUTERLAW GROUP LLP

9 Dated: October 23, 2013        By: _____
                      Jack Russo

10                  Christopher Sargent
                 Ansel Halliburton

11                  Attorneys for Plaintiff
                 XIMPLEWARE CORP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

# EXHIBIT 8

| | |
|---|---|
| **From:** | Collard, Case |
| **To:** | "Jack Russo" |
| **Cc:** | Chris Sargent; Ansel Halliburton; Eric Young |
| **Subject:** | RE: Ximpleware Depo Dates |
| **Date:** | Wednesday, November 06, 2013 9:50:21 AM |

Hi Jack –

Just following up on my calls of Friday and yesterday to get your proposed dates for the Ximpleware deposition.  In light of the filing yesterday, we'd really like to get this firmed up on the schedule.

Best,

Case

Case Collard

Dorsey & Whitney LLP

Office: 303 352 1116

Mobile: 720 839 4353

---

**From:** Jack Russo [mailto:jrusso@computerlaw.com]
**Sent:** Friday, November 01, 2013 2:47 PM
**To:** Collard, Case
**Cc:** Chris Sargent; Ansel Halliburton; Eric Young
**Subject:**

As promised, here is my contact information.

Regards,

Jack Russo

Managing Partner

COMPUTERLAW GROUP LLP

401 Florence Street

Palo Alto, CA 94301   USA

www.computerlaw.com

Sent from Windows Mail

# EXHIBIT 9

1    Jack Russo (Cal. Bar No. 96068)
     Christopher Sargent (Cal. Bar No. 246285)
2    Ansel Halliburton (Cal. Bar No. 282906)
     COMPUTERLAW GROUP LLP
3    401 Florence Street
     Palo Alto, CA 94301
4    (650) 327-9800
     (650) 618-1863 fax
5    jrusso@computerlaw.com
     csargent@computerlaw.com
6    ahalliburton@computerlaw.com

7    Attorneys for Plaintiff
     XIMPLEWARE CORP.

8

9                UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12    **XimpleWare Corp.**, a California
     Corporation,

13

14              Plaintiff;

15       v.

16    **Versata Software, Inc., f/k/a Trilogy
     Software, Inc.,** a Delaware corporation;
17    **Trilogy Development Group, Inc.,** a
     California corporation; **Ameriprise
18    Financial, Inc.,** a Delaware corporation;
     **Ameriprise Financial Services, Inc.,** a
19    Delaware corporation, and **Aurea Software,
     Inc. a/k/a Aurea, Inc.,** a Delaware
20    corporation,

21             Defendants.

Case No. 13-5160

**COMPLAINT FOR:**

**(1) DIRECT COPYRIGHT INFRINGEMENT**
**(2) CONTRIBUTORY COPYRIGHT
     INFRINGEMENT**
**(3) VIOLATION OF LANHAM ACT § 43(A)**
**(4) BREACH OF CONTRACT**
**(5) BREACH OF THE IMPLIED COVENANT OF
     GOOD FAITH AND FAIR DEALING**
**(6) UNJUST ENRICHMENT**
**(7) INTENTIONAL INTERFERENCE WITH
     PROSPECTIVE ECONOMIC ADVANTAGE**
**(8) UNFAIR COMPETITION**
**(9) DECLARATORY RELIEF**

**Jury Trial Demanded**

22

23

24

25

26

27

28

*Computerlaw Group LLP*
*www.computerlaw.com℠*

Complaint                                             Case No. 13-5160

1    Plaintiff XimpleWare Corp. alleges the following against Defendants Versata Software,

2  Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Aurea Software, Inc.

3  a/k/a Aurea, Inc. (collectively "Versata" or the "Versata Defendants"); and against Ameriprise

4  Financial, Inc., and Ameriprise Financial Services, Inc., ((collectively "Ameriprise" or the

5  "Ameriprise Defendants") and Versata and Ameriprise are collectively the "Defendants"):

6                              **NATURE OF ACTION**

7    1.    This action involves claims of copyright infringement under 17 U.S.C. § 501 *et*

8  *seq.*, breach of contract, violation of Lanham Act Section 43(a), breach of the implied covenant

9  of good faith and fair dealing, unjust enrichment, intentional interference with prospective

10  economic advantage, unfair competition under California Business and Professions Code §

11  17200 *et seq.*, *alter ego* liability, and declaratory relief.

12                                **PARTIES**

13    2.    Plaintiff XimpleWare Corp. ("XimpleWare") is a corporation organized under the

14  laws of, and registered to do business in, California, with its principal place of business in

15  Milpitas, California.

16    3.    Plaintiff XimpleWare is the designer, developer, and distributor of advanced

17  computer software and, as an enterprise that practices its own patents, it has delivered to the

18  marketplace advanced computer software that provides enterprises, Fortune 5000 corporations,

19  firms, and other businesses with an advanced data processing solution for challenging data

20  processing problems. Plaintiff XimpleWare has a number of licensed customers including

21  Matrikon, Inc., Smith & Tinker, Inc., United Stationers Technology Services LLC, and Zoosk,

22  Inc.

23    4.    Defendant Versata Software, Inc., f/k/a Trilogy Software, Inc. ("Versata") is a

24  private corporation registered to do business in California, organized under the laws of Delaware,

25  with its principal place of business in Austin, Texas.

26    5.    Defendant Trilogy Development Group, Inc. ("Trilogy") is a corporation

27  organized under the laws of California, with its principal place of business in Austin, Texas. On

28

Computerlaw Group LLP
www.computerlaw.com℠

1  information and belief, Trilogy acquired Defendant Versata in or about February 2006, and

2  Trilogy is now the parent company of Versata and its subsidiaries.

3       6.      Defendant Aurea Software, Inc., a/k/a Aurea, Inc. ("Aurea") is a corporation

4  registered to do business in California, organized under the laws of Delaware with its principal

5  place of business in Austin, Texas. On information and belief, Aurea merged with Trilogy and

6  Versata in October, 2013.[1]

7       7.      Defendant Ameriprise Financial, Inc. is a corporation registered to do business in

8  California, organized under the laws of Delaware, with its principal place of business located in

9  Minneapolis, Minnesota. On information and belief, Ameriprise is a leading diversified financial

10  services provider, providing a range of financial planning products and is a customer of Versata

11  and Trilogy.

12      8.      Defendant Ameriprise Financial Services, Inc. is a corporation registered to do

13  business in California, organized under the laws of Delaware, with its principal place of business

14  located in Minneapolis, Minnesota. On information and belief, Defendant Ameriprise Financial

15  Services, Inc. is a subsidiary of Defendant Ameriprise Financial, Inc. (together, Ameriprise

16  Financial, Inc. and Ameriprise Financial Services Inc. shall be referred to as "Ameriprise").

17      9.      Plaintiff is informed and believes and on that basis alleges (collectively

18  hereinafter "on information and belief"), that at all relevant times Trilogy was and is the

19  operating entity of, and has effective, if not actual, control over the business decisions made by

20  its subsidiaries, Versata and Aurea.

21      10.      On information and belief, at all relevant times, Versata and Aurea were the mere

22  solely controlled instrumentalities of Trilogy and functioned as Trilogy's *alter egos*, and all

23  undertakings by Versata and Aurea were known by, sanctioned, or done at the direction and sole

24  control of Trilogy, or by others serving under Trilogy's direction and/or sole control.

25      11.      On information and belief, at all relevant times, Trilogy, Versata, Aurea, and a

26  number of other entities have acted and continue to act in conspiracy to obscure Versata's

27  liability for copyright infringement, Lanham Act violations, breaches of contract, and wrongful

28

---
[1] http://www.aurea.com/pressrelease/20131013

Computerlaw Group LLP
www.computerlaw.com℠

1    conduct. On information and belief, those acts consist of, but are not limited to, the comingling

2    of corporate funds and assets; failure to segregate funds and assets of the separate entities;

3    concealment and misrepresentation of the identity and ownership of the corporations; disregard

4    for formalities and failure to maintain arms' length relationships among the various entities; the

5    use of the corporate entity to procure labor, services, or merchandise for another entity; the

6    manipulation of assets and liabilities between entities so as to concentrate the assets in one and

7    the liabilities in another; contracting with one another with intent to avoid performance by use of

8    a corporate entity as a shield against liability of another entity; and the use of a corporation to

9    transfer to it the existing liability of another entity.

10        12.    By reason of the foregoing, this Court should pierce the corporate veils of Versata

11   and Aurea and hold Trilogy or any other parent company or controlling persons or entities liable

12   for Versata's monetary and other obligations as determined at trial.

13                        **JURISDICTION AND VENUE**

14        13.    This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and

15   1338(a) because Federal courts have exclusive jurisdiction in copyright cases, and because those

16   claims are Federal questions.

17        14.    This Court has personal jurisdiction over all defendants because all Defendants do

18   substantial business in this District.

19        15.    Venue is proper, under 28 U.S.C. §§ 1331, 1391(c), 1391(d), and 1400(b). This

20   action raises federal questions (copyright infringement); substantial part of the events giving rise

21   to this action occurred in this District; the creation, infringement, and sale of software at issue

22   involved corporations registered to do business in California with California subsidiaries,

23   branches, and partners found in and doing business in this district; and at least one act of

24   infringement took place in this District.

25   //

26   //

27   //

28   //

Computerlaw Group LLP
www.computerlaw.com℠

## BACKGROUND FACTS

## XML Parsing

16.     A parser is a piece of software that reads certain electronic files and makes the information from those files available to applications and programming languages, acting as a go-between as underlying code which can be written in any number of programming languages and what a user sees when the program runs.

17.     Extensible Markup Language (known as XML) is a set of rules for encoding documents electronically. Known as a metalanguage, XML allows one to design a markup language which is in turn used for the easy interchange of documents on the World Wide Web. XML is itself a subset of a standard called SGML, and can be used to design a tagging scheme that allows elements of a document to be marked according to their content rather than their format.

18.     Information stored in XML documents can be used more effectively when parsed—read line by line or node by node to fetch pieces of information for the program to read and translate. In essence, parsing is the act of analyzing a set of characters or data and then determining, recognizing, deciphering, or acquiring the significant data and commands from a sequence of programming code, and translating the code which allows the program to do the job for which it was designed.

## Formation of XimpleWare

19.     In October 2002, Zhengyu "Jimmy" Zhang founded XimpleWare (the "Company") with a since-departed co-founder Hui Tian. Mr. Ying Shum (who has since passed away) was an advisor to the company during its early stages. Using experience gained from fifteen years in the software engineering field, Mr. Zhang started XimpleWare with the goal of achieving maximum efficiency for XML processing by using dedicated integrated circuits as a system on a chip (SOC). Mr. Tian left the venture in 2003, and since then Mr. Zhang has handled all creative and managerial responsibilities at XimpleWare.

20.     Mr. Zhang chose the name "XimpleWare" for his new venture to evoke the efficiency, speed, and simplicity with which his innovative source code parses XML. The name

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

also included the letters X-M-L, further identifying XimpleWare's goal and product in the marketplace.

21.     Mr. Zhang began writing the XimpleWare Source code (the "Source Code") in 2004, and has since put in over 10,000 work hours of computer programming into developing and improving the XimpleWare product.

22.     In its nascent stages, XimpleWare was funded entirely by seed money from friends and family of the original founders, mostly from Mr. Zhang and his parents. Mr. Tian still holds a minority stake in the company, but apart from Mr. Zhang, Mr. Tian, and Ying Shum, there are no other owners, venture capital groups, angel investors, or parties with an interest in XimpleWare.

