Jack Russo (Cal. Bar No. 96068)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

ENDORSED   Santa Clara
11/22/13   10:31am
David H. Yamasaki
Chief Executive Offic
By: francesm DTSCIVD1
R#201300116375
H                    $175.00
L                    $435.00
Case: 1-13-CV-256454
Fong-Miller

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| **Ameriprise Financial, Inc.,** a Delaware corporation; **Ameriprise Financial Services, Inc.,** a Delaware corporation; and **American Enterprise Investment Services, Inc.,** a Delaware corporation, <br><br> Petitioners, <br><br> v. <br><br> **XimpleWare Corp.,** a California Corporation, <br><br> Respondent. | Case No. 1-13-CV-256454 <br><br> **DECLARATION OF ANSEL HALLIBURTON IN OPPOSITION TO AMERIPRISE'S EX PARTE APPLICATION FOR ORDER COMPELLING RESPONDENT XIMPLEWARE'S ATTENDANCE AT DEPOSITION AND PRODUCTION OF DOCUMENTS** |

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

I, Ansel Halliburton, declare as follows:

1.     I am an attorney admitted to practice before this Court, and I am an associate at the law firm of ComputerLaw Group LLP, counsel for Plaintiff XimpleWare Corp. ("XimpleWare") in this matter. I have personal knowledge of the facts set forth in this declaration, and if called to do so I could and would testify competently to the same. I make the statements here of my own personal knowledge, unless where stated on information and belief, which statements I believe to be true, and if called to do so, I could and would testify competently to those matters stated here.

2.     I was out of the office the morning of November 21, 2013, and neither Mr. Jack Russo nor I received actual notice that Ameriprise would appear *ex parte* on November 22 until significantly later in the day. Mr. Russo's correspondence with counsel for Ameriprise is attached as **Exhibit 1**. As stated in that correspondence, Mr. Russo is in Los Angeles today for another case.

3.     This case is one thread in a web of interrelated cases pending in the state and federal courts in Minnesota, Texas, and California:

> 1. Versata sued Ameriprise in Texas state court in 2012 in *Versata Software, Inc., et al. v. Ameriprise Financial, Inc., at al.*, no. D-1-GN-12-003588 in the District Court of Travis County, Texas, 53rd Judicial District, a case in which Versata sued Ameriprise for breach of contract related to claims, among others, of reverse-engineering software that Versata had licensed to Ameriprise.
>
> 2. I understand there is another case, which is stayed, between Ameriprise and Versata in state court in Minnesota.
>
> 3. Versata sued another party, Infosys, in *Versata Software, Inc., et al., v. Infosys Technologies Ltd.*, no. 1:10-cv-00792-SS in the U.S. District Court for the Western District of Texas. XimpleWare's understanding is that the Infosys case relates in part to work Infosys performed for Amerprise related to Versata's DCM product.

Computerlaw Group LLP
www.computerlaw.com℠

1       4.   On November 5, 2013, XimpleWare filed two cases in the U.S. District

2       Court for the Northern District of California—one for copyright

3       infringement and related claims (no. 3:13-cv-5160-NC), and a second for

4       patent infringement (no. 5:13-cv-5161-PSG). My law firm is counsel for

5       XimpleWare in those two California federal cases.

6      4.   XimpleWare became involved toward the end of July this year, when counsel for

7  Ameriprise contacted XimpleWare's principal, Jimmy Zhang. Ameriprise told Mr. Zhang about

8  the pending litigation in Texas state court, and that it had learned in that litigation that Versata

9  had improperly copied XimpleWare's software into Versata's own DCM software product. As

10 discussed in Mr. Zhang's declaration and XimpleWare's moving papers discussed below,

11 XimpleWare never licensed its software to Versata for any kind of commercial use. XimpleWare

12 publishes its source code on the internet, but does so under the restrictive GNU General Public

13 License, or GPL. Versata's wholesale incorporation of XimpleWare's software into its

14 commercial DCM product was clearly outside the scope of the GPL license, and thus constitutes

15 copyright infringement, which continues to this day.

16     5.   Ameriprise and Versata have served deposition notices and counter-notices on

17 XimpleWare. Given the complexity of cases with overlapping parties and claims, I and others in

18 my firm have attempted to negotiate a single agreed schedule for discovery related to our client,

19 XimpleWare. Instead, Ameriprise has refused XimpleWare's requests, and has filed an *ex parte*

20 motion to compel a deposition and other discovery from XimpleWare without any reciprocity—

21 despite its continuing infringement of XimpleWare's copyrights. **Exhibit 2** contains many pieces

22 of correspondence between my office and counsel for Ameriprise.

23     6.   Today XimpleWare will file an *ex parte* application in its copyright case in federal

24 court. XimpleWare's federal *ex parte* application will seek a temporary restraining order against

25 Versata and Ameriprise, as well as an order to show cause why a preliminary injunction should

26 not issue. The federal *ex parte* application will also seek a coordinated discovery schedule **which**

27 **will include the same discovery from XimpleWare that Ameriprise seeks on its *ex parte***

28 **motion in this Court.** The only difference is that XimpleWare would also be able to obtain a

1    similarly small set of discovery from Versata and Ameriprise. Every category of discovery

2    requested relates to either Ameriprise's and Versata's subpoenas from their Texas action, or to

3    XimpleWare's motion for preliminary injunctive relief in its California copyright action.

4          7.     Copies of XimpleWare's federal *ex parte* application, the supporting declarations

5    of Jack Russo and Jimmy Zhang, and a proposed order are attached as **Exhibits 3–6**. I served

6    these documents on counsel for Ameriprise early this morning. My email to Ameriprise's counsel

7    attaching these documents is attached as **Exhibit 7**.

8          8.     Very simply, XimpleWare's position on Ameriprise's *ex parte* application before

9    this Court is that XimpleWare will provide the discovery requested **so long as the discovery is**

10    **mutual** and addresses XimpleWare's very real and pressing needs for concrete information so

11    that it can support its motion for preliminary injunctive relief in its copyright case. Amerprise has

12    refused that reasonable request for reciprocity, and so XimpleWare is seeking the federal court's

13    assistance.

14          9.     The federal court in San Francisco overseeing XimpleWare's copyright case is the

15    best venue for deciding these discovery issues. Versata and Ameriprise are both parties in that

16    case, and Ameriprise accepted service some time ago. Ameriprise would obtain the same relief it

17    seeks here if the federal court grants XimpleWare's motion—but that relief would be tempered

18    by fairness toward XimpleWare. XimpleWare's request for temporary injunctive relief may only

19    be brought in the federal court, which has exclusive jurisdiction over XimpleWare's copyright

20    claims. This Court is, therefore, not the right venue from which to order mutual discovery; that

21    should be the federal court's job. **XimpleWare requests that this Court abstain from ruling**

22    **on Ameriprise's *ex parte* application until XimpleWare's *ex parte* application can be heard**

23    **by the federal court.**

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1       I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct, and that I signed this declaration on November 22, 2013 in San

3  Francisco, California.

4

5                         Ansel Halliburton

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠



| | |
|---|---|
| **From:** | Jack Russo |
| **Sent:** | Thursday, November 21, 2013 3:16 PM |
| **To:** | luemers.martha@dorsey.com |
| **Cc:** | Eric Young; Ansel Halliburton |
| **Subject:** | Re: Ameriprise Financial, Inc., et al v. XimpleWare Corp. - Notice of Ex Parte appearance on Friday, Nov. 22 |
| | |
| **Categories:** | Exhibit |

I never received any notice of this in accord with our Local Rules here nor can I appear tomorrow morning as I am on a flight for another case in Los Angeles and that cannot be changed at this point as I have meetings there starting at 8am PST.  I suggest that you schedule any ex parte for a different date and that you consider the TRO application that we are filing today with the Federal Court here and where we will ask for expedited discovery on a mutual basis as I have been suggesting all along.  Please read my proposed Order as I have tried to address the "fairnesss" issue from your point of view with respect to depositions and other discovery that you would presumably want as part of any Order from any Court on this subject.


Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
www.computerlaw.com


Sent from Windows Mail


**From:** luemers.martha@dorsey.com
**Sent:** Thursday, November 21, 2013 2:48 PM
**To:** Jack Russo


Dear Mr. Russo,

I have tried to reach you through your office number, but it goes to a general voicemail box.  Would you please let me know if XimpleWare plans to appear and oppose Ameriprise's ex parte application?

Regards,

**Martha C. Luemers**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y & W H I T N E Y LLP**
305 Lytton Avenue
Palo Alto, CA 94301
www.dorsey.com
P: 650.843.2725   F: 650.857.1288

1

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*



# COMPUTERLAW GROUP LLP

ATTORNEYS AT LAW
401 FLORENCE STREET
PALO ALTO, CALIFORNIA 94301
COMPUTERLAW.COM

TELEPHONE
(650) 327-9800

FAX
(650) 618-1863

October 23, 2013

**Via Email and U.S. Mail**

Peter Lancaster, Esq.
Dorsey & Whitney LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55042
Lancaster.peter@dorsey.com

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
1221 Mckinney Street, Ste. 3460
Houston, TX 77010
aalavi@azalaw.com

> **Re:** *Deposition of XimpleWare Corp.*
> *Case No.: D-1-GN-003588*

Dear Counsel:

I have been out of my office and have just returned to learn about a proposed deposition of my client for a date that was not cleared with me or my office. Under the Local Rules in Santa Clara County, the deposition date should have first been cleared with all counsel. This date will not work. Accordingly, submitted herewith is a Notice of Objections to the Deposition Subpoena and to the Production of Documents; these objections apply to both the original subpoena as well as the cross-notice we recently received from Versata's counsel.

At the same time, we are willing to work with you and your offices to set a date for a single deposition of our client on an agreed date that works with everyone's schedule. Right now, I believe that our client would need at least until the end of November to identify, locate, and compile the requested documents and any deposition should then be scheduled for the first or second week of December. I have asked my client to provide some dates in December and we will clear them with our calendar and let you know what might be able to work in this regard.

Please let me know if there are preferred dates that each of you would want to target for the first or second week of December and we can take those back to our client as well. With further cooperation, we should be able to resolve an agreed date and presumably that can and will occur in the context of our also resolving a proposed mutually acceptable form of Stipulated Protective Order for the protection of our client's trade secrets and confidential information.

Very truly yours,

Jack Russo

*Enclosures*
*cc: file*

# COMPUTERLAW GROUP LLP

ATTORNEYS AT LAW
401 FLORENCE STREET
PALO ALTO, CALIFORNIA 94301
COMPUTERLAW.COM

TELEPHONE
(650) 327-9800

FAX
(650) 618-1863

November 5, 2013

**Via Email and U.S. Mail**

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 Mckinney Street, Ste. 3460
Houston, TX 77010
aalavi@azalaw.com

Peter Lancaster, Esq.
Dorsey & Whitney LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55042
lancaster.peter@dorsey.com

　　　　Re:　　*XimpleWare v. Versata et al.*

Dear Counsel:

　　　　Due to violations of our clients' rights that are now beyond any doubt, we have a larger set of issues to now discuss with you that will also impact timing of any deposition discovery of our client: Today, our client has authorized and we have filed with the Federal Court a new set of actions designed to assure that our client receives appropriate remedies for the violations of its copyrights as well as its other intellectual property rights.

