Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
Ansel Halliburton (Cal. Bar No. 282906)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com
ahalliburton@computerlaw.com

Attorneys for Plaintiff
XIMPLEWARE CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **XimpleWare Corp.**, a California Corporation,<br><br>  Plaintiff;<br><br>  v.<br><br>**Versata Software, Inc., f/k/a Trilogy Software, Inc.,** a Delaware corporation; **Trilogy Development Group, Inc.**, a California corporation; **Ameriprise Financial, Inc.,** a Delaware corporation; and **Ameriprise Financial Services, Inc.**, a Delaware corporation,<br><br>  Defendants. | Case No. 3:13-cv-5160-SI<br><br>**PLAINTIFF XIMPLEWARE'S OPPOSITION TO AMERIPRISE'S RENEWED MOTION TO DISMISS**<br><br>Date:       February 7, 2014<br>Time:      9:00 a.m.<br>Location: Courtroom 10, 19th Floor<br>Judge:     Hon. Susan Illston |

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities ............................................................................................................... iii

Introduction ............................................................................................................................ 1

Statement of Facts .................................................................................................................. 1

Motion to Strike ..................................................................................................................... 4

    Ameriprise's Factual Allegations About Franchisees and Other Non-Employees Are Beyond the Scope of a Motion to Dismiss Under Rule 12(b)(6). ...................................... 4

Argument ............................................................................................................................... 5

Legal Standard ....................................................................................................................... 5

I.   XimpleWare Licenses its Software Under Strict and Specific Conditions Only. ................... 5

   A.   The GPL Contains Many Restrictions on Use, Including Notice and Attribution, as Well as Copying and Distribution. ............................................................................... 5

   B.   The GPL's Preamble is Factual and Not Part of the Legally Binding Terms and Conditions of the Limited License Grant Language. ................................................... 7

II.  XimpleWare's Amended Complaint Properly Alleges That Ameriprise Violated the GPL and Infringed XimpleWare's Copyrights. ..................................................................... 7

   A.   Ameriprise and XimpleWare Agree That the Defendants Received XimpleWare's Software from Versata and That Versata Violated the GPL. ................................. 7

   B.   Ameriprise and XimpleWare Agree that the GPL Implements an Automatic Termination for Any Breach. ................................................................................... 8

   C.   Ameriprise Violated the GPL by Either Removing or Failing to Include Both XimpleWare's Copyright Notices and the GPL License Itself. .............................. 10

   D.   Alternatively, Under the GPL, It is Very Clear Ameriprise's License Terminated Automatically Because of Its Unauthorized Distributions to Franchisees and Other Employees. .............................................................................................................. 10

       1.  Unauthorized Distribution to Non-Employee Franchisees Violates XimpleWare's Distribution Right Under Copyright Law. .......................................................... 10

III. XimpleWare's Other Claims Survive Because It Has Alleged and Will Prove the Elements of Its Well-Pled Copyright Claim. ......................................................................................... 12

IV. At Minimum, Leave to Amend Should be Liberally Granted. ............................................... 13

Conclusion ................................................................................................................................ 13

**Computerlaw Group LLP**
www.computerlaw.com[sm]

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,* 566 U.S. 662, 677 (2009) .................................................................................. 6

*Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007) ............................................................ 5

*CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069 (Fed. Cir. 2009) ......................................... 13

*Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................ 13

*Everex Sys. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673 (9th Cir. 1996) ............................ 13

*Foman v. Davis*, 371 U.S. 178 (1962) .......................................................................................... 16

*Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011) ....................................... 6

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................................... 10

*Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 2741 .............................................. 14

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989) ........... 14

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) .............................................................. 6

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) .................................. 15

*Matthews v. Starritt*, 252 Cal. App. 2d 884 (1967) ................................................................... 7, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ..................................... 6

*OSU Student Alliance v. Ray,* 699 F.3d 1053 (9th Cir. 2012) ........................................................ 6

*PracticeWorks, Inc. v. Professional Software Solutions of Illinois, Inc.*, 72 U.S.P.Q.2d (BNA) 1691 (D. Md. 2004) ................................................................................................................... 15

