GREGORY S. TAMKIN (State Bar No. 175009)
CASE COLLARD (State Bar No. 245834)
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
Telephone: (303) 629-3400
Facsimile: (303) 629-3450
Email: tamkin.greg@dorsey.com
Email: collard.case@dorsey.com
*Attorneys for Defendants Ameriprise Financial, Inc.
and Ameriprise Financial Services, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| XIMPLEWARE CORP., <br><br> Plaintiff, <br><br> v. <br><br> VERSATA SOFTWARE, INC. F/K/A TRILOGY SOFTWARE, INC.; TRILOGY DEVELOPMENT GROUP, INC.; AMERIPRISE FINANCIAL, INC.; AMERIPRISE FINANCIAL SERVICES, INC.; AND AUREA SOFTWARE, INC A/K/A AUREA, INC., <br><br> Defendants. | Case No. 13-cv-05160 SI <br><br> DEFENDANTS AMERIPRISE FINANCIAL, INC. AND AMERIPRISE FINANCIAL SERVICES, INC.'S REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFF XIMPLEWARE CORP.'S CLAIMS OF COPYRIGHT INFRINGEMENT, UNJUST ENRICHMENT, UNFAIR COMPETITION, AND DECLARATORY JUDGMENT <br><br> <u>HEARING</u> <br><br> Date: February 7, 2014 <br> Time: 9:00 am <br> Location: San Francisco Courthouse, Courtroom 10 – 19th floor <br> Judge: Hon. Susan Illston |

## INTRODUCTION

Plaintiff XimpleWare's Opposition to Ameriprise's Renewed Motion to Dismiss ("Opposition"), Doc. No. 53, fails to address the central flaw of its case against Ameriprise: Ameriprise cannot be liable for copyright infringement, because it was a licensed user of XimpleWare's open source software under the "GPL" license, which imposes no restrictions on Ameriprise's use of the software. Indeed, the very purpose of the GPL is to permit anyone's free use of the software. While the GPL places certain restrictions on outside distribution of the software, XimpleWare does not allege facts that would constitute such a distribution by Ameriprise. Without such distribution, there can be no copyright infringement and the case must be dismissed.

The only facts (as opposed to legal conclusions) XimpleWare alleges against Ameriprise are that (i) Ameriprise operates a network of financial advisors, most of whom are not employees but are independent franchisees or contractors, and (ii) Ameriprise provides "technology platforms and tools" to those financial advisors, which XimpleWare alleges on information and belief includes its software. Amended Complaint, ¶¶ 59, 60.[1] Thus, XimpleWare's entire case against Ameriprise rests on its assertion that Ameriprise's use of the software, which would otherwise be freely permitted, becomes actionable copyright infringement if the Ameriprise personnel using the software are independent contractors rather than employees. There is no basis in the language of the GPL or the relevant case authority to support this assertion. XimpleWare's theory against Ameriprise is invalid as a matter of law, without need to decide any factual disputes.

## ARGUMENT

As a matter of law, XimpleWare has failed to state a claim for relief against Ameriprise for copyright infringement. XimpleWare's other claims for relief against Ameriprise are dependent upon the copyright theory, as XimpleWare implicitly concedes. Thus, the Court should dismiss all of the claims against Ameriprise in their entirety. Further, the Court should deny XimpleWare's motion to strike and its futile request for leave to amend its complaint yet again.

---

[1] Ameriprise again notes that it disputes these allegations, but accepts them as true for the purposes of this motion.

## I. XIMPLEWARE'S FACTUAL ALLEGATIONS DO NOT SUPPORT A CLAIM FOR RELIEF AGAINST AMERIPRISE FOR COPYRIGHT INFRINGEMENT.

Under the terms of the GPL, Ameriprise is a licensed user of XimpleWare's open source software. XimpleWare contends that Ameriprise failed to comply with certain restrictions imposed by the GPL, but the GPL places no restrictions on *use* of the software, only on *distribution to other parties*. Even under the facts as alleged by XimpleWare itself, Ameriprise did not distribute XimpleWare software, but merely provided it for *use* by Ameriprise's own financial advisors.

