1  Jack Russo (Cal. Bar No. 96068)
   Christopher Sargent (Cal. Bar No. 246285)
2  Ansel Halliburton (Cal. Bar No. 282906)
   COMPUTERLAW GROUP LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  (650) 327-9800
   (650) 618-1863 fax
5  jrusso@computerlaw.com
   csargent@computerlaw.com
6  ahalliburton@computerlaw.com

7  Attorneys for Plaintiff
   XIMPLEWARE CORP.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  **XimpleWare Corp.**, a California        Case No. 3:13-cv-5160-SI
    Corporation,
13                                            **PLAINTIFF XIMPLEWARE'S**
                    Plaintiff;                **OPPOSITION TO**
14                                            **VERSATA DEFENDANTS'**
            v.                                **MOTION TO DISMISS**
15
    **Versata Software, Inc., f/k/a Trilogy**
16  **Software, Inc.,** a Delaware corporation;  Date:      March 14, 2014
    **Trilogy Development Group, Inc.,** a     Time:      9:00 a.m.
17  California corporation; **Ameriprise**     Location:  Courtroom 10, 19th Floor
    **Financial, Inc.,** a Delaware corporation; and  Judge:  Hon. Susan Illston
18  **Ameriprise Financial Services, Inc.,** a
    Delaware corporation,
19
                    Defendants.
20

21

22

23

24

25

26

27

28

Computerlaw Group LLP
www.computerlaw.com℠

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities........................................................................................................... iii

Introduction ........................................................................................................................ 1

Statement of Facts ............................................................................................................. 1

Legal Standard ................................................................................................................... 4

Argument ........................................................................................................................... 4

I.   The Court Has Already Ruled on the Substance of This Motion................................ 4

   A.  The Court Has Already Held Plaintiff's Copyright Claims Sufficient. ............... 4

   B.  The Court Has Upheld the Substance of Plaintiff's Secondary Claims As Sufficient......... 5

II.  XimpleWare Alleges The Interrelationships Between

     Versata, Trilogy, and Aurea with Sufficient Particularity................................ 5

III. XimpleWare Grants Licenses To its Copyrighted Software

     Under Strict and Specific Conditions Only, Without Exception............................ 8

   A.  The GPL Contains Many Restrictions on Use, Including

       Notice and Attribution, as Well as Copying and Distribution................................ 8

   B.  The GPL's Preamble is Factual and Not Part of the

       Legally Binding Terms and Conditions of the Limited License Grant Language. ............. 9

IV.  XimpleWare's Amended Complaint Properly Alleges That The

     Versata Defendants Violated the GPL and Infringed XimpleWare's Copyrights. ................ 10

   A.  The Facts of The Versata Defendants' Infringing Conduct Are Clearly Pled................... 10

   B.  The Versata Defendants' GPL Violation, Breach of Contract,

       And Copyright Infringement are Pled Clearly and Sufficiently. ...................... 10

       1.  The GPL Implements an Automatic Voiding of a Failed License Grant. ............... 10

       2.  The Versata Defendants Violated The GPL by Removing or Failing

           to Include XimpleWare's Copyright Notices and the GPL License Itself. ............. 11

V.   XimpleWare's Other Claims Survive Because It Has Alleged and Will Prove the Elements of

     Its Well-Pled Copyright Claim........................................................................ 12

Computerlaw Group LLP
www.computerlaw.com℠

1   VI. XimpleWare Properly Pleads Contributory Copyright Infringement. ................................. 13

2       A.  Like Versata's, the Customers' Licenses Also

3           Terminate Automatically Upon Their Own Violation of the GPL. ................................. 14

4       B.  It is Factually Impossible for the

5           Versata Defendants' Customers Not to Violate the GPL. ................................................ 14

6       C.  The Versata Defendants' Customers Cannot Satisfy Conditions Precedent. .................... 15

7       D.  The Versata Defendants Had Full Knowledge That They Were

8           Selling Many Open Source Components, Including XimpleWare's, in DCM. ................ 15

9   VII.    Plaintiff Has Properly Pled Its Claim for Breach

10          of the Implied Covenant of Good Faith and Fair Dealing. ............................................. 16

11      A.  Elements of the Implied Covenant Claim ...................................................................... 16

12      B.  California Law Governs All Agreements At-Issue in This Dispute. ................................ 17

13  VIII.   XimpleWare's Claim for Intentional Interference With

14          Prospective Economic Advantage is Also Sufficiently Pled. ......................................... 19

15  IX. At Minimum, Leave to Amend Should be Liberally Granted. ............................................. 19

16  Conclusion ............................................................................................................................. 20

17

18

19

20

21

22

23

24

25

26

27

28

**Computerlaw Group LLP**
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1

## TABLE OF AUTHORITIES

2 **CASES**

3 *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1159 (9th Cir. 1989)............................. 3

4 *Ashcroft v. Iqbal,* 566 U.S. 662, 677 (2009) ......................................................................... 4

5 *Automated Transaction LLC v. New York Cmty. Bank*,

6     12-CV-3070, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013) ....................................................7

7 *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007)........................................................ 4

8 *Bernard v. Harrah's Club*, 16 Cal. 3d 313, 320 (1976).......................................................... 17

9 *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 59 (8th Cir. 2009) .........................................1

10 *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 658 (1958) ..................................... 16

11 *English v. Fischer*, 660 S.W.2d 521 (1983) ......................................................................... 17

12 *Foman v. Davis*, 371 U.S. 178 (1962)................................................................................ 20

13 *Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011) ..................................... 4

14 *Hurtado v. Sup. Ct.*, 11 Cal.3d 574, 579 (1974) .................................................................. 17

15 *In re Napster Copyright Litig. v. Hummer Winblad Venture Partners*,

16     354 F. Supp. 2d 1113, 1121 (N.D. Cal. 2005)...................................................................7

17 *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ........................................................... 11

18 *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 2741 ......................................... 13

19 *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989) ........... 12

20 *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)...................................................... 4

21 *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607–08 (N.D. Cal. 2007)

22 *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993)................................. 13

23 *Matthews v. Starritt*, 252 Cal. App. 2d 884 (1967) ..............................................................9, 15