### Open Source Software

23.     Open source software is computer software whose source code is available free of charge for the public to use, copy, modify, sublicense, or distribute. While some developers choose to provide their product entirely free of charge, many developers and companies— including large public companies like Oracle and IBM—make use of open source licensing and its collaborative nature to create or incorporate code into products that can be licensed for profit outside the open source community.

24.      By licensing one's source code as part of the open source community, or making modifications to someone else's source code under an open source license, the creator is granted certain protections, depending on the permissiveness of the particular license, from improper use of his or her intellectual property. To that end, most, if not all, open source licenses apply certain requirements and restrictions for the method and manner in which code extracted from an open source repository can be used, and attaches conditions any such use.

25.     There are many commonly used open source licenses, including the GNU General Public License, the BSD License, and the Apache License.

26.     XimpleWare made the business decision to license its Source Code under the GNU General Public License version 2 ("GPL"). A copy of the GPL is attached to this Complaint as **Exhibit 1**. Due to the fundamental properties of XML technology, XML parsing

Computerlaw Group LLP
www.computerlaw.com℠

1    innovations are very hard to sell. A parser is not an end-user product, *i.e.*, it must be integrated

2    into another existing product.

3        27.    The GPL requires, among other things, (1) that any changes made to the code

4    carry notices stating that the files were changed, and the date of all changes; (2) any code created

5    or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices

6    must print or display when the code is run; and (4) that when distributed, the program must be

7    accompanied by the complete machine-readable source code.

8        28.    XimpleWare chose the GPL approach because it is one of the most restrictive

9    open source licenses available, requiring that any derivative code incorporating GPL-protected

10   code must be returned to the open source community in its entirety. This concept is often referred

11   to as "copyleft."

12                                **The XimpleWare Product**

13       29.    The complete XimpleWare software product, known as "VTD-XML" or "VTD-

14   XML Extended" (collectively, the "Product"), is made up of a number constituent parts, each

15   with individual functions, and is written in several different programming languages. Most of the

16   code, however, is written in Java, which is one of the most popular programming languages in

17   use today.

18       30.    XML is ubiquitous in today's business world. For example, since 2007, the file

19   formats for Microsoft Office are based on XML,[2] and many modern web pages are coded in

20   XML.[3]

21       31.    The XimpleWare Source Code and Product reads and parses XML at a rate

22   estimated to be five to ten times faster than other current XML parsing programs, effecting

23   greater efficiency and speed. It also provides indexing and incremental capabilities that are

24

25   [2] Tom Ngo, "Office Open XML Overview", Ecma International, http://www.ecma-
     international.org/news/TC45_current_work/OpenXML%20White%20Paper.pdf (last accessed
26   Sep. 10, 2013) (archived at http://perma.cc/0fyzpuJ6Vzg).
27   [3] Murray Altheim and Shane McCarron, eds., XHTML™ 1.1 - Module-based XHTML - Second
     Edition, W3C Recommendation, World Wide Web Consortium, Nov. 23, 2010,
28   http://www.w3.org/TR/xhtml11/ (last accessed Sep. 10, 2013) (archived at
     http://perma.cc/05zB2mzwJW8).

crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs.

32.     The Product is an enabler for any program that uses XML in its applications, but to see the upside in the parsing speed, customers have to try it.

33.     XimpleWare has had interest and licensing discussions with several industry leaders, and has established its vtd-xml software as a leading technology in XML parsing.

34.     XimpleWare has always incorporated all copyright and other notices required by the GPL into every iteration of its Source Code.

### The XimpleWare Source Code

35.     Over the course of over ten years, Mr. Zhang updated and improved the Source Code and Product (and still does), checking out sections of code to work on and then checking it back in to an open source database called SourceForge. SourceForge is a community-based website where software developers can publish source code to a global audience, and can join and collaborate on open source projects.[4]

36.     One of the principal tools SourceForge provides is version control systems. A version control system is a computer program that manages a set of source code. Programmers use version control systems by "checking out" a copy of the source code to their own computer, making changes, and then submitting those changes back into the version control system in a process called "checking in." Each check-in is documented in the version control system with time, date, and contributor information, as well as comments from the programmer describing his or her changes. With a version control system, it is possible to review all changes to a set of source code and to know who made those changes.

Computerlaw Group LLP
www.computerlaw.com℠

---

[4] SourceForge "About" page, http://sourceforge.net/about (last accessed Sep. 10, 2013) (noting SourceForge has "3.4 million developers [who] create powerful software in over 324,000 projects") (archived at http://perma.cc/0fwQ1xw51i1).

37.     SourceForge also provides a system where programmers not affiliated with a project may submit suggested changes to members of the project. The members may then choose to check those changes in to the version control system, or to reject them. As with any other check-in, time, date, contributor, and other information are logged in the version control system.

38.     One version control system offered by SourceForge is the Concurrent Versions System, commonly known as "CVS". Like other version control systems, CVS tracks who made which changes to the managed source code, and CVS keeps a log of those revisions.

39.     XimpleWare placed its Source Code on SourceForge, and managed that Source Code in SourceForge's CVS system.

### The XimpleWare Registered Copyrights

40.     XimpleWare is the owner of all right, title, and interest in all copyrights, including but not limited to all U.S. Copyrights on the Source Code. All versions of the Source Code have appropriate copyright notices printed or affixed conspicuously on the first page of each work, as required by the GPL.

41.     XimpleWare also registered its copyright in the Source Code with the U.S. Copyright Office. Attached as **Exhibit 2** is a true and correct copy of the copyright registration certificate for Registration No. TX 7-727-556, dated September 4, 2013.

42.     There has been no challenge to any of the XimpleWare copyrights, or any other XimpleWare intellectual property rights.

43.     XimpleWare uses the GPL-required copyright notices on its Product and its documentation to give actual and constructive notice of the existence of the XimpleWare copyrights.

### Defendants Misappropriate XimpleWare's Source Code

44.     In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute.

45.     According to documents filed in that case, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for breach of contract, among other claims.

Computerlaw Group LLP
www.computerlaw.com℠

46.     During the prosecution of that lawsuit, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's GPL-licensed Source Code in the source code of Versata's DCM product.

47.     On information and belief, the DCM product contains none of the copyright and use notices required by the GPL, which Versata apparently removed in violation of 17 U.S.C. § 506(d), which is a criminal statute.

48.     On information and belief, Versata then either replaced the copyright notices with false, altered notices, or removed the notices entirely to aid its improper use of the Source Code.

49.     XimpleWare has never granted any of the Versata Defendants any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

50.     XimpleWare has never granted Ameriprise or any other defendant in this case any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

51.     On information and belief, Versata has distributed thousands of unauthorized copies of the Product or the Source Code to a number of customers, and Versata has illegally collected revenues on the sale and distribution of the derivative DCM product incorporating XimpleWare's Source Code, in violation of XimpleWare's copyrights. XimpleWare estimates Versata's total sales of the infringing DCM product to exceed $300,000,000.

52.     Defendants have infringed, and are still infringing on the XimpleWare's intellectual property rights by making, selling, and using the DCM product incorporates XimpleWare's copyrighted Source Code, and the Defendants will continue to do so unless this Court enjoins them.

53.     XimpleWare has complied with the statutory requirement of placing a notice of the copyrights on all the software it makes and sells or otherwise publishes.

//

//

//

**FIRST CLAIM FOR RELIEF**

**DIRECT COPYRIGHT INFRINGEMENT**

**(AGAINST ALL DEFENDANTS)**

54. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

55. XimpleWare is the owner of the XimpleWare Source Code, Product, and related documentation.

56. The XimpleWare Source Code is an original work of authorship, and constitutes copyrightable expression and subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, as amended. XimpleWare has complied in all respects with the Copyright Act in securing for itself the exclusive rights in its copyrights to the XimpleWare Source Code. XimpleWare has applied for, and obtained, a certificate of copyright registration from the Register of Copyrights. See Exhibit 2.

57. XimpleWare's copyright in the Source Code is valid and fully enforceable in accordance with the United States Copyright Act (17 U.S.C. § 101 *et seq.*).

58. The Versata Defendants, and each of them, accessed the Source Code which XimpleWare had licensed under the GPL and via SourceForge, and have copied, distributed, and prepared copies and/or derivative works in violation of XimpleWare's rights under 17 U.S.C. § 106.

59. The Versata Defendants incorporated the Source Code into their own DCM product and, on information and belief, sold that and other Versata Products to Ameriprise as well as a number of other customers.

60. On information and belief, without any license or other authorization of Plaintiff, Ameriprise purchased the Versata Products containing XimpleWare's copyrighted Source Code and Product and reproduced and distributed that material internally in violation of XimpleWare's copyrights. The Versata Defendants incorporated XimpleWare's Source Code and Product into various products for Ameriprise and other customers, based on individual customers' project

Computerlaw Group LLP
www.computerlaw.com℠

1    parameters and needs. On information and belief, Ameriprise then copied, reproduced,

2    distributed, and re-implemented the Versata Products in their own systems as they saw fit.

3         61.    Defendants' acts constitute direct copyright infringement and have already

4    damaged XimpleWare, and continue to damage XimpleWare. Defendants' ongoing infringement

5    will continue to damage XimpleWare and cause irreparable harm for which there is no adequate

6    remedy at law. Without preliminary and permanent injunctive relief, XimpleWare has no means

7    by which to control Defendants' continued unauthorized distribution and sale of infringing

8    derivatives of XimpleWare's original and copyrighted work, and XimpleWare will continue to be

9    irreparably harmed. XimpleWare is therefore entitled to preliminary and permanent injunctive

10   relief prohibiting Defendants from distributing, displaying, selling, or otherwise requiring the

11   impoundment and/or destruction of all copies of the XimpleWare Source Code—or any

12   derivative works—in Defendants' possession, custody, or control.

13        62.    XimpleWare is further entitled to recover from Defendants the actual damages it

14   has sustained, and will sustain, as a result of Defendants' infringement, or, alternatively and at its

15   election, statutory damages under the Copyright Act.

16        63.    At all times, Defendants' copyright infringement was and is knowing and willful.

17   The GPL, a copy of which must be included with to all GPL-licensed source code, was always

18   included with every version of the XimpleWare Source Code available on SourceForge. Further,

19   as required by the GPL, notices of copyright were printed or otherwise affixed to all versions of

20   the Source Code. Therefore, Defendants knew or reasonably should have known that the Source

21   Code was the copyrighted work of XimpleWare, for which Defendants did not have a

22   commercial license, and Defendants did in fact copy, adapt, and distribute works derived from

23   the Source Code in either source or compiled form. There is no basis on which Defendants could

24   believe that their commercial use of the XimpleWare Source Code was a fair use. No Defendants

25   have ever obtained a commercial license from XimpleWare.

26        64.    Defendants' infringements of XimpleWare's copyrights are the direct and

27   proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory

28   damages in an amount to be determined at trial.

Computerlaw Group LLP
www.computerlaw.com℠

65.     XimpleWare is further entitled to recover from Defendants all of the gains, profits, and advantages they have obtained as a result of the infringement, and for disgorgement of any additional gains, profits, and advantages Defendants obtained that are attributable to their infringements of the Source Code, in an amount to be proven at trial, together with attorneys' fees and costs pursuant to 17 U.S.C §§ 504 and 505.

<u>SECOND CLAIM FOR RELIEF</u>

CONTRIBUTORY COPYRIGHT INFRINGEMENT

(AGAINST VERSATA DEFENDANTS)

66.     XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

67.     XimpleWare is the owner of the XimpleWare Source Code Product and related documentation.

68.     The XimpleWare Source Code is an original work of authorship, and constitutes copyrightable expression and subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, as amended. XimpleWare has complied in all respects with the Copyright Act in securing for itself the exclusive rights in his copyrights to the XimpleWare Source Code. XimpleWare has applied for, and obtained, a certificate of copyright registration from the Register of Copyrights. See Exhibit 2.