　　　　Both of your clients are named in these actions. Courtesy copies of the filed pleadings are attached for your convenience. May I suggest that you both obtain authority from your respective clients to decide whether it would be advantageous to have the Court appoint an experienced Intellectual Property mediator (which can be done on an expedited basis in our district) for the purposes of ascertaining whether your clients would prefer to determine first whether a settlement resolution is appropriate and can be achieved quickly without full litigation. That may well be preferred and it may well preempt any need for any deposition testimony from our client.

　　　　Alternatively, if that is not of any interest, our client will be available for a single deposition in accordance with the Federal Rules on an agreed date and that deposition will be the one that all defendants will be asked to participate in since there will be simply a single deposition and not multiple depositions of our client. Please let us know your choice in the matter.

Very truly yours,

Jack Russo

*Enclosures*
*cc: Client*

## Ansel Halliburton

| | |
|---|---|
| **From:** | jrusso@computerlaw.com |
| **Sent:** | Wednesday, November 06, 2013 10:19 AM |
| **To:** | Case Collard |
| **Cc:** | Chris Sargent; Ansel Halliburton; Eric Young |
| **Subject:** | Re: Ximpleware Depo Dates |

Case,
No depositions will occur until we get an across the board stipulation on a single deposition applicable to the now pending federal litigation as well; do you want to meet and confer with all counsel to see if a stipulation can be reached on this? Are you accepting service for the Ameriprise defendants?
Please advise.

Regards,
Jack
Sent from my Verizon Wireless BlackBerry

**From:** <collard.case@dorsey.com>
**Date:** Wed, 6 Nov 2013 17:50:21 +0000
**To:** <jrusso@computerlaw.com>
**Cc:** <csargent@computerlaw.com>; <ahalliburton@computerlaw.com>; <eyoung@computerlaw.com>
**Subject:** RE: Ximpleware Depo Dates

Hi Jack –
Just following up on my calls of Friday and yesterday to get your proposed dates for the Ximpleware deposition. In light of the filing yesterday, we'd really like to get this firmed up on the schedule.
Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

**From:** Jack Russo [mailto:jrusso@computerlaw.com]
**Sent:** Friday, November 01, 2013 2:47 PM
**To:** Collard, Case
**Cc:** Chris Sargent; Ansel Halliburton; Eric Young
**Subject:**

As promised, here is my contact information.

Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301    USA

1

## Ansel Halliburton

| | |
|---|---|
| **From:** | Jack Russo |
| **Sent:** | Tuesday, November 12, 2013 11:11 AM |
| **To:** | collard.case@dorsey.com; Ansel Halliburton |
| **Cc:** | Tamkin.Greg@dorsey.com; Chris Sargent; Eric Young; Bevilacqua.Theresa@dorsey.com; lankaster.peter@dorsey.com |
| **Subject:** | RE: XimpleWare v. Versata Software, Inc. et al |
| | |
| **Categories:** | Exhibit |

We will file a motion for a Protective Order and we will be filing a motion for expedited discovery in the pending federal litigation here.  The alternative would be to reach a MUTUAL STIPULATION where perhaps initially one initial deposition (up to 7 hours on the record) is taken by defendants (presumably of MR. Zhang) and we get one initial deposition (up to 7 hours on the record) of Ameriprise and one initial deposition (up to 7 hours on the record) of Versata.

This can all be done in an initial stipulation that is without prejudice to each party's right to seek further relief for good cause in any further depositions. This is the fair and mutual way to handle this IMHO.  It is what I have been suggesting CONSISTENTLY in all correspondence with you and with others on the case.  I am sorry if there was some misunderstanding or miscommunication this morning in a phone call that I could not be part of but I am fixing that right now.

Failing reaching agreement on this type of stipulation, then we will go forward with our motions and you should go forward with your motion; presumably we can coordinate on dates so your state court judge is aware of what we are doing in the Federal Court here and our federal court judge is made aware of what you are doing in the state court there.

Best Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301 USA
650-327-9800 (main)
650-618-1863 (fax)
650-924-1290 (direct)
www.computerlaw.com
jrusso@computerlaw.com
"Every Case Tells A Story!"®

---

**From:** collard.case@dorsey.com <collard.case@dorsey.com>
**Sent:** Tuesday, November 12, 2013 10:52 AM
**To:** Jack Russo; Ansel Halliburton
**Cc:** Tamkin.Greg@dorsey.com; Chris Sargent; Eric Young; Bevilacqua.Theresa@dorsey.com
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

Hi Jack --
That is different than my discussion with Ansel just now and different from my discussion with you the last week of
October. I'm not entirely clear on what you want us to agree to, but please see my letter of last week for our position. If
you will not agree to a deposition the week of December 2 (as you previously offered) without further conditions, then
we will move to compel. I am simply trying to complete the meet and confer process and ascertain your final
position. Feel free to call me when you have a break if you would like to discuss.

Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

---

**From:** Jack Russo [mailto:jrusso@computerlaw.com]
**Sent:** Tuesday, November 12, 2013 11:47 AM
**To:** Collard, Case; Ansel Halliburton
**Cc:** Tamkin, Greg; Chris Sargent; Eric Young; Bevilacqua, Theresa; lankaster.peter@dorsey.com
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

I am not agreeable to setting any depositions except as part of a mutual stipulation in writing; that
stipulation cannot be unilateral and if you are willing to agree to such mutuality then great.  If not,
we will file a motion for early discovery from the Federal Court and then some type of mutuality can
presumably be agreed as part of that process.  I am sorry if there has been or is some
misunderstanding on all this but I could not be part of a phone call this morning because I am in
another deposition in SF but I can talk further later today presumably at the lunch break at 1245pm
PST or so if you would like to discuss this further.  Let me know if you would like to do this. I am
responding promptly so no one has any misunderstanding about Ximpleware's position on this
matter.  I am sorry I could not be part of the phone call this morning. (I think I have made this same
position clear to Peter Lankaster of your offices a number of weeks ago as well)

Best Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301 USA
650-327-9800 (main)
650-618-1863 (fax)
650-924-1290 (direct)
www.computerlaw.com
jrusso@computerlaw.com
"Every Case Tells A Story!"®

---

**From:** collard.case@dorsey.com <collard.case@dorsey.com>
**Sent:** Tuesday, November 12, 2013 10:35 AM
**To:** Ansel Halliburton

Cc: Tamkin.Greg@dorsey.com; Jack Russo; Chris Sargent; Eric Young; Bevilacqua.Theresa@dorsey.com
Subject: RE: XimpleWare v. Versata Software, Inc. et al

Good speaking with you Ansel.

Per our conversation, you are confirming availability of 12/2 for the Ximpleware deposition.  I will check on 12/3-12/5 as back-ups.

We will consider your request for an early document production by Ameriprise.  We also will also confirm availability for a call with Jack on 11/20 to discuss that and other issues.

Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

---

From: Ansel Halliburton [mailto:ahalliburton@computerlaw.com]
Sent: Tuesday, November 12, 2013 11:02 AM
To: Collard, Case
Cc: Tamkin, Greg; Jack Russo; Chris Sargent; Eric Young
Subject: Re: XimpleWare v. Versata Software, Inc. et al

Case: Slight delay on my end, but I'll call you in 10 minutes.

Sent from my iPhone

On Nov 11, 2013, at 9:26 PM, "collard.case@dorsey.com" <collard.case@dorsey.com> wrote:

> Hi Ansel,
> 10 pst works for me. I'll call you then.
> Best,
> Case
>
> On Nov 11, 2013, at 6:41 PM, "Ansel Halliburton" <ahalliburton@computerlaw.com> wrote:
>
>> Case,
>>
>> What's a good time to talk by phone tomorrow? I'm available any time after about 10am Pacific.
>>
>> Thanks.
>>
>> **Ansel Halliburton**
>> Associate, ComputerLaw Group
>> ahalliburton@computerlaw.com
>> 650-204-4952 direct | 650-327-9800 main

**From:** collard.case@dorsey.com [mailto:collard.case@dorsey.com]
**Sent:** Monday, November 11, 2013 10:07 AM
**To:** Eric Young; Tamkin.Greg@dorsey.com
**Cc:** Jack Russo; Chris Sargent; Ansel Halliburton
**Subject:** RE: XimpleWare v. Versata Software, Inc. et al

Hi Jack --
I'm following up on my voicemail.  This letter does not address our request for a
Ximpleware deposition date.  Please let us know your final position.
Best,
Case

Case Collard
Dorsey & Whitney LLP
Office: 303 352 1116
Mobile: 720 839 4353

**From:** Eric Young [mailto:eyoung@computerlaw.com]
**Sent:** Friday, November 08, 2013 6:56 PM
**To:** Tamkin, Greg; Collard, Case
**Cc:** Jack Russo; Chris Sargent; Ansel Halliburton
**Subject:** XimpleWare v. Versata Software, Inc. et al

Dear Counsel,

Attached please find correspondence from Mr. Halliburton. If this file fails to arrive
properly, please let me know.

Kind Regards,
Eric Young
Legal Assistant, Computerlaw Group LLP
401 Florence Street, Palo Alto, CA 94301
(650) 327-9800 | (650) 618-1863 (fax)
eyoung@computerlaw.com

4

# COMPUTERLAW GROUP LLP

ATTORNEYS AT LAW
401 FLORENCE STREET
PALO ALTO, CALIFORNIA 94301
COMPUTERLAW.COM

TELEPHONE
(650) 327-9800

FAX
(650) 618-1863

November 21, 2013

**Via Email and U.S. Mail**

Gregory S. Tamkin, Esq.
Dorsey & Whitney, LLP
1400 Wewatta Street, Ste. 400
Denver, CO 80202
tamkin.greg@dorsey.com

Amir Alavi, Esq.
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 Mckinney Street, Ste. 3460
Houston, TX 77010
aalavi@azalaw.com

    *Re:*   *XimpleWare v. Versata et al.*
        *N.D. Cal., Case Nos. 3:13-CV-5160 NC and 5:13-CV-5161 JSW*

Dear Counsel:

As you know, our client has filed suit against your respective clients. We understand that you want to start discovery early because of other litigation pending between your respective clients. We are open to setting up mutual dates in December if your clients would also agree to provide discovery to our client for the above-referenced litigations. Will you do so?

If so, we would ask you to let us know dates (and locations) in December when you can make available to us your Rule 30(b)(6) witnesses on the topics listed in the attached exhibit to this letter. Once you provide us with dates and locations, we can work up a stipulation that would set forth what we would all be agreeing to as part of such discovery across these litigations including the above cases.

If you are declining to provide us with this discovery, we would object to any depositions occurring until a single schedule is put together, and we will move the Federal Court here accordingly for such a mutual schedule. Please see the attached form of proposed order we would seek. Obviously, we would prefer to work out these matters and the Court here will require us to meet and confer on it, but if that is not something you are willing to do, then let us know that as well.

We have not timely received any written or verbal notification of any *ex parte* application with the state court in San Jose regarding your pending subpoenas; we believe the better approach still is to reach a mutual stipulation that will provide everyone with certain discovery and perhaps even as early as next month. Please advise.