*Rescuecom Corp. v. Google Inc.*, 562 F3d 123 (2nd Cir. 2009) ..................................................... 4

*Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d. 1393 (9th Cir. 1986) .................... 15

*Schwab v. Bridge*, 27 Cal. App. 204 (1915) .................................................................................. 7

*Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005 (9th Cir. 2012) ........................................... 5

*Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998*)* ............................ 15

**STATUTES**

17 U.S.C. § 106 ................................................................................................................. 11, 12, 13

**OTHER AUTHORITIES**

Lawrence Rosen, Open Source Licensing: Software Freedom And Intellectual Property Law (Prentice Hall 2004) .................................................................................. 8

**RULES**

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................................... 4, 5, 6

**TREATISES**

2-8 *Nimmer on Copyright* § 8.11[B][1] (2014) ................................................................. 14

4 Patry on Copyright § 13:9 (2013) .......................................................................... 12, 13

Nimmer, *Nimmer on Copyright: Law of Computer Technology* § 1:16 ......................... 15

Schwarzer *et al.*, Cal. Prac. Guide Fed. Civ. Pro. Before Trial (The Rutter Group 2014) § 9:211 ........................................................................................................... 4

Schwarzer et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial (The Rutter Group 2014) § 9:213 ........................................................................................................... 4

Schwarzer *et al.*, Cal. Prac. Guide Fed. Civ. Pro. Before Trial (The Rutter Group 2014) § 9:237.4 ........................................................................................................ 5

# INTRODUCTION

Defendant Ameriprise, by its own admissions, never complied with or met the conditions precedent contained in the restricted GPL license under which Plaintiff XimpleWare licenses its software. Accordingly, Ameriprise does **not** have and has **never** had any license to the XimpleWare software; all of its uses are without authorization and all are an infringement of XimpleWare's copyrights. Even if Ameriprise could somehow have had a license to the XimpleWare software, it lost any such license by distributing XimpleWare's software to its franchisees and other non-employees. Under multiple provisions of the GPL, and as a result of a variety of infringing conduct, it is clear that Ameriprise violated and infringed on XimpleWare's copyrights and that this Motion to Dismiss is without basis and must be denied.

# STATEMENT OF FACTS

1. Plaintiff XimpleWare Corp. ("XimpleWare") had spent over a decade developing and fine-tuning its copyrighted[1] software product, known as "VTD-XML" or "VTD XML Extended" (collectively, the "Product"), which reads and parses XML code at a range estimated to be five to ten times faster than other current XML parsing programs, effecting greater efficiency and speed. Amended Complaint (Dkt. 48) ("Am. Compl."), ¶ 34.

2. The Product provides indexing and incremental capabilities that are crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs. Am. Compl. ¶ 35.

3. XimpleWare made the business decision to license its Product and related source code under an "open source" license known as the GNU General Public License version 2 ("GPL"). The GPL requires, among other things, that: (1) any changes made to the code carry

---

[1] There is no dispute that the Copyright Office issued Registration Certificate No. TX 7-727-556 to Plaintiff XimpleWare. The Court may, of course, take judicial notice of Exhibit 1 hereto.

Computerlaw Group LLP
www.computerlaw.com℠

1  notices stating that the files were changed, and the dates of all changes; (2) any code created or
2  derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices
3  must print or display when the code is run; and (4) that when distributed, the program must be
4  accompanied by the complete machine-readable source code. Am. Compl., Ex. 1. All four
5  conditions must be met. *Id.*

6      4.    The GPL requires strict compliance: Under its Section 4, any failure to comply
7  with **any** of the GPL's multiple conditions means there is no license and this means any use,
8  distribution, or other exploitation is not licensed, and all rights the violator could have obtained
9  under the GPL are voided. Am. Compl. ¶¶ 22–32.

10      5.    XimpleWare chose the GPL approach because it is one of the most restrictive
11  licenses available, requiring that any derivative code incorporating GPL-protected code must be
12  returned to the open source community in its entirety. In other words, if Developer A creates
13  Product A and licenses it under the GPL, and Developer B creates Product B which incorporates
14  Product A, then Developer B must also license Product B under the GPL. Am. Compl. ¶29.