### A.   Ameriprise Is a Licensed User of XimpleWare's Software Under the GPL.

XimpleWare concedes that it elected to make the software at issue available to the public under an "open source" license, the GNU General Public License version 2 ("GPL"), Opposition at 1, a copy of which XimpleWare attached to its Complaint. *See* Dkt. No. 1-1, Complaint, Exhibit 1. XimpleWare attempts to dispute that Ameriprise was licensed to use XimpleWare's software under the GPL, arguing that Versata did not comply with the GPL when it provided the software to Ameriprise. *See* Opposition at 7-8. This is irrelevant as a matter of law, for two reasons. First, Ameriprise is itself a licensed user under the terms of the GPL. Second, Ameriprise became a licensee when it received the software from Versata, and the GPL specifies that any violations by Versata do not interrupt Ameriprise's license.

In its Opposition, XimpleWare does not attempt to dispute that Ameriprise is a member of the general public to whom the GPL license extends. Thus, XimpleWare's contention that Versata violated the terms of the GPL (which Ameriprise does not dispute) is irrelevant to the claims at issue here. Under the GPL, anyone can use XimpleWare's open source software, in accordance with the terms of that license. If Versata violated the terms of the GPL, that may affect *Versata's* rights to use and distribute XimpleWare's software in combination with Versata's software, but it does nothing to alter the fact that Ameriprise is entitled under the GPL *to use* XimpleWare's software, independent of Versata.

Moreover, XimpleWare acknowledges in its Opposition that when Ameriprise received copies of the XimpleWare software from Versata, Ameriprise automatically became a licensee under the terms of the GPL. Opposition at 7-8 (quoting GPL, § 6) ("Each time you distribute the Program

(or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions."). XimpleWare contends that Ameriprise did not become a licensee under the GPL because Versata failed to comply with the GPL, and therefore "Ameriprise received XimpleWare's software in violation of the GPL license." Opposition at 8. But this contention flies in the face of the express language of the GPL, which provides that noncompliance *by Versata* terminates Versata's rights under the GPL but has no effect on *Ameriprise's* rights as a licensee, so long as Ameriprise remains in compliance:

> You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate *your* rights under this License. However, parties who have received copies, or rights, from you under this License will *not* have their licenses terminated so long as such parties remain in full compliance.

GPL, Dkt. No. 1-1, at p. 3, § 4 (emphasis added).[2]

Thus, Ameriprise is a licensed user of XimpleWare's software, so long as Ameriprise remains in compliance with the terms of the GPL.

**B.    The GPL Places No Restrictions on Ameriprise's Use of the Licensed Software.**

XimpleWare insists it has alleged that Ameriprise did not comply with the GPL, but this conclusory assertion is meaningless in the absence of factual allegations that would establish a breach of the terms of the GPL. *See Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 989 (E.D. Cal. 2012) (the Court disregards conclusory allegations and then determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief"); *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[2]   XimpleWare apparently contends that this language is somehow nullified here, because Versata distributed the XimpleWare software without complying with the terms of the GPL. Opposition at 7-8. But the very purpose of this provision in the GPL is to address the situation where a licensee distributes the software to an unsuspecting third party (Ameriprise here) without complying with the terms of the GPL. Under Section 4, this does not terminate the license of parties receiving the software from the non-compliant licensee.

678-79 (2009).  Here, XimpleWare alleges that Ameriprise and Ameriprise financial advisors made use of the XimpleWare software it received from Versata.  Crucially, however, the GPL places no restrictions on *use* of the software, only on distribution to other parties.