24 *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*,

25     672 F3d 396, 400 (6th Cir. 2012).................................................................................1

26 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ................................. 4

27 *Mindlab Media, LLC. v. LWRC Int'l LLC*, CV 11-CV-3405,2012 WL 386695

28     (C.D. Cal. Feb. 6, 2012).............................................................................................7

*OSU Student Alliance v. Ray,* 699 F.3d 1053 (9th Cir. 2012) ........................................ 4

*PracticeWorks, Inc. v. Professional Software Solutions of Illinois, Inc.*, 72 U.S.P.Q.2d (BNA)

   1691 (D. Md. 2004) ........................................................................................... 13

*Quigley v. Verizon Wireless*, 2012 U.S. Dist. LEXIS 75027 (N.D. Cal. May 30, 2012).............. 7

*Rescuecom Corp. v. Google Inc.*, 562 F3d 123 (2nd Cir. 2009) ........................................ 1

*Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d. 1393 (9th Cir. 1986) ................ 19

*Schwab v. Bridge*, 27 Cal. App. 204 (1915) ........................................................... 8

*Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005 (9th Cir. 2012) ................................ 4

*Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998*)* .......................... 13

STATUTES

17 U.S.C. § 106 ..................................................................................... 11, 12

FED. R. CIV. P. Rule 1 ................................................................................ 6

FED. R. CIV. P. Rule 8(e) ............................................................................. 6

OTHER AUTHORITIES

LAWRENCE ROSEN, OPEN SOURCE LICENSING: SOFTWARE FREEDOM AND INTELLECTUAL

   PROPERTY LAW (Prentice Hall 2004) ................................................................ 9

RULES

FED. R. CIV. P. Rule 12(b)(6) ...................................................................... 1, 4

TREATISES

Nimmer, 2-8 NIMMER ON COPYRIGHT § 8.11[B][1] (2014) ........................................ 4, 12

Nimmer, NIMMER ON COPYRIGHT: LAW OF COMPUTER TECHNOLOGY § 1:16 ............................. 4

Nimmer, 3-12 NIMMER ON COPYRIGHT § 12.04[A][3] (2014) ......................................... 13

Patry, 4 PATRY ON COPYRIGHT § 13:9 (2013) ......................................................... 12

Schwarzer et al., CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL

   (The Rutter Group 2014) § 9:213 ..................................................................... 4

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

# INTRODUCTION

This Court has already denied Ameriprise's Motion to Dismiss. Dkt. 61 (order). Now, three closely interrelated companies—Defendants Versata, Trilogy, and Aurea—who sold infringing software to Ameriprise and other customers bring essentially the same motion before the Court, despite having an even weaker argument for dismissal than Ameriprise. Nothing new is set forth in this motion; indeed, far less justification exists for having brought it at all. Thus, as before, the Court should deny the Motion and allow this case to proceed to adjudication.

# STATEMENT OF FACTS

1.    Plaintiff XimpleWare Corp. ("XimpleWare") had spent over a decade developing and fine-tuning its copyrighted[1] software product, known as "VTD-XML" or "VTD XML Extended" (collectively, the "Product"), which reads and parses XML code at a range estimated to be five to ten times faster than other current XML parsing programs, effecting greater efficiency and speed. Amended Complaint (Dkt. 48) ("Am. Compl."), ¶ 35.

2.    The Product provides indexing and incremental capabilities that are crucial to many high performance XML applications and are not available in any other XML parsing libraries. Efficiency and speed are critical in many applications of XML, especially in large scale enterprise data interchange applications where entire server computers are dedicated to handling streams of XML data. If XML data can be processed faster, then fewer servers are needed, less leased space in data centers is needed for those servers, and less energy is required to power those servers—altogether greatly reducing computing needs and costs. Am. Compl. ¶ 35.

---

[1] On a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F3d 123, 127 (2nd Cir. 2009); *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F3d 396, 400 (6th Cir. 2012). All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal–Mart Stores, Inc.*, 588 F3d 585, 59 (8th Cir. 2009). Schwarzer, *et al.*, CAL. PRAC. GUIDE DEF. CIV. PROC. BEFORE TRIAL, Ch. 9-D 9:213 (The Rutter Group 2014)There is no dispute that the Copyright Office issued Registration Certificate No. TX 7-727-556 to Plaintiff XimpleWare. The Court may, of course, take judicial notice of Exhibit 1 hereto.

3. XimpleWare made the business decision to license its Product and related source code under an "open source" license known as the GNU General Public License version 2 ("GPL"). The GPL requires, among other things, that: (1) any changes made to the code carry notices stating that the files were changed, and the dates of all changes; (2) any code created or derived from GPL-protected code must also be licensed under the GPL; (3) copyright notices must print or display when the code is run; and (4) that when distributed, the program must be accompanied by the complete machine-readable source code. Am. Compl., Ex. 1. All four conditions must be met. *Id.*

4. The GPL requires strict compliance: Under its Section 4, any failure to comply with **any** of the GPL's multiple conditions means there is no license and this means any use, distribution, or other exploitation is not licensed, and all rights the violator could have obtained under the GPL are voided. Am. Compl. ¶¶ 23–32.

5. XimpleWare chose the GPL approach because it is one of the most restrictive licenses available, requiring that any derivative code incorporating GPL-protected code must be returned to the open source community in its entirety. In other words, if Developer A creates Product A and licenses it under the GPL, and Developer B creates Product B which incorporates Product A, then Developer B must also license Product B under the GPL. Am. Compl. ¶29.

6. XimpleWare is the owner of all right, title, and interest in all copyrights related to the Product and related source code, including but not limited to registered U.S. Copyright No. TX 7-727-556. Am. Compl. ¶¶ 44–45.

7. All versions of the Source Code have appropriate copyright notices printed or affixed conspicuously on the first page of each work, as required by the GPL. XimpleWare uses the GPL-required copyright notices on its Product and its documentation to give actual and constructive notice of the existence of XimpleWare copyrights. Am. Compl. ¶¶ 44–47.