69.     XimpleWare's copyright in the Source Code is valid and fully enforceable in accordance with the United States Copyright Act (17 U.S.C. § 101 *et seq.*).

70.     The Versata Defendants accessed and downloaded the XimpleWare Source Code via SourceForge, incorporated the Source Code into their own DCM product and, on information and belief, sold that and other Versata Products to Ameriprise and a number of other customers, knowing they would make further unauthorized copies. The Versata Defendants induced and contributed to the infringement of XimpleWare's copyrights by others—namely, their customers—by marketing and selling software derived from the XimpleWare Source Code.

//

//

Computerlaw Group LLP
www.computerlaw.com℠

71.     At all relevant times, the Versata Defendants had the right and ability to control to conduct of infringer Customer Defendants and others; Versata owned contracts with its customers and was in control of the products it sold and otherwise supplied in fulfillment of those contracts—Versata Products which induced the Customer Defendants to directly infringe XimpleWare's copyrights.

72.     The Versata Defendants received direct financial benefit from the infringement of the Customer Defendants by way of the contracts it owned, and the software Versata supplied in fulfillment of those contracts.

73.     The Versata Defendants had a supervisory relationship to the directly infringing Customer Defendants, and the Versata Defendants are therefore vicariously, jointly, and severally liable for inducing that infringement.

74.     Defendants' acts constitute contributory and vicarious copyright infringement and have already damaged XimpleWare, and continue to damage XimpleWare. The Versata Defendants' ongoing infringement will continue to damage XimpleWare and cause irreparable harm for which there is no adequate remedy at law. Without preliminary and permanent injunctive relief, XimpleWare has no means by which to control Versata's continued unauthorized distribution and sale of infringing derivatives of XimpleWare's original and copyrighted work, and XimpleWare will continue to be irreparably harmed. XimpleWare is therefore entitled to preliminary and permanent injunctive relief prohibiting Defendants from distributing, displaying, or selling, the XimpleWare product or Source Code, and requiring the impoundment and/or destruction of all copies of the XimpleWare Source Code—or any derivative works—in Defendants' possession, custody, or control.

75.     XimpleWare is further entitled to recover from Defendants the actual damages it has sustained, and will sustain, as a result of the Versata Defendants' infringement, or, alternatively and at its election, statutory damages under the Copyright Act.

76.     At all times, the Versata Defendants' contributory and vicarious copyright infringement was and continues to be knowing and willful. The GPL, a copy of which is attached to all GPL-licensed source code, was necessarily attached to any version of the XimpleWare

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1 Source Code taken from SourceForge. Further, as required by the GPL, notices of copyright were

2 printed or otherwise affixed to all versions of the Source Code. Therefore, the Versata

3 Defendants knew or reasonably should have known that the Source Code was the copyrighted

4 work of XimpleWare, for which Versata did not have a commercial license, and Versata did in

5 fact copy, adapt, and distribute works derived from the Source Code in either source or compiled

6 form to Ameriprise and others, inducing those customers to infringe XimpleWare's copyrights.

7     77.     XimpleWare is further entitled to recover from Defendants all of the gains,

8 profits, and advantages they have obtained as a result of the infringement, and for disgorgement

9 of any additional gains, profits, and advantages the Versata Defendants obtained that are

10 attributable to their infringements of the Source Code, in an amount to be proven at trial, together

11 with attorneys' fees and costs pursuant to 17 U.S.C §§ 504 and 505.

12 <div align="center">**THIRD CLAIM FOR RELIEF**</div>

13 <div align="center">**VIOLATION OF LANHAM ACT § 43(A)**</div>

14 <div align="center">**(AGAINST VERSATA DEFENDANTS)**</div>

15     78.     XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in

16 full.

17     79.     On information and belief, at all relevant times, the Versata Defendants

18 downloaded XimpleWare's Source Code, incorporated that Source Code wholesale into its own

19 Versata Products, and marketed and sold those Versata Products as their own, failing to attribute

20 authorship of the Source Code to XimpleWare. This wholesale copying and bodily

21 misappropriation represents the misattribution and misrepresentation of XimpleWare's work as

22 Versata's authorship for Versata's gain, confusing consumers as to the true origin and auther of

23 the Source Code.

24     80.     Such "reverse passing off" of XimpleWare's Source Code is unlawful under

25 Section 43(a) of the Lanham Act. Under Section 43(a) of the Lanham Act, it is unlawful when a

26 person

27 //

28 //

Complaint         14         Case No. 13-5160

> [I]n connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, <u>or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,</u> connection, or association of such person with another person, <u>or as to the origin,</u> sponsorship, or approval of his or her goods, services, or commercial activities by another person…

15 U.S.C. § 1125(a) (emphasis added).

81.     "Section 43(a) of the Lanham Act prohibits the use of false designations of origin and false representation in the… sale of goods and services." *Smith v. Montoro*, 648 F.2d 602, 603 (1981). "'Reverse passing off' or 'reverse palming off' occurs when a product is mislabeled to mask the creator's contribution." *Cleary v. News Corp.*, 30 F.3d 1255, 1260 (1994).

82.     Versata falsely designated origin and inaccurately attributed the creation of the Source Code to itself, and failed and continues to fail to properly attribute that Source Code to XimpleWare.

83.     On information and belief, Versata willfully copied the XimpleWare Source Code **in its entirety**, removed all Copyright notices in violation of 17 U.S.C. § 506(d), as well as any notice of origin from that Source Code, and falsely and wrongfully incorporated it into Versata Products without attributing the Source Code to its true author and owner, XimpleWare. Versata then sold those products under the Versata name to a number of customers, causing deception and false representations as to the true creator of the Source Code.

84.     This wholesale and willful copying meets all Ninth Circuit standards for establishing Versata's "reverse passing off," misattribution, and false designation or origin of the XimpleWare Source Code in violation of Section 43(a) of the Lanham Act.

85.     At all times, the Versata Defendants' repeated violations of Section 43(a) were knowing and willful.

86.     The Versata Defendants' willful violations of Lanham Act Section 43(a) are the direct and proximate cause of harm to XimpleWare, and XimpleWare is entitled to disgorgement of all profits as well as compensatory damages in an amount to be determined at trial.

87.     XimpleWare is further entitled to an award of exemplary damages including attorneys' fees, costs of suit, and enhanced damages for Versata's willful violations.

Computerlaw Group LLP
www.computerlaw.com℠

**FOURTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(AGAINST VERSATA DEFENDANTS)**

88.     XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

89.     XimpleWare made available and licensed the Source Code under the General Public License.

90.     The GNU GPL, in plain English, lays out the rights and responsibilities of, and establishes a contract between, contributors and licensees of source code licensed under the GPL. This [GPL] applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of the General Public License. The "Program" below, refers to any such program or work, and a "work based on the Program" means either the Program or any derivative work under copyright law: that is to say, a work <u>containing the Program or a portion of it</u>, either verbatim or with modifications and/ or translated into another language.[5]

91.     The GPL makes clear in its Terms And Conditions For Copying, Distribution And Modification that any licensee may copy and distribute a program's source code protected by the GPL or a work based on that program provided that the licensee does the following:

(1)     conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty;

(2)     keep intact all the notices that refer to the GPL;

(3)     give any other recipients of the program a copy of the GPL **along with the program itself**; and

(4)     accompany the program with (a) the complete machine-readable source code on a medium customarily used for software interchange, or (b) with a written offer to supply the source code to any third party for no more than the cost of physically performing the distribution.[6]

Computerlaw Group LLP
www.computerlaw.com℠

---

[5] Ex. 1 at ¶ 0. (Emphasis added.)
[6] Id. at ¶¶ 1, 3. (Emphasis added.)

92.     The GPL also allows for modification of a program provided that:

(1)     all modified files carry prominent notices stating that the licensee changed the files and the date of any change;

(2)     the licensee cause any work that it distributes or publishes, that in whole or in part contains or is derived from protected source code or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of the GPL;

(3)     the modified program print or display an announcement including an appropriate copyright notice;

(4)     the modified program print or display an announcement including a notice that users may redistribute the program under the conditions of the GPL; and

(5)     the modified program print or display an announcement telling the user how to view a copy of the GPL.[7]

93.     On information and belief, the Versata Defendants downloaded and used GPL-protected source code belonging to XimpleWare, thereby explicitly agreeing to be bound by its terms and conditions, which include, among other terms:

> You [the licensee] may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. . . You are not required to accept this License, since you have not signed it. However, noting else grants you permission to modify or distribute the Program or its derivative works. These actions are prohibited by law if you do not accept this License. Therefore, by modifying or distributing the Program (or any work based on the Program), you indicate your acceptance of this License to do so, and all its terms and conditions for copying, distributing or modifying the Program or works based on it.[8]

94.     XimpleWare performed all of its legally required responsibilities under the GPL by attaching all the required notices to every version of the Source Code uploaded using the SourceForge CVS system.

---

[7] Id. at ¶ 2.
[8] Id. at ¶¶ 4–5.

Computerlaw Group LLP
www.computerlaw.com℠

95.     By downloading the XimpleWare Source Code, by incorporating it into its DCM product (thereby modifying the Source Code), by removing license information, and by failing to perform any of its responsibilities under the GPL, the Versata Defendants have breached their contract with XimpleWare. On information and belief, the Versata Defendants have further violated their contract by distributing its DCM and a number of other products to third party customers without attaching any of the notices required by the GPL, effectively passing the Source Code off as their own product, to XimpleWare's detriment.

96.     The Versata Defendants' breach of their contract under the GPL has violated XimpleWare's rights under the GPL, and has thereby adversely affected XimpleWare's ability to effectively license its Source Code outside the open source community, causing XimpleWare substantial and irreparable harm.

97.     The Versata Defendants' material breaches of contract are the direct and proximate cause of damages to XimpleWare.

98.     XimpleWare is entitled to compensatory damages in an amount to be determined at trial, but which is believed to be in excess of $150,000,000, together with attorneys' fees and costs, and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

### FIFTH CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (AGAINST VERSATA DEFENDANTS)

99.     XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

100.    The Parties entered into a contract under the GPL. XimpleWare agreed by uploading its Source Code to the SourceForge repository and attaching a copy of the GPL, as well as the copyright, waiver, and license notices the GPL requires. The Versata Defendants agreed to be bound by the GPL by downloading, modifying, and distributing XimpleWare's Source Code, all copies of which bore notices that the Source Code was licensed under the GPL.

Computerlaw Group LLP
www.computerlaw.com℠

101.    XimpleWare performed all or substantially all of the significant things that the GPL required of it.

102.    Given the contractual relationship between XimpleWare and the Versata Defendants created by the GPL, the Versata Defendants had an implied obligation and duty, under California law, to act in good faith and deal fairly with the XimpleWare.

103.    All conditions required for the Versata Defendants' performance of the contract occurred, and all of those conditions were clearly stated in the copy of the GPL Versata received when it downloaded the Source Code.

104.    In committing the actions above, including but not limited to its failure to notify XimpleWare (and any third party customers) that its DCM product contained XimpleWare's GPL-protected source code, the Versata Defendants acted in bad faith in a manner designed to cause XimpleWare harm. The Versata Defendants' actions breached the covenant of good faith and fair dealing.

105.    XimpleWare was and continues to be harmed as a direct and proximate result of Versata's misconduct and XimpleWare has been damaged in an amount to be determined at trial, but which is believed to be in excess of $150,000,000, together with attorneys' fees and costs, as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

106.    The Versata Defendants' misconduct was malicious, oppressive, and in reckless disregard of XimpleWare's rights under California law. Actual harm has been inflicted on XimpleWare as a result of that misconduct, and XimpleWare is therefore entitled to an award of punitive damages in an amount sufficient to punish the Versata Defendants for their actions.