Very truly yours,

Jack Russo

Jack Russo

*Enclosures*
cc: *(by email only):*   *Case Collard, Esq.,*
                      *Martha Luemers, Esq.*

Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| XimpleWare Corp., a California Corporation,<br><br>        Plaintiff;<br><br>     v.<br><br>Versata Software, Inc., f/k/a Trilogy Software, Inc., a Delaware corporation; Trilogy Development Group, Inc., a California corporation; Ameriprise Financial, Inc., a Delaware corporation; and Ameriprise Financial Services, Inc., a Delaware corporation,<br><br>        Defendants. | Case No. 3:13-cv-5160-NC<br><br>[PROPOSED] TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, AND ORDER GRANTING EXPEDITED DISCOVERY |

Computerlaw Group LLP
www.computerlaw.com℠

1     Plaintiff XimpleWare Corporation's *Ex Parte* Application for Temporary Restraining

2   Order, for Order to Show Cause re: Preliminary Injunction, and for Expedited Discovery came

3   before the Court on _____ , 2013. Good causing appearing therefore, the

4   Court finds and ORDERS as follows:

5                    ### TEMPORARY RESTRAINING ORDER

6     The Court issues this Temporary Restraining Order ("TRO") under 17 U.S.C. § 502(a)

7   and Rule 65(b) of the Federal Rules of Civil Procedure.

8     Defendants Versata Software Inc. and Trilogy Development Group, Inc., as well as their

9   other subsidiaries and affiliates, if any (the "Versata Defendants"), are hereby TEMPORARILY

10  ENJOINED from making any new sales of their Distribution Channel Management ("DCM")

11  product, delivering new copies of DCM to customers, or otherwise publishing DCM.

12    Defendants Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc., as well as

13  their other subsidiaries and affiliates, if any (the "Ameriprise Defendants") are hereby

14  TEMPORARILY ENJOINED from deploying DCM to any new users, whether internal or external, and

15  from deploying new versions of DCM to existing users.

16    This TRO shall expire after the hearing on XimpleWare's motion for a preliminary

17  injunction, which the Court sets for _____ in Courtroom .

18  _____, _____ Floor of the United States District Court in San Francisco, CA.

19    The Court makes the following findings in support of this TRO:

20  1.    XimpleWare has shown that it owns its VTD-XML product and its source code,

21        and has obtained a copyright registration on that source code (namely TX 7-727-

22        556).

23  2.    XimpleWare has shown a high likelihood that both the Versata Defendants and the

24        Ameriprise Defendants are infringing XimpleWare's copyrights. Specifically,

25        XimpleWare has shown a high likelihood that Versata incorporated VTD-XML

26        into its DCM product, licensed the DCM product to the Ameriprise Defendants

27        and other customers.

28

Computerlaw Group LLP
www.computerlaw.com™

3. Neither the Versata Defendants nor the Ameriprise Defendants obtained a commercial license to VTD-XML. Absent a commercial license, the only applicable license is the GNU General Public License ("GPL"), under which XimpleWare licenses and resleases its source code to the general public. The GPL, however, does not allow the kind of commercial use that the Versata Defendants made by incorporating VTD-XML into DCM and reselling it.

4. The likely harm to XimpleWare is irreparable. Versata's wholesale appropriation of XimpleWare's copyrighted source code beyond the scope of its GPL license effectively deprives XimpleWare of control over its software, which is its principal asset and source of revenue.

5. Section 502 of the Copyright Act states that "Any court having jurisdiction of a civil action arising under [the Copyright Act] may…**grant temporary** and final injunctions on such terms as it may deem reasonable to prevent or **restrain infringement** of a copyright" (emphasis added). The Court finds it reasonable, on the facts presented, to grant this TRO to restrain the Defendants' infringement.

6. XimpleWare shall post security in the amount of $_____.

## ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

The Court ORDERS all Defendants to show cause why a preliminary injunction should not issue. The Court sets the hearing on the preliminary injunction for _____ in Courtroom _____, _____ Floor of the United States District Court in San Francisco, CA.

## ORDER GRANTING EXPEDITED DISCOVERY

The Court finds good cause to allow limited discovery on an expedited basis. This discovery will allow the Court to determine whether a preliminary injunction is warranted. Limited, narrowly-tailored discovery on an expedited schedule will not unfairly prejudice the Versata Defendants or the Amerprise Defendants. The Court ORDERS the following discovery, to be completed by _____:

Computerlaw Group LLP
www.computerlaw.com℠

1. XimpleWare may serve document requests to the Versata Defendants and to the Ameriprise Defendants around Versata's inclusion of XimpleWare source code in its DCM product.

2. XimpleWare shall produce documents responsive to Ameriprise's and Versata's state court subpoenas and any further reasonable requests as included in the Rule 30(b)(6) Notice of Deposition. Those document productions shall also be used in this case.

3. XimpleWare may depose Versata's Rule 30(b)(6) witness on Versata's inclusion of XimpleWare's VTD-XML in the its products, Versata's distribution of products including VTD-XML, and Versata's compliance or non-compliance with the GPL. This deposition shall be scheduled within the first two weeks of December, 2013 following the deposition of XimpleWare's Rule 30(b)(6) witness as set forth in Paragraph 6 below.

4. XimpleWare may depose Ameriprise's Rule 30(b)(6) witness on Ameriprise's knowledge of the inclusion of XimpleWare's VTD-XML in the DCM product it licensed from Versata. This deposition shall be scheduled within the first two weeks of December, 2013 following the deposition of XimpleWare's Rule 30(b)(6) witness as set forth in Paragraph 6 below. (The foregoing deposition of Ameriprise need not occur if Ameriprise admits that it received the DCM product from Versata and that it does not have a commercial license from Ximpleware and that it will accept the Court's ruling(s) as against Versata as applicable against Ameriprise with regard to the further copying, use, or other exploitation of DCM.)

5. Versata and Ameriprise may jointly depose XimpleWare's Rule 30(b)(6) witness on XimpleWare's software licensing practices on mutually agreed dates in the first two weeks of December, 2013. This deposition shall coincide with the deposition Versata and Ameriprise have noticed through the state courts in Texas and California.

6. Multiple depositions shall not be taken of any Rule 30(b)(6) witnesses without further order and/or other approval of this Court following the showing of good cause by the party requesting such further deposition time.

Computerlaw Group LLP
www.computerlaw.com™

7. The parties shall meet and confer as to the precise scheduling of the above depositions (the "Agreed Schedule"), which shall occur at least one week after the parties' document productions specified above. The parties shall meet and confer to schedule a single date for exchange of the documents, and for the orderly production of documents in accord with the Agreed Schedule.

8. If any procedural or other disputes arise from the foregoing Order, the parties shall meet and confer in person in accordance with the Local Rules of this Court and file letter briefs in accordance with the Court's Civil Standing Order.

The Court further ORDERS the parties to file a joint schedule for the above expedited discovery by _____.

IT IS SO ORDERED.

Date: _____          _____

United States Magistrate Judge

Computerlaw Group LLP
www.computerlaw.com℠



1    Jack Russo (Cal. Bar No. 96068)
     Christopher Sargent (Cal. Bar No. 246285)
2    Ansel Halliburton (Cal. Bar No. 282906)
     COMPUTERLAW GROUP LLP
3    401 Florence Street
     Palo Alto, CA 94301
4    (650) 327-9800
     (650) 618-1863 fax
5    jrusso@computerlaw.com
     csargent@computerlaw.com
6    ahalliburton@computerlaw.com

7    Attorneys for Plaintiff
     XIMPLEWARE CORP.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   **XimpleWare Corp.**, a California        Case No. 3:13-cv-5160-NC
     Corporation,
13                                             **MEMORANDUM OF POINTS AND**
                     Plaintiff;                **AUTHORITIES IN SUPPORT OF**
14                                             **XIMPLEWARE'S** *EX PARTE* **APPLICATION**
           v.                                  **FOR TEMPORARY RESTRAINING ORDER, FOR**
15                                             **ORDER TO SHOW CAUSE RE:**
     **Versata Software, Inc., f/k/a Trilogy** **PRELIMINARY INJUNCTION, AND FOR**
16   **Software, Inc.**, a Delaware corporation; **EXPEDITED DISCOVERY**
     **Trilogy Development Group, Inc.**, a
17   California corporation; **Ameriprise**
     **Financial, Inc.**, a Delaware corporation; and
18   **Ameriprise Financial Services, Inc.**, a
     Delaware corporation,
19
                     Defendants.
20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1

<u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................... 1

Statement of Facts.......................................................................................................... 1

Argument ....................................................................................................................... 2

I.   The Court Should Issue a Temporary Restraining Order Enjoining Versata's

Infringement and Misappropriation. ......................................................................... 2

A. The Copyright Act Expressly Allows Temporary Injunctive Relief. ..................... 2

B. Legal Standard for Issuing a Temporary Restraining Order ................................... 2

C. XimpleWare Has Raised Serious Questions, and Is

Very Likely To Prevail On The Merits................................................................. 3

    1.   Undisputed Facts Demonstrate Versata's Unlicensed Commercial Sales of

       XimpleWare's GPL-Licensed VTD-XML Source Code. ............................... 3

    2.   XimpleWare Owns a Registered Copyright in Its VTD-XML Software. ................. 4

    3.   Versata Copied and Sold VTD-XML as Part of Its DCM Product. ......................... 5

    4.   Versata Cannot Claim Protection From Any GPL License. ................................... 6

    5.   Versata Never Had Any Rights to Distribute VTD-XML......................................... 7

    6.   Because the GPL Does Not Protect Them, Versata and Ameriprise Are

       Liable for Copyright Infringement Jointly and Severally. ........................... 7

D. The Balance Of Hardships Tips Sharply In XimpleWare's Favor. ........................ 8

E. An Early TRO in This Case Serves The Public Interest. ....................................... 9

II. The Court Should Grant XimpleWare Limited Expedited Discovery To Support its

Time-Sensitive Preliminary Injunction Motion. ................................................... 9

A. There is Ample Good Cause for Allowing Limited Early Discovery. ............... 10

B. The Discovery XimpleWare Seeks is Narrowly Tailored and Mutual.............. 11

Conclusion ................................................................................................................ 11

**TABLE OF AUTHORITIES**

CASES

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011), ...................................... 3

*Amoco Production Co. v. Gambell,* 480 U.S. 531 (1987) .............................................................. 3

*Apple Inc. v. Psystar Corp.,* 673 F. Supp. 2d 943 (N.D. Cal. 2009) ............................................. 9

*Computer Assocs. Int'l v. Quest Software, Inc.,* 333 F. Supp. 2d 688 (N.D. Ill. Jun. 28, 2004) .. 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) ................................................. 8

*Jacobsen v. Katzer,* 535 F.3d 1373 (Fed. Cir. 2008) ................................................................... 6

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) ............................................................................... 3

*Notaro v. Koch,* 95 F.R.D. 403, 1982 U.S. Dist. LEXIS 14842 (S.D.N.Y. 1982) ...................... 10

*Semitool, Inc. v. Tokyo Electron Am.,* 208 F.R.D. 273, 2002 U.S. Dist. LEXIS 8961

   (N.D. Cal. 2002) ..................................................................................................................... 10

*Sencion v. Saxon Mortg. Servs., LLC,* 2011 U.S. Dist. LEXIS 41022, 2011 WL 1364007

   (N.D. Cal. Apr. 11, 2011) ........................................................................................................ 3

*State of Alaska v. Native Village of Venetie,* 856 F.2d 1384 (9th Cir. 1988) ................................ 2

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982) ................................................................. 3

*Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) ............................................... 2

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.,* 202 F.R.D. 612, 2001 U.S. Dist. LEXIS 17349

   (D. Ariz. 2001) ...................................................................................................................... 10

STATUTES

17 U.S.C. § 102 ............................................................................................................................ 5

17 U.S.C. § 106 ................................................................................................................... 7, 8, 12

17 U.S.C. § 201 ............................................................................................................................ 5

17 U.S.C. § 410 ............................................................................................................................ 5

17 U.S.C. § 501 ............................................................................................................................ 8

17 U.S.C. § 502 ......................................................................................................................... 2, 8

17 U.S.C. § 506 ............................................................................................................................ 9

Computerlaw Group LLP
www.computerlaw.com℠

**OTHER AUTHORITIES**

U.S. Copyright Office, Circular 61, "Copyright Registration for Computer Programs,"
Aug. 2012...................................................................................................................... 5

**RULES**

Fed. R. Civ. P. Rule 30 ................................................................................................ 12

FED. R. CIV. P. Rule 65.......................................................................................... 3, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art I, § 8, cl. 8........................................................................................... 9

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1                         **INTRODUCTION**

2         Plaintiff XimpleWare, Inc. has sued Versata Software, Inc. and its affiliated companies, as

3 well as an also infringing customer, Ameriprise Financial, for copyright infringement and related

4 claims. This case arises from Versata's wholesale appropriation of XimpleWare's copyrighted

5 VTD-XML software into Versata's own DCM product—without authorization from XimpleWare

6 and in clear violation of the limited GPL license under which XimpleWare makes its software

7 available—and Versata's multi-million dollar sales (and Amerirprise's multi-million dollar use)

8 of its DCM product, which includes XimpleWare's unlicensed VTD-XML software.