15      6.    XimpleWare is the owner of all right, title, and interest in all copyrights related to
16  the Product and related source code, including but not limited to registered U.S. Copyright No.
17  TX 7-727-556. Am. Compl. ¶¶ 44–45.

18      7.    All versions of the Source Code have appropriate copyright notices printed or
19  affixed conspicuously on the first page of each work, as required by the GPL. XimpleWare uses
20  the GPL-required copyright notices on its Product and its documentation to give actual and
21  constructive notice of the existence of XimpleWare copyrights. Am. Compl. ¶¶ 44–47.

### The Texas Litigation

23      8.    In the Summer of 2013, XimpleWare first learned of a Texas lawsuit between
24  Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation"). According to
25  documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until
26  Ameriprise attempted to write its own software using programmers in India to replace the
27  Versata product. Versata then sued for misappropriation, among other claims. During the
28  prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered

1 XimpleWare's Source Code in Versata's DCM product, and with said XimpleWare Source code,
2 none of the conditions of the GPL license had been met. There was also no evidence of any
3 commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in
4 Versata's DCM product. Am. Compl. ¶¶ 49–51.

5      9.     According to the same set of documents, Versata maintained in the course of
6 business a list of open source software components that it included in its DCM Product, and that
7 list included VTD-XML. Versata then distributed its DCM product to customers, including
8 Ameriprise, in violation of the GPL and XimpleWare's copyrights. XimpleWare has never
9 granted any of the Versata Defendants any commercial license, permission, or authorization to
10 use and redistribute any XimpleWare Product or Source Code. The only license that the Versata
11 Defendants purported to have was from the GPL. Am. Compl. ¶¶ 56–57.

12      10.     The majority of Ameriprise financial advisors are not Ameriprise employees.
13 According to Ameriprise's own 2012 Annual Report, filed publicly with the U.S. Securities and
14 Exchange Commission, Ameriprise operates a "nationwide network of more than 9,700
15 advisors," of which "more than 7,400 are independent franchisees or employees or contracts of
16 franchisees." Am. Compl. ¶¶ 59–62 (emphasis added).

17      11.     Ameriprise distributed DCM and VTD-XML to thousands of non-employee
18 financial advisors. According to its 2012 Annual Report, "[t]he support [Ameriprise] offer[s] to
19 [its] franchisee advisors includes generalist and specialist leadership support, **technology**
20 **platforms and tools**, training and marketing programs" (emphasis added). Am. Compl. ¶¶59–62.

21      12.     DCM is among the "technology platforms and tools" that Ameriprise provides its
22 outside advisors. On information and belief, when Ameriprise made its outside distributions of
23 DCM and VTD-XML, it did so under a commercial license (and not the GPL) without any
24 attribution to XimpleWare, without any XimpleWare copyright notice, without any XimpleWare
25 Source Code, and without any offer to convey the XimpleWare Source Code—all in violation of
26 the GPL and all of which were void under the GPL. XimpleWare has never granted Ameriprise
27 or any other defendant in this case any commercial license, permission, or authorization to use
28 and redistribute any XimpleWare Product or Source Code. Am. Compl. ¶¶ 59–62.

Computerlaw Group LLP
www.computerlaw.com℠

## MOTION TO STRIKE

It is settled law that the Court may not consider any matters outside the pleadings on a motion to dismiss under Rule 12(b)(6). Schwarzer *et al.*, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2014) § 9:211 ("Generally, unless the court converts the Rule 12(b)(6) motion into a summary judgment motion…it cannot consider material outside the complaint") and § 9:213 ("the court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally'") (*citing Rescuecom Corp. v. Google Inc.*, 562 F3d 123, 127 (2nd Cir. 2009)). Ameriprise even admits this uncontroversial proposition in its Motion, stating "nevertheless, for purposes of the instant motion, Ameriprise accepts the allegations as true, as it is required to do." Motion at fn. 4. This Motion is brought because:

**Ameriprise's Factual Allegations About Franchisees and Other Non-Employees Are Beyond the Scope of a Motion to Dismiss Under Rule 12(b)(6).**

Despite that acknowledgement, and in the face of XimpleWare's Amended Complaint's clear factual allegations regarding Ameriprise's distribution of XimpleWare software to third-party franchisee advisors, Ameriprise improperly attempts to assert facts to the contrary from well outside of the pleadings. *See, e.g.*, Motion at fn. 4 (factual allegation), fn. 6 (factual allegation and citation to argument of counsel at TRO hearing), fn. 7 (factual allegation), Ex. 1 (deposition exhibit), Ex. 2 (deposition exhibit), and Ex. 3 (argument of counsel in TRO hearing transcript), p. 8:24–9:1 (argument of counsel in TRO briefing). All of this should be stricken. The Court must not consider any of these factual allegations and citations to argument of counsel beyond the Amended Complaint itself. Accordingly, XimpleWare hereby moves for the Court to strike all other matters that Ameriprise attempts to slip in. These factual allegations and citations to documents outside the Amended Complaint are plainly beyond the scope of a motion to dismiss under Rule 12(b)(6), and the Court should strike them all. Schwarzer *et al.*, CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2014) § 9:237.4 (recommending motion to strike extrinsic evidence presented in Rule 12(b)(6) motion). Regardless of the ruling on this Motion and though it should be granted, the Court must still read just the Complaint here.

Computerlaw Group LLP
www.computerlaw.com℠

# ARGUMENT

Defendants Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc. (collectively, "Ameriprise") have filed a Renewed Motion to Dismiss ("Motion") based on Federal Rule of Civil Procedure 12(b)(6) (Dkt. 52). Plaintiff opposes on the merits.

# LEGAL STANDARD

Though the Rule 12(b)(6) test has been revised in recent years, the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007) clarified that "once a claim has been stated adequately, it may be supported by showing **any** set of facts consistent with the allegations in the complaint." *Id.* at 563 (emphasis added). Thus, when deciding a motion to dismiss, Federal Courts must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1058 (9th Cir. 2012); *see also Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 566 U.S. 662 (2009)). A complaint meets this standard when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is appropriate **only** where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (emphasis added).

**I.   XIMPLEWARE LICENSES ITS SOFTWARE UNDER STRICT AND SPECIFIC CONDITIONS ONLY.**

   **A.   The GPL Contains Many Restrictions on Use, Including Notice and Attribution, as Well as Copying and Distribution.**

The GPL does not provide "free" software for unlimited commercial use. Rather, it allows certain persons to use source code under very strict terms that require returning code to the open source community, and maintaining **at all times** (a) copyright notices, (b) disclaimers of

Computerlaw Group LLP
www.computerlaw.com℠

warranties, (c) notices referencing the GPL license, and (d) when distributed, the program must be accompanied by the complete machine-readable source code. For example, the GPL states:

> You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, **provided that** you conspicuously and appropriately publish on each copy an appropriate **copyright notice** and **disclaimer of warranty**; <u>keep intact all the notices that refer to this License</u> and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

GPL at § 1 (emphasis added). Another very clear conditional example is expressed in section 2:

> If the modified program normally reads commands interactively when run, you **must** cause it, when started running for such interactive use in the most ordinary way, [1] **to print or display an announcement including an appropriate copyright notice [2] and a notice that there is no warranty** (or else, saying that you provide a warranty) and that users may redistribute the <u>program [3] under these conditions, and [4] telling the user how to view a copy of this License</u>.

GPL at § 2(c) (emphasis and brackets added).

The illegally copied and illegally distributed code did not contain the required notices and disclaimers and that can never be GPL-compliant under these provisions. <u>The use of the words "**provided that**" in the license term in Section 1 of the GPL means the required notices are a condition precedent to the grant of a license, not merely a condition of it. Conditional language such as "provided" has long been upheld to create a condition precedent.</u> *Schwab v. Bridge*, 27 Cal. App. 204 (1915); *see also Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967) ("'Subject to' means subordinate to [citations] and is generally interpreted as a condition precedent." [citations omitted]).