The operative provisions of the GPL begin with the heading "TERMS AND CONDITIONS FOR COPYING, DISTRIBUTING AND MODIFICATION."  "Use" of the software is not mentioned in the heading, nor in any of the paragraphs that follow.  Rather, each of the following provisions places restrictions on the licensee's *distribution* of copies of the licensed software, not on the licensee's own use of the software.  *See*, *e.g.*, GPL, Dkt. No. 1-1, at pp. 2-3, § 1 ("You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, provided that…"); § 2 ("You may modify your copy or copies … and copy and distribute such modifications or work under the terms of Section 1 above, provided that…"); § 3 ("You may copy and distribute the Program … in object code or executable form under the terms of Sections 1 and 2 above provided that…"); § 4 ("You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License.").  None of these paragraphs or any of the provisions that follow purport to place any limitation or restriction on a licensee's own use of the licensed software.  Indeed, the first operative paragraph expressly specifies that "[a]ctivities other than copying, distribution and modification are not covered by this License; they are outside its scope.  The act of running the Program is not restricted…" *Id.*, § 0.  This is consistent with the Preamble's explanation that the GPL licenses software "for everyone's free use" and imposes restrictions on licensees only "if you distribute copies of the software, or if you modify it." *Id.*, at p.1.[3]

XimpleWare argues that the GPL does indeed place restrictions on use of the software, quoting Sections 1 and 2(c) of the GPL.  *See* Opposition at 5-6.  This is extremely misleading.  Section 1 pertains to restrictions on copying and distributing verbatim copies of the software in

---

[3]  XimpleWare argues that the Preamble is not an operative provision of the GPL, but its own authority observes that the Preamble is "a helpful preface so that you can better understand the GPL in its context."  Opposition at 7 (quoting L. Rosen, *Open Source Licensing: Software Freedom and Intellectual Property Law*, at 109 (2004).  In particular, this language in the Preamble may help the Court to better understand why there are no restrictions in the body of the GPL on *use* of the licensed software.

source code format, and Section 2 pertains to copying and distributing modified copies of the software in source code format. Indeed, Section 2's expressly stated "intent is to exercise the right to control the distribution of derivative or collective works based on the Program." *Id.* at p.3, § 2. These sections do not pertain to use of the software.

As observed in Ameriprise's renewed motion to dismiss, the Federal Circuit held in *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008), that a copyright owner cannot bring an action for copyright infringement as to open source software unless the defendant acts in a manner contrary to the limitations imposed by the terms of the open source license. But the only limitations and restrictions that appear in the GPL pertain to copying and distributing the software, not to the licensee's own use of the software. Thus, XimpleWare cannot state a claim against Ameriprise unless it alleges that Ameriprise distributed the software to other parties without complying with the terms of the GPL.

**C.     XimpleWare Has Not Alleged Facts to Support Its Conclusion that Ameriprise Distributed XimpleWare Software.**

XimpleWare insists that Ameriprise distributed XimpleWare's code contrary to the GPL, but it has not alleged and cannot allege facts to support that assertion. To the contrary, XimpleWare's only basis for this allegation is its contention that Ameriprise provided XimpleWare software to Ameriprise's own financial advisors. *See* Amended Complaint, ¶ 60. Assuming this allegation to be true for purposes of Ameriprise's motion to dismiss, as a matter of law, providing software to Ameriprise's own personnel is an internal *use* of the software, not an external *distribution*. XimpleWare's argument to the contrary rests entirely on the fact that Ameriprise's financial advisors are independent contractors rather than employees, but that is irrelevant as a matter of law, as discussed below.

The factual underpinning of XimpleWare's assertion that Ameriprise distributed its software, *in its entirety*, is as follows:

> 59.     The majority of Ameriprise financial advisors are not Ameriprise employees. According to Ameriprise's own 2012 Annual Report, filed publicly with the U.S. Securities and Exchange Commission, Ameriprise

> operates a "nationwide network of more than 9,700 advisors," of which "more than 7,400 are independent franchisees or employees or contractors of franchisees."
>
> 60. On information and belief, Ameriprise distributed DCM and VTD-XML to these thousands of non-employee financial advisors. According to its 2012 Annual Report, "The support [Ameriprise] offer[s] to [its] franchisee advisors includes generalist and specialist leadership support, **technology platforms and tools**, training and marketing programs." On information and belief, DCM is among the "technology platforms and tools" that Ameriprise provides its outside advisors.