## The Texas Litigation

8. In the Summer of 2013, XimpleWare first learned of a Texas lawsuit between Defendants Versata and Ameriprise over a contract dispute (the "Texas Litigation"). According to documents filed in the Texas Litigation, Versata licensed its DCM software to Ameriprise until

Computerlaw Group LLP
www.computerlaw.com℠

Ameriprise attempted to write its own software using programmers in India to replace the Versata product. Versata then sued for misappropriation, among other claims. During the prosecution of the Texas Litigation, Ameriprise informed XimpleWare that it had discovered XimpleWare's Source Code in Versata's DCM product, and with said XimpleWare Source code, none of the conditions of the GPL license had been met. There was also no evidence of any commercial license from XimpleWare and no reproduction of XimpleWare's copyright notice in Versata's DCM product. Am. Compl. ¶¶ 49–52.

9.      According to the same set of documents, Versata maintained in the course of business a list of open source software components that it included in its DCM Product, and that list included VTD-XML. Versata then distributed its DCM product to customers, including Ameriprise, in violation of the GPL and XimpleWare's copyrights. XimpleWare has never granted any of the Versata Defendants any commercial license, permission, or authorization to use and redistribute any XimpleWare Product or Source Code. The only license that the Versata Defendants purported to have was from the GPL. Am. Compl. ¶¶ 56–57.

10.      Based again on those same documents, Versata either replaced the copyright notices with false, altered notices, or removed the notices entirely to aid its improper use of the Source Code. Versata asserted a theory in the Texas Litigation that XimpleWare's Source Code was licensed under an Oracle-based exception to the GPL known as the "classpath exception," an Oracle-based exception to the GPL that has been promulgated by the Oracle Corporation for Java-related software packages. XimpleWare has never used and never authorized this exception or any exception other than commercial licensing directly with XimpleWare; neither Oracle nor any other company is authorized to make any statement on behalf of XimpleWare. Am. Compl. ¶ 53.

11.      Versata has distributed thousands of unauthorized copies of the its DCM product or XimpleWare's Source Code to a number of customers, and has collected revenues on the sale and distribution of the derivative DCM producing in violation of XimpleWare's copyrights. Am. Compl. ¶ 58.

Computerlaw Group LLP
www.computerlaw.com<sup>sm</sup>

**LEGAL STANDARD**

Though the Rule 12(b)(6) test has been revised in recent years, the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007) clarified that "once a claim has been stated adequately, it may be supported by showing **any** set of facts consistent with the allegations in the complaint." *Id.* at 563 (emphasis added). Thus, when deciding a motion to dismiss, Federal Courts must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1058 (9th Cir. 2012); *see also Guillen v. Bank of America Corp.,* 2011 WL 4071996 (N.D. Cal. 2011).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 566 U.S. 662 (2009)). A complaint meets this standard when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is appropriate <u>**only**</u> where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (emphasis added).

**ARGUMENT**

Defendants Versata Software, Inc. f/k/a Trilogy Software, Inc. ("Versata"), Trilogy Development Group, Inc. ("Trilogy"), and Aurea Software, Inc. a/k/a Aurea, Inc. ("Aurea"; collectively the "Versata Defendants") have filed a Motion to Dismiss ("Motion") based on Federal Rule of Civil Procedure 12(b)(6) (Dkt. 59). Plaintiff opposes on the merits.

**I.    THE COURT HAS ALREADY RULED ON THE SUBSTANCE OF THIS MOTION.**

**A.    The Court Has Already Held Plaintiff's Copyright Claims Sufficient.**

In ruling on Ameriprise's motion to dismiss, the Court has already found that XimpleWare's claims for direct copyright infringement are legally sufficient to survive a motion to dismiss. Specifically, the Court held:

Computerlaw Group LLP
www.computerlaw.com℠

Accepting as true the facts alleged in the amended complaint and drawing all reasonable inferences in favor of XimpleWare, as it must, the Court finds that XimpleWare has alleged Ameriprise reproduced and distributed the software outside of Ameriprise and to non-employees, thereby acting outside the scope of the GPL. **XimpleWare has therefore stated a claim of copyright infringement.** The Court DENIES defendants' motion to dismiss plaintiff's copyright claim.

Dkt. 61 at p. 5:3–7 (emphasis added).

In making this ruling, the Court considered many of the same arguments that the Versata Defendants now advance, and rejected them all.

## B. The Court Has Upheld the Substance of Plaintiff's Secondary Claims As Sufficient.

As quoted above, the Court has already held that XimpleWare has stated a claim for copyright infringement, and that secondary claims that depend on that copyright infringement claim may also proceed. The Court found that the secondary claims rise and fall with the core copyright infringement claim:

Ameriprise argues that XimpleWare's claims for unjust enrichment, unfair competition, and declaratory relief must all be dismissed **because they are dependent upon XimpleWare's copyright infringement claim**. [] Having found that XimpleWare's allegations constitute a claim for copyright infringement, the Court accordingly DENIES the defendants' motion to dismiss XimpleWare's claims for unjust enrichment, unfair competition, and declaratory relief.

Dkt. 61 at p. 5:10–14 (emphasis added).

The Court should apply this same reasoning, and should also deny the Motion as to all of XimpleWare's secondary claims against the Versata Defendants (unjust enrichment, unfair competition, declaratory relief, contributory copyright infringement, breach of the covenant of good faith and fair dealing, and intentional interference with prospective economic advantage[2]).

## II. XIMPLEWARE ALLEGES THE INTERRELATIONSHIPS BETWEEN VERSATA, TRILOGY, AND AUREA WITH SUFFICIENT PARTICULARITY.

The Versata Defendants Motion complains of "group pleading." Motion at p. 1. However, XimpleWare has alleged clearly in its Amended Complaint that Versata, Trilogy, and Aurea are

---

[2] Of these, only three secondary claims are unique to the Versata Defendants: (1) contributory copyright infringement; (2) breach of the covenant of good faith and fair dealing; and (3) intentional interference with prospective economic advantage. Fortunately, the Court's analysis for all of these secondary claims should be the same, and the Court should, therefore, deny the Motion in full, as it did with Ameriprise's motion.