//
//
//
//
//
//

Computerlaw Group LLP
www.computerlaw.com℠

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(AGAINST ALL DEFENDANTS)**

107.    XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

108.    Defendants' wrongful acts unjustly enriched Defendants by allowing them to avoid the time and cost of developing software or source code capable of XML parsing at the level that XimpleWare's Source Code achieves. Versata touts on its website the speed and efficiency of its DCM product—advantages that it obtained by using XimpleWare's Source Code.

109.    Defendants' wrongful acts unjustly enriched Defendants by allowing them to benefit from the advantages XimpleWare's Source Code added to the various products Defendants offer, including, but not limited to Versata's and Aurea's DCM product which, on information and belief, Trilogy endorses and from which it derives revenue as Versata's and Aurea's parent company.

110.    XimpleWare invested substantial time, effort, and money in developing the Product and Source Code, and took care to license the Source Code under the GPL, and XimpleWare has been injured as a result of Defendants' wrongful misappropriations of XimpleWare's Source Code and breach of the GPL.

111.    Defendants' misconduct is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial, as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

//

//

//

//

//

Computerlaw Group LLP
www.computerlaw.com℠

**S**EVENTH **C**LAIM **F**OR **R**ELIEF

**I**NTENTIONAL **I**NTERFERENCE **W**ITH **P**ROSPECTIVE **E**CONOMIC **A**DVANTAGE

(**A**GAINST **V**ERSATA **D**EFENDANTS)

112. XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

113. XimpleWare created and owns the Source Code Mr. Zhang created, which drastically increases XML parsing speed and efficiency over today's industry standards.

114. XimpleWare had a reasonable expectation that it would maintain an uninhibited right and ability to effectively market and license the XimpleWare Product containing its Source Code, rights protected by the GPL as well as federal and California law.

115. On information and belief, the Versata Defendants downloaded, modified, and distributed the Source Code in the various Versata Products without printing the required copyright, waiver, and licensing notices or returning the derived products to the open source community. In doing so, the Versata Defendants and each of them have interfered with XimpleWare's business relationships with its current and prospective client by improper means, including but not limited to copyright infringement, unfair competition, breach of contract, and misleading representations about the ownership and origin of the Source Code, all alleged above.

116. The Versata Defendants' tortious interference with XimpleWare's business relationships has adversely affected XimpleWare's ability to effectively license its Product.

117. The Versata Defendants' misconduct is the direct and proximate cause of damages to XimpleWare.

118. XimpleWare is entitled to compensatory damages in an amount to be determined at trial as well as disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code, believed to be in excess of $150,000,000.

119. The Versata Defendants' misconduct was malicious, oppressive, and in reckless disregard of XimpleWare's rights under California law. Actual harm has been inflicted on

Computerlaw Group LLP
www.computerlaw.com℠

1    XimpleWare as a result of that misconduct, and XimpleWare is therefore entitled to an award of

2    punitive damages in an amount sufficient to punish the Versata Defendants for their actions.

### EIGHTH CLAIM FOR RELIEF

#### UNFAIR COMPETITION

#### (AGAINST ALL DEFENDANTS)

6    120.    XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in

7    full.

8    121.    Mr. Zhang developed the Source Code on XimpleWare's behalf with the use of

9    his own resources. XimpleWare made the Source Code available to the open source community,

10   including Defendants, by uploading the Source Code to the SourceForge repository and allowing

11   use of that Source Code according to the provisions on the GPL.

12   122.    Mr. Zhang spent over ten years developing the Source Code, and has created a

13   product with enormous growth potential through his own knowledge, skills, and experience. The

14   fruit of that labor is a XimpleWare Product capable of parsing XML with unprecedented

15   efficiency. Mr. Zhang invested his time and effort in a product that he believed he would be able

16   to effectively license for profit outside of the open source community, as many companies would

17   prefer to purchase a commercial license directly from the software creator than be bound by the

18   GPL to return any derivative works to the open source pool. Many software companies, such as

19   MySQL (acquired by Sun Microsystems for approximately $1 billion,[9] in turn acquired by

20   Oracle) have successfully pursued such a dual-licensing strategy.

21   123.    On information and belief, Versata downloaded the XimpleWare Source Code,

22   modified and incorporated it into the Versata DCM product, and distributed that derivative work

23   to a number of customers, including the other Defendants in this case.

24   124.    On information and belief, Trilogy, as Versata's and Aurea's parent company,

25   knew of and endorsed Versata's and Aurea's misuse of XimpleWare's Source Code.

26   _____

[9] Sun Microsystems Announces Completion of MySQL Acquisition; Paves Way for Secure,
27   Open Source Platform to Power the Network Economy", Feb. 26,
2008, http://www.mysql.com/news-and-events/sun/ (last accessed Nov. 5, 2013) (archived
28   at http://perma.cc/05MvHjLSayY).

125. On information and belief, Versata incorporated its DCM product into products it supplied to Ameriprise and other customers. Ameriprise, after discovering that certain sections of the DCM code were protected by the GPL and belonged to XimpleWare, continued to use the product as part of their internal systems and benefit from the advantages the XimpleWare Source Code and Product delivered.

126. Section 17200 of the California Business and Professions Code prohibits any unlawful, unfair, or fraudulent business acts or practices. "Unlawful" practice is any act forbidden by federal, state, municipal or regulatory law." *People v. McKale* 25 Cal.3d 626, 632 (1972) (internal quotations omitted). "Unfair" simply means any practice whose harm to the victim outweighs its benefits. *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App.3d 735, 740 (1980) (internal quotations omitted).

127. By engaging in copyright infringement of the Source Code and breaching the terms and conditions of the GPL and violating numerous other laws, including at least one criminal copyright statute, Defendants committed an unlawful practice or act under Section 17200. In addition, Defendants committed unfair practices or acts under the California Business and Professions Code by (a) by deriving benefits from XimpleWare's efforts and work without providing compensation or honoring its obligations under the GPL; (b) continuing the unlawful use of XimpleWare's Source Code; (c) misrepresenting the DCM product as wholly of Versata's own creation; and (d) restraining competition by depriving XimpleWare of a chance to pursue competitive business opportunities through fraudulent representation regarding the creation and ownership of the Source Code.

128. Defendants engaged in unfair competition which caused harm to XimpleWare. Those actions should be enjoined to prevent further harm to XimpleWare, the proper owner of the Source Code. XimpleWare is entitled to injunctive relief forbidding Defendants to use, copy, or distribute the Source Code as well as restitution of any money or property which Defendants and each of them have acquired by means of unfair competition and disgorgement of all revenues and profits associated with Defendants' licensing or sale of products containing the XimpleWare Source Code.

Computerlaw Group LLP
www.computerlaw.com℠

## NINTH CLAIM FOR DECLARATORY RELIEF

### (AGAINST ALL DEFENDANTS)

129.   XimpleWare incorporates the allegations in paragraphs 1–53 as if set forth here in full.

130.   XimpleWare owns a copyright registered with the United States Copyright Office.

131.   XimpleWare has the superior, and indeed only, right to continue to use, make, sell, or offer for sale its Source Code, subject to the GPL, as the lawful owner of the Copyright.

132.   Versata improperly downloaded and exploited XimpleWare's Source Code without adhering to the obligations set forth in the GPL, all to XimpleWare's detriment. On information and belief, Versata has sold the Source Code, incorporated into its DCM product, among others, to Ameriprise and a number of other companies.

133.   As such, XimpleWare requests that this Court declare that the Federal Copyright Registration No. TX 7-727-556 titled "vtd-xml version 2.3", issued on September 4, 2013 is valid and enforceable.

134.   The requested declaration is necessary and appropriate at this time to affirm XimpleWare's rights to exclusive use and sale of its protected property.

135.   Plaintiff has no adequate remedy at law and Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

XimpleWare prays for judgment against all Defendants, and each of them, and those persons in control of or acting in concert with them as follows:

A.   On the First and Second Claims for Relief, for preliminary and permanent injunctive relief enjoining Defendants—and their officers, agents, servants, employees, and all other persons in active concert with them—from directly or indirectly infringing XimpleWare's copyrights, and from continuing to copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived from XimpleWare's proprietary works, or participating or assisting in any such activity; for actual damages according

Computerlaw Group LLP
www.computerlaw.com℠

1  to proof, and for disgorgement of any additional gains, profits, and advantages Defendants

2  obtained that are attributable to their infringements of the Source Code; and for applicable

3  statutory damages for Defendants' copyright infringement.

4       B.     On the Third Claim for Relief, for damages including disgorgement of all profits,

5  as well as other damages sustained by Plaintiff as a result of Versata's violations of

6  15 U.S.C. § 1125(a), and an award of enhanced damages adequate to compensate for Versata's

7  willful violations, up to and including trebling of XimpleWare's damages.

8       C.     On the Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief, for damages in

9  an amount to be determined at trial, but which is believed to be in excess of $150,000,000.

10      D.     On the Fifth and Seventh Claims for Relief, for punitive damages in an amount

11  sufficient to punish Defendants for their willful and wrongful acts.

12      E.     On the Ninth Claim for Relief, for a declaration that:

13           1.     XimpleWare is the sole owner of all Copyrights including all rights and

14  Copyright Registration No. TX 7-727-556;

15           2.     the XimpleWare copyrights are valid and enforceable;

16           3.     XimpleWare has the exclusive right to make sell, offer for sale and copy

17  the XimpleWare Product and Source Code; and

18           4.     temporary, preliminary, and permanent injunction under Federal Rule of

19  Civil Procedure Rule 65.

20      F.     On all Claims for Relief, for a constructive trust of all benefits Defendants gained,

21  and disgorgement of all revenues and profits associated with Defendants' licensing or sale of

22  products containing the XimpleWare Source Code.

23      G.     For costs of suit including any applicable interest and reasonable attorneys' fees

24  as allowed by law.

25      H.     For such other, further, and different relief as the Court deems just and proper.

26                        **JURY TRIAL DEMAND**

27      Plaintiff hereby demands a trial by jury on each and every cause of action which is triable

28  by or which may otherwise be tried by jury in this action.

Computerlaw Group LLP
www.computerlaw.com℠

1

2
                                                              COMPUTERLAW GROUP LLP

Dated:  November 5, 2013                   By:    /s/ Jack Russo
3
                                                            Jack Russo
4
                                                            Christopher Sargent
                                                            Ansel Halliburton

5

6
                                                            Attorneys for Plaintiff
                                                            XIMPLEWARE CORP.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

# EXHIBIT 10

1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9                      UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California          Case No. 13-5161
    Corporation,
13                                              **COMPLAINT FOR:**
                    Plaintiff;
14                                              **(1) DIRECT PATENT INFRINGEMENT**
            v.                                  **(2) INDUCING PATENT INFRINGEMENT**
15                                              **(3) DECLARATORY RELIEF**
    **Versata Software, Inc., f/k/a Trilogy**
16  **Software, Inc.,** a Delaware corporation; **Jury Trial Demanded**
    **Trilogy Development Group, Inc.,** a
17  California corporation; **Ameriprise**
    **Financial, Inc.,** a Delaware corporation;
18  **Ameriprise Financial Services, Inc.,** a
    Delaware corporation; **Aurea Software, Inc.,**
19  **a/k/a Aurea, Inc.,** a Delaware corporation;
    **Pacific Life Insurance Company**, a
20  Nebraska corporation; **United HealthCare**
    **Services, Inc.**, a Minnesota corporation;
21  **Metropolitan Life Insurance Company**, a
    New York corporation; **The Prudential**
22  **Insurance Company of America**, a New
    Jersey corporation; **Wellmark, Inc.,** an Iowa
23  corporation; **Waddell & Reed Financial,**
    **Inc.,** a Delaware corporation; and **Aviva USA**
24  **Corporation**, an Iowa corporation,

25                  Defendants.

26

27

28

*Computerlaw Group LLP*
*www.computerlaw.com℠*

Complaint                                                          Case No. 13-5161

1  Plaintiff XimpleWare Corp. alleges the following against Defendants Versata Software,

2  Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Aurea Software, Inc.