9         A temporary restraining order and preliminary injunction are warranted because, to date,

10 Versata has denied and concealed its infringement from both XimpleWare and Ameriprise, its

11 major distributor to tens if not hundreds of thousands of independent contractors, all continuing

12 even after repeated notices to each Defendant. The VTD-XML software that Versata has

13 misappropriated is XimpleWare's principal asset. Absent injunctive relief, XimpleWare will

14 continue to be irreparably harmed by loss of control over its sole asset.

15                    **STATEMENT OF FACTS**

16         XimpleWare is a California corporation that develops and licenses software for extremely

17 efficient data processing. XimpleWare holds all the rights—including copyrights and patents—in

18 its software and its source code, including for its main product, which it calls VTD-XML.

19         Versata is an enterprise software company that sells several products, one of which is a

20 complex system for insurance companies called Distribution Channel Management, or DCM,

21 which it licenses for millions of dollars per customer. Ameriprise, a national financial services

22 company, has been a DCM customer for many years.

23         Recently, XimpleWare learned through Ameriprise that Versata had incorporated

24 XimpleWare's VTD-XML source code into DCM—but without obtaining a commercial license

25 from XimpleWare. Based on XimpleWare's discussions with Ameriprise, and according to filings

26 in Texas state court litigation between Versata and Ameriprise (but not XimpleWare), during

27

28

1  discovery in litigation with Versata, Ameriprise discovered that Versata had incorporated

2  XimpleWare's DCM source code into its DCM product.

**ARGUMENT**

**I.    THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ENJOINING VERSATA'S INFRINGEMENT AND MISAPPROPRIATION.**

**A.    The Copyright Act Expressly Allows Temporary Injunctive Relief.**

The Copyright Act expressly allows this Court to grant injunctive relief—including a "temporary...injunction[]" (*i.e.*, a TRO):

> Any court having jurisdiction of a civil action arising under [the Copyright Act] may...**grant temporary** and final injunctions on such terms as it may deem reasonable to prevent or **restrain infringement** of a copyright.

17 U.S.C. § 502(a) (2013) (emphasis added). That is **precisely** what XimpleWare requests here: a TRO to temporarily restrain Versata's copyright infringement. In addition, the terms of the TRO XimpleWare seeks are "reasonable": a TRO lasting only until the full preliminary injunction hearing, at which point Versata will have had a full opportunity to brief the Court and to argue the merits.

**B.    Legal Standard for Issuing a Temporary Restraining Order**

The Ninth Circuit's standards for granting a temporary restraining order are identical to those for granting a preliminary injunction. *State of Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1389 (9th Cir. 1988). The Supreme Court has held that, to obtain a preliminary injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375–76, citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (*per curiam*). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

Computerlaw Group LLP
www.computerlaw.com℠

1   requested relief.'" *Id.* at 376 (citing *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542

2   (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for

3   the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376–77,

4   citing *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982).

5         In *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011), the Ninth

6   Circuit held that the "serious questions" sliding-scale approach survived *Winter,* whereby

7   preliminary injunctive relief should also be granted when a plaintiff demonstrates "that serious

8   questions going to the merits were raised and the balance of the hardships tips sharply in the

9   plaintiff's favor," thereby allowing District Courts to preserve the *status quo* where difficult legal

10  questions require more deliberate investigation. *Alliance,* 632 F.3d at 1135; *see also Sencion v.*

11  *Saxon Mortg. Servs., LLC,* 2011 U.S. Dist. LEXIS 41022 at *5, 2011 WL 1364007 at *2 (N.D.

12  Cal. Apr. 11, 2011). The plaintiff must also satisfy the irreparable harm and public interest

13  requirements under *Winter,* 632 F.3d at 1132, 1135. However, the sliding-scale approach allows

14  the Court to protect XimpleWare pending resolution of its preliminary injunction motion and the

15  remainder of this case. After issuing a TRO, the Court should set an expedited briefing schedule

16  on the Order to Show Cause based on the requirements of Rule 65(b)(2) of the Federal Rules of

17  Civil Procedure, which provides that a TRO shall expire within fourteen days of the date of entry

18  "unless before that time the court, for good cause, extends it for a like period or the adverse party

19  consents to a longer extension." FED. R. CIV. P. Rule 65.

20        **C.      XimpleWare Has Raised Serious Questions, and Is Very Likely To Prevail On
                    The Merits.**
21

22        Even at this early stage of the litigation, there are enough undisputed facts to show that

23  XimpleWare is highly likely to prevail on the merits of its breach of contract and copyright

24  claims.

25        **1.      Undisputed Facts Demonstrate Versata's Unlicensed Commercial
                    Sales of XimpleWare's GPL-Licensed VTD-XML Source Code.**

26        Based on information in Ameriprise's filings in its case against Versata in Texas state

27  court, and on discussions with counsel for Ameriprise, XimpleWare understands that, during

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1  separate litigation between Ameriprise and Versata, Ameriprise discovered XimpleWare's source

2  code within the source code for Versata's DCM product.[1] The following facts are not reasonably

3  disputed:

    1.  Versata included the source code for VTD-XML in the source code for its

        DCM product.[2]

    2.  Versata licensed, for millions of dollars, its DCM product (which included

        unlicensed copies of VTD-XML), to Ameriprise and other customers.[3]

    3.  Versata never obtained a commercial license for VTD-XML from

        XimpleWare.[4]

    4.  Versata never released the source code for its DCM product as open source

        under the GPL.[5]

As a matter of law, these facts constitute breach of the GPL—and therefore copyright infringement.

### 2.   XimpleWare Owns a Registered Copyright in Its VTD-XML Software.

XimpleWare owns all the rights to its VTD-XML software and its source code, which is copyrightable expression.[6] XimpleWare has registered its copyright in version 2.3 of the VTD-XML source code with the U.S. Copyright Office, and obtained registration no. TX 7-727-556, with an effective date of September 4, 2013.[7] All authors who contributed to VTD-XML have assigned their rights to XimpleWare.[8] XimpleWare's registration creates an evidentiary

---

[1] Declaration of Jack Russo ("Russo Decl.") ¶¶ 2–5 and Ex. 7.

[2] Russo Decl. ¶¶ 2–5 and Ex. 7; Zhang Decl. ¶¶ 28–31.

[3] Zhang Decl. ¶ 34.

[4] Zhang Decl. ¶ 31.

[5] Zhang Decl. ¶ 31; Russo Decl. Ex. 7 (see last page: Versata's answer to Interrogatory No. 5 in Texas litigation, admitting that it keeps its DCM source code confidential).

[6] "Copyright protection extends to all the copyrightable expression embodied in the computer program." U.S. Copyright Office, Circular 61, "Copyright Registration for Computer Programs," Aug. 2012, available at http://www.copyright.gov/circs/circ61.pdf (software and source code protected under copyright law as literary works); 17 U.S.C. § 102.

[7] Russo Decl. ¶ 12 and Ex. 8 (copyright registration certificate).

[8] Zhang Decl. ¶¶ 5–23. *See also* 17 U.S.C. § 201 (ownership of copyrights).

1  presumption that its copyright in the VTD-XML source code is valid, and that XimpleWare owns

2  that copyright.[9] Although XimpleWare registered its copyright more than five years after it first

3  published version 2.3 of its VTD-XML source code, the presumption still stands because there is

4  no evidence to actually rebut it, and because definitive records about what happened to the VTD-

5  XML source code are publicly available on XimpleWare's open source project website[10] and in

6  its SourceForge-hosted source code repository.[11]

### 3. Versata Copied and Sold VTD-XML as Part of Its DCM Product.

8  Through Ameriprise, XimpleWare has learned that Versata had incorporated

9  XimpleWare's GPL-licensed VTD-XML source code into Versata's own DCM product.[12]

10  Ameriprise itself learned this only through discovery in litigation that is currently pending by

11  Versata against Ameriprise in Texas state court.[13]

12  In that case, Versata alleged that Ameriprise improperly reverse engineered the DCM

13  product to more easily replace it with a home-grown replacement. Versata produced the source

14  code for DCM in discovery, at which point Ameriprise learned that Versata had included VTD-

15  XML in DCM, apparently without a proper commercial license.

16

17

18

19

---

20  [9] 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or
within five years after first publication of the work shall constitute prima facie evidence of the
21  validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be
accorded the certificate of a registration made thereafter shall be within the discretion of the
22  court.").

23  [10] VTD-XML SourceForge page, http://sourceforge.net/projects/vtd-xml/ (last accessed Nov. 8,
2013; archived at http://perma.cc/0u2bTwvSjkU).

24  [11] See, e.g., "Revision Log," http://vtd-xml.cvs.sourceforge.net/viewvc/vtd-xml/ximple-
dev/com/ximpleware/VTDNav.java?view=log (last accessed Nov. 8, 2013; archived at
25  http://perma.cc/0K5ZTKMRMUF) (log of 132 changes to VTDNav.java source code file in
XimpleWare's CVS repository from 2004 to 2013); Zhang Decl. ¶ 11 (identifying "jzhang2004"
26  as Jimmy Zhang, XimpleWare's CEO).

27  [12] Russo Decl. ¶¶ 2–5 and Ex. 7; Zhang Decl. ¶¶ 28–31.

[13] Russo Ex. 7 (Ameriprise's Motion for Partial Summary Judgment, filed July 24, 2013 against
28  Versata in Texas state court case).