There can be no doubt that Ameriprise failed to comply with these conditions precedent to a license under the GPL because it either removed or never included: (a) XimpleWare's copyright notices, (b) the GPL warranty disclaimer, (c) a full copy of the modified code, or (d) the notice of the GPL license itself as alleged in the Amended Complaint. Am. Compl. ¶ 61. Any one of these failures is fatal. GPL §1. This is confirmed by the fact that, as Ameriprise itself has argued, the code provided to Ameriprise by Versata did not contain the requisite notices and disclaimers. Am. Compl. ¶ 53. For this reason alone, XimpleWare has more than adequately pled its claims against Ameriprise, proving that no use was authorized, licensed or otherwise compliant with the GPL, and the Motion to Dismiss should be denied.

B. **The GPL's Preamble is Factual and Not Part of the Legally Binding Terms and Conditions of the Limited License Grant Language.**

The GPL's lengthy "Preamble" section is not a legally operative part of the GPL; it is generally understood in the open source community to be simply recitals. The Preamble's own terms make it clear that the operative language is in the subsequent sections, stating in its last sentence, "The precise terms and conditions for copying, distribution and modification follow." This is further confirmed in the secondary literature where, for example, Lawrence Rosen, an attorney and noted open source expert, states in a 2004 book:

> The preamble, of course, is **not** an operative part of the GPL license. It is not among its *terms and conditions*. There is nothing in its words that must be obeyed. It is merely a helpful preface so that you can better understand the GPL in its context.

LAWRENCE ROSEN, OPEN SOURCE LICENSING: SOFTWARE FREEDOM AND INTELLECTUAL PROPERTY LAW 109 (Prentice Hall 2004) (emphasis added).

As this is a Motion to Dismiss, the allegations in the Amended Complaint must be taken at full face value. While the Court may consider certain types of contracts attached to pleadings, non-binding language such as the Preamble cannot override the clear allegations of the Complaint, let alone the actual terms and conditions of the GPL. Those terms and conditions—whose breach and non-compliance by Ameriprise is clearly alleged—control and are fully governing here. Accordingly, the Motion to dismiss must be denied.

II. **XIMPLEWARE'S AMENDED COMPLAINT PROPERLY ALLEGES THAT AMERIPRISE VIOLATED THE GPL AND INFRINGED XIMPLEWARE'S COPYRIGHTS.**

A. **Ameriprise and XimpleWare Agree That the Defendants Received XimpleWare's Software from Versata and That Versata Violated the GPL.**

Ameriprise has never been authorized or licensed to use XimpleWare's Product, including under any "automatic" license language contained in the GPL. Section 6 of the GPL provides a mechanism where a distribution of properly GPL-licensed code by one party to another conveys the GPL license along with it:

> 6. Each time you redistribute the Program (or any work based on the Program), **the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions**. You may not impose any further restrictions on the recipients' exercise of the rights granted herein. You are not responsible for enforcing compliance by third parties to this License.

GPL at § 6 (emphasis added). As alleged in XimpleWare's Amended Complaint, XimpleWare provided its software online under the GPL. Versata downloaded XimpleWare's software, and included a subset of it—object code only, without any notices, without any warranty disclaimers, without a copy of the code, and without any license information—in its DCM product, which it distributed to customers including Ameriprise. Am. Compl. ¶¶ 69–70.

Ameriprise received XimpleWare's software in violation of the GPL license. For Ameriprise's subsequent use of the XimpleWare software to be licensed, it had to first comply with <u>all</u> the terms and conditions—like the license itself, this "automatic" license contains a condition precedent requiring compliance with the terms and conditions of the GPL license. *Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967). <u>XimpleWare has alleged and Ameriprise has admitted that the code Ameriprise received from Versata and that Ameriprise used was not GPL compliant—including especially its failure to include the required notices and disclaimers</u>. Am. Compl. ¶¶ 53, 61. Because of Ameriprise's failure to meet this additional condition precedent to the "automatic" license, its receipt of a copy and use of XimpleWare's software was never authorized, never licensed, and at all times an infringement of XimpleWare's copyright. For this additional reason, Ameriprise's Motion to Dismiss must be denied.