Amended Complaint, ¶¶ 59, 60 (emphasis XimpleWare's). XimpleWare does not allege that Ameriprise sold XimpleWare software, or even that it provided copies of the software to anyone but its own financial advisors. It asserts that Ameriprise providing the software to its own financial advisors itself constituted "distribution," but this is a mere legal conclusion. *See Iqbal*, 556 U.S. at 678-79, (a claim for relief must be supported by factual allegations, not mere legal conclusions). There is no support for XimpleWare's assertion in the terms of the GPL or in the law.

As demonstrated above, the GPL places restrictions on distributing copies of software to other entities, *not* on a licensee's own internal use of the software. Thus, XimpleWare's entire case against Ameriprise rests on its belief that internal use only occurs when the user is an employee, rather than an independent contractor. But no such distinction can be found anywhere in the GPL. Rather, the plain focus of the GPL is on whether the software is distributed outside the licensee, as opposed to simply "running the Program." GPL, Dkt. No. 1-1, at p. 2, § 0. Here, the only allegation is that Ameriprise's financial advisors ran XimpleWare's software. There is no allegation of a sale, distribution, or transfer, as opposed to mere use of the software.

In its renewed motion, Ameriprise cited case authority holding that a licensee's use of copyrighted material does not become actionable merely because the licensee works through independent contractors rather than employees. *See CoreBrace LLC v. Star Seismic LLC*, 556 F.3d 1069, 1072-73 (Fed. Cir. 2009) (patent licensee did not violate provision against assigning,

<em>sublicensing, or transferring its license by employing independent contractors to make the products it was licensed to make); Womack+Hamilton Architects, L.L.C. v. Metric Holdings Ltd. Partnership</em>, 102 Fed. Appx. 374, 382 (5th Cir. 2004) (copyright licensee's hiring of independent contractors "does not appear to be a transfer of the rights contained in the license."); *Cf. Hogan Sys., Inc. v. Cybresource, Int'l*, 158 F.3d 319, 323 (5th Cir. 1998) (bank's use of independent contractors to work on licensed software not a transfer of license to contractor because 'all of the work being done inures to the benefit of [the bank]')"). XimpleWare responds that in those cases the contractors' use of the copyrighted material was for the benefit of the licensed party. Opposition at 11-12. But that is precisely the point. XimpleWare itself alleges that Ameriprise operates a network of 9,700 financial advisors, of whom 7,400 are independent franchisees or contractors, and the remainder are presumably employees. Amended Complaint, ¶ 59. There is no legal or logical basis for XimpleWare's inherent presumption that the Ameriprise financial advisors who happen to be employees are using available software for the benefit of Ameriprise, but the financial advisors who happen to be independent contractors are not. In either event, the software is used by Ameriprise personnel. XimpleWare's insistence that there is a critical distinction between employees and independent contractors in this regard finds no support in the GPL license and is contrary to the case law.

Because Ameriprise's use, allegedly through its network of financial advisors, of XimpleWare's open source software is entirely consistent with the terms of the GPL and the Copyright Act, such use cannot support a claim for copyright infringement.

## II. XIMPLEWARE'S OTHER CLAIMS FOR RELIEF FALL WITH THE COPYRIGHT INFRINGEMENT CLAIM.

Ameriprise argued in its renewed motion that all of XimpleWare's other claims for relief are dependent on the copyright infringement claim, and none of them could stand independently. There is no basis for the claims of unjust enrichment, unfair competition, or declaratory relief, apart from the purported copyright infringement. In its opposition, XimpleWare's argument in support of its other claims consists entirely of reiterating its belief that it has stated a claim for copyright infringement. Opposition at 12-13. Thus, XimpleWare has implicitly conceded that the other claims

8
AMERIPRISE'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
CASE NO. 13-CV-05160 SI

1  cannot stand independently.  If the Court dismisses the copyright claim as it should, it should dismiss
2  all of XimpleWare's claims for relief against Ameriprise.