Computerlaw Group LLP
www.computerlaw.com℠

1  closely interrelated companies, all of which have had a role in the development, marketing, and

2  sale the infringing DCM product. It is notable that the Versata Defendants complain only in the

3  abstract, without denying these interrelationships. The Court should see this for what it is: merely

4  one more procedural roadblock to avoid adjudication on the merits, rather than to secure its "just,

5  speedy, and inexpensive determination." FED. R. CIV. P. Rule 1; FED. R. CIV. P. Rule 8(e)

6  ("Pleadings must be construed so as to do justice").

7          The Versata Defendants also argue that XimpleWare has recited only conclusory *alter ego*

8  allegations. This is, however, not true. XimpleWare has alleged specific facts tying the three

9  Versata Defendants together closely. Specifically, XimpleWare alleges that Versata is a

10  subsidiary of Trilogy, and that Aurea has merged with Trilogy and Versata; most importantly:

> Plaintiff is informed and believes, and on that basis, alleges (collectively hereinafter "on information and belief"), that at all relevant times Trilogy was and is the operating entity of, and has effective, if not actual, control over the business decisions made by its subsidiaries, Versata and Aurea.
>
> Am. Compl. ¶ 9.
>
> On information and belief, Trilogy acquired Defendant Versata in or about February 2006, and Trilogy is now the parent company of Versata and its subsidiaries.
>
> Am. Compl. ¶ 5.
>
> On information and belief, Aurea merged with Trilogy and Versata in October, 2013.
>
> Am. Compl. ¶ 6.
>
> On information and belief, Ameriprise is a leading diversified financial services provider, providing a range of financial planning products and is a customer of Versata and Trilogy.
>
> Am. Compl. ¶ 7.
>
> Versata then sold those products under the Versata, Trilogy, and Aurea names to a number of customers, causing deception and false representations as to the true creator of the Source Code.
>
> Am. Compl. ¶ 95.

1

Defendants' wrongful acts unjustly enriched Defendants by allowing them to benefit from the advantages XimpleWare's Source Code added to the various products Defendants offer, including, but not limited to Versata's and Aurea's DCM product which, on information and belief, Trilogy endorses and from which it derives revenue as Versata's and Aurea's parent company.

Am. Compl. ¶ 121.

On information and belief, Trilogy, as Versata's and Aurea's parent company, knew of and endorsed Versata's and Aurea's misuse of XimpleWare's Source Code.

Am. Compl. ¶ 136.

The Amended Complaint further cites an Aurea press release confirming that merger with Versata and Trilogy. Am. Compl. at fn. 1.

The Versata Defendants cite *Quigley v. Verizon Wireless*, 2012 U.S. Dist. LEXIS 75027 (N.D. Cal. May 30, 2012) for the proposition that bare *alter ego* allegations are insufficient to survive a motion to dismiss. However, *Quigley*, a debt collection case, is easily distinguished. There, the plaintiff sued a wireless phone carrier and debt collectors it had engaged in an arms-length transaction. The Court dismissed the claims against the debt collectors' parent companies. Here, however, XimpleWare alleges far more: that all three of the Versata Defendants actively contributed to the infringing activities at the core of this dispute. *See, e.g.*, Am. Compl. ¶¶ 7, 95, 121, 136. This is not merely an allegation of a parent–child relationship. It is an allegation that **all three companies share active business operations, and that all three companies contributed directly related to the infringing acts**. Thus, *Quigley* is distinguishable, as are *Mindlab Media, LLC. v. LWRC Int'l LLC*, CV 11-CV-3405, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012) and *Automated Transaction LLC v. New York Cmty. Bank*, 12-CV-3070, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013).

The allegations XimpleWare makes in its Amended Complaint are more than sufficient to support claims on the basis of *alter ego*. *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607–08 (N.D. Cal. 2007) (holding that allegations of inadequate capitalization and failure to maintain formalities was sufficient for *alter ego* allegations to survive motion to dismiss) *citing In re Napster Copyright Litig. v. Hummer Winblad Venture Partners*, 354 F. Supp. 2d 1113, 1121 (N.D. Cal. 2005) (allegations of "essentially full operational control" sufficient to support *alter*

Computerlaw Group LLP
www.computerlaw.com℠

*ego* claims). Here, XimpleWare has alleged the domination and control over Versata and Aurea

by Trilogy and the inequities caused if Trilogy is allowed to hide behind the corporate form it has

abused. Accordingly, the motion to dismiss as to the *alter ego* claims should be denied.

### III.   XIMPLEWARE GRANTS LICENSES TO ITS COPYRIGHTED SOFTWARE UNDER STRICT AND SPECIFIC CONDITIONS ONLY, WITHOUT EXCEPTION.

#### A.   The GPL Contains Many Restrictions on Use, Including Notice and Attribution, as Well as Copying and Distribution.

The GPL does not provide "free" software for unlimited commercial use.[3] Rather, it

allows certain persons to use source code under very strict terms that require returning code to

the open source community, and maintaining **at all times** (a) copyright notices, (b) disclaimers of

warranties, (c) notices referencing the GPL license, and (d) when distributed, the program must

be accompanied by the complete machine-readable source code. For example, the GPL states:

> You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, **provided that** you conspicuously and appropriately publish on each copy an appropriate **copyright notice** and **disclaimer of warranty**; **keep intact all the notices that refer to this License** and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.

GPL at § 1 (emphasis added). Another very clear conditional example is expressed in section 2:

> If the modified program normally reads commands interactively when run, you **must** cause it, when started running for such interactive use in the most ordinary way, [1] **to print or display an announcement including an appropriate copyright notice [2] and a notice that there is no warranty** (or else, saying that you provide a warranty) and that users may redistribute the program [3] under these conditions, and [4] telling the user how to view a copy of this License.

GPL at § 2(c) (emphasis and brackets added).

The illegally copied and illegally distributed code did not contain the required notices and

disclaimers and that can never be GPL-compliant under these provisions. The use of the words

"**provided that**" in the license term in Section 1 of the GPL means the required notices are a

condition precedent to the grant of a license, not merely a condition of it. Conditional language

such as "provided" has long been upheld to create a condition precedent. *Schwab v. Bridge*, 27

---

[3] The Versata Defendants repeat this wildly inaccurate characterization of the GPL throughout their brief. The Court need only glance at the GPL to realize that it contains many detailed terms and conditions that place real limits on how GPL-licensed software is treated. To say GPL-licensed software has "no restrictions" is simply untrue. Motion at p. 1.