3  a/k/a Aurea, Inc. (collectively "Versata" or the "Versata Defendants"); and against Ameriprise

4  Financial, Inc., Ameriprise Financial Services, Inc., Pacific Life Insurance Company, United

5  HealthCare Services, Inc., Metropolitan Life Insurance Company, The Prudential Insurance

6  Company of America, Wellmark, Inc., Waddell & Reed Financial, Inc., and Aviva USA

7  Corporation ((collectively the "Customer Defendants"); and the Versata Defendants and the

8  Customer Defendants are collectively the "Defendants"):

### NATURE OF ACTION

10  1.  This action involves claims of patent infringement under 35 U.S.C. § 271 *et seq.*

11  and declaratory relief.

### PARTIES

13  2.  Plaintiff XimpleWare Corp. ("XimpleWare") is a corporation organized under the

14  laws of, and registered to do business in, California, with its principal place of business in

15  Milpitas, California.

16  3.  Plaintiff XimpleWare is the designer, developer, and distributor of advanced

17  computer software and, as an enterprise that practices its own patents, it has delivered to the

18  marketplace advanced computer software that provides enterprises, Fortune 5000 corporations,

19  firms, and other businesses with an advanced data processing solution for challenging data

20  processing problems. Plaintiff XimpleWare has a number of licensed customers including

21  Matrikon, Inc., Smith & Tinker, Inc., United Stationers Technology Services LLC, and Zoosk,

22  Inc.

23  4.  Defendant Versata Software, Inc., f/k/a Trilogy Software, Inc. ("Versata") is a

24  private corporation registered to do business in California, organized under the laws of Delaware,

25  with its principal place of business in Austin, Texas.

26  5.  Defendant Trilogy Development Group, Inc. ("Trilogy") is a corporation

27  organized under the laws of California, with its principal place of business in Austin, Texas. On

28

Computerlaw Group LLP
www.computerlaw.com℠

1    information and belief, Trilogy acquired Defendant Versata in or about February 2006, and

2    Trilogy is now the parent company of Versata and its subsidiaries.

3        6.      Defendant Aurea Software, Inc. a/k/a Aurea, Inc. ("Aurea") is a corporation

4    registered to do business in California, organized under the laws of Delaware with its principal

5    place of business in Austin, Texas. On information and belief, Aurea merged with Trilogy and

6    Versata in October, 2013.[1]

7        7.      Defendant Ameriprise Financial, Inc. is a corporation registered to do business in

8    California, organized under the laws of Delaware, with its principal place of business located in

9    Minneapolis, Minnesota. On information and belief, Ameriprise is a leading diversified financial

10   services provider, providing a range of financial planning products and is a customer of Versata

11   and Trilogy.

12       8.      Defendant Ameriprise Financial Services, Inc. is a corporation registered to do

13   business in California, organized under the laws of Delaware, with its principal place of business

14   located in Minneapolis, Minnesota. On information and belief, Defendant Ameriprise Financial

15   Services, Inc. is a subsidiary of Defendant Ameriprise Financial, Inc. (together, Ameriprise

16   Financial, Inc. and Ameriprise Financial Services Inc. shall be referred to as "Ameriprise").

17       9.      Defendant Pacific Life Insurance Company ("Pacific Life") is a Nebraska

18   corporation with its principal place of business in Newport Beach, California. On information

19   and belief, Pacific Life is a customer of Versata and Trilogy.

20       10.     Defendant United HealthCare Services, Inc. ("UHS") is a public corporation

21   registered to do business in California organized under the laws of Minnesota with its principal

22   place of business in Minnetonka, Minnesota. On information and belief, UHS is a diversified

23   managed health care company and a customer of Versata and Trilogy.

24       11.     Defendant Metropolitan Life Insurance Company ("MetLife") is a public

25   corporation registered to do business in California organized under the laws of New York with its

26   principal place of business in New York, New York. On information and belief, Metlife is a

27

28

---

[1] http://www.aurea.com/pressrelease/20131013

Computerlaw Group LLP
www.computerlaw.com[sm]

1 global provider of insurance, annuities, and employment benefit programs and is a customer of

2 Versata and Trilogy.

3       12.    Defendant The Prudential Insurance Company of America ("Prudential") is a

4 public corporation registered to do business in California organized under the laws of New

5 Jersey with its principal place of business in Newark, New Jersey. On information and belief,

6 Prudential provides insurance and financial services and is a customer of Versata and Trilogy.

7       13.    Defendant Wellmark, Inc. ("Wellmark") is a corporation organized under the laws

8 of Iowa, operating under the fictitious names "Blue Cross and Blue Shield of Iowa" and

9 "Wellmark Blue Cross and Blue Shield." Wellmark has its principal place of business in Des

10 Moines, Iowa. On information and belief, Wellmark is an insurance company and a customer of

11 Versata and Trilogy.

12       14.    Defendant Waddell & Reed Financial, Inc. ("W&R") is a public corporation

13 registered to do business in California, organized under the laws of Delaware with its principal

14 place of business in Overland Park, Kansas. On information and belief, W&R provides asset

15 management and financial planning services and is a customer of Versata and Trilogy.

16       15.    Defendant Aviva USA Corporation ("Aviva") is a company organized under the

17 laws of Iowa with its principal place of business in West Des Moines, Iowa. On information and

18 belief, Aviva is a subsidiary of Aviva, plc., a multinational insurance company headquartered in

19 London, United Kingdom, and is a customer of Versata and Trilogy.

20       16.    Plaintiff is informed and believes and on that basis alleges (collectively

21 hereinafter "on information and belief"), that at all relevant times Trilogy was and is the

22 operating entity of, and has effective, if not actual, control over the business decisions made by

23 its subsidiaries, Versata and Aurea.

24       17.    On information and belief, at all relevant times, Versata and Aurea were the mere

25 solely controlled instrumentalities of Trilogy and functioned as Trilogy's *alter egos*, and all

26 undertakings by Versata and Aurea were known by, sanctioned, or done at the direction and

27 under the sole control of Trilogy, or by others serving under Trilogy's direction and/or sole

28 control.

Computerlaw Group LLP
www.computerlaw.com℠

18.     On information and belief, at all relevant times, Trilogy, Versata, Aurea, and a number of other entities have acted and continue to act in conspiracy to obscure Versata's liability for Patent infringement, breaches of contract, and other wrongful conduct. On information and belief, those acts consist of, but are not limited to, the comingling of corporate funds and assets; failure to segregate funds and assets of the separate entities; concealment and misrepresentation of the identity and ownership of the corporations; disregard for formalities and failure to maintain arms' length relationships among the various entities; the use of the corporate entity to procure labor, services, or merchandise for another entity; the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; contracting with one another with intent to avoid performance by use of a corporate entity as a shield against liability of another entity; and the use of a corporation to transfer to it the existing liability of another entity.

19.     By reason of the foregoing, this Court should pierce the corporate veils of Versata and Aurea  and hold Trilogy or any other parent company or controlling persons or entities liable for Versata's monetary and other obligations as determined at trial.

## JURISDICTION AND VENUE

20.     This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Federal courts have exclusive jurisdiction in patent cases, and because those claims are Federal questions.

21.     This Court has personal jurisdiction over all defendants because all Defendants do substantial business in this District.

22.     Venue is proper, under 28 U.S.C. §§ 1331, 1391(c), 1391(d), and 1400(b). This action raises federal questions (patent infringement); substantial part of the events giving rise to this action occurred in this District; the creation, infringement, and sale of software at issue involved corporations registered to do business in California with California subsidiaries, branches, and partners found in and doing business in this district; and at least one act of infringement took place in this District.

Computerlaw Group LLP
www.computerlaw.com℠

**BACKGROUND FACTS**

**XML Parsing**

23. A parser is a piece of software that reads certain electronic files and makes the information from those files available to applications and programming languages, acting as a go-between as underlying code which can be written in any number of programming languages and what a user sees when the program runs.

24. Extensible Markup Language (known as XML) is a set of rules for encoding documents electronically. Known as a metalanguage, XML allows one to design a markup language which is in turn used for the easy interchange of documents on the World Wide Web. XML is itself a subset of a standard called SGML, and can be used to design a tagging scheme that allows elements of a document to be marked according to their content rather than their format.

25. Information stored in XML documents can be used more effectively when parsed—read line by line or node by node to fetch pieces of information for the program to read and translate. In essence, parsing is the act of analyzing a set of characters or data and then determining, recognizing, deciphering, or acquiring the significant data and commands from a sequence of programming code, and translating the code which allows the program to do the job for which it was designed.

**Formation of XimpleWare**

26. In October 2002, Zhengyu "Jimmy" Zhang founded XimpleWare (the "Company") with a since-departed co-founder Hui Tian. Mr. Ying Shum (who has since passed away) was an advisor to the Company during its early stages. Using experience gained from fifteen years in the software engineering field, Mr. Zhang started XimpleWare with the goal of achieving maximum efficiency for XML processing by using dedicated integrated circuits as a system on a chip (SOC). Mr. Tian left the venture in 2003, and since then Mr. Zhang has handled all creative and managerial responsibilities at XimpleWare.

27. Mr. Zhang chose the name "XimpleWare" for his new venture to evoke the efficiency, speed, and simplicity with which his innovative source code parses XML. The name

Computerlaw Group LLP
www.computerlaw.com℠

1    also included the letters X-M-L, further identifying XimpleWare's goal and product in the

2    marketplace.

3         28.    Mr. Zhang began writing the XimpleWare Source code (the "Source Code") in

4    2004, and has since put in over 10,000 work hours of computer programming into developing

5    and improving the XimpleWare product.

6         29.    In its nascent stages, XimpleWare was funded entirely by seed money from

7    friends and family of the original founders, mostly from Mr. Zhang and his parents. Mr. Tian still

8    holds a minority stake in the company, but apart from Mr. Zhang, Mr. Tian, and Ying Shum,

9    there are no other owners, venture capital groups, angel investors, or parties with an interest in

10   XimpleWare.

11                             **Open Source Software**

12         30.    Open source software is software whose source code is available free of charge

13   for the public to use, copy, modify, sublicense, or distribute. While some developers choose to

14   provide their product entirely free of charge, many developers and companies—including large

15   public companies like Oracle and IBM—make use of open source licensing and its collaborative

16   nature to create or incorporate code into products that can be licensed for profit outside the open

17   source community.

18         31.    By licensing one's source code as part of the open source community, or making

19   modifications to someone else's source code under an open source license, the creator is granted

20   certain protections, depending on the permissiveness of the particular license, from improper use

21   of his or her intellectual property. To that end, most, if not all, open source licenses apply certain

22   requirements and restrictions for the method and manner in which code extracted from an open

23   source repository can be used, and attaches conditions on any such use.

24         32.    There are many commonly used open source licenses, including the GNU General

25   Public License, the BSD License, and the Apache License.

26         33.    XimpleWare made the business decision to license its Source Code under the

27   GNU General Public License version 2 ("GPL"). A copy of the GPL is attached to this

28   Complaint as **Exhibit 1**. Due to the fundamental properties of XML technology, XML parsing

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1  innovations are very hard to sell. A parser is not an end-user product, *i.e.*, it must be integrated

2  into another existing product.