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com™

1

### 4. Versata Cannot Claim Protection From Any GPL License.

2      XimpleWare licenses VTD-XML under the GNU General Public License, or GPL.[14] The

3 GPL, like any other software license, is a contract, and it is enforceable.[15] The GPL is one of

4 many "open source" licenses that software developers can use when publishing their source

5 code. The GPL is widely known among software developers, and is widely understood to be a

6 very restrictive license in many respects—including its "viral" or "copyleft" provisions. Many

7 important software products are licensed under the GPL, including, most famously, the free

8 Linux operating system that powers much of the Internet and underlies the Android smartphone

9 operating system that powers one billion mobile devices.[16]

10      Any person using GPL-licensed software must release any works derived from or

11 incorporating GPL-licensed code to itself be licensed under the GPL. Section 2(a) of the GPL

12 states this condition in plain language: "You must cause any work that you distribute or publish,

13 that in whole or in part contains or is derived from the Program or any part thereof, to be licensed

14 as a whole at no charge to all third parties under the terms of this License."[17]

15      Importantly, because judicial admissions are clearly binding on parties who make them in

16 other litigation, in the Texas litigation, Ameriprise now contends correctly that, under the terms

17 of the GPL under which XimpleWare licensed VTD-XML, Versata must release the entire source

18 code for DCM under the GPL.[18] This is the so-called "viral" effect of the GPL. To avoid this

19 outcome, Versata should have obtained a commercial non-GPL license from XimpleWare.

20 **Because it did not obtain a commercial license from XimpleWare, Ameriprise contends that**

21 **Versata must license DCM itself under the GPL.** Its failure to do so is a breach of Section 2(a)

22 the GPL—the terms of which Versata accepted myriad times when it downloaded, copied, used,

23   

---

[14] Zhang Decl. ¶¶ 8–12 and Ex. 1.

24 [15] *Jacobsen v. Katzer*, 535 F.3d 1373, 1378–83 (Fed. Cir. 2008) (discussion of open source
software and licensing; holding open source license valid and binding on defendant; vacating

25 District Court's denial of injunction and remanding for further proceedings).

26 [16] Sundar Pichai, Senior Vice President of Google, Google+ post, Sep. 3, 2013,
https://plus.google.com/+android/posts/CxiQidWrPR6 ("we've now passed 1 Billion Android

27 device activations") (last accessed Nov. 8, 2013, archived at http://perma.cc/0BX3Z3euKN9).

[17] Zhang Ex. 1 (GNU General Public License).

28 [18] Russo Ex. 7 (Ameriprise's Motion for Partial Summary Judgment in the Texas litigation).

1 and integrated VTD-XML into DCM. **Versata's wholesale copying of VTD-XML into DCM**

2 **violates Section 2(a) of the GPL and makes Versata's uses of XimpleWare's copyrighted**

3 **computer software unauthorized and, therefore, a direct infringement of XimpleWare's**

4 **exclusive rights under Section 106 of the Copyright Act** (17 U.S.C. §§ 101 *et. seq.*). A clearer

5 case of copyright infringement by two major corporations against a small privately-held

6 company is hard to imagine.

7        **5.**      **Versata Never Had Any Rights to Distribute VTD-XML.**

8       Under the GPL, any party that redistributes or purports to redistribute VTD-XML in a

9 manner that does not fully comply with the GPL's strict terms, conditions, and provisions never

10 gains any rights to copy or modify VTD-XML. Specifically, section 4 of the GPL states:

11
12         You may not copy, modify, sublicense, or distribute the Program except as
        expressly provided under this License. Any attempt otherwise to copy, modify,
        sublicense or distribute the Program is void, and will automatically terminate your
13         rights under this License.[19]

14 Versata's distribution of VTD-XML commercially within DCM, without releasing DCM's source

15 code under the GPL, did not comply with the GPL. Therefore, at that time, Versata never gained

16 (and, put another way, it immediately lost) any right to copy, modify, or distribute VTD-XML.

17 Any copying, modification, or distribution of VTD-XML after Versata's initial violation was, and

18 is, without XimpleWare's permission. Thus, the GPL provides no protection for Versata and thus,

19 none for Ameriprise either.

20        **6.**      **Because the GPL Does Not Protect Them, Versata and Ameriprise Are**
21            **Liable for Copyright Infringement Jointly and Severally.**

22       Absent a commercial license to use VTD-XML without releasing DCM under the GPL,

Versata's Ameriprise's use of VTD-XML constitutes copyright infringement.

23       Copyright law grants XimpleWare **exclusive** rights, including the rights to
24
"reproduce...prepare derivative works...[and] distribute copies" of the VTD-XML software and
25
its source code.[20] Copyright infringement occurs when a party violates any of those exclusive
26

27 [19] Zhang Ex. 1 (GPL).
28 [20] 17 U.S.C. § 106.

Computerlaw Group LLP
www.computerlaw.com℠

1   rights: "Anyone who violates any of the exclusive rights of the copyright owner as provided by

2   sections 106 through 122…**is an infringer** of the copyright…"[21]. "To establish infringement,

3   two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent

4   elements of the work that are original."[22]

5       Here, XimpleWare has shown that it owns all the rights in VTD-XML, including all

6   exclusive rights under copyright law. XimpleWare has also shown that Versata and Ameriprise

7   have violated those exclusive rights. This is copyright infringement, and it is continuing,

8   willfully. **The Copyright Act expressly provides for both temporary injunctive relief for**

9   **copyright infringement.**[23]

10       **D.    The Balance Of Hardships Tips Sharply In XimpleWare's Favor.**

11       If the Court grants a TRO, Versata will be temporarily enjoined from further sales of its

12   infringing DCM product, and Ameriprise will be temporarily enjoined from deploying DCM to

13   new users. Ceasing one's violation of the law is not a hardship; it is fair. Further, the scope of this

14   temporary injunctive relief is narrow; XimpleWare is not requesting any relief that would impact

15   existing Ameriprise DCM users or other existing Versata customers.

16       In contrast, if the Court denies XimpleWare's request for a TRO, XimpleWare will

17   **undoubtedly** be harmed by Versata's continuing infringement. More importantly, XimpleWare

18   will have lost control of its key asset: its exclusive rights to license VTD-XML.[24]

19       Versata's infringement is far from innocent; it is, in fact, **criminal**. XimpleWare is

20   informed that the VTD-XML source code that Ameriprise found in DCM had been modified to

21   remove the GPL license information that XimpleWare has always included at the top of **every**

22   **file** of its VTD-XML source code.[25] Under Section 506(d) of the Copyright Act—which

23   enumerates criminal offenses related to copyright infringement—**Versata's removal of**

24

---

25   [21] 17 U.S.C. § 501.

  [22] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

26   [23] 17 U.S.C. § 502(a).

  [24] Zhang Decl. ¶¶ 25, 32–33.

27   [25] Exhibit 10 to the Zhang Declaration is a representative example of the beginning of one such

28   file with a copyright notice and GPL licensing information.

Computerlaw Group LLP
www.computerlaw.com℠

1   **XimpleWare's copyright notice is a crime**. 17 U.S.C. § 506(d) ("Any person who, with

2   fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted

3   work shall be fined not more than $2,500"). XimpleWare seeks to confirm these facts in

4   discovery, but the information it has to date raises serious questions meriting—at minimum—a

5   temporary restraining order.

6         **E.**    **An Early TRO in This Case Serves The Public Interest.**

7         Halting Versata's criminal and civil violations of the Copyright Act serves the public

8   interest in upholding copyright law.[26] Copyright law itself is contemplated by the Constutition,

9   which enumerates, among Congress's other powers, that it shall enact laws to "promote the

10   Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the

11   exclusive Right to their respective Writings and Discoveries."[27]

12         XimpleWare has also sued Versata for reverse passing off in violation of the Lanham

13   Act.[28] By incorporating XimpleWare's VTD-XML software without attribution, Versata misleads

14   the public as to the source of a part of its product. Notably, Versata touts **speed**—XimpleWare's

15   key benefit—as one of DCM's main selling points.[29] A TRO thus serves the public interest by

16   stemming the likely confusion resulting from Versata's unattributed and unlicensed use of

17   XimpleWare's software.

18   **II.**    **THE COURT SHOULD GRANT XIMPLEWARE LIMITED EXPEDITED DISCOVERY TO**
          **SUPPORT ITS TIME-SENSITIVE PRELIMINARY INJUNCTION MOTION.**
19

20         XimpleWare also seeks expedited discovery to further support its preliminary injunction

21   motion. The Court may grant expedited discovery on a showing of **good cause**. *Semitool, Inc. v.*

22

23   [26] *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) (holding "the public receives a benefit when the legitimate rights of copyright holders are vindicated" and granting
24   permanent injunction in software copyright case with both criminal and civil copyright elements).

25   [27] U.S. Const. art I, § 8, cl. 8. *See also Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 701 (N.D. Ill. Jun. 28, 2004) ("The granting of an injunction is in the public
26   interest. The public is generally interested in upholding intellectual property rights, encouraging creativity and innovation, and rewarding the investment of resources in these pursuits.")

27   [28] Complaint (Dkt. 1) at ¶¶ 78–87.

28   [29] Russo Ex. 9 (pages from websites of Versata and its subsidiary companies Trilogy and Aurea).

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1  *Tokyo Electron Am.*, 208 F.R.D. 273, 2002 U.S. Dist. LEXIS 8961 (N.D. Cal. 2002) (granting

2  expedited discovery for good cause and declining to apply more rigid standard of *Notaro v.*

3  *Koch*, 95 F.R.D. 403, 1982 U.S. Dist. LEXIS 14842 (S.D.N.Y. 1982)); *Yokohama Tire Corp. v.*

4  *Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 2001 U.S. Dist. LEXIS 17349 (D. Ariz. 2001)

5  (adopting good cause standard over *Notaro* approach).

6  **A.    There is Ample Good Cause for Allowing Limited Early Discovery.**

7  Good cause exists here because, both in an out of separate litigation, Versata has actively

8  denied its infringement despite being caught red-handed by Ameriprise. All XimpleWare seeks is

9  to confirm that information with admissible evidence, all of which should be readily available by

10  virtue of its production in other litigation in Texas state court.

11  XimpleWare is clearly **without fault**.[30] XimpleWare published its VTD-XML source

12  code under the GPL license—a reasonable business practice pursued by many successful

13  software companies—expecting that parties who wished to incorporate it into proprietary

14  software would act in good faith and engage in negotiations for a commercial license.[31] Versata,

15  however, never did that. Instead, it simply copied XimpleWare's VTD-XML software into its

16  proprietary commercial software, without a word or a penny to XimpleWare.[32] XimpleWare only

17  learned of this copying through Ameriprise, and only then because Ameriprise discovered it in

18  discovery in unrelated litigation. XimpleWare retained counsel and attempted to learn more from

19  Ameriprise and Versata, but those informal discussions have yielded little fruit.[33] XimpleWare

20  therefore filed this case, and seeks the Court's assistance in obtaining the discovery it needs to

21  further support its motion for a preliminary injunction.

22

23

24

---

25  [30] *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613, 2001 U.S. Dist. LEXIS
17349 (D. Ariz. 2001) (requiring "moving party [be] without fault in creating the crisis that
26  requires *ex parte* relief").

27  [31] Zhang Decl. ¶¶ 8–27.
[32] Zhang Decl. ¶¶ 28–34.
28  [33] Russo Decl. ¶¶ 2–5.

**B.      The Discovery XimpleWare Seeks is Narrowly Tailored and Mutual.**

The discovery XimpleWare seeks is narrowly tailored to supporting XimpleWare's preliminary injunction motion, and is mutual in that XimpleWare will also produce documents and have its deposition taken on relevant topics. XimpleWare requests the following expedited discovery:

1.      Limited document production by Versata and Ameriprise around Versata's inclusion of XimpleWare source code in its DCM product.