**B.    Ameriprise and XimpleWare Agree that the
         GPL Implements an Automatic Termination for Any Breach.**

As stated above, Ameriprise has never had a license to XimpleWare's software. However, even if Ameriprise somehow received XimpleWare's software under the GPL license, it was **<u>strictly</u>** bound by its terms and conditions. **<u>Ameriprise agrees with this interpretation</u>** <u>as applied to Versata, and agrees that Ameriprise received the XimpleWare software through Versata's distribution of its DCM software and not directly from XimpleWare, meaning that distribution and receipt were in violation of the GPL.</u> Motion at pp. 7–9.

Thus, if Ameriprise is somehow believed to have been licensed to use XimpleWare's software (and it was not) there is no dispute that the GPL applies to Ameriprise, and that the only way for Ameriprise to have a license to the XimpleWare software was and is under the GPL.

1 **Ameriprise also agrees with a strict interpretation of the GPL providing for automatic termination**. Motion, pp. 5, lns. 2-11. Section 4 states that the GPL requires strict compliance, and any violation terminates the license automatically at the moment of violation. Section 4's language is clear on this:

> 4. **You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License.** Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and **will automatically terminate your rights under this License**. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated **so long as such parties remain in full compliance**.

GPL at § 4 (emphasis added). Ameriprise agrees with this, quoting from the very same language in its Motion: "Pursuant to Section 4 of the GPL, Ameriprise is thus a licensed user and retains its rights under the GPL—regardless of whether Versata should lose its rights—so long as Ameriprise remains in compliance with the GPL." Motion at p. 8.

Ameriprise also admits that, if it violated the GPL, then an action for copyright infringement is appropriate. Motion at pp. 9–10, *citing Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) (allowing action for copyright infringement based on breach of open source license).

**Thus**, **the only point on which Ameriprise and XimpleWare differ is whether Ameriprise itself complied with the GPL**. If it did not, Ameriprise admits that the license it incorrectly asserts it was terminated automatically, just as did Versata's, and that Ameriprise and Versata would be liable for copyright infringement. The Amended Complaint alleges exactly that, and such allegations must be accepted as true for this Motion, namely that any and all licenses terminated automatically under these provisions. Am. Compl. ¶¶ 57, 61.

XimpleWare's Amended Complaint states multiple instances of violations of the terms of the GPL by Ameriprise. First, Ameriprise made copies of XimpleWare's software without the required copyright notices and license information. Second, Ameriprise itself has made illegal "distributions" within the meaning of the GPL and copyright law. Third, the "adoptions" into commercial software is also not authorized and violates the Copyright Act. 17 U.S.C. § 106(2). The effect of any and each violation is that Ameriprise breached the GPL and lost its license automatically, at that moment, by operation of law and is therefore a copyright infringer. How

Computerlaw Group LLP
www.computerlaw.com℠

can there be any doubt about this given that Ameriprise itself is taking precisely this position against Versata in the Texas litigation? In the Texas litigation, Ameriprise alleges and has argued precisely the position that XimpleWare asserts in this litigation and now it must accept that fact.

### C. Ameriprise Violated the GPL by Either Removing or Failing to Include Both XimpleWare's Copyright Notices and the GPL License Itself.

XimpleWare's Amended Complaint states that Versata's DCM software, which incorporates XimpleWare's software, does not include any XimpleWare copyright or use notices. Am. Compl. ¶ 52. XimpleWare alleges that it has always included such copyright notices on its source code and in the software packages it distributes online via SourceForge. Am. Compl. ¶¶ 44, 47, 54.

Under the GPL, Section 1 is incorporated by Section 3, which governs distribution and copying of GPL-licensed software in object code form: "You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following…" GPL § 3.