3  **III.    THE COURT SHOULD DENY XIMPLEWARE'S MOTION TO STRIKE AND ITS**
4  **REQUEST FOR LEAVE TO AMEND.**

5  XimpleWare asks the Court to strike factual allegations purportedly made in Ameriprise's
6  motion, and to give it leave to amend its complaint to cure the deficiencies identified in the motion.
7  Neither request is well grounded.

8  **A.    Motion to Strike.**

9  XimpleWare objects to references in Ameriprise's renewed motion to: (i) the fact that it
10  disputes whether it provided copies of XimpleWare software to its financial advisors; (ii) FAQs
11  regarding the GPL published on-line; and (iii) arguments of counsel in this action.  There is nothing
12  to strike.  First, it is entirely appropriate for Ameriprise to reserve the right to dispute XimpleWare's
13  incorrect factual allegations.  Of course, Ameriprise may not dispute such factual allegations on a
14  motion to dismiss, which Ameriprise freely acknowledged in its motion.  No part of its argument
15  relies on XimpleWare's factual error.  Second, XimpleWare itself included allegations in its
16  Amended Complaint as to the substance of GPL FAQs.  *See* Amended Complaint, ¶¶ 29, 31.
17  Documents referenced in the Complaint may be considered on a Rule 12 motion to dismiss.  *Lee v.*
18  *City of Los Angeles*, 250 F. 3d 668, 688 (9th Cir. 2001), ("a court may consider material which is
19  properly submitted as part of the complaint") (internal citations omitted).  Third, Ameriprise cited
20  arguments of counsel to this Court only for the purpose of identifying the parties' positions in
21  litigation, not to support any disputed factual issue.  The Court need not decide any issue of disputed
22  fact to rule on Ameriprise's renewed motion to dismiss.

23  **B.    Request for Leave to Amend.**

24  XimpleWare requests leave to amend yet again so as to cure the deficiencies in its Amended
25  Complaint.  The Court should deny this request as futile.  The Court need not allow leave to amend
26  if it is clear that additional allegations cannot cure the existing deficiency.  *Schreiber Distributing v.*
27  *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Here, the parties' dispute rests on a
28  single issue: whether Ameriprise "distributed" XimpleWare software by providing it to Ameriprise's

own financial advisors, be they independent contractors or employees.  If the Court determines, as it should, that this internal use of the software is permitted by the GPL and applicable law, then further amendments are necessarily futile, especially in light of the fact that XimpleWare already attempted to amend to address the deficiencies in its initial Complaint.  The underlying theory of XimpleWare's case against Ameriprise is untenable as a matter of law.

## CONCLUSION

For the foregoing reasons, XimpleWare has failed as a matter of law to demonstrate any cognizable claim for relief against Ameriprise, and Ameriprise respectfully requests the Court dismiss all XimpleWare's claims against it with prejudice.

Respectfully submitted January 23, 2014.

/s/ Gregory S. Tamkin
Gregory S. Tamkin
Case Collard
DORSEY & WHITNEY, LLP
Email: tamkin.greg@dorsey.com
Email: collard.case@dorsey.com
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
Telephone:(303) 629-3400
Facsimile: (303) 629-3450

*Attorneys for Defendants Ameriprise Financial, Inc. and Ameriprise Financial Services, Inc.*

CERTIFICATE OF SERVICE

On January 23, 2014, I caused the foregoing document, titled DEFENDANTS AMERIPRISE FINANCIAL, INC. AND AMERIPRISE FINANCIAL SERVICES, INC.'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFF XIMPLEWARE CORP.'S CLAIMS OF COPYRIGHT INFRINGEMENT, UNJUST ENRICHMENT, UNFAIR COMPETITION, AND DECLARATORY JUDGMENT, to be electronically filed with the court, which will cause a Notice of Electronic Filing to be automatically generated by the court's electronic filing system and sent to all parties in this case.  Pursuant to General Order No. 45, Sections II.G. and IX, the Notice of Electronic Filing when e-mailed to the email addresses of record for counsel in the case constitutes service on the receiving parties.

                                    /s/ Gregory S. Tamkin
                                    Gregory S. Tamkin