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

1  Cal. App. 204 (1915); *see also Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967) ("'Subject

2  to' means subordinate to [citations] and is generally interpreted as a condition precedent."

3  [citations omitted]).

4          There can be no doubt that the Versata Defendants failed to comply with these conditions

5  precedent to a license under the GPL because they either removed or never included: (a)

6  XimpleWare's copyright notices, (b) the GPL warranty disclaimer, (c) a full copy of the modified

7  code, or (d) the notice of the GPL license itself as alleged in the Amended Complaint. Am.

8  Compl. ¶¶ 52–57. Any one of these failures is fatal. GPL §1. The software that the Versata

9  Defendants provided to Ameriprise and other customers did not contain the requisite notices and

10  disclaimers. Am. Compl. ¶¶ 52–53. For this reason alone, XimpleWare has more than adequately

11  pled its claims against the Versata Defendants, proving that no use was authorized, licensed or

12  otherwise compliant with the GPL, and the Motion to Dismiss should be denied.

13          Again, the Court has already ruled on this issue in the context of Ameriprise's motion to

14  dismiss, holding that XimpleWare's allegations against Ameriprise were sufficient to withstand a

15  Motion to Dismiss. Dkt. 61 at p. 5. The same is true of the Versata Defendants.

16  **B.      The GPL's Preamble is Factual and Not Part of the Legally
             Binding Terms and Conditions of the Limited License Grant Language.**

17          The GPL's lengthy "Preamble" section is not a legally operative part of the GPL; it is

18  generally understood in the open source community to be simply recitals. The Preamble's own

19  terms make it clear that the operative language is in the subsequent sections, stating in its last

20  sentence, "The precise terms and conditions for copying, distribution and modification follow."

21  This is further confirmed in the secondary literature where, for example, Lawrence Rosen, an

22  attorney and noted open source expert, states in a 2004 book:

23

24          The preamble, of course, is **not** an operative part of the GPL license. It is not
            among its *terms and conditions*. There is nothing in its words that must be
            obeyed. It is merely a helpful preface so that you can better understand the GPL in
25          its context.

26  LAWRENCE ROSEN, OPEN SOURCE LICENSING: SOFTWARE FREEDOM AND INTELLECTUAL

27  PROPERTY LAW 109 (Prentice Hall 2004) (emphasis added).

28

As this is a Motion to Dismiss, the allegations in the Amended Complaint must be taken at full face value. While the Court may consider certain types of contracts attached to pleadings, non-binding language such as the Preamble cannot override the clear allegations of the Complaint, let alone the actual terms and conditions of the GPL. Those terms and conditions— whose breach and non-compliance by Ameriprise is clearly alleged—control and are fully governing here. Accordingly, the Motion to dismiss must be denied.

**IV.  XIMPLEWARE'S AMENDED COMPLAINT PROPERLY ALLEGES THAT THE VERSATA DEFENDANTS VIOLATED THE GPL AND INFRINGED XIMPLEWARE'S COPYRIGHTS.**

**A.    The Facts of The Versata Defendants' Infringing Conduct Are Clearly Pled.**

As alleged in XimpleWare's Amended Complaint, XimpleWare provided its software online under the GPL. Versata downloaded XimpleWare's software, and included a subset of it— object code only, without any notices, without any warranty disclaimers, without a copy of the code, and without any license information—in its DCM product, which it distributed to customers including Ameriprise. Am. Compl. ¶¶ 69–70. **XimpleWare has alleged that the software Versata distributed (including to Ameriprise) was not GPL compliant—including especially its failure to include the required notices and disclaimers.** Am. Compl. ¶¶ 53, 61.

**B.    The Versata Defendants' GPL Violation, Breach of Contract, And Copyright Infringement are Pled Clearly and Sufficiently.**

**1.    The GPL Implements an Automatic Voiding of a Failed License Grant.**

At all times, the Versata Defendants were **strictly** bound by the GPL's terms and conditions. There is no dispute that the GPL applies to the Versata Defendants: their arguments are all attempts to reinterpret the GPL, not claim its inapplicability.

Section 4 of the GPL states a requirement of strict compliance, and any violation terminates the license automatically at the moment of violation. Section 4's language is clear on this:

//

//

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

4. **You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License.** Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and **will automatically terminate your rights under this License**. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

GPL at § 4 (emphasis added).

The Court has already held that, if a party violates the GPL, then an action for copyright infringement is appropriate. Dkt. 61 at pp. 4–5, *citing Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) (allowing action for copyright infringement based on breach of open source license).

The Amended Complaint alleges clear facts amounting to a breach which triggers this automatic termination, and such allegations must be accepted as true for this Motion—namely that any and all licenses terminated automatically under these provisions. Am. Compl. ¶¶ 57, 61.

XimpleWare's Amended Complaint states multiple instances of violations of the terms of the GPL. First, the Versata Defendants made copies of XimpleWare's software without the required copyright notices and license information. Second, the Versata Defendants made illegal "distributions" within the meaning of the GPL and copyright law. Third, the adoption into commercial software is also not authorized and violates the Copyright Act. 17 U.S.C. § 106(2). The effect of any and each violation is that the Versata Defendants breached the GPL and lost any license automatically, at that moment, by operation of law, and they are therefore copyright infringers.

### 2. The Versata Defendants Violated The GPL by Removing or Failing to Include XimpleWare's Copyright Notices and the GPL License Itself.

XimpleWare's Amended Complaint states that Versata's DCM software, which incorporates XimpleWare's software, does not include any XimpleWare copyright or use notices. Am. Compl. ¶ 52. XimpleWare alleges that it has always included such copyright notices on its source code and in the software packages it distributes online via SourceForge. Am. Compl. ¶¶ 44, 47, 54.

Under the GPL, Section 1 is incorporated by Section 3, which governs distribution and copying of GPL-licensed software in object code form: "You may copy and distribute the

Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following…" GPL § 3.