3      34.     The GPL requires, among other things, (1) that any changes made to the code

4  carry notices stating that the files were changed, and the date of all changes; (2) any code created

5  or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices

6  must print or display when the code is run; and (4) that when distributed, the program must be

7  accompanied by the complete machine-readable source code.

8      35.     XimpleWare chose the GPL approach because it is one of the most restrictive

9  open source licenses available, requiring that any derivative code incorporating GPL-protected

10  code must be returned to the open source community in its entirety. This concept is often referred

11  to as "copyleft."

12                          **The XimpleWare Product**

13      36.     The complete XimpleWare software product, known as "VTD-XML" or "VTD-

14  XML Extended" (collectively, the "Product"), is made up of a number of constituent parts, each

15  with individual functions, and is written in several different programming languages. Most of the

16  code, however, is written in Java, which is one of the most popular programming languages in

17  use today.

18      37.     XML is ubiquitous in today's business world. For example, since 2007, the file

19  formats for Microsoft Office are based on XML,[2] and many modern web pages are coded in

20  XML.[3]

21      38.     The XimpleWare Source Code and Product reads and parses XML at a rate

22  estimated to be five to ten times faster than other current XML parsing programs, effecting

23  greater efficiency and speed. It also provides indexing and incremental capabilities that are

24

25  [2] Tom Ngo, "Office Open XML Overview", Ecma International, http://www.ecma-
    international.org/news/TC45_current_work/OpenXML%20White%20Paper.pdf (last accessed
26  Sep. 10, 2013) (archived at http://perma.cc/0fyzpuJ6Vzg).
27  [3] Murray Altheim and Shane McCarron, eds., XHTML™ 1.1 - Module-based XHTML - Second
    Edition, W3C Recommendation, World Wide Web Consortium, Nov. 23, 2010,
28  http://www.w3.org/TR/xhtml11/ (last accessed Sep. 10, 2013) (archived at
    http://perma.cc/05zB2mzwJW8).

Computerlaw Group LLP
www.computerlaw.com℠

1   crucial to many high performance XML applications and are not available in any other XML

2   parsing libraries. Efficiency and speed are critical in many applications of XML, especially in

3   large scale enterprise data interchange applications where entire server computers are dedicated

4   to handling streams of XML data. If XML data can be processed faster, then fewer servers are

5   needed, less leased space in data centers is needed for those servers, and less energy is required

6   to power those servers—altogether greatly reducing computing needs and costs.

7        39.     The Product is an enabler for any program that uses XML in its applications, but

8   to see the upside in the parsing speed, customers have to try it.

9        40.     XimpleWare has had interest and licensing discussions with several industry

10   leaders, and has established its vtd-xml software as a leading technology in XML parsing.

11                              **The XimpleWare Source Code**

12        41.     Over the course of over ten years, Mr. Zhang updated and improved the Source

13   Code and Product (and still does), checking out sections of code to work on and then checking it

14   back in to an open source database called SourceForge. SourceForge is a community-based

15   website where software developers can publish source code to a global audience, and can join

16   and collaborate on open source projects.[4]

17        42.     One of the principal tools SourceForge provides is version control systems. A

18   version control system is a computer program that manages a set of source code. Programmers

19   use version control systems by "checking out" a copy of the source code to their own computer,

20   making changes, and then submitting those changes back into the version control system in a

21   process called "checking in." Each check-in is documented in the version control system with

22   time, date, and contributor information, as well as comments from the programmer describing his

23   or her changes. With a version control system, it is possible to review all changes to a set of

24   source code and to know who made those changes.

25        43.     SourceForge also provides a system where programmers not affiliated with a

26   project may submit suggested changes to members of the project. The members may then choose

27   _____

28   [4] SourceForge "About" page, http://sourceforge.net/about (last accessed Sep. 10, 2013) (noting
     SourceForge has "3.4 million developers [who] create powerful software in over 324,000
     projects") (archived at http://perma.cc/0fwQ1xw51i1)..

1    to check those changes in to the version control system, or to reject them. As with any other

2    check-in, time, date, contributor, and other information are logged in the version control system.

3         44.      One version control system offered by SourceForge is the Concurrent Versions

4    System, commonly known as "CVS". Like other version control systems, CVS tracks who made

5    which changes to the managed source code, and CVS keeps a log of those revisions.

6         45.      XimpleWare placed its Source Code on SourceForge, and managed that Source

7    Code in SourceForge's CVS system.

8                               **The XimpleWare Issued Patents**

9         46.      XimpleWare applied for, and the United States Patent and Trademark Office

10    issued, three patents (the "Patents"):

11           A.    U.S. Patent No. 7,133,857, issued Nov. 7, 2006, titled "Processing structured

12                data" (the "'857 Patent")

           B.    U.S. Patent No. 7,620,652, issued Nov. 17, 2009, titled "Processing structured

13                data" (the "'652 Patent")

           C.    U.S. Patent No. 7,761,459, issued July 20, 2010, titled "Processing structured

14                data" (the "'459 Patent")

15         47.      All of the Patents received a term extension to February 2024 under 35 U.S.C.

16    § 154(b). The named inventors on all of the Patents are Jimmy Zhang and Hui Tian, and all right,

17    title, and interest are assigned to XimpleWare.

18         48.      The first patent (the '857 Patent), filed in 2002 and issued in 2006, is titled

19    "Processing Structured Data," and contains 43 claims (including 7 independent claims) covering

20    methods, apparatuses, and program storage devices for "efficiently processing a structured data

21    file" or "efficiently processing structured data"—including XML. The '857 Patent has been cited

22    by five other issued U.S. patents—including patents issued to IBM, HP, and Canon—and by

23    three published U.S. patent applications.

24         49.      The '652 Patent, filed in 2006 and issued in 2009, contains 35 claims (including 8

25    independent claims) for methods, apparatuses, and program storage devices, and focuses on

26    efficiently processing structured data like XML. The '652 Patent has been cited by two issued

27    U.S. patents by IBM and Canon and by one published U.S. patent application.

28

Computerlaw Group LLP
www.computerlaw.com℠

50.     The '459 Patent, filed in 2006 and issued in 2010, contains 24 claims (including 4 independent claims) for methods, apparatuses, hardware devices, and program storage devices, and again focuses on efficiently processing structured data like XML. The '459 Patent has been cited by two issued U.S. patents and one published U.S. patent application.

51.     There has been no challenge to any of the XimpleWare Patents or any other XimpleWare intellectual property rights.

52.     The XimpleWare Source Code and Product practice the XimpleWare Patents.

53.     XimpleWare owned the three XimpleWare Patents throughout the period of the Defendants' infringing acts, and still owns the patents. XimpleWare uses the patent numbers on its Product and in its documentation to give actual and constructive notice of the existence of the XimpleWare patents.

**Defendants Copy XimpleWare's Patented Source Code**

54.     In the summer of 2013, XimpleWare learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute.

55.     According to documents filed in that case, Versata licensed its DCM software to Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for breach of contract, among other claims.

56.     During the prosecution of that lawsuit, Ameriprise informed XimpleWare that it had discovered portions of XimpleWare's GPL-licensed Source Code in the source code of Versata's DCM product.

57.     XimpleWare has never granted Versata any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

58.     XimpleWare has never granted Ameriprise or any other Defendant in this case any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code.

59.     On information and belief, Versata has distributed thousands of unauthorized copies of the Product or the Source Code to a number of customers like the Customer Defendants, and Versata has illegally collected revenues on the sale and distribution of the

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1   derivative DCM product incorporating XimpleWare's Source Code, in violation of

2   XimpleWare's Patents. XimpleWare estimates Versata's total sales of the infringing DCM

3   product to exceed $300,000,000.

4        60.    Defendants have infringed, and are still infringing on the XimpleWare's

5   intellectual property rights by making, selling, and using the DCM product that practices the

6   XimpleWare Patents, and the Defendants will continue to do so unless this Court enjoins them.

7                          **FIRST CLAIM FOR RELIEF**

8                          **DIRECT PATENT INFRINGEMENT**

9                          **(AGAINST ALL DEFENDANTS)**

10       61.    XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in

11  full.

12       62.    XimpleWare designs and licenses software designed to more effectively and more

13  efficiently parse XML in an almost limitless range of products and applications.

14       63.    XimpleWare has made substantial investments of time and money, as well as great

15  efforts over a period of ten or more years developing a faster, more efficient way to parse XML.

16  These investments in research and development have, over the years, yielded many innovations,

17  including the innovations disclosed and claimed in the Patents.

18       64.    The '857, '652, and '459 were duly and legally issued to XimpleWare, as assignee

19  of the inventors named therein, for an invention entitled "Processing Structured Data." True and

20  correct copies of the Patents are attached as **Exhibits 2, 3, and 4**, respectively.

21       65.    The Patents are valid and enforceable.

22       66.    At all material times since the original issue dates, XimpleWare has been the

23  owner of the entire right, title, and interest in the Patents.

24       67.    XimpleWare's Product as well as its Source Code practices each of the

25  independent claims of the Patents.

26       68.    On information and belief, Defendants have infringed and continue to infringe

27  XimpleWare's Patents and each of them by making, using, selling, and/or offering for sale in the

28

1  United States a number of products that practice the claims contained in the Patent, and will

2  continue to do so unless enjoined by this Court.

3       69.     The Versata Defendants incorporated the XimpleWare Product and/or Source

4  Code into a number of their own products (the "Versata Products"), including but not limited to

5  the Versata DCM product. Therefore, the Versata Products **necessarily** practice **at least**

6  independent Claims 1 and 7 the '857 Patent, independent Claims 1 and 9 of the '652 Patent, and

7  independent Claim 1 of the '459 Patent.

8       70.     The Versata Products and each of them literally infringe because every element of

9  each of those Claims is included in DCM, and are necessarily included in any other product into

10  which Defendants incorporated the XimpleWare Source Code or Product. The Versata

11  Defendants used and sold its infringing products in the United States, and did so willfully.

12       71.     On information and belief, without any license or other authorization of Plaintiff,

13  the Customer Defendants purchased the Versata Products from the Versata Defendants. The

14  Customer Defendants infringed and continue to willfully infringe the Patents by using the

15  infringing Versata Products, incorporated into the Customer Defendants' internal software

16  systems which the Customer Defendants used and continue to use in their daily course of

17  business.

18       72.     Defendants' conduct constitutes direct infringement of XimpleWare's patent

19  rights under 35 U.S.C. § 271(a).

20       73.     Defendants' direct infringement of XimpleWare's exclusive patent rights has

21  damaged, and/or will damage XimpleWare's business, causing irreparable harm for which there

22  is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35 U.S.C.

23  § 283.

24       74.     Defendants' direct infringement of XimpleWare's Patents is the direct and

25  proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory

26  damages in an amount to be determined at trial.

27       75.     Defendants' direct infringement of the Patents entitles XimpleWare to preliminary

28  and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all damages sustained

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

1  by XimpleWare as a result of Defendants' infringement, and enhanced damages adequate to

2  compensate for Defendants' collective and willful infringement of XimpleWare's patent rights

3  together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.

4                    **SECOND CLAIM FOR RELIEF**

5                  **INDUCING PATENT INFRINGEMENT**

6                  **(AGAINST VERSATA DEFENDANTS)**

7       76.    XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in

8  full.

9       77.    The Versata Defendants have infringed and induced infringement of the '857,

10  '652, and '459 Patents.