2.      Limited document production by XimpleWare responsive to Ameriprise's and Versata's state court subpoenas and any further reasonable requests as included in their Rule 30(b)(6) deposition notices in this case.

3.      Deposition of Versata's Rule 30(b)(6) witness on Versata's inclusion of XimpleWare's VTD-XML in the its products, Versata's distribution of products including VTD-XML, and Versata's compliance or non-compliance with the GPL.

4.      Deposition of Ameriprise's Rule 30(b)(6) witness on Ameriprise's knowledge of the inclusion of XimpleWare's VTD-XML in the DCM product it licensed from Versata.

5.      Deposition of XimpleWare's Rule 30(b)(6) witness on XimpleWare's software licensing practices.

Each of these categories of discovery is narrowly tailored to supporting XimpleWare's preliminary injunction motion. To decide that motion, the Court will need a more developed factual record around Versata's use of VTD-XML and XimpleWare's licensing practices. The above discovery goes to those topics, and nothing more. This round of depositions can be completed next month, within adequate time for the Court to have the benefit of that testimony for the adjudication of the preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

### CONCLUSION

The Copyright Act fully extends its protection to owners of computer software. XimpleWare is the owner of Copyright Registration Certificate No. TX 7-727-556 which

Computerlaw Group LLP
www.computerlaw.com℠

1   protects the computer software that is has designed, developed and protected under the Copyright

2   Act. XimpleWare is being irreparably harmed by Versata's continuing willful infringement of

3   each of the exclusive rights granted by XimpleWare's copyright rights. 17 U.S.C. § 106. These

4   exclusive rights mean nothing if injunctive relief is unavailable to protect them; and the

5   Copyright Act makes clear that this Court is authorized to grant precisely the injunctive relief

6   requested in this case and by this motion. Knowing it has no defense to its multiple acts of

7   infringement, Versata has instead sought to obfuscate and avoid responsibility, including by

8   removing XimpleWare's copyright notices—a federal crime. The Court should correct these

9   injustices by granting XimpleWare's *ex parte* application and issuing a temporary restraining

10  order preventing Versata from selling any more copies of its infringing DCM software, and

11  preventing Ameriprise from deploying that infringing DCM software to new users. The Court

12  should order Versata and Ameriprise to show cause why a preliminary injunction should not

13  issue, and should additionally grant the limited expedited discovery that XimpleWare seeks.

COMPUTERLAW GROUP LLP

Dated: November 22, 2013      By:    /s/ Jack Russo
                                     Jack Russo
                                     Christopher Sargent
                                     Ansel Halliburton

                                     Attorneys for Plaintiff
                                     XIMPLEWARE CORP.

1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California          Case No. 3:13-cv-5160-NC
    Corporation,
13                                             **DECLARATION OF ZHENGYU ZHANG IN**
                    Plaintiff;                 **SUPPORT OF PLAINTIFF XIMPLEWARE**
14                                             **CORP.'S** *EX PARTE* **APPLICATION FOR**
         v.                                    **TEMPORARY RESTRAINING ORDER, ORDER**
15                                             **TO SHOW CAUSE, AND ORDER GRANTING**
    **Versata Software, Inc.**, f/k/a **Trilogy**  **EXPEDITED DISCOVERY**
16  **Software, Inc.**, a Delaware corporation;
    **Trilogy Development Group, Inc.**, a
17  California corporation; **Ameriprise**
    **Financial, Inc.**, a Delaware corporation; and
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation,
19
                    Defendants.
20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com™

I, Zhengyu Zhang, declare as follows:

1.      My name is Zhengyu Zhang, but I go by and have gone by Jimmy Zhang for most of my life. I am acting CEO and chief design engineer for XimpleWare Corp. ("XimpleWare"), a corporation organized under the laws of and registered to do business in California. I make the statements here of my personal knowledge, except where stated on information and belief, which statements I believe to be true. I can and would competently testify to the facts set forth herein if called as a witness.

2.      I was born in Shanghai, China and came to the United States in 1991 when I was 18. I have been an American citizen since about 2003.

3.      I initially attended community college before I transferred to the University of California Berkeley. I am fluent in several computer programming languages including JAVA, C, C++, C#, and Perl. At Berkeley, I earned Bachelor of Science and Master of Science degrees in Electrical Engineering and Computer Sciences in 1996 and 1998, respectively.

4.      I have spent the last 15 years in the software development and software engineering field with leading software development and electronic design automation companies like Synopsys, x.com, IPUnity, and VWeb, doing everything from technical support to software engineering.

### Formation of XimpleWare

5.      I started XimpleWare in October 2002 with the goal of achieving maximum efficiency using on-chip XML processing. I incorporated XimpleWare in 2002 with the help of XimpleWare's corporate attorney, Thomas Bahrick. I am currently the Chief Executive Officer for XimpleWare. In creating the "XimpleWare" name, I wanted something that incorporated the letters x-m-l, inform the marketplace that our product was software code, and evoke the efficiency and simplicity with which the product parses XML.

6.      Originally, I had a cofounder in XimpleWare named Hui Tian who now has a minor ownership claim and who helped process patent applications. However he split from the venture in (2003), and no longer has any creative, managerial, or advisory role in XimpleWare or the direction it takes in the future.

Computerlaw Group LLP
www.computerlaw.com℠

7.      I wanted to avoid the controlling interest and complication of any venture capitalist group involvement in XimpleWare, so my parents invested several hundred thousand dollars in seed money. My father is also a software engineer who led a startup to an initial public offering and eventually sold his company to Synopsys, where he stayed on as an engineer building circuits. Much of the money for XimpleWare still comes from my parents and myself who are the only other members of the XimpleWare Board of Directors. Those investments pay the patent fees, and I have spent my entire 401(k) savings in support of the venture.

8.      Open-source software is software made available publicly, and licensed with any number of available licenses including GPL, Apache, BSD, LGPL, etc., which generally provide that the copyright holder provides the rights to study, change, and distribute the software at no cost to anyone and for any purpose. However, such licenses, including the GPL which we used to license the XimpleWare Source Code, explicitly allows the creator of the copyrighted source code to license his or her code privately for a fee. This allows one to monetize intellectual property while still making the copyrighted code available for collaboration and future invention.

9.      I began writing the software code in source code form and associated source materials for my company in 2004 and I estimate that I have personally put in over 10,000 person hours of computer programming over the last 10 years of work that I have personally done.

10.      I made the business decision to license the XimpleWare source code with the GNU General Public License version 2 ("GPL"), one of many open source licenses available to developers interested in an open source development approach. A copy of the GPL is attached as **Exhibit 1**. I chose to license the Source Code under the GPL because it is one of the most restrictive licenses available for open-source programmers, requiring that any derivative code developed by incorporating GPL-protected code must be returned to the open-source community.

11.      I have always incorporated all copyright and other notices required by the GPL, and I have always incorporated those notices into every iteration of the XimpleWare Source Code checked in via XimpleWare's CVS revision control system. My SourceForge username is "jzhang2004".

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1    12.    I made the conscious decision to use an open source approach for the

2    development and maintenance of the XimpleWare Source Code (the "Source Code"), and built

3    XimpleWare's business model around that decision.

4                    **The XimpleWare Software Product: VTD-XML**

5    13.    The complete XimpleWare product, known as "VTD-XML" and "VTD-XML

6    Extended" (the "Product"), is made up of many constituent parts, each with individual functions

7    and written in several different programming languages. However, I developed the majority of

8    the XimpleWare code in Java.

9    14.    XML is ubiquitous in today's business world with an almost limitless number of

10   applications. The XimpleWare Code and Product I created reads and parses XML code at a rate

11   estimated at 5 to 10 times the speed of current XML parsing programs, effecting maximum

12   efficiency, speed, and vastly reducing computing needs and costs.

13   15.    XimpleWare has had discussions and interest from several industry leaders for

14   licensing and we have established ourselves as one of the leading companies in this area of

15   XML.

16   16.    As I wrote and updated the Source Code, I maintained the body of code in an

17   online open source repository called SourceForge. That repository allowed me to check out the

18   Source Code, edit and update sections as necessary, and then check it back in with time, date,

19   and contributor information indicated on any changes made to track the revisions and evolution

20   of the Source Code. Any changes were recorded using a CVS revision control system. As the

21   Source Code as a whole is made up of many different files, I would (and still do) update each file

22   periodically, checking in all changes so that an updated version of the Source Code is available

23   to the open source community.

24   17.    I am the contributor of record on almost all, if not all, changes made to the Source

25   Code. Periodically, other open source collaborators would email suggested changes to me, but

26   those suggestions were never more than 20–30 suggested statements (sometimes called "lines of

27   code") and I never included these third party suggestions but rather I re-wrote each of them with

28   my own programming, which I placed into the Source Code after a thorough review of the

Computerlaw Group LLP
www.computerlaw.com℠

1   suggested code's functionality, an analysis of whether it served the purpose of speeding up the

2   Product's XML parsing, and after a complete clean-room rewrite of the suggested functionality.

3      18.     All contributions (including my own) to the XimpleWare Source code were

4   "works for hire" and all employees and other collaborators understood it as such.

5      19.     My brother-in-law, Harry Xu, has also collaborated on the XimpleWare Source

6   Code, but has assigned all work and intellectual property to XimpleWare, and has no ownership

7   claim. There are no other collaborators, and, as mentioned above, I checked in almost all, if not

8   all, revisions of the Code into SourceForge. All changes go through me as the design engineer.

9      20.     Harry Xu has signed an Assignment Agreement assigning all of his collaborative

10  efforts in XimpleWare to the Company.

11     21.     XimpleWare has never used any substantial monies for marketing except through

12  the GPL licensing approach as XimpleWare expects the Product to market itself by way of the

13  commercial licensing agreements that should result after proper GPL usage and without violation

14  of the GPL terms, conditions or restrictions.

15  **XimpleWare's Issued U.S. Copyrights**

16     22.     XimpleWare is the owner of all right, title, and interest in all copyrights including

17  but not limited to all U.S. copyrights on the Source Code and on the Source Materials, all of

18  which have appropriate copyright notices contained conspicuously on the first page of each

19  work. **Exhibit 2** is a representative example of one such copyright notice on one file in the VTD-

20  XML Source Code.

21     23.     There has been no challenge to any of XimpleWare's patents, copyrights, trade

22  secrets, or any other XimpleWare intellectual property rights.

23  **Licensees**

24     24.     The XML parsing community acknowledged the validity and strength of

25  XimpleWare's innovation through licensing discussions and signed OEM and end-user license

26  agreements.

27     25.     Due to the fundamental properties of XML technology, XML parsing innovations

28  are very hard to sell because they are not end-user products, *i.e.*, they have to be integrated into

another existing product. This principle drove my decision to distribute the Source Code mainly under Original Equipment Manufacturer ("OEM") agreements. The Product is an enabler for any product that uses XML in its applications, but in order to see the upside in the parsing speed, customers have to try it. All of this factored into the business and marketing decisions I made for the company.

26.     XimpleWare has negotiated and closed several OEM licensing deals, under which the customers were able to make commercial uses of XimpleWare's VTD-XML product without the restrictions of the GPL.

27.     In addition to the OEM licenses, there has been significant licensing interest from major companies and technology industry leaders.

### Ameriprise and Versata/Trilogy

28.     On July 22, 2013, I learned of the Versata/Ameriprise lawsuit in Texas over a contracting agreement.

29.     I understand from various public records that Versata and Trilogy were two companies before they merged recently, and now Trilogy exists as a subsidiary of Versata.