Ameriprise's Amended Complaint alleges clearly that Versata downloaded XimpleWare's software (Am. Compl. ¶ 69); included it in object code form in its DCM product (Am. Compl. ¶¶ 69–70); and did not include any XimpleWare copyright notices or GPL licensing information (Am. Compl. ¶¶ 50–53, 69–70). The Amended Complaint also alleges that Ameriprise failed to correct those violations, and itself distributed XimpleWare's software without copyright notices or GPL licensing information, also in violation of the GPL (Am. Compl. ¶ 71). For these reasons, XimpleWare's claims are well-founded and this Motion must be denied.

### D. Alternatively, Under the GPL, It is Very Clear Ameriprise's License Terminated Automatically Because of Its Unauthorized Distributions to Franchisees and Other Employees.

#### 1. Unauthorized Distribution to Non-Employee Franchisees Violates XimpleWare's Distribution Right Under Copyright Law.

The Copyright Act grants six exclusive rights to copyright owners, one of which is the right of distribution. 17 U.S.C. § 106(3) (granting copyright owner "exclusive rights to do and to authorize" to, among other things, "distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending").

The GPL expressly covers this distribution right (which Ameriprise admits), and conditions the copyright license it grants on full performance with all of the GPL's terms and conditions (which Ameriprise also admits). XimpleWare's Amended Complaint alleges that Ameriprise did perform a "distribution" by delivering copies of Versata's DCM including XimpleWare's software to outside franchisees who are not Ameriprise employees and are independent from any Ameriprise corporate entity. Am. Compl. ¶¶ 59–62 and 72.

XimpleWare's Amended Complaint clearly alleges that Ameriprise's own public filings with the Securities Exchange Commission—which the Amended Complaint quotes—detail these franchisee and other non-employee relationships. According to those filings, more than half of Ameriprise-branded financial advisors are, in fact, **not employed by Ameriprise**, but instead by third party franchisees:

> 59. The majority of Ameriprise financial advisors are **not** Ameriprise employees. According to Ameriprise's own 2012 Annual Report, filed publicly with the U.S. Securities and Exchange Commission, Ameriprise operates a "nationwide network of more than 9,700 advisors," of which "more than 7,400 are [non-employee] **independent franchisees or employees or contractors of franchisees [of Ameriprise]**."

Am. Compl. ¶ 59 (emphasis added). It is clear from Ameriprise's own public filings that most of its advisors are not employed by Ameriprise itself and are third parties. Thus, providing them with copies of DCM and XimpleWare's software must constitute a distribution. 4 PATRY ON COPYRIGHT § 13:9 (2013). Ninth Circuit law is clear that nonexclusive licenses cannot be sublicensed or assigned without the express consent of the copyright owner. *See Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011) (nonexclusive copyright license required express permission to sublicense); *Everex Sys. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 679 (9th Cir. 1996) ("Federal law holds a nonexclusive patent license to be personal and nonassignable…"). The only consent given in any form is that contained in the GPL, and it is clear Ameriprise did not follow the terms of the GPL for further destruction.

The cases cited by Ameriprise all rely on the notion that that use by contractors is for the benefit of the licensed party. One example is *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1075 (Fed. Cir. 2009) where the Court held, "We therefore hold that Star did not breach the

License by contracting with third parties to have the licensed products made **for its own use**." Here, the allegations are that Ameriprise distributed the copyrighted code to its franchisees for the use of those franchisees, and not Ameriprise. Am. Compl. ¶¶ 59–62.

XimpleWare also alleges that Ameriprise distributed the XimpleWare software to those outside franchisees and other non-employees in violation of XimpleWare's copyright rights:

> 60. On information and belief, Ameriprise distributed DCM and VTD-XML to these thousands of non-employee financial advisors. According to its 2012 Annual Report, "The support [Ameriprise] offer[s] to [its] franchisee advisors includes generalist and specialist leadership support, **technology platforms and tools**, training and marketing programs" (emphasis added). On information and belief, DCM is among the "technology platforms and tools" that Ameriprise provides its outside advisors.

Am. Compl. ¶ 60 (emphasis added).