XimpleWare's Amended Complaint alleges clearly that Versata downloaded XimpleWare's software (Am. Compl. ¶ 69); included it in object code form in its DCM product (Am. Compl. ¶¶ 69–70); and did not include any XimpleWare copyright notices or GPL licensing information (Am. Compl. ¶¶ 50–53, 69–70). For these reasons, XimpleWare's claims are well-founded and this Motion must be denied.

The Federal Copyright Act does not itself define "distribution." 17 U.S.C. § 106; 4 PATRY ON COPYRIGHT § 13:9 (2013). A common sense approach to statutory interpretation is warranted. The word "distribution" generally includes "the exclusive right to sell or otherwise transfer ownership of, rent, lease, or lend one or more copies or sound recordings of the work." Nimmer, 2-8 NIMMER ON COPYRIGHT § 8.11[B][1] (2014); *see also* 17 U.SC. § 106(3).

Finally, XimpleWare alleges that this distribution ran afoul of the terms and conditions of the GPL, and thus the Versata Defendants' license under the GPL terminated automatically. Am. Compl. ¶ 61. XimpleWare pled adequate facts in support of each of these allegations, as the Court has already found. Dkt. 61 at p. 5 (order denying Ameriprise motion to dismiss), and as with the prior Motion, this one should also be denied.

## V.    XIMPLEWARE'S OTHER CLAIMS SURVIVE BECAUSE IT HAS ALLEGED AND WILL PROVE THE ELEMENTS OF ITS WELL-PLED COPYRIGHT CLAIM.

There is no dispute in this case that XimpleWare is the owner of all copyrights in the Product and related source code; and indeed there can be no dispute as a "copyright registration is *prima facie* evidence of ownership." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989). XimpleWare's Amended Complaint alleges clearly that multiple parties (including Ameriprise) received XimpleWare's software from Versata, and that Versata violated the GPL. *See generally*, Motion. The Copyright Office Registered Plaintiff's Copyright and Issued Registration Certificate TX 7-727-556 to Plaintiff, affording XimpleWare all the rights connected thereto.

Computerlaw Group LLP
www.computerlaw.com℠

"To plead copyright infringement, plaintiff must plead (1) ownership of a valid copyright and (2) copying of protected expression by the alleged infringers." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 2741 at \*5. As discussed above, XimpleWare has alleged that XimpleWare's registered copyright is valid and enforceable, fulfilling the first element of Plaintiff's claim as alleged in its Amended Complaint. Am. Compl. ¶¶ 44–48. As for the second, XimpleWare alleges (and Ameriprise has admitted) that many Versata customers received software from Versata. Such use immediately constitutes copying and justifies a theory for copyright infringement.[4] Indeed, that is precisely Ameriprise's position against Versata in its own litigation with Versata; the improper distribution of copyrighted source code is an undeniable infringing activity, more than sufficient to defeat the Versata Defendants' Motion.

## VI.  XIMPLEWARE PROPERLY PLEADS CONTRIBUTORY COPYRIGHT INFRINGEMENT.

The key to XimpleWare's contributory copyright infringement claim is simple: the Versata Defendants have not given their customers notice or means to comply with the GPL. Any customer's use of the infringing DCM software is doomed to violate the GPL, the consequence of which is automatic termination of the customer's GPL license. Thus, all the customers never had licenses to begin with, because no conditions for a license grant were ever met—or, to put it a different way, any purported licenses were void *ab initio* and/or were instantly terminated automatically as a direct result of the Versata Defendants' infringing conduct and failure to tell their customers that its DCM product included XimpleWare's VTD-XML. This is classic contributory copyright infringement, for which all defendants are strictly liable under well-settled Copyright Act principles. Nimmer, 3-12 NIMMER ON COPYRIGHT § 12.04[A][3] (2014).

---

[4] As a computer program, it is well-understood that use creates copies and such copying is infringing conduct: "As we discuss later, one issue of importance in reference to computer programs and other digital works concerns the copyright consequences of "moving" a work from one part of computer memory to another, or of briefly copying it into the memory of a different server. *See, e.g., MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993); *Stenograph L.L.C. v. Bossard Associates, Inc.*, 144 F.3d 96 (D.C. Cir. 1998*); PracticeWorks, Inc. v. Professional Software Solutions of Illinois, Inc.*, 72 U.S.P.Q.2d (BNA) 1691 (D. Md. 2004) (copying within machine is infringement)." Nimmer, NIMMER ON COPYRIGHT: LAW OF COMPUTER TECHNOLOGY § 1:16.

**A.    Like Versata's, the Customers' Licenses Also
Terminate Automatically Upon Their Own Violation of the GPL.**

The parties agree that, under the terms of the GPL, one party's distribution of GPL-licensed software confers a license under the GPL to the receiving party. GPL § 6. However, the **receiving party is equally bound by the GPL's terms and conditions**, including the conditions that XimpleWare clearly alleges that the Versata Defendants violated—as well as its automatic termination provision. If the receiving party violates any term or condition, its license **terminates automatically** and, where there was never any compliance, the license is void *ab initio*. Section 4 of the GPL—which the Versata Defendants quote in their motion at p. 4—states:

> You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is **void**, and will **automatically terminate** your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated **so long as such parties remain in full compliance**.

GPL § 4 (emphasis added).

**B.    It is Factually Impossible for the
Versata Defendants' Customers Not to Violate the GPL.**

Under the facts alleged in the Amended Complaint, it is **impossible** for the Versata Defendants' customers not to violate the GPL and infringe on XimpleWare's copyrights.

XimpleWare has alleged, among other violations, that the Versata Defendants distributed VTD-XML without a copy of the GPL (a first violation); did not include a copy of its source code (a second violation); and did not offer to provide its source code (a third violation). In combination with the Versata Defendants' utter lack of notice to their customers that VTD-XML was included in DCM, there is no way that those customers even could know that they had to comply with the GPL. This is precisely the position in which Ameriprise found itself; it is precisely the point of the GPL's notice conditions; and it is precisely the interpretation of the GPL that the Court has already found sufficient for purposes of Ameriprise's motion to dismiss. Dkt. 61 at p. 5.