11      78.    The Versata Defendants deliberately downloaded the XimpleWare Source Code

12  from the SourceForge open source repository and incorporated it into DCM and a number of

13  other products. On information and belief, the Versata Defendants then sold those products to a

14  number of customers including, but not necessarily limited to, the Customer Defendants who

15  incorporated those products into their own internal systems, which the Customer Defendants

16  used and continue to use in the daily course of business.

17      79.    The Versata Defendants, in violation of 35 U.S.C. § 271(b), have knowingly

18  aided, abetted, and actively induced the Customer Defendants and others to infringe

19  XimpleWare's Patents.

20      80.    The Versata Defendants have committed contributory infringement of

21  XimpleWare's exclusive rights has damaged and will continue to damage XimpleWare's

22  business, causing irreparable harm for which there is no adequate remedy at law, unless it is

23  enjoined by this Court pursuant to 35 U.S.C. § 283.

24      81.    The Versata Defendants' infringement of XimpleWare's exclusive patent rights

25  has damaged, and/or will damage XimpleWare's business, causing irreparable harm for which

26  there is no adequate remedy at law, unless Defendants are enjoined by this Court pursuant to 35

27  U.S.C. § 283.

28

Computerlaw Group LLP
www.computerlaw.com℠

82.     The Versata Defendants' willful contributory infringement of XimpleWare's Patents is the direct and proximate cause of damages to XimpleWare, and XimpleWare is entitled to compensatory damages in an amount to be determined at trial.

83.     The Versata Defendants' infringement of the Patents entitles XimpleWare to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283, an award of all damages sustained by  XimpleWare as a result of Defendants' infringement, and enhanced damages adequate to compensate for Defendants' collective and willful infringement of XimpleWare's patent rights together with attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.

### THIRD CLAIM FOR DECLARATORY RELIEF

### (AGAINST ALL DEFENDANTS)

84.     XimpleWare incorporates the allegations in paragraphs 1–60 as if set forth here in full.

85.     XimpleWare owns each and every of the three issued Patents.

86.     XimpleWare has the superior, and indeed only, right to continue to use, make, sell, or offer for sale its Source Code, subject to the GPL, as the lawful owner of the Patents.

87.     XimpleWare requests that this Court declare that United States Patents Nos. 7133857, 7620652, and 7761459 and each of them are valid and enforceable.

88.     The requested declaration is necessary and appropriate at this time to affirm XimpleWare's rights to exclusive use and sale of its protected intellectual property rights under federal patent law.

89.     Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

XimpleWare prays for judgment against all Defendants, and each of them, and those persons in control of or acting in concert with them as follows:

A.     On the First Claim for Relief, for preliminary and permanent injunctive relief enjoining the manufacture, production, marketing, or sale by Defendants, or any of them, of any product practicing the '857, '652, and/ or '459 Patents; for all damages sustained by XimpleWare

Computerlaw Group LLP
www.computerlaw.com℠

1 as a result of Defendants' infringement; and for an award to XimpleWare of enhanced damages

2 adequate to compensate for Defendants' collective infringement, up to and including trebling of

3 XimpleWare's damages for the Versata Defendants' willful infringement.

4        B.      On the Second Claim for Relief, for preliminary and permanent injunctive relief

5 enjoining the Versata Defendants or any of them from contributing to the manufacture,

6 production, marketing, or sale of any product practicing the '857, '652, and/ or '459 Patents; for

7 all damages sustained by XimpleWare as a result of the Versata Defendants' infringement; and

8 for an award to XimpleWare of enhanced damages adequate to compensate for the Versata

9 Defendants' collective  and willful infringement, up to and including trebling of XimpleWare's

10 damages for the Versata Defendants' willful infringement.

11        C.      On the Third Claim for Relief, for a declaration that:

12             1.      XimpleWare is the sole owner of the XimpleWare Patents;

13             2.      The XimpleWare Patents are valid and enforceable; and

14             3.      As such, XimpleWare has the exclusive right to make sell, offer for sale

15 and copy the XimpleWare Product and Source Code.

16        D.      On all Claims for Relief, for a constructive trust of all benefits Defendants gained,

17 and disgorgement of all revenues and profits associated with Defendants' licensing or sale of

18 products containing the XimpleWare Source Code.

19        E.      For costs of suit including any applicable interest and reasonably attorneys' fees

20 as allowed by law.

21        F.      For such other, further, and different relief as the Court deems just and proper.

22 <div align="center">**JURY TRIAL DEMAND**</div>

23        Plaintiff hereby demands a trial by jury on each and every cause of action which is triable

24 by or which may otherwise be tried by jury in this action.

25 //

26 //

27 //

28 //

Computerlaw Group LLP
www.computerlaw.com℠

1

2                                                    COMPUTERLAW GROUP LLP

3    Dated:  November 5, 2013            By:   /s/ Jack Russo
                                               Jack Russo
4                                              Christopher Sargent
                                               Ansel Halliburton
5
                                               Attorneys for Plaintiff
6                                              XIMPLEWARE CORP.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 11

COMPUTERLAW GROUP LLP

ATTORNEYS AT LAW
401 FLORENCE STREET
PALO ALTO, CALIFORNIA 94301
COMPUTERLAW.COM

TELEPHONE
(650) 327-9800

FAX
(650) 618-1863

November 5, 2013

**Via Email and U.S. Mail**

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 Mckinney Street, Ste. 3460
Houston, TX 77010
aalavi@azalaw.com

Peter Lancaster, Esq.
Dorsey & Whitney LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55042
lancaster.peter@dorsey.com

### Re: *XimpleWare v. Versata et al.*

Dear Counsel:

Due to violations of our clients' rights that are now beyond any doubt, we have a larger set of issues to now discuss with you that will also impact timing of any deposition discovery of our client: Today, our client has authorized and we have filed with the Federal Court a new set of actions designed to assure that our client receives appropriate remedies for the violations of its copyrights as well as its other intellectual property rights.

Both of your clients are named in these actions. Courtesy copies of the filed pleadings are attached for your convenience. May I suggest that you both obtain authority from your respective clients to decide whether it would be advantageous to have the Court appoint an experienced Intellectual Property mediator (which can be done on an expedited basis in our district) for the purposes of ascertaining whether your clients would prefer to determine first whether a settlement resolution is appropriate and can be achieved quickly without full litigation. That may well be preferred and it may well preempt any need for any deposition testimony from our client.

Alternatively, if that is not of any interest, our client will be available for a single deposition in accordance with the Federal Rules on an agreed date and that deposition will be the one that all defendants will be asked to participate in since there will be simply a single deposition and not multiple depositions of our client. Please let us know your choice in the matter.

Very truly yours,

Jack Russo

*Enclosures*
*cc: Client*

# EXHIBIT 12



**DORSEY**
DORSEY & WHITNEY LLP

GREGORY S. TAMKIN
(303) 629-3438
tamkin.greg@dorsey.com

November 7, 2013

**VIA ELECTRONIC MAIL**

Mr. Jack Russo
Computerlaw Group LLP
401 Florence Street
Palo Alto, CA 94301
Email: jrusso@computerlaw.com

      Re:   *Ximpleware v. Versata et al.*

Dear Mr. Russo:

      I am responding to your November 5, 2013 letter to Peter Lancaster. I am stepping in as lead counsel for Ameriprise, so please direct future correspondence to me, but continue to copy my colleague Case Collard.

      Without addressing the substance of the courtesy copies of the complaints attached to your letter, the filing of the complaints does not change Amperiprise's position concerning Mr. Zhang's subpoenaed deposition. The deposition has been noticed in a separate case which has discovery and summary judgment deadlines rapidly approaching. While we appreciate that a lawsuit has been filed, that does not impact the deposition for which we already have a subpoena. It is unreasonable to delay the Ximpleware deposition, highly relevant to a case that is very near trial, while seeking an agreement among many disparate and unrelated defendants in a case that was just filed on November 5th. The various other defendants will likely seek extensive discovery in that case before they are ready to take any depositions.

      We need to move forward and hope to agree with you on a date the first week of December, as you offered to Peter Lancaster and Amir Avali in your October 23rd letter. If you will not offer a date in the week you've already proposed, we will ask the Court to compel one, explaining that you had already agreed to a date that week. This is an urgent matter, so please let us know by the end of the day on Friday, November 8. If we do not hear from you by then, we will understand that you will no longer work with us to schedule the deposition and we will proceed accordingly.

      You also suggested that the parties mediate the issues raised in the two new actions. We are considering your request and will confer with Mr. Alavi on the issue.

      We have authority to accept service on Ameriprise's behalf, so please contact me or Mr. Collard to arrange acceptance.

Very truly yours,

Gregory S. Tamkin

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • **T** 303.629.3400 • **F** 303.629.3450
1400 WEWATTA STREET • SUITE 400 • DENVER, COLORADO 80202-5549

USA   CANADA   EUROPE   ASIA-PACIFIC

# EXHIBIT 13

**Lee, Janet**

---

| | |
|---|---|
| **From:** | Jack Russo <jrusso@computerlaw.com> |
| **Sent:** | Tuesday, November 12, 2013 11:11 AM |
| **To:** | Collard, Case; Ansel Halliburton |
| **Cc:** | Tamkin, Greg; Chris Sargent; Eric Young; Bevilacqua, Theresa; lankaster.peter@dorsey.com |
| **Subject:** | RE: XimpleWare v. Versata Software, Inc. et al |

We will file a motion for a Protective Order and we will be filing a motion for expedited discovery in the pending federal litigation here.  The alternative would be to reach a MUTUAL STIPULATION where perhaps initially one initial deposition (up to 7 hours on the record) is taken by defendants (presumably of MR. Zhang) and we get one initial deposition (up to 7 hours on the record) of Ameriprise and one initial deposition (up to 7 hours on the record) of Versata.

This can all be done in an initial stipulation that is without prejudice to each party's right to seek further relief for good cause in any further depositions. This is the fair and mutual way to handle this IMHO.  It is what I have been suggesting CONSISTENTLY in all correspondence with you and with others on the case.  I am sorry if there was some misunderstanding or miscommunication this morning in a phone call that I could not be part of but I am fixing that right now.

Failing reaching agreement on this type of stipulation, then we will go forward with our motions and you should go forward with your motion; presumably we can coordinate on dates so your state court judge is aware of what we are doing in the Federal Court here and our federal court judge is made aware of what you are doing in the state court there.

Best Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301 USA
650-327-9800 (main)
650-618-1863 (fax)
650-924-1290 (direct)
www.computerlaw.com
jrusso@computerlaw.com
"Every Case Tells A Story!"®

---

**From:** collard.case@dorsey.com <collard.case@dorsey.com>
**Sent:** Tuesday, November 12, 2013 10:52 AM
**To:** Jack Russo; Ansel Halliburton
**Cc:** Tamkin.Greg@dorsey.com; Chris Sargent; Eric Young; Bevilacqua.Theresa@dorsey.com
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

Hi Jack –

That is different than my discussion with Ansel just now and different from my discussion with you the last week of October.  I'm not entirely clear on what you want us to agree to, but please see my letter of last week for our position.  If you will not agree to a deposition the week of December 2 (as you previously offered) without further conditions, then we will move to compel.  I am simply trying to complete the meet and confer process and ascertain your final position.  Feel free to call me when you have a break if you would like to discuss.