30.     I also understand (and some of this is reflected in published litigation files) that Versata acted as a software contractor for a company called Ameriprise until Ameriprise attempted to write its own software using programmers in India to replace the ongoing Versata work. It is my understanding that Versata sued Ameriprise for breach of their contracting agreement.

31.     At some point during that lawsuit, Ameriprise noticed that that there were sections of code in the "DCM" Versata product that contained GPLed XimpleWare Source Code which was used without my consent and without honoring explicit clauses of the GPL related to the return of source code to the open source community. **XimpleWare has not granted a commercial license or any other permission or authorization to Versata or Ameriprise for the use of any XimpleWare product.**

32.     After our copyrights were registered with the U.S. Copyright Office and after all investigatory work was completed, I authorized legal counsel to give notice to Trilogy, Versata

Computerlaw Group LLP
www.computerlaw.com℠

1  and all related parties that they had no rights to infringe the copyrights or the patents or any of

2  the intellectual properties of XimpleWare. Without a commercial license, they were and are

3  infringers and given their refusal to enter commercial licenses with XimpleWare, they were and

4  are willfully infringing our intellectual property rights. They have refused to obtain any license

5  with us, they have no permission from us, and they simply have continued to infringe; there is no

6  doubt in my mind that they are not licensed and that they are simply choosing to willfully

7  infringe our copyrights, our copyrights, our patents, and our other intellectual property rights.

8  Without an injunction against them, we are suffering, and we will **suffer irreparable injury in**

9  **the loss of control over our Source Code and over our entire licensing program**. They must

10  be enjoined from infringing and they must be directed to account for all copies, in whole or in

11  part, in any form on any electronic media which they have as well as all copies they have

12  deployed to Ameriprise and/or to any others in the field.

13       33.      We estimate that the defendants have reproduced and distributed **thousands of**

14  **unauthorized copies** of XimpleWare software, which is now illegally in use with over 100,000

15  (or more) unauthorized users of our software. Only defendants know the precise numbers, and

16  the Court should compel them to immediately account for all copies and to account for all users

17  of XimpleWare software they have illegally distributed and allowed others to use without any

18  license, permission or other authorization from me or anyone else at XimpleWare.

19       34.      We also estimate that they have collected revenues illegally in amounts greater

20  than $100,000,000 based on distribution of computer software that includes unauthorized and

21  illegal copies of XimpleWare computer software, and appropriate orders should be entered

22  compelling defendants to account for all revenues arising directly or indirectly through any

23  software which includes any version of XimpleWare computer software and for all customers,

24  clients, contractors, employees, and all other users of any version of XimpleWare software

25  received from any of the defendants.

26       35.      Irreparable injury has been suffered by XimpleWare as a result of Defendants'

27  unauthorized use of XimpleWare's copyrighted computer software; in effect, Defendants have

28  usurped control, for commercial purposes, over XimpleWare's computer software and they are

Computerlaw Group LLP
www.computerlaw.com℠

1 reproducing it, executing it, and otherwise exploiting it without permission and in repeated

2 violation of XimpleWare's exclusive rights under the U.S. Copyright Act. The result is both the

3 denial of XimpleWare's rights to sole and exclusive control over the commercial licensing of its

4 copyrighted computer software as well as the failure of Defendants, and each of them, to account

5 for the number of copies which have been exploited by each of them. Injunctive relief is

6 requested to prevent the foregoing irreparable injury from continuing.

7

8      I declare under penalty of perjury under the laws of the State of California that the

9 foregoing is true and correct, and that I signed this declaration on November 22, 2013 in

10 Milpitas, California.

11

12                               Zhengyu Zhang

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠



1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California
    Corporation,                              Case No. 3:13-cv-5160-NC
13
                          Plaintiff;          **DECLARATION OF JACK RUSSO IN SUPPORT
14                                            OF PLAINTIFF XIMPLEWARE CORP.'S**
          v.                                  ***EX PARTE* APPLICATION FOR TEMPORARY
15                                            RESTRAINING ORDER, ORDER TO SHOW
    **Versata Software, Inc., f/k/a Trilogy   CAUSE, AND ORDER GRANTING EXPEDITED
16  Software, Inc.**, a Delaware corporation; DISCOVERY**
    **Trilogy Development Group, Inc.**, a
17  California corporation; **Ameriprise
    Financial, Inc.**, a Delaware corporation; and
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation,
19
                          Defendants.
20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

I, Jack Russo, declare as follows:

1.      I am an attorney admitted to practice before this Court, and I am a partner at the law firm of ComputerLaw Group LLP, counsel for Plaintiff XimpleWare Corp. ("XimpleWare") in this matter. I have personal knowledge of the facts set forth in this declaration, and if called to do so I could and would testify competently to the same. I make the statements here of my own personal knowledge, unless where stated on information and belief, which statements I believe to be true, and if called to do so, I could and would testify competently to those matters stated here.

2.      XimpleWare engaged my firm shortly after learning, from counsel for Ameriprise, that Versata and related entities had incorporated XimpleWare's copyrighted VTD-XML computer software into Versata's DCM product, and had distributed the DCM commercially—but without obtaining any form of commercial license from XimpleWare, and in violation of the GPL license under which XimpleWare otherwise licensed its VTD-XML computer software to those who fully abide by the GPL license.

3.      On the morning of July 24, 2013, I spoke with counsel for Ameriprise, Peter Lancaster of Dorsey & Whitney LLP. In that phone call, Mr. Lancaster told me how Ameriprise had discovered during litigation with Versata in Texas state court that Versata had included XimpleWare's VTD-XML software product within the Versata DCM software product. Mr. Lancaster said that Ameriprise had been a Versata customer since about 1999, and used the DCM product internally with Ameriprise employees and contractors.

4.      **Exhibit 1** is a document I received from counsel for Ameriprise, Mr. Lancaster on July 28, 2013. The exhibit is apparently a set of clauses from a software license. I provided this exhibit to XimpleWare, and XimpleWare confirmed that it had never licensed any software under the terms in this exhibit, nor had it ever authorized anyone else to do so.

5.      I spoke again with Mr. Lancaster by phone on August 19, 2013. Mr. Lancaster told me that Ameriprise had retained a technical expert who had concluded that XimpleWare's software was in Versata's DCM product.

6.      On October 2, 2013, my firm received an Amended Notice of Deposition of XimpleWare Corp., a copy of which is attached as **Exhibit 2**.

Computerlaw Group LLP
www.computerlaw.com℠

7. On November 4, 2013, my partner Christopher Sargent, Esq. spoke with Amir Alavi, Esq., counsel for Versata, by telephone. Mr. Alavi acknowledged his client's use of the XimpleWare computer software but claimed reliance on the "classpath exception" language from Exhibit 1, which XimpleWare has never authorized or approved.

8. On November 6, 2013, my office served objections to Ameriprise's and Versata's deposition notices to XimpleWare, copies of which are attached as **Exhibit 3**.

9. My office has had several communications with Ameriprises's legal team throughout this month. For example, on November 12, 2013, an associate in my office, Ansel Halliburton, Esq., spoke with Case Collard, Esq., another attorney for Ameriprise, regarding XimpleWare's deposition and the possibility of reaching an agreed schedule for exchanging early discovery in this case and which would satisfy Ameriprise's and Versata's needs for their litigation in Texas state court while protecting XimpleWare.

10. Though no one from Ameriprise ever connected with me by either phone or email this morning, I learned late this afternoon that some type of voicemail was left from a lawyer for Ameriprise that it was planning to appear *ex parte* in state court here in California to seek to enforce deposition subpoenas and compel XimpleWare's deposition. Ameriprise took this position despite my multiple previous offers to reach an agreed schedule for mutual discovery, including the discovery sought in those subpoenas. I renewed that offer again today, and informed counsel for Ameriprise that I would be unable to appear at its contemplated *ex parte* hearing because of another case in Los Angles, and that XimpleWare did oppose its motion and still preferred to reach an agreed schedule across the various cases in the Texas state and California federal courts. Counsel for Ameriprise again rejected my offer for a mutual approach. **Exhibit 4** is a true and correct copy of these November 21 communications.

11. The following exhibits are true and correct copies of court filings in the Versata litigation in Texas state court, *Versata Software, Inc., et al. v. Ameriprise Financial, Inc., et al.*, Case No. D-1-GN-12-003588 in the District Court of Travis County, Texas. My firm obtained these filings directly from the Texas state court files.

Computerlaw Group LLP
www.computerlaw.com®

Computerlaw Group LLP
www.computerlaw.com℠

1      • **Exhibit 5**: Versata's First Amended Complaint and Application for

2         Preliminary Injunction, filed May 3, 2013

3      • **Exhibit 6**: Ameriprise's Original Answer, filed January 4, 2013

4      • **Exhibit 7**: Ameriprise's Motion for Partial Summary Judgment, filed July 24,

5         2013, and excerpts of some of the exhibits filed in support of that motion are

6         contained within said Exhibit 7.

7      12.     **Exhibit 8** is a true and correct copy, obtained directly from the U.S. Copyright

8   Office, of the copyright registration certificate for VTD-XML, version 2.3. The registration's

9   effective date is September 4, 2013, and the registration number is TX 7-727-556.

10     13.     **Exhibit 9** contains true and correct copies of current websites of Versata and its

11  related entities, some of which tout speed as a major selling point for Versata's DCM product.

12

13     I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct, and that I signed this declaration on November 21, 2013 in Palo

15  Alto, California.

16                                              /s/ Jack Russo

17                                              Jack Russo

18

19

20

21

22

23

24

25

26

27

28

1   Jack Russo (Cal. Bar No. 96068)
    Christopher Sargent (Cal. Bar No. 246285)
2   Ansel Halliburton (Cal. Bar No. 282906)
    COMPUTERLAW GROUP LLP
3   401 Florence Street
    Palo Alto, CA 94301
4   (650) 327-9800
    (650) 618-1863 fax
5   jrusso@computerlaw.com
    csargent@computerlaw.com
6   ahalliburton@computerlaw.com

7   Attorneys for Plaintiff
    XIMPLEWARE CORP.

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California          Case No. 3:13-cv-5160-NC
    Corporation,
13                                              **[PROPOSED] TEMPORARY RESTRAINING
                    Plaintiff;                  ORDER, ORDER TO SHOW CAUSE, AND
14                                              ORDER GRANTING EXPEDITED DISCOVERY**
            v.
15
    **Versata Software, Inc.**, f/k/a **Trilogy
16  Software, Inc.**, a Delaware corporation;
    **Trilogy Development Group, Inc.**, a
17  California corporation; **Ameriprise
    Financial, Inc.**, a Delaware corporation; and
18  **Ameriprise Financial Services, Inc.**, a
    Delaware corporation,
19
                    Defendants.
20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

1    Plaintiff XimpleWare Corporation's *Ex Parte* Application for Temporary Restraining

2    Order, for Order to Show Cause re: Preliminary Injunction, and for Expedited Discovery came

3    before the Court on _____, 2013. Good causing appearing therefore, the

4    Court finds and ORDERS as follows:

## TEMPORARY RESTRAINING ORDER

6    The Court issues this Temporary Restraining Order ("TRO") under 17 U.S.C. § 502(a)

7    and Rule 65(b) of the Federal Rules of Civil Procedure.