The Federal Copyright Act does not itself define "distribution." 17 U.S.C. § 106; 4 PATRY ON COPYRIGHT § 13:9 (2013). So a common sense approach to statutory interpretation is warranted. The word "distribution" generally includes "the exclusive right to sell or otherwise transfer ownership of, rent, lease, or lend one or more copies or sound recordings of the work." 2-8 *Nimmer on Copyright* § 8.11[B][1] (2014); *see also* 17 U.SC. § 106(3).

Finally, XimpleWare alleges that this distribution ran afoul of the terms and conditions of the GPL, and thus Ameriprise's license under the GPL terminated automatically. Am. Compl. ¶ 61. XimpleWare pled adequate facts in support of each of these allegations, quoting directly from Ameriprise's own public securities filings.

### III. XIMPLEWARE'S OTHER CLAIMS SURVIVE BECAUSE IT HAS ALLEGED AND WILL PROVE THE ELEMENTS OF ITS WELL-PLED COPYRIGHT CLAIM.

There is no dispute in this case that XimpleWare is the owner of all copyrights in the Product and related source code; and indeed there can be no dispute as a "copyright registration is *prima facie* evidence of ownership." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989). As made clear in its Motion, Ameriprise agrees with Plaintiff that Ameriprise received XimpleWare's software from Versata and that Versata violated the GPL. *See generally*, Motion. The Copyright Office Registered Plaintiff's Copyright and Issued Registration Certificate TX 7-727-556 to Plaintiff, affording XimpleWare all the rights connected thereto.

"To plead copyright infringement, plaintiff must plead (1) ownership of a valid copyright and (2) copying of protected expression by the alleged infringers." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 2741 at *5. As discussed above, XimpleWare has alleged and Ameriprise has admitted, as it must, that XimpleWare's registered copyright is valid and enforceable, fulfilling the first element of Plaintiff's claim as alleged in its Amended Complaint. Am. Compl. ¶¶ 44–48. As for the second, Ameriprise also admits in its Motion that Ameriprise "received software from Versata and used it internally to manage compensation for its advisors." Motion at p. 3–4. Such "use" immediately constitutes copying and justifies a theory for copyright infringement.[2] Indeed, that is precisely Ameriprise's position against Versata here.

## IV. AT MINIMUM, LEAVE TO AMEND SHOULD BE LIBERALLY GRANTED.

The Ninth Circuit has held that "if a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d. 1393, 1401 (9th Cir. 1986). Even if the Court finds any reason to grant the Defendant's motion to dismiss, it is well-established that the proper remedy is to permit Plaintiff to amend the claims for relief at issue.

## CONCLUSION

Ameriprise never had any form of license, and certainly not a license under the GPL, to use or distribute XimpleWare's software. As the Amended Complaint alleges, Ameriprise nonetheless did both—it used XimpleWare's software without the required notices and disclaimers, and it distributed XimpleWare's code without authorization and also without the required notices. Accordingly, Ameriprise has infringed XimpleWare's copyrights.

---

[2] As a computer program, it is well-understood that use creates copies and such copying is infringing conduct: "As we discuss later, one issue of importance in reference to computer programs and other digital works concerns the copyright consequences of "moving" a work from one part of computer memory to another, or of briefly copying it into the memory of a different server. *See, e.g., MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993); *Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998*); PracticeWorks, Inc. v. Professional Software Solutions of Illinois, Inc.*, 72 U.S.P.Q.2d (BNA) 1691 (D. Md. 2004) (copying within machine is infringement)." Nimmer, *Nimmer on Copyright: Law of Computer Technology* § 1:16.

Because a motion to dismiss may only be granted when **no** set of facts would support the alleged claims, Plaintiff respectfully requests an opportunity to amend its complaint to allege additional facts if the Court determines that further factual allegations are required to state any claim for relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave freely given). Thus, even if the any claims are not sufficiently pled, the Court should grant Plaintiff leave to amend.

Dated: January 14, 2014

Respectfully Submitted,

COMPUTERLAW GROUP LLP

By: /s/ Jack Russo
Jack Russo
Christopher Sargent
Ansel Halliburton

Attorneys for Plaintiff
XIMPLEWARE CORP.