The Versata Defendants provided VTD-XML to their customers as a part of DCM. Am. Compl. at ¶¶ 82, 107. Under Section 3 of the GPL, object code copies must be accompanied by one of the following: (1) a copy of the source code; (2) an offer to provide the source code; or (3)

1   information the providing party received regarding an offer to provide the source code.

2   XimpleWare alleges that the Versata Defendants provided their customers none of those things

3   (as Ameriprise confirms), and thus violated the GPL.

4          Because the Versata Defendants' customers never received any of the information

5   required to make a compliant copy of the object code, nor any source code, nor any notice at all

6   that the GPL applied, **it is factually impossible for the Versata Defendants' customers not to**

7   **violate the GPL**, and any licenses they could possibly have received from the Versata

8   Defendants are void *ab initio*.

9          C.      <u>The Versata Defendants' Customers Cannot Satisfy Conditions Precedent.</u>

10         The Versata Defendants' customers received XimpleWare's software in violation of the

11   GPL license. For their subsequent use of the XimpleWare software to be licensed, it had to first

12   comply with <u>all</u> the terms and conditions—like the license itself, this "automatic" license

13   contains a condition precedent requiring compliance with the terms and conditions of the GPL

14   license. *Matthews v. Starritt*, 252 Cal. App. 2d 884, 887 (1967). <u>XimpleWare has alleged (and</u>

15   <u>Ameriprise, in its motion, admitted) that the code the Versata Defendants' customers received</u>

16   <u>from Versata and that the Versata Defendants' customers used was not GPL compliant—</u>

17   <u>including especially its failure to include the required notices and disclaimers.</u> Am. Compl. ¶¶

18   53, 61. Because of the Versata Defendants' customers' failure to meet this additional condition

19   precedent to the "automatic" license, their receipt of a copy and use of XimpleWare's software

20   was never authorized, never licensed, and at all times an infringement of XimpleWare's

21   copyright; any license they purported to receive was void *ab initio* because its conditions

22   precedent were never satisfied by any customer. For this additional reason, the Versata

23   Defendants' Motion must be denied.

24         D.      **The Versata Defendants Had Full Knowledge That They Were**
                   **Selling Many Open Source Components, Including XimpleWare's, in DCM.**
25

26         XimpleWare also alleges that the Versata Defendants had clear, early knowledge that they

27   were incorporating GPL-licensed software into their DCM product and selling it (as their own) to

28   customers:

Computerlaw Group LLP
www.computerlaw.com℠

Computerlaw Group LLP
www.computerlaw.com℠

Versata's commercial distribution of the XimpleWare Product or Source Code outside the terms of the GPL was knowing and willful. According to documents filed in the Texas Litigation[5], **Versata maintained in the course of business a list of open source software components that it included in its DCM product, and that list included VTD-XML as well as the fact that VTD-XML and several other components were licensed under the GPL**…

Am. Compl. ¶ 56 (emphasis added).

This clear knowledge of VTD-XML's licensing status, coupled with the failure to even attempt to negotiate a commercial license with XimpleWare, makes the Versata Defendants liable for willful direct copyright infringement—and it also provides a further basis for contributory copyright infringement.

By encouraging those customers to receive and make copies onto their own computers to run DCM, without giving them notice or means to comply with the GPL, the Versata Defendants have engaged in contributory copyright infringement. The Court should deny the Versata Defendants' Motion as to XimpleWare's claim for contributory copyright infringement.

## VII.   PLAINTIFF HAS PROPERLY PLED ITS CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restat. 2d of Contracts § 205. This is not some quirk of California law; it is the generally applicable common law of contracts. The Versata Defendants seek to avoid it by taking refuge in a quirk of Texas law, which refuses to recognize the implied covenant of good faith and fair dealing. Motion at pp. 6–8.

### A.   Elements of the Implied Covenant Claim

The implied covenant of good faith and fair dealing requires that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654, 658 (1958) (internal citations omitted); *see also* Rest.2d of Contracts § 205.[6] The elements of a California claim for a breach of the

---

[5] *Versata v. Ameriprise*, Travis County District Court, No. D-1-GN-12-003588, removed in January 2014 by Ameriprise to Federal court as *Versata v. Ameriprise*, U.S. District Court for the Western District of Texas, No. 1:14-cv-00012-SS.

[6] The phrase "good faith" is used in a variety of ways, and its meaning varies with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed

Computerlaw Group LLP
www.computerlaw.com℠

1   implied covenant are (1) that the parties entered into a contract—in this case, the GPL; (2) that

2   Plaintiff XimpleWare did all, or substantially all of the significant things that the contract

3   required of it; (3) that all the conditions required for the Versata Defendants' performance had

4   occurred; (4) that the Versata Defendants unfairly interfered with XimpleWare's right to receive

5   the benefits of the contract; and (5) that XimpleWare was harmed by the Versata Defendants'

6   conduct. XimpleWare' has pled all of these elements with the specificity required in its First

7   Amended Complaint. Am. Compl. at ¶¶ 111–118.

8          **B.     California Law Governs All Agreements At-Issue in This Dispute.**

9          California law applies to and controls XimpleWare's implied covenant claim, and the

10  Court should reject the transparently results-oriented approach urged in the Versata Defendants'

11  Motion.

12         In evaluating states' interests in having their substantive law applied, California courts

13  focus on whom the two laws were designed to protect (or, if applicable, whose refusal to adopt a

14  law was designed to protect). If only one party is in the protected class, the case presents a "false

15  conflict," and the court applies the state law designed to protect that party. *Hurtado v. Sup. Ct.*,

16  11 Cal.3d 574, 579 (1974). This "comparative impairment" approach to a conflict seeks to

17  determine which state's interest would be more impaired if its policy were subordinated to the

18  policy of the other state. *Bernard v. Harrah's Club*, 16 Cal. 3d 313, 320 (1976).

19         According to the Texas State Supreme Court in *English v. Fischer*, 660 S.W.2d 521

20  (1983), Texas does not impose an implied covenant of good faith and fair dealing on all contracts

21  so as to protect a party from special damages "should he seek to compel his adversary to perform

22  according to the contract terms as agreed upon by the parties." *Id.* at 522. Texas' interest in

23  rejecting the implied covenant lies in protecting a party holding another to his obligations under

24  a contract. The Versata Defendants are not attempting to compel XimpleWare to comply with its

25  obligations under the GPL, and therefore **do not fall into the class Texas law means to protect**.