Best,
Case


Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

---

**From:** Jack Russo [mailto:jrusso@computerlaw.com]
**Sent:** Tuesday, November 12, 2013 11:47 AM
**To:** Collard, Case; Ansel Halliburton
**Cc:** Tamkin, Greg; Chris Sargent; Eric Young; Bevilacqua, Theresa; lankaster.peter@dorsey.com
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

I am not agreeable to setting any depositions except as part of a mutual stipulation in writing; that stipulation cannot be unilateral and if you are willing to agree to such mutuality then great.  If not, we will file a motion for early discovery from the Federal Court and then some type of mutuality can presumably be agreed as part of that process.  I am sorry if there has been or is some misunderstanding on all this but I could not be part of a phone call this morning because I am in another deposition in SF but I can talk further later today presumably at the lunch break at 1245pm PST or so if you would like to discuss this further.  Let me know if you would like to do this. I am responding promptly so no one has any misunderstanding about Ximpleware's position on this matter.  I am sorry I could not be part of the phone call this morning. (I think I have made this same position clear to Peter Lankaster of your offices a number of weeks ago as well)


Best Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301 USA
650-327-9800 (main)
650-618-1863 (fax)
650-924-1290 (direct)
www.computerlaw.com
jrusso@computerlaw.com
"Every Case Tells A Story!"®

---

**From:** collard.case@dorsey.com <collard.case@dorsey.com>
**Sent:** Tuesday, November 12, 2013 10:35 AM
**To:** Ansel Halliburton
**Cc:** Tamkin.Greg@dorsey.com; Jack Russo; Chris Sargent; Eric Young; Bevilacqua.Theresa@dorsey.com
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

Good speaking with you Ansel.

Per our conversation, you are confirming availability of 12/2 for the Ximpleware deposition.  I will check on 12/3-12/5 as back-ups.

We will consider your request for an early document production by Ameriprise.  We also will also confirm availability for a call with Jack on 11/20 to discuss that and other issues.

Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

---

**From:** Ansel Halliburton [mailto:ahalliburton@computerlaw.com]
**Sent:** Tuesday, November 12, 2013 11:02 AM
**To:** Collard, Case
**Cc:** Tamkin, Greg; Jack Russo; Chris Sargent; Eric Young
**Subject:** Re: XimpleWare v. Versata Software, Inc. et al

Case: Slight delay on my end, but I'll call you in 10 minutes.

Sent from my iPhone

On Nov 11, 2013, at 9:26 PM, "collard.case@dorsey.com" <collard.case@dorsey.com> wrote:

> Hi Ansel,
> 10 pst works for me. I'll call you then.
> Best,
> Case

> On Nov 11, 2013, at 6:41 PM, "Ansel Halliburton" <ahalliburton@computerlaw.com> wrote:

>> Case,

>> What's a good time to talk by phone tomorrow? I'm available any time after about 10am Pacific.

>> Thanks.

>> **Ansel Halliburton**
>> Associate, ComputerLaw Group
>> ahalliburton@computerlaw.com
>> 650-204-4952 direct | 650-327-9800 main

**From:** collard.case@dorsey.com [mailto:collard.case@dorsey.com]
**Sent:** Monday, November 11, 2013 10:07 AM
**To:** Eric Young; Tamkin.Greg@dorsey.com
**Cc:** Jack Russo; Chris Sargent; Ansel Halliburton
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

Hi Jack –
I'm following up on my voicemail.  This letter does not address our request for a
Ximpleware deposition date.  Please let us know your final position.
Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353


**From:** Eric Young [mailto:eyoung@computerlaw.com]
**Sent:** Friday, November 08, 2013 6:56 PM
**To:** Tamkin, Greg; Collard, Case
**Cc:** Jack Russo; Chris Sargent; Ansel Halliburton
**Subject:** XimpleWare v. Versata Software, Inc. et al

Dear Counsel,

Attached please find correspondence from Mr. Halliburton. If this file fails to arrive
properly, please let me know.

Kind Regards,
Eric Young
Legal Assistant, Computerlaw Group LLP
401 Florence Street, Palo Alto, CA 94301
(650) 327-9800 | (650) 618-1863 (fax)
eyoung@computerlaw.com

# EXHIBIT 14



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

BENJAMIN F. FOSTER
DIRECT 713.600.4914
MAIN 713.655.1101
FAX 713.655.0062

BFOSTER@AZALAW.COM

November 12, 2013

***Via Email:***  **jrusso@computerlaw.com**
Jack Russo
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, California 94301

Re:  Cause No. D-1-GN-12-003588; *Versata Software, Inc., f/k/a Trilogy Software, Inc., et al v. Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and Ameriprise Investment Services, Inc.;* In the 53rd Judicial District Court of Travis County, Texas.

Dear Mr. Russo:

The filing of your client's lawsuits in California has no bearing on your client's deposition in the Texas State Court case. That case is set for trial on February 24, 2014. Your client's testimony is relevant and discoverable to a fair adjudication of that dispute. Therefore, we will be seeking Mr. Zhang's deposition in the Texas case before the end of the year and will be filing a motion to compel Mr. Zhang's attendance.

Please treat this letter as our effort to confer with you on our motion to compel. We are prepared to discuss reasonable dates and locations for your client's deposition, as well as any other concerns you may have. Please be advised that we expect to file our motion to compel your client's deposition by Friday November 15, 2013, and will do so unless you contact us agreeing to make Mr. Zhang available voluntarily.

Sincerely,

Benjamin F. Foster

BFF/nm

cc:  Gregory S. Tamkin            ***Via Email:***  **tamkin.greg@dorsey.com**
Dorsey & Whitney
1400 Wewatta St., Suite 400
Denver, Colorado  80202-5549

Jack Russo
November 12, 2013
Page 2


cc:    Christopher D. Sileo                  ***Via Email:***  **csileo@scottdoug.com**
        Scott, Douglass & McConnico, LLP
        600 Congress Avenue, Suite 1500
        Austin, Texas 78701

        Travis Barton                       ***Via Email:***  **tcbarton@mcginnislaw.com**
        McGinnis Lochridge
        600 Congress Avenue, Suite 2100
        Austin, Texas 78701


4812-9729-4614, v. 1

# EXHIBIT 15



AHMAD
ZAVITSANOS
ANAIPAKOS
ALAVI
MENSING

AMIR H. ALAVI
BOARD CERTIFIED-CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT 713.600.4903
MAIN 713.655.1101
FAX 713.655.0062
AALAVI@AZALAW.COM

October 3, 2013

Christopher D. Sileo
Scott, Douglass & McConnico, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701

> Re: Cause No. D-1-GN-12-003588; *Versata Software, Inc., f/k/a Trilogy Software, Inc., et al v. Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., and Ameriprise Investment Services, Inc.;* In the 53rd Judicial District Court of Travis County, Texas.

Dear Chris:

This letter serves as a Rule 11 agreement between the Parties in the above captioned case (with the plaintiffs referred to as "Versata" and the defendants as "Ameriprise" and collectively as "Parties").

On September 25, 2013, Ameriprise filed Defendants' First Motion for Continuance of Trial Setting ("Motion for Continuance") and Versata oppose the relief sought. The parties have agreed to resolve their dispute over the Motion for Continuance as follows:

1. The Parties will continue to current trial setting and set this case for trial during the week of February 24, 2014.

2. Ameriprise will not move for any additional continuances, absent extraordinary circumstances. For purposes of clarification, extraordinary circumstances means events, outside the control of Ameriprise, that would materially impair Ameriprise's ability to go to trial such as, but not limited to, illness of lead trial counsel or the filing of new causes of action by Versata less than 30-days before trial.

3. The Parties agree that in any future motion for continuance, the parties will treat this continuance as opposed by Versata and sought by Ameriprise.

4. Ameriprise will not use the time between the current trial setting and the new trial setting as a basis to argue to the Court or the Jury Versata delayed in seeking relief.

Christopher D. Sileo
October 3, 2013
Page 2

     5.      The parties agree to extend the discovery period in this case to January 24, 2014.

     6.      Notwithstanding the extension of the discovery period, expert deadlines under Rule 195.2 and 193.5 are not extended and shall be calculated using a trial date of November 18, 2013, except that the parties will treat the discovery period end date for any expert supplementation under Rule 193.5 as November 6, 2013.[1] This paragraph is only intended to establish these dates and does not otherwise alter the status quo regarding any party's expert rights, including without limitation not altering any rights pursuant to Rule 195.3 or Rule 193.6 and not impacting any rights to take depositions. Notwithstanding the following, Ameriprise may supplement its expert opinions after November 6, 2013 to incorporate new information acquired through the deposition of Ximpleware provided that the supplementation takes place no later than 10 days after the deposition. Notwithstanding the following, Versata may supplement its expert opinions after November 6, 2013 to incorporate new information acquired through the deposition of TCS provided that the supplementation takes place no later than 10 days after the deposition.

     7.      By October 31, 2013, Ameriprise will amend its pleadings to assert the causes of action, if any, it intends to assert in connection with its allegations regarding Ximpleware. For all parties, the pleading deadline for all other claims and defenses is December 20, 2013.

     8.      The parties agree to substantially complete depositions of fact witnesses that have been previously requested prior to December 20, 2013, other than witnesses that a party objects to presenting for a deposition, which will be subject to motion practice.

     9.      The parties withdraw all deposition notices currently outstanding and agree that Until after October 15 they will not schedule any depositions other than the deposition of Infosys witness Praveen Ramachandra, a witness to be offered by Ameriprise on October 7-8, and Ximpleware (for which Ameriprise will revise the current deposition notice to be for a date during November 5-7, but which date is subject to change based on the witness's availability).

     10.    The parties will work in good faith to agree by November 1, 2013 to deposition dates for all witnesses, both fact and expert, that have previously been requested, other than witnesses that a party objects to presenting for deposition.

---

[1] The current Level 2 discovery period end date had been October 8, 2013.

4823-4896-6678, v. 1

Christopher D. Sileo
October 3, 2013
Page 3

     If this letter accurately sets forth the agreement of the parties, please sign it and return it to me for filing.

Sincerely,

Amir H. Alavi

Agreed to by:

Christopher Sileo
*Counsel for Defendants* Counter-Plaintiff

4823-4896-6678, v. 1

**PROOF OF SERVICE**

1

2  **STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

3       I am employed in the County of Santa Clara. I am over the age of eighteen years and not a party to the within entitled action; my business address is 305 Lytton Avenue, Palo Alto, California 94301.

4       On November 20, 2013, I served a copy of the following document described as **DECLARATION OF CASE COLLARD IN SUPPORT OF PETITION TO ENFORCE DEPOSITION SUBPOENA IN ACTION PENDING OUTSIDE CALIFONRIA** on the interested party(ies) in this action as follows:

5

6       Jack Russo
        ComputerLaw Group LLP
7       401 Florence Street
        Palo Alto, CA 94301
8

9  ☐  **By Mail**. By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am
10      "readily familiar" with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited
11      in the ordinary course of business with the U.S. Postal Service in Palo Alto, California, in a sealed envelope with postage fully prepaid.

12 ☒  **By Overnight Delivery**. I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed as above. I placed the envelope or package for collection
13      and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

14 ☐  **By Messenger Service**. I served the documents by placing them in an envelope or package addressed to the person(s) at the address(es) above and providing them to a professional messenger
15      service for service. A declaration by the messenger is attached.

16 ☐  **By Facsimile**. Based on an agreement of the parties to accept service by fax transmission, I faxed the document(s) to the person(s) at the fax number(s) listed above. The telephone number of the
        sending facsimile machine was (650) 857-1288. The sending facsimile machine issued a
17      transmission report confirming that the transmission was complete and without error. A copy of that report is attached.

18
19 ☐  **By Electronic Transmission**. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from lee.janet@dorsey.com to the person(s) at the e-mail address(es) listed above.

20      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
21

        Executed on November 20, 2013, at Palo Alto, California.
22

23  _____          _____
        Janet Lee
        (Type or print name)                    (Signature)
24

25

26

27

28