8    Defendants Versata Software Inc. and Trilogy Development Group, Inc., as well as their

9    other subsidiaries and affiliates, if any (the "Versata Defendants"), are hereby TEMPORARILY

10   ENJOINED from making any new sales of their Distribution Channel Management ("DCM")

11   product, delivering new copies of DCM to customers, or otherwise publishing DCM.

12   Defendants Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc., as well as

13   their other subsidiaries and affiliates, if any (the "Ameriprise Defendants") are hereby

14   TEMPORARILY ENJOINED from deploying DCM to any new users, whether internal or external, and

15   from deploying new versions of DCM to existing users.

16   This TRO shall expire after the hearing on XimpleWare's motion for a preliminary

17   injunction, which the Court sets for _____ in Courtroom .

18   _____, _____ Floor of the United States District Court in San Francisco, CA.

19   The Court makes the following findings in support of this TRO:

20   1.    XimpleWare has shown that it owns its VTD-XML product and its source code,

21         and has obtained a copyright registration on that source code (namely TX 7-727-

22         556).

23   2.    XimpleWare has shown a high likelihood that both the Versata Defendants and the

24         Ameriprise Defendants are infringing XimpleWare's copyrights. Specifically,

25         XimpleWare has shown a high likelihood that Versata incorporated VTD-XML

26         into its DCM product, licensed the DCM product to the Ameriprise Defendants

27         and other customers.

28

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

3.      Neither the Versata Defendants nor the Ameriprise Defendants obtained a commercial license to VTD-XML. Absent a commercial license, the only applicable license is the GNU General Public License ("GPL"), under which XimpleWare licenses and resleases its source code to the general public. The GPL, however, does not allow the kind of commercial use that the Versata Defendants made by incorporating VTD-XML into DCM and reselling it.

4.      The likely harm to XimpleWare is irreparable. Versata's wholesale appropriation of XimpleWare's copyrighted source code beyond the scope of its GPL license effectively deprives XimpleWare of control over its software, which is its principal asset and source of revenue.

5.      Section 502 of the Copyright Act states that "Any court having jurisdiction of a civil action arising under [the Copyright Act] may...**grant temporary** and final injunctions on such terms as it may deem reasonable to prevent or **restrain infringement** of a copyright" (emphasis added). The Court finds it reasonable, on the facts presented, to grant this TRO to restrain the Defendants' infringement.

6.      XimpleWare shall post security in the amount of $_____.

### ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

The Court ORDERS all Defendants to show cause why a preliminary injunction should not issue. The Court sets the hearing on the preliminary injunction for _____ in Courtroom _____, \_\_\_\_\_ Floor of the United States District Court in San Francisco, CA.

### ORDER GRANTING EXPEDITED DISCOVERY

The Court finds good cause to allow limited discovery on an expedited basis. This discovery will allow the Court to determine whether a preliminary injunction is warranted. Limited, narrowly-tailored discovery on an expedited schedule will not unfairly prejudice the Versata Defendants or the Amerprise Defendants. The Court ORDERS the following discovery, to be completed by _____:

1.  XimpleWare may serve document requests to the Versata Defendants and to the Ameriprise Defendants around Versata's inclusion of XimpleWare source code in its DCM product.

2.  XimpleWare shall produce documents responsive to Ameriprise's and Versata's state court subpoenas and any further reasonable requests as included in the Rule 30(b)(6) Notice of Deposition. Those document productions shall also be used in this case.

3.  XimpleWare may depose Versata's Rule 30(b)(6) witness on Versata's inclusion of XimpleWare's VTD-XML in the its products, Versata's distribution of products including VTD-XML, and Versata's compliance or non-compliance with the GPL. This deposition shall be scheduled within the first two weeks of December, 2013 following the deposition of XimpleWare's Rule 30(b)(6) witness as set forth in Paragraph 6 below.

4.  XimpleWare may depose Ameriprise's Rule 30(b)(6) witness on Ameriprise's knowledge of the inclusion of XimpleWare's VTD-XML in the DCM product it licensed from Versata. This deposition shall be scheduled within the first two weeks of December, 2013 following the deposition of XimpleWare's Rule 30(b)(6) witness as set forth in Paragraph 6 below. (The foregoing deposition of Ameriprise need not occur if Ameriprise admits that it received the DCM product from Versata and that it does not have a commercial license from Ximpleware and that it will accept the Court's ruling(s) as against Versata as applicable against Ameriprise with regard to the further copying, use, or other exploitation of DCM.)

5.  Versata and Ameriprise may jointly depose XimpleWare's Rule 30(b)(6) witness on XimpleWare's software licensing practices on mutually agreed dates in the first two weeks of December, 2013. This deposition shall coincide with the deposition Versata and Ameriprise have noticed through the state courts in Texas and California.

6.  Multiple depositions shall not be taken of any Rule 30(b)(6) witnesses without further order and/or other approval of this Court following the showing of good cause by the party requesting such further deposition time.

Computerlaw Group LLP
www.computerlaw.com℠

7. The parties shall meet and confer as to the precise scheduling of the above depositions (the "Agreed Schedule"), which shall occur at least one week after the parties' document productions specified above. The parties shall meet and confer to schedule a single date for exchange of the documents, and for the orderly production of documents in accord with the Agreed Schedule.

8. If any procedural or other disputes arise from the foregoing Order, the parties shall meet and confer in person in accordance with the Local Rules of this Court and file letter briefs in accordance with the Court's Civil Standing Order.

The Court further ORDERS the parties to file a joint schedule for the above expedited discovery by _____.

IT IS SO ORDERED.

Date: _____        _____

United States Magistrate Judge

Computerlaw Group LLP
www.computerlaw.com℠



## Ansel Halliburton

| | |
|---|---|
| **From:** | Ansel Halliburton |
| **Sent:** | Friday, November 22, 2013 4:59 AM |
| **To:** | 'luemers.martha@dorsey.com' |
| **Cc:** | Jack Russo; Eric Young; Tamkin.Greg@dorsey.com; Bevilacqua.Theresa@dorsey.com; collard.case@dorsey.com |
| **Subject:** | RE: Ameriprise Financial, Inc., et al v. XimpleWare Corp. - Notice of Ex Parte appearance on Friday, Nov. 22 |
| **Attachments:** | Halliburton Declaration in Opposition to Ex Parte.pdf; 6 - Proposed TRO.pdf; 1 - Email re notice.pdf; 2 - Correspondence.pdf; 3 - Memo iso TRO and Expedited Discovery.pdf; 4 - Zhang Declaration.pdf; 5 - Russo Declaration.pdf |
| **GnuPGSetting.Encrypt:** | 0 |
| **GnuPGSetting.Sign:** | 0 |

Dear Ms. Luemers:

I will be appearing for XimpleWare to oppose despite the notice problems. (I was out of the office with two sick kids most of yesterday morning.) Thank you for providing Ameriprise's *ex parte* application. I am attaching a draft of XimpleWare's opposition, which takes the form of a declaration by me.

Please also take notice that XimpleWare will appear *ex parte* as soon as is practicable in federal court in San Francisco before Hon. Nathaniel Cousins, U.S. Magistrate Judge for a temporary restraining order, for an order to show cause, and for expedited discovery. We will make this motion in the copyright case, no. 3:13-cv-05160-NC. You already received yesterday the form of order XimpleWare is seeking, and I am attaching here the form of our *ex parte* application and supporting declarations, which we will be filing with the federal court as soon as we obtain our client's signature later this morning.

I hope you will see that what we have been proposing in terms of mutuality is extremely reasonable. This mutual approach would:
1. completely moot Ameriprise's *ex parte* motion, saving all parties time and money;
2. give Ameriprise the discovery it needs for its case against Versata in Texas;
3. give XimpleWare what it needs for its preliminary injunction motion in its copyright case in California federal court; and
4. do all that on a coordinated basis, which would also save all parties time and money.

Absent Ameriprise's agreement, we will ask the Superior Court to defer to the federal court, which we believe will grant mutual, coordinated, expedited discovery as well as the temporary injunctive relief XimpleWare seeks.

Please let me know if you believe we can reach agreement instead of making this appearance. If not, I look forward to meeting you later this morning in San Jose.

Thank you,

**Ansel Halliburton**
Associate, ComputerLaw Group

1

ahalliburton@computerlaw.com
650-204-4952 direct | 650-327-9800 main

**From:** luemers.martha@dorsey.com [mailto:luemers.martha@dorsey.com]
**Sent:** Thursday, November 21, 2013 4:43 PM
**To:** Jack Russo
**Cc:** Eric Young; Ansel Halliburton; Tamkin.Greg@dorsey.com; Bevilacqua.Theresa@dorsey.com;
collard.case@dorsey.com
**Subject:** RE: Ameriprise Financial, Inc., et al v. XimpleWare Corp. - Notice of Ex Parte appearance on Friday, Nov. 22

Dear Mr. Russo,

I sent you notice by email today at 9:40 a.m. (copy attached), and called you a few minutes later.  I spoke with your secretary, who said you were in a meeting.  She said she would bring the email to your attention and suggested that I forward the email to your colleagues Chris Sargent and Ansel Halliburten, which I did at 9:53 a.m.

Ameriprise remains unwilling to condition setting the deposition that is the subject of our subpoena on early co-discovery in the actions you recently filed on XimpleWare's behalf in federal court, and we plan to proceed with the ex parte application tomorrow.  I will, of course, notify the court of your position, including your unavailability.  Please let me know if someone else from your office will be attending.

Attached is a substantially complete draft of our ex parte application.  All that remains is a statement regarding your position, which you have just now provided and will be added.  But I wanted to get this to you before the end of the day.

Regards,


**Martha C. Luemers**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
305 Lytton Avenue
Palo Alto, CA 94301
www.dorsey.com
P: 650.843.2725   F: 650.857.1288
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.
Thank you.


**From:** Jack Russo [mailto:jrusso@computerlaw.com]
**Sent:** Thursday, November 21, 2013 3:16 PM
**To:** Luemers, Martha
**Cc:** Eric Young; Ansel Halliburton
**Subject:** Re: Ameriprise Financial, Inc., et al v. XimpleWare Corp. - Notice of Ex Parte appearance on Friday, Nov. 22

I never received any notice of this in accord with our Local Rules here nor can I appear tomorrow morning as I am on a flight for another case in Los Angeles and that cannot be changed at this point as I have meetings there starting at 8am PST.  I suggest that you schedule any ex parte for a different date and that you consider the TRO application that we are filing today with the Federal Court here and where we will ask for expedited discovery on a mutual basis as I have been suggesting all along.  Please read my proposed Order as I have tried

to address the "fairnesss" issue from your point of view with respect to depositions and other discovery that you would presumably want as part of any Order from any Court on this subject.

Regards,
Jack Russo
Managing Partner
COMPUTERLAW GROUP LLP
www.computerlaw.com

Sent from Windows Mail

**From:** luemers.martha@dorsey.com
**Sent:** Thursday, November 21, 2013 2:48 PM
**To:** Jack Russo

Dear Mr. Russo,

I have tried to reach you through your office number, but it goes to a general voicemail box.  Would you please let me know if XimpleWare plans to appear and oppose Ameriprise's ex parte application?

Regards,

**Martha C. Luemers**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y & W H I T N E Y LLP**
305 Lytton Avenue
Palo Alto, CA 94301
www.dorsey.com
P: 650.843.2725   F: 650.857.1288
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONFIDENTIAL COMMUNICATION
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.