26

27

---

28  common purpose and **consistency with the justified expectations of the other party**. Rest.2d
    of Contracts § 205 cmt. a (emphasis added).

Computerlaw Group LLP
www.computerlaw.com℠

1   California's implication of an implied covenant of good faith and fair dealing into every

2   contract protects a party to a contract whose counterpart has unfairly interfered with the right to

3   benefit from a contract. The GPL, as specifically pled in Plaintiff's First Amended Complaint,

4   sets forth unambiguous terms and conditions for the copying and distribution of GPL-licensed

5   source code like XimpleWare's VTD-XML. Am. Compl. ¶¶ 25–32. Those terms and conditions

6   are in place for the explicit purpose of protecting an author's right to choose how his work is

7   used, and the Versata Defendants' misappropriations and violation of the GPL have directly

8   interfered with exactly that right of XimpleWare's. Am. Compl. ¶ 26 and Ex. 1. XimpleWare

9   falls into the protected class under California law, whereas the Versata Defendants do not under

10  Texas law, and the Court should therefore apply California law and deny the Versata Defendant's

11  Motion.

12      Further, even if the interests of California and Texas offset (which they do not in this

13  case) the *Restatement of Conflicts* factors weigh heavily in favor of California. XimpleWare is

14  located in California (Am. Compl. ¶ 2); XimpleWare selected the GPL license and applied it to

15  its software in California; the place of contracting was much more in California than in Texas, as

16  XimpleWare entered into the GPL contract in California and uploaded its VTD-XML software to

17  the Internet from California (Am. Compl. ¶ 39–40); and this case sits before the Federal District

18  Court for the Northern District of California, where all Defendants do business—including being

19  registered to do business here and, in the case of Trilogy, being **incorporated as a California**

20  **corporation**. Am. Compl. ¶ 4 (Versata is "registered to do business in **California**"), ¶ 5 (Trilogy

21  "is a corporation organized under the laws of **California**", admitted by the Versata Defendants at

22  Dkt. 59 p. 8:1), and ¶ 6 (Aurea is "registered to do business in **California**") (emphasis added).

23  The Versata Defendants' logic that the place of contracting is Texas simply because it

24  downloaded XimpleWare's software to an office in Texas[7] (Motion p. 7:20–27) and decided to

25  infringe there leads to a wildly unjust result, given these significant and uncontested ties with

26  California. Finally, XimpleWare's complaint alleges that the infringing acts took place in

27

28  [7] Notably, this is an extrinsic fact from outside the pleadings: XimpleWare's Amended Complaint **does not state from which location** Versata downloaded VTD-XML.

California, and at the motion to dismiss stage, the Court must accept all facts in the complaint as true. Am. Compl. ¶ 13–15, 56–58.

For the foregoing reasons, Plaintiff states all the items required to bring a claim for breach of the implied covenant of good faith and dealing under California law, and the Versata Defendants' Motion must be denied.

**VIII.   XIMPLEWARE'S CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE IS ALSO SUFFICIENTLY PLED.**

XimpleWare clearly alleges facts around its two-track software licensing strategy: it licenses its VTD-XML software both under the GPL as well as under a more permissive commercial license. Am. Compl. ¶ 26, 48, 75, 134. This dual licensing model is well-known in the software industry, as XimpleWare alleges. Am. Compl. ¶ 134. It is plain that the Versata Defendants' infringement was a substitute for negotiating and paying for a commercial license from XimpleWare.

In addition, by including XimpleWare's software in DCM without any notice or attribution to XimpleWare, there is no way the Versata Defendants' customers could discover that XimpleWare's software provided some of the value of DCM, namely high performance. The Versata Defendants thus intentionally deprived XimpleWare of the prospective economic advantage of selling commercial licenses to their customers—and instead bundled it in with DCM with zero notice and attribution without even obtaining a commercial license to do so. These facts adequately state a claim for intentional interference with prospective economic advantage, and the Defendants' motion should be denied.

**IX.   AT MINIMUM, LEAVE TO AMEND SHOULD BE LIBERALLY GRANTED.**

The Ninth Circuit has held that "if a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d. 1393, 1401 (9th Cir. 1986). Even if the Court finds any reason to grant the Versata Defendants' motion to dismiss, it is well-established that the proper remedy is to permit Plaintiff to amend the claims for relief at issue. Leave to amend

Computerlaw Group LLP
www.computerlaw.com℠

should **only** be denied in extreme circumstances where it would cause undue prejudice, or where it would be impossible to cure the defect with an amendment, *e.g.*, where a statute had not been enacted at the time of the alleged facts. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1159 (9th Cir. 1989) (denial of leave to amend proper where sought amendment was tardy, and amendment would be futile because statute was not even enacted at time of alleged facts). Here, neither is true—no defendants have even answered XimpleWare's Complaint or Amended Complaint, so there would plainly not be manifest injustice in another amendment, and impossibility is a high bar that Defendants do not clear.

**CONCLUSION**

The Versata Defendants lost their license under the GPL automatically by breaching its terms, and thus, their copying and distribution of XimpleWare's software constitutes copyright infringement.

As the Amended Complaint alleges, the Versata Defendants used XimpleWare's software without the required notices and disclaimers, and distributed XimpleWare's code without authorization and also without the required notices. Accordingly, the Versata Defendants have infringed XimpleWare's copyrights.

Because a motion to dismiss may only be granted when **no** set of facts would support the alleged claims, Plaintiff respectfully requests an opportunity to amend its complaint to allege additional facts if the Court determines that further factual allegations are required to state any claim for relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave freely given). Thus, even if the any claims are not sufficiently pled, the Court should grant XimpleWare leave to amend.

Respectfully submitted,

COMPUTERLAW GROUP LLP

Dated: February 10, 2014

By:   /Jack Russo/
      Jack Russo
      Christopher Sargent
      Ansel Halliburton

      Attorneys for Plaintiff
      XIMPLEWARE CORP.

Computerlaw Group LLP
www.computerlaw